Mr. Kenneth D. Leek #63523
_____
Name

H.C.F. 500 Reformatory Rd.
_____

Hutchinson, KS 67504 - 1568
_____
Address

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

KENNETH D. LEEK _____, Plaintiff
*(Full Name)*

V.

KATHRYN A. ANDROSKI, Defendant (s)
_____

CASE NO.   21-3100-SAC
*(To be supplied by the Clerk)*

CIVIL RIGHTS COMPLAINT
PURSUANT TO 42 U.S.C.
§1983

## A. JURISDICTION

1) KENNETH D. LEEK _____, is a citizen of KANSAS
*(Plaintiff)*                                   *(State)*

who presently resides at H.C.F. 500 Reformatory Rd,
*(Mailing address or place*
Hutchinson, KS 67504 - 1568 .
*of confinement.)*

2) Defendant KATHRYN A. ANDROSKI _____ is a citizen of
*(Name of first defendant)*

_____ Hutchinson, KS _____, and is employed as
*(City, State)*

head librarian at H.C.F. . At the time the
*(Position and title, if any)*

claim(s) alleged in this complaint arose, was this defendant acting under the color of state

law? Yes ☒ No ☐. If your answer is "Yes", briefly explain:

Androski is employed by the KDOC, thus she
is employed by the State of Kansas

3) Defendant _MISTI KRUEKER_____ is a citizen of
   _(Name of second defendant)_

_____Hutchinson, KS_____, and is employed as
   _(City, state)_

A prison administrator for H.C.F.____. At the time the
   _(Position and title, if any)_

claim (s) alleged in this complaint arose was this defendant acting under the color of state

law? Yes ☒ No ☐ . If your answer is "Yes", briefly explain:

_KRUEKER is a prison administrator/contract monitor_

_employed by the KDOC and H.C.F._

(Use the back of this page to furnish the above information for additional defendants.)


4) Jurisdiction is invoked pursuant to 28 U.S.C. §1343(3); 42 U.S.C. §1983. (If you wish to

   assert jurisdiction under different or additional statutes, you may list them below.)

_____28 USC§1367,  42 USC§1331_____

_____

## B.  NATURE OF THE CASE

1) Briefly state the background of your case:

_____

_____Please, see attached documentation_____

_____

_____

_____

_____

_____

## C.  CAUSE OF ACTION

1) I allege that the following of my constitutional rights, privileges or immunities have been violated and that the following facts form the basis for my allegations: (If necessary you may attach up to two additional pages (8h" x 11") to explain any allegation or to list additional supporting facts.)

   A) (1) Count I: _____ Please, see attached documentation _____

   _____

   _____

   (2) Supporting Facts: (Include all facts you consider important, including names of persons involved, places and dates. Describe exactly how each defendant is involved. State the facts clearly in your own words without citing legal authority or argument.):

   _____ Please, see attached documentation _____

   _____

   _____

   B) (1) Count II: _____ Please, see attached documentation _____

   _____

   (2) Supporting Facts: _____ Please see attached documentation _____

   _____

   _____

   _____

C) (1) Count III: _Please, see attached documentation_

_____

(2) Supporting Facts: _Please, see attached documentation_

_____

## D.  PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1) Have you begun other lawsuits in state or federal court dealing with the same facts
involved in this action or otherwise relating to the conditions of your imprisonment?
Yes ☐  No ☒ . If your answer if "Yes", describe each lawsuit. (If there is more than
one lawsuit, describe the additional lawsuits on another piece of paper, using the same
outline.)

   a)  Parties to previous lawsuit:

   Plaintiffs: _N/A_

   Defendants: _N/A_

   b)  Name of court and docket number _N/A_

   c)  Disposition (for example: Was the case dismissed? Was it appealed? Is it still
   pending?) _N/A_

   d)  Issues raised _N/A_

   e)  Approximate date of filing lawsuit _____ W / A _____

   f)  Approximate date of disposition _____ N / A _____ .

1)  I have previously sought informal or formal relief from the appropriate administrative

officials regarding the acts complained of in Part C Yes ☒ No ☐ . If your answer is

"Yes", briefly describe how relief was sought and the results. If you answer is "No",

briefly explain why administrative relief was not sought.

_____ Plaintiff filed multiple administrative grievances _____

_____ and received no relief whatsoever. They are _____

_____ attached to this complaint. _____

_____

## 2)  REQUEST FOR RELIEF

1)  I believe that I am entitled to the following relief:

_____

_____ Please, see attached documentation _____

_____

_____

_____

without prejudice;

_____      Kenneth D. Jack

Signature of Attorney (if any)                Signature of Plaintiff

_____

_____

(Attorney's full address and telephone number)

Mr. Kenneth D. Leek #63523
H.C.F. 500 Reformatory Rd.
Hutchinson, Ks 67504-1568

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KENNETH D. LEEK,              )
          Plaintiff,          )
                              )
     VS.                      )
                              )
KATHRYN A. ANDROSKI,          )        COMPLAINT
MISTI KROEKER, (FNU)          )        JURY TRIAL DEMAND
JACKSON, IC SOLUTIONS         )
CORRECTIONAL INC., sued       )        Case No. _____
in their individual capacities,  )
and DAN SCHNURR, sued         )
in his individual and official  )
capacity                      )
          Defendants.         )

## Preliminary Statement

This is a civil rights action filed by Kenneth D. Leek, a state
prisoner, for damages and injunctive relief under 42 USC §1983
and the contract laws of the state of Kansas, alleging inadequate
access to the court, breach of contract, and harassing and
retaliatory cell searches.

## Jurisdiction

1. The court has jurisdiction over plaintiff's claims of violation

of federal constitutional rights under 42 U.S.C. §1331(a), 1343 and 1983.
2. The court has jurisdiction over plaintiff's claims of violations of breach of contract under 28 USC § 1367 (c)

## Parties

3. The plaintiff, Kenneth D. Leek, was incarcerated at Hutchinson Correctional Facility ("H.C.F.") during the events described in this complaint.
4. Defendant Kathryn A. Androski, is a librarian employed by H.C.F. She is sued in her individual capacity.
5. Defendant Misi. Kroeker is an administrator and contract monitor employed by H.C.F. She is sued in her individual capacity.
6. Defendant (FNU) Jackson is a correctional officer employed at H.C.F. He is sued in his individual capacity.
7. Defendant IC Solutions is a communications company in a contract with the Kansas Department of Corrections ("KDOC") and has its headquarters in Texas. It is sued in its individual capacity.
8. Defendant Dan Schnurr is the warden at H.C.F. He is sued in his individual and official capacity as warden.
9. All defendants have acted and continue to act, under color of state law at all times relevant to this complaint.

## Facts
### Library Access In General Population

10. Defendant Androski is the head librarian at H.C.F. She is in full control of every aspect of the central library and has supervisory authority and responsability over the East and South Units.
11. As privilege restriction is the most frequent punishment handed out by disceplinary officers at H.C.F., plaintiff has found himself serving out multiple restriction sentences.

12. Plaintiff had the occasion to fill out a partnership research request form with inmate Neloms as the requested partner. When he gave the form to Androski for processing he was on restrictions. Androski told plaintiff, "inmates on restriction are not allowed to do partners research," and gave the form back to plaintiff.

13. Plaintiff told Androski there is nothing in the facility rules that bar inmates serving a privilege restriction sentence from doing partners legal research.

14. Androski told plaintiff she was not going to debate the rules with him and if he wanted to attend partners law library he should follow the rules and he wouldn't be on restriction.

15. Androski refused to process the law library request form.

16. Plaintiff and inmate Neloms have similar issues of ineffective assistance of counsel and time bar issues related to the filing of state habeas petitions. They sought to share and do research with each other and hopefully find a way to meet the exception criteria and file out of time, successive petitions.

17. With both plaintiff and Neloms being subsequently placed on long-term administrative segregation months later, they never had an opportunity to work together or file anything.

18. Plaintiff also learned inmates on privilege restriction are also only allowed to be scheduled to attend law library twice a week, in theory for a total of 2½ hours a week total.

19. Plaintiff told Androski he was working on something that was time sensitive and asked if that would be a reason sufficient enough to allow her to schedule him for more appointments.

20. Androski told plaintiff, "the rules state you get one appointment on Monday and Wednesday, there are no exceptions."

21. Androski's response made no sense to plaintiff as if you are not serving a sentence of privilege restriction you are allowed to request extra scheduling if you have a court deadline you can prove. It's written right on the request form.

(3)

22. Plaintiff told Androski with the research computers constantly freezing up and needing to be rebooted, inmates constantly being let out of their cells late to attend library, and her running inmates out early, plaintiff is lucky to actually get 45-50 actual minutes of library time per session, and she should be more flexible.

23. Androski replied, "No. The rules are the rules."

24. After his run in with Androski petitioner reviewed prison policy in regards to the operation of the library. He learned H.C.F. General Order ("G.O.") 15-104 lists the "privileges" an inmate has when serving a sentence of privilege restriction. The order states inmates can make appointments on mondays and Wednesdays only, but says nothing about legal assistance / partners research.

25. While to G.O. seems to limit the days a prisoner on restriction can be scheduled, when and how legal assistance / partners research is scheduled is left to the discretion of Androski. She has made her own personal policy of scheduling legal assistance / partners research on Wednesday and Sunday nights.

26. H.C.F. G.O.'s are drafted and signed by the warden of the prison.

27. The G.O.'s are also reviewed yearly and the warden may amend or repeal them at that time.

28. Schnurr has not amended G.O. 15-104 in regard to inmates on privilege restriction attending law library.

29. Defendants treat inmates attending law library as a privilege, not a right.

30. Plaintiff's personal experiences have taught him that he can't do much, if anything, with only a theoretical 2½ hours a week of access to the H.C.F. law library.

31. While at H.C.F., plaintiff has been max custody and unemployed while on privilege restriction.

32. If you live in C cellhouse, as plaintiff did, and you are unemployed you must attend lay in yard at 8:30 a.m. mon-Sat.

(4)

33. It is routine for yard to run late due to security issues or break-fast meal line running behind.

34. On days that happens the yard schedule is either moved forward or early gate check in's cancelled, which takes place approximately 45 minutes into a 1½ hour long yard period, and the inmate is forced to stay on the yard the entire yard period.

35. A lot of times there is no announcement made and the inmate doesn't know what option the captain will choose until it is actually happening.

36. Since G.O. 15-104 only allows inmates on restriction to be scheduled in the 7:30-8:45 am, or 8:45-10:00 a.m. slots on Wednesdays, whenever the plaintiff is on restriction it creates an automatic conflict between yard or law library attendance. Plaintiff has discussed the matter with Androski on numerous occasions.

37. Due to the policy being strickly enforced, if plaintiff chooses yard attendance over law library he will only receive one hour of law library that week.

38. When faced with this Hobson's choice plaintiff usually gives up his yard period to attend law library.

39. Plaintiff has asked Androski could she either allow him to attend at a time that didn't force him to choose between yard and library, or change her scheduling practices all together and she said, "No. If you want to come to the library then don't go to yard."

Library Access In Segregation

40. On or about November 4, 2020 plaintiff was removed from the prison general population and placed in administrative segregation for being in possession of a contraband cell phone.

41. Plaintiff was issued a disciplinary report to which he plead guilty to and received a sanction of 15 days disciplinary segregation.

42. When plaintiff's disciplinary sentence was completed he received notification that his classification status had been changed to Other Security Risk ("OSR") and he would be held in segregation while an investigation was being conducted.

43. The length of OSR placement is indeterminate and requires the approval of the segregation review board to be changed.

44. At the time of the writing of this complaint plaintiff has been in segregation a total of 5 months.

45. There are five (5) segregation cellhouses at H.C.F.: A1, A2, A3, B1, and C1. These cellhouses hold well over 300 inmates on any given day.

46. At the time the actions complained of in this complaint took place Jordan Bell was the unit team manager in charge of all segregation living units.

47. All five segregation cellhouses are set up pretty much the same with little variance in operation.

48. The procedure for an inmate to access materials in the law library are uniform for all segregation living units. He has to turn in a "SEGREGATION/RESTRICTION REQUEST FOR LIBRARY LEGAL INFORMATION" form to security staff requesting whatever resources he wants, ~~~~~~~~ which in turn will be placed in a large mail bag and picked up by the librarian.

49. The form has slots for the inmate to request six cases by citation only. Any lack of information for a particular case cite will result in that particular request not being processed. Requests not being processed is a common occurrence.

50. When received in the library the two so-called law clerks will locate the cases on the Lexis Nexis research computer, print them, staple them individually in file folders, assign them bar code numbers, and deliver them to the librarian so they can be sent to the various segregation cellhouses.

51. Once the inmate receives the cases they do not become

(6)

his personal property. At the top of the request form the inmate is placed on notice that, "All material requested via this form is on loan to you — it must be returned by 5:30 p.m. on the following Tuesday. If it is not returned, you will not be allowed to check out new material." All too often plaintiff has received notices from the library his materials were not turned in timely and his orders would not be processed, even though the borrowed materials were turned in on Sunday night.

52. If plaintiff wants a copy of the case he can keep there is a way he can do so. The request form states, "Requests for copies should be submitted on the copy request form and accompanied by a copy ticket."

53. A copy ticket costs $2.00 and has 20 uses on it which would average out to $.10 a copy.

54. The length of most cases along with spending limits placed on inmates in regard to canteen purchases makes paying for copies very prohibitive. Plaintiff may have to forgo basic hygeine purchases to buy copy tickets, which he is not willing to do.

55. If plaintiff submits his request form to prison officials on Monday morning so he can make the Tuesday deadline, he will usually receive the requested material on Thursday afternoon. That means plaintiff will only have from Thursday afternoon until Sunday night to read, analyze, and take notes on a huge amount of caselaw.

56. Plaintiff has found doing legal research that way to be cumbersome, ineffective, and frustrating.

57. A common problem with Androski's outdated form of library access is that when these forms don't get turned in by prison officials in a timely manner, the inmate pays the cost by not receiving his requested materials.

58. The request form allows plaintiff to request more than just cases. He can also order "LEGAL FILES," which are

packets of information made up by various clerks over the years.

59. Plaintiff has ordered some of the files and has learned that most of them are out of date and if relied on could cause him to lose his suit.

60. The form also allows plaintiff to order various books. One of those books is the Prisoner's Self Help Litigation Manual.

61. When plaintiff ordered and received the book, however, he learned that it was a second edition printed prior to 1995 -- and the Prison Litigation Reform Act -- and was totally useless to him.

62. Plaintiff sent a request form informing Androsk's of the problem and requesting a later edition which he knew to be on the reference book shelf.

63. Plaintiff was later informed the library had no newer edition of the book by one of the clerks.

64. It's clear to plaintiff that no one in the library has a clue what's going on.

65. Prior to going to segregation plaintiff had filed multiple lawsuits in regards to conditions of confinement in both state and federal court. He had Leek v. Brown, et al, Reno County Case Number 20-cu-01 in limbo between the district court and the Kansas Court of Appeals. It has now been assigned Appellate Case Number 21-123711-A.

66. Plaintiff also had filed a suit pursuant to 42 U.S.C. §1983 in this court in regards to multiple prison employees violating his constitutional rights under the First and Eighth Amendments encaptioned Leek v. Scoggin, et al, 20-cv-03051-SAC.

67. While in segregation defendants in the federal lawsuit have filed multiple responsive pleadings to plaintiff's complaint, including a motion to dismiss. [Doc. 34]

68. In response to their motion plaintiff sent a request form ("Form-9") to the library asking the clerks to research if contract personnel working in state prisons are "persons"

(8)

acting under color of state law. The librarian responded to the request by informing plaintiff they are not allowed to do research.

69. Having run out of options plaintiff filed a motion for the appointment of counsel [Doc. 36] alleging, among other things, that he did not have proper access to the court, that the prison law clerks had no knowledge of the law, and that he could not respond to defendant's motion to dismiss.

70. This court denied plaintiff's motion without prejudice. [Doc. 36]

71. Plaintiff has no way to research defendant's position or to amend his complaint to avoid dismissal.

72. In regards to the State action, the rules of the court mandate plaintiff file his appeal brief within a certain amount of days of it being docketed. Plaintiff has no way to research or write an appeal brief due to his lack of access to law library resources and/or persons trained in the law.

73. Plaintiff will be forced to seek appointment of counsel in that suit as well based upon a lack of proper access to library materials.

74. In general population library inmates have access to 10 research computers with word processors and Lexis Nexis loaded on them. They can do their own typing and legal research.

75. The library also has all the legal reference materials and books in file cabinets and on book shelves readily accessible to them.

76. None of the segregation units have those materials or any form of satellite library available.

77. Kansas law, including but not limited to, K.S.A. 75-5252 makes Schnurr responsible for inmates at H.C.F. having proper access to the court.

Breach Of Contract

78. Prior to being placed in segregation plaintiff did a Kansas Open Records Act ("KORA") request requesting access to the contract between the KDOC and CenturyLink Public Communications,

(9)

the at-the-time provider of electronic communications for inmates and their families.

79. Mr. Bell subsequently provided plaintiff with the contract, ID Number 44861.

80. plaintiff made the request because a prison official told him the tablet was supposed to have an interface with Lexis Nexis and allow prisoners to do legal research, even in segregation.

81. While reading the contract plaintiff learned that CentruyLink was the main contractor but the company subcontracted with Global Tel* Link ("GTL") to provide tablet services to KDOC inmates.

82. The contract at section 4.18.11. States, "tablets provided by contractor shall be configured to provide certain free services to the inmate population at no charge. Such free services shall include:.... 4.18.11.21 Law Library"

83. The contract at section 4.18.12 states, "Free tablet applications, as specified in section 4.18.11, to be provided by contractor via tablets shall be made available within one-hundred eighty (180) days of the execution of the contract between KDOC and Contractor. Failure to provide the free tablet applications, as specified, within one-hundred eighty (180) days of contract execution may be subject to liquid damages as specified in Section 2, Subsection 2.10."

84. The contract was executed on June 8, 2018 according to the signatures.

85. The period of the contract is five (5) years.

86. As of April 1, 2021, almost three (3) years into the five (5) year contract, the GTL tablets do not have the ability to provide inmates access to law library.

87. Though CentruyLink is the contractor and GTL is the company that actually provides the tablet services, the contract at section 1.22. States, "The contractor is totally responsible for all actions and work performed by its subcontractors. All terms, conditions and requirements of the contract shall apply

(10)

without qualification to any services performed or goods provided by any subcontractor."

88. Plaintiff was recently notified by the public information officer that defendant IC Solutions Corrections Inc. purchased the inmate communications business from CenturyLink and is now the contractor party to the contract. The agreements and terms in the prior contract remain the same in the new contract.

89. As all the services provided by IC Solutions Corrections Inc. are for the benefit of plaintiff, he is a third-party beneficiary to the contract and has standing under the laws of Kansas to bring a claim of breach of contract against them.

90. Plaintiff avers that GTL's inability to provide KDOC inmates with free access to law library materials on their tablets is a clear breach of contract under the laws of the state of Kansas.

91. As plaintiff has access to the GTL tablet in segregation, having free access to law library materials on the tablet would have kept him from having to file motions for appointment of counsel, would have allowed him to respond to defendant's pleadings, and allowed him to research and write his appeal brief.

92. On February 1, 2021 plaintiff wrote defendant Misti Kroeker a letter explaining his lacks of adequate access to the court and CenturyLink's/GTL's failure to provide him with free access to Lexis Nexis on the tablet.

93. Kroeker was contacted because she is the contract monitor at H.C.F in charge of overseeing the contract between IC Solutions Corrections Inc. and the KDOC.

94. Even though plaintiff informed Kroeker of the problem and told her that a failure to intervene would result in litigation, Kroeker never replied to his letter or took any remedial action.

95. The REQUEST FOR LEGAL ASSISTANCE form mentioned above also has the following statement written on the back: "H.C.F. libraries can assist you only to locate specified reference

material. If you need assistance in interpreting a law, in how to proceed with your case, or in preparing a motion you need to contact your attorney or Legal Services For Prisoners, Inc., Charles J. Cavenee, Director, P.o. Box 12438, Overland Park, KS 66282."

96. Plaintiff wrote attorney Charles J. Cavenee a letter on March 1, 2021 informing him about the issues complained of in this complaint and asking him to do some research and/or represent him.

97. In a letter dated march 5, 2021 Cavenee wrote plaintiff back and informed him he could not assist him in researching his claims nor could he represent him.

98. As it stands, plaintiff does not have reasonable access to the law library or to persons trained in law.

Unlawful Cell Searches

99. In both stints at H.C.F. plaintiff has consistently dealt with officers that believe calculated, harassing cell searches that have nothing to do with real prison security are a control tactic for inmates.

100. Since so many officers and staff have made the same "I can search your cell anytime I want, as much as I want" comment plaintiff believes HCF staff are trained to use cell searches as a means of intimidation.

101. In the few months plaintiff has lived in A cellhouse his cell has been searched about 20 times, twice this week alone.

102. It's no secret that HCF segregation units are overpopulated and staff constantly complain about the number of prisoners that they have to escort in and out to outdoor recreation each day.

103. If an inmate participates in outdoor recreation more often than not when he returns he'll find out his cell has been searched.

(12)

104. Plaintiff believes the constant searches to be extreme because, among other things, segregation inmates attend yard in tiny, one man cages and have no physical contact with other inmates.

105. Sometimes the officer performing the search will leave a shakedown report, sometimes they won't. Even so, plaintiff can tell when someone has been in his cell or when some trivial item is missing.

106. In contrast, if a segregation inmate does not attend yard it's unlikely his cell will be searched for months.

107. Nothing of any importance has ever been found in plaintiffs cell as a result of the excessive searches.

108. Plaintiff has spoken to numerous correctional and administrative staff about the harassing, pointless cell searches and everyone has assured him that his complaints are meritless.

109. Plaintiff has also talked to multiple segregation inmates about the harassing cell searchess and has learned that most of the inmates that don't attend yard do so because they don't want their cell searched over and over.

Retaliation

110. On or about February 4, 2021 plaintiff went to outdoor yard.

111. On that day security staff had a lot of inmates to run in and out to the yard so they had no time to perform their customary cell searches.

112. When plaintiff and other inmates that attended yard were taken to the shower defendant Jackson was attempting to rush them out prematurely because he had so many showers to run.

113. Plaintiff and the other inmates began to argue with Jackson about their shower being cut short.

114. Plaintiff told Jackson, "since you're rushing me, I'll just take my time drying off then talk to your superior about this."

(13)

115. Jackson replied, "oh, yeah? How long you gonna be?," to which plaintiff replied, "oh, about five or six minutes," which made another unknown officer say, "well, you've got that much time to shake him down then!"

116. After that comment Jackson left the shower area. A moment later plaintiff heard someone say, "what the hell is he doing in bro's cell?"

117. A short while later when plaintiff was restrained and took back to his cell he noticed his cell was in disarray. His laundry bag and its contents were dumped on his bed and floor, papers were spread all over the floor, the Rejuvnal (Covid-19 killer) plaintiff had been given the night before was missing, his drink packages had been poured out of the box and his mattress had been stripped. Basically the cell had been tossed, not searched.

118. Plaintiff was irate and called the officer in charge, CSI Smith, to his cell.

119. He explained what happened to her and asked to speak to the captain or Lt. so he could get photos taken. Smith basically said there was nothing wrong with what Jackson did but said she would see if a higher ranking official was available.

120. A few minutes later Smith returned and told plaintiff no one was available to come see him and that no photos would be taken. She also gave plaintiff a shakedown report from Jackson's cell search.

121. A few minutes later plaintiff caught unit team counselor Jennifer Hertel walking by and stopped her, showed her his messy cell and asked her for advice as Jacksons actions were clearly retaliatory.

122. Hertel replied, "oh, you're complaining about nothing. Your cell isn't even that bad." Plaintiff got no help from Hertel either.

123. A few minutes later plaintiff filled out a form-9 addressed to Hertel asking if correctional staff could

Search his cell whenever they want and if it was okay for Jackson to toss his cell simply because he complained about how he ran showers and said he'd talk to his superior.

124. KDOC policy requires an inmate to seek informal resolution to a problem, such as talking to a higher ranking official or unit team, prior to filing an administrative grievance.

125. The next day Hertel replied to plaintiff's form-9 stating, "per [HCF] G.O. 09-122 cells, dorms, dayrooms etc. are subject to search anytime. Per RHU Post Orders anytime an offender is removed from their cell the cell will be searched prior to [the inmate] being placed back into the cell."

126. Plaintiff immediately addressed another Form-9 to Hertel asking her for a copy of the alleged Post Order.

127. Hertel replied that plaintiff could not be provided with a copy of the Post Order because it was "staff read only."

128. Plaintiff sent Hertel another Form-9 asking whose signature was on the Post Order giving it authority.

129. Hertel responded stating the warden's signature is on the post order.

130. Defendant Schnurr was the warden at HCF, at the time of the incident.

131. Kansas law and KDOC policy and procedure make it the responsibility of Schnurr for the proper training of security staff at H.C.F., which he has failed to do.

132. Plaintiff maintains that the mystery Post Order is unconstitutional and serves no penological interest.

133. Plaintiff further maintains no reasonable person would believe a segregation inmate's cell needs to be searched every time he leaves it.

## Exhaustion of Administrative Remedies

134. The administrative grievance process in the KDOC is a sham

and is used as a vehicle to slow, frustrate and trip up the uninitiated so he can never have his day in court.

135. All issues contained in this complaint that relate to the operation of the prison law library to a general population inmate are fully exhausted and attached to this complaint. (See grievance number BA0001856)

136. The issues contained in this complaint that relate to the IC Solutions Corrections Inc. contract, lack of segregation law library access, retaliation, and excessive cell searches are partially exhausted. All those issues were covered in two (2) grievances and both were filed on February 11, 2021.

137. Kansas law states that if the warden fails to respond to an inmate's grievance within 10 days he can forward it to the Secretary of corrections. (see K.A.R. 44-15-102) When Schnurr did not respond to either grievance plaintiff forwarded them to the Secretary of corrections on February 28, 2021 as "unnumbered" grievances.

138. On March 8, 2021 Schnurr replied to both grievances and took no action. He did assign the grievances numbers BA0018725 and BA0018726 respectively.

139. Kansas law states that if the warden fails to respond to an inmate's grievance in a timely manner, the grievance must be accepted by the Secretary of corrections. (See K.A.R. 44-15-402 (c)(4))

140. K.A.R. 44-15-102 (c)(3) states the Secretary has 20 days from receipt of the grievance to return it to the inmate with an answer.

141. As of the writing of this complaint, six weeks later, the Secretary has not responded to the grievances and plaintiff doesn't expect one.

142. All issues contained in this complaint that relate to the operation of the prison library in regards to segregated inmates are also partially exhausted.

(16)

143. Unit Team Hectel and defendant Schnurr classified plaintiff's next grievance as duplicative of BA00018725 and declined to take any remedial action or give it a new grievance number. Schnurr did formally reply to it nonetheless on March 16, 2021.

144. On March 21, 2021, after fighting with Hectel over her refusal to provide photocopies in a timely manner, plaintiff appealed the grievance to the secretary of corrections.

145. As with the grievance mentioned above, the secretary has failed to reply to the grievance appeal.

146. Plaintiff has attached those grievances to this complaint along with his inmate trust account withdrawl forms for the cost of postage, and photocopies of the postmarked envelopes.

147. Due to the secretary's refusal to respond to the grievances plaintiff considers that step of the administrative remedy unavailable.


Claims For Relief

148. The actions of defendant Androski in refusing to schedule plaintiff for partners law library so he could receive mutual legal assistance from another inmate, simply because he was serving a disciplinary sanction of privilege restriction, violated his right of access to the court under the First, Sixth and Fourteenth Amendments of the United States Constitution.

149. The actions of defendant Androski in refusing to schedule plaintiff to more than one hour a week of law library, simply because he was serving a disciplinary sanction of privilege restriction and wanted to attend yard, violated his right of access to the court under the First, Sixth and Fourteenth Amendments of the United States Constitution.

(17)

150. The actions of defendant Schnurr in promulgating and/or having his subordinates enforce a prison policy that restricts inmates serving a disciplinary sanction of privilege restriction to only 2 hours a week violates plaintiff's right of access to the court under the First, Sixth, and Fourteenth Amendments of the United States Constitution.

151. The actions of defendant Schnurr in promulgating and/or having his subordinates enforce a prison policy that restricts inmates serving a disciplinary sanction of privilege restriction to choose between attending outdoor recreation or law library violates plaintiff's right to remain free of cruel and unusual punishment in violation of the Eighth Amendment, or of his right of access to the court pursuant to the First, Sixth and Fourteenth Amendments of the United States Constitution.

152. The actions of defendant Schnurr in promulgating and/or having his subordinates enforce a prison policy that restricts inmates serving a disciplinary sanction of privilege restriction from receiving mutual assistance from another inmate violates plaintiff's right of access to the court under the First, Sixth and Fourteenth Amendments of the United States Constitution.

153. The actions of defendant Androski in creating and maintaining a system that provides inmates in segregation with law library access by a specific page cite system, and distributes out of date books and legal files, violates plaintiff's First, Sixth and Fourteenth Amendment rights of access to the court.

154. The actions of defendant Schnurr in allowing Androski to fail to provide plaintiff with proper access to the court and to an adequate law library, while having full supervisory authority and responsibility for his subordinate, and failing to supervise and/or train her, contributed to and proximately caused a violation of plaintiff's right of access to the court pursuant to the First, Sixth and Fourteenth Amendments of the

(18)

United States Constitution.

155. The actions of defendants Androski and Schaver in failing to provide plaintiff with an adequate law library and proper access to the court precluded plaintiff from being able to file responsive pleadings in lawsuits he had pending and thus violated his right of access to the court pursuant to the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

156. The actions of IC Solutions Corrections Inc. in not providing plaintiff with free access to law library materials on the GTL tablets constitutes a breach of contract under the laws of Kansas and contributed to and proximately caused a violation of plaintiff's right of access to the court pursuant to the First, Sixth and Fourteenth Amendment of the United States Constitution.

157. The actions of defendant Kroeker in allowing IC Solutions Correctional Inc. to failed to provide plaintiff with free access to law library materials on the GTL tablet, with her designation as contract monitor, contributed to and allowed the breach of contract to go unchecked and violate plaintiff's right of access to the court pursuant to the First, Sixth and Fourteenth Amendments of the United States Constitution.

158. The actions of defendant Schaver in promulgating and/or having his subordinates enforce a prison policy directing them to search plaintiff's cell every time he leaves it, and to intimidate and instill fear in him, violates his right to remain free of cruel and unusual punishment pursuant to the Eighth Amendment to the United States Constitution.

159. The actions of defendant Jackson in tossing plaintiff's cell in retaliation for plaintiff telling him he would talk to his superior about his unprofessional conduct was a violation of the Petition and Free Speech Clauses of the First Amendment of the United States Constitution.

(19)

Relief Requested

Wherefore, plaintiff request that the court grant the following relief:

A. Issue a declaratory judgment stating that:
 1. That defendants violated plaintiff's rights as set out in paragraphs 148-159, supra.

B. Issue an injunction ordering defendant Androski to:
 1. Allow plaintiff to be scheduled for partners law library whether he be serving a sentence of privilege restriction or not:
 2. Allow plaintiff to be scheduled for law library more than two (2) sessions a week whether he be serving a sentence of privilege restriction or not,
 3. Provide plaintiff with constitutionally sufficient access to law library materials — that are up to date — when he is in segregation.
 4. Provide plaintiff with a way to attend law library that does not force him to choose between attending outdoor recreation or library while on restriction,
 5. Be trained in what constitutes an adequate law library and meaningful access to the court.

C. Issue an injunction ordering defendant Schnurr, in his capacity as warden of H.C.F., to:

 1. Amend H.C.F. G.O. 15-104 in a manner in which it allows plaintiff to be scheduled for partners law library whether he be serving a sentence of privilege restriction or not,

(20)

2. Amend H.C.F. G.O. 15-104 in a manner in which it allows plaintiff to be scheduled for more than 2 sessions a week whether he be serving a sentence of privilege restriction or not.

3. Promulgate a new policy or modify an existing one to allow plaintiff to attend law library and yard without having to choose between the two whether he be serving a sentence of privilege restriction or not.

4. Amend the alleged RHU Post Order and H.C.F. G.O.'s mandating that plaintiff's cell be searched every time he leaves his cell in a manner that the orders do not violate his Constitutional rights.

D. Issue an injunction ordering defendant IC Solutions Corrections Inc. to:

1. Specifically perform on the terms and conditions of their contract and provide plaintiff with free access to law library materials.

E. Award compensatory damages in the following amounts:

1. $1,000 jointly and severally against defendants Androski and Schnurr for their interference with plaintiff's access to the court.

2. $100 against defendant Jackson for his tossing of plaintiff's cell.

F. Award punitive damages in the following amounts:

1. $3,000 against defendant Androski

2. $3,000 against defendant Schnurr

3. $1,000 against defendant Jackson

(21)

G. Award actual damages jointly and severally against all defendants for the costs associated with this lawsuit.

H. Grant nominal damages individually in the amount of $1.00 against all defendants.

I. Grant such other relief as it may appear that the plaintiff is entitled.

Date 4/5/21                    Respectfully Submitted,

                              Kenneth D. Leek
                              KENNETH D. LEEK

        DECLARATION

    Pursuant to 28 USC §1746, I declare under the penalty of perjury that the foregoing is true and correct.

                              Kenneth D. Leek
                              KENNETH D. LEEK