Mr. Kenneth D. Leek #63523
Name
L.C.F. 301 Kansas Ave.

Lansing, KS 66043-0002
Address

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KENNETH D. LEEK____, Plaintiff
*(Full Name)*


v.


KATHRYN A. ANDROSKI . Defendant (s)

_____

CASE NO. 21-3100-SAC

(To be supplied by the Clerk)

SUPPLEMENTAL
CIVIL RIGHTS COMPLAINT
PURSUANT TO 42 U.S.C.
§1983

---

### A. JURISDICTION

1)     KENNETH D. LEEK____, is a citizen of ___KANSAS___
          *(Plaintiff)*                                          *(State)*
who presently resides at   L.C.F. 301 Kansas Ave.,
                                              *(Mailing address or place*
Lansing, KS 66043-0002        .
*of confinement)*


2)   Defendant   KATHRYN A. ANDROSKI____   is a citizen of
                          *(Name of first defendant)*
____Hutchinson, KS_____, and is employed as
                *(City, State)*
head librarian at H.C.F.     .   At the time the claim(s)
          *(Position and title, if any)*
alleged in this complaint arose, was this defendant acting under the color of
state law?   Yes ☒   No ☐   If your answer is "Yes", briefly explain:
Androski is employed by the KDOC, thus she
is employed by the State of Kansas

---

3)     Defendant   MISTI KROEKER       is a citizen of
                     *(Name of second defendant)*

       Hutchinson, KS       , and is employed as
            *(city, state)*

A prison administrator for H.C.F.   At the time the claim(s)
*(Position and title, if any)*

alleged in this complaint arose was this defendant acting under the color of state
law?    Yes ☒    No ☐. If your answer is "Yes", briefly explain:

KROEKER is a prison administrator / contract monitor
employed by the KDOC and H.C.F.

(Use the back of this page to furnish the above information for additional
defendants.)   Additional defendants attached     51343(3); 42

4)     Jurisdiction is invoked pursuant to 28 U.S.C. U.S.C. §1343(3); 42 U.S.C. §1983. (If
you wish to assert jurisdiction under different or additional statutes, you may list
them below.)

        28 U.S.C. §1367, 42 U.S.C. §1331

## B. NATURE OF THE CASE

1)     Briefly state the background of your case.

Please, see attached documentation

## C. CAUSE OF ACTION

1) I allege that the following of my constitutional rights, privileges or immunities have been violated and that the following facts form the basis for my allegations:  (If necessary you may attach up to two additional pages (8h" x 11") to explain any allegation or to list additional supporting facts.)

A) (1) Count I: _Please, see attached documentation_

(2)  Supporting Facts: (Include all facts you consider important, including names of persons involved, places and dates.  Describe exactly how each defendant is involved.  State the facts clearly in your own words without citing legal authority or argument.)

Please, see attached documentation

B)(1) Count II: _Please, see attached documentation_

(2) Supporting Facts: Please, see attached documentation

C) (1) Count III: _Please, see attached documentation_

_____

_____

(2)   Supporting Facts: _Please, see attached documentation_

## D.  PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1)   Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to the conditions of your imprisonment? Yes ☐  No ☒ . If your answer is "Yes", describe each lawsuit. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

a)   Parties to previous lawsuit:

Plaintiffs:   _____N/A_____

Defendants: _____N/A_____

b)   Name of court and docket number _____N/A_____

c)   Disposition (for example:  Was the case dismissed?  Was it appealed? Is it still pending?) _____N/A_____

d)   Issues raised   _____N/A_____

e)   Approximate date of filing lawsuit _____ N /A _____

f)   Approximate date of disposition _____ N /A _____

2) I have previously sought informal or formal relief from the appropriate
administrative officials regarding the acts complained of in Part □✗ Yes □   No
If your answer is "Yes", briefly describe how relief was sought and the results. If your
answer is "No", briefly explain why administrative relief was not sought.

Plaintiff filed multiple administrative grievances
and received no relief whatsoever. Those
documents are attached to this complaint

### E.  REQUEST FOR RELIEF

1) I believe that I am entitled to the following relief:

Please, see attached documentation

_____
Signature of Attorney (if any)

_____
_____

(Attorney's full address and telephone number)

_____ Kenneth D. Jook _____
Signature of Petitioner

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares (or certifies, verifies, or states) under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained therein is true and correct. 28 U.S.C. § 1746.  18 U.S.C. § 1621.

Executed at  Lansing Correctional Facility  on  July 23 , 2021 .
             *(Location)*                          *(Date)*

_____ Kenneth P. Jeek
                *(Signature)*

Mr. Kenneth D. Leek # 63523
L.C.F. P.O. Box 2
Lansing, KS 66043-0002

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KENNETH D. LEEK, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| KATHRYN A. ANDROSKI, | ) SUPPLEMENTAL COMPLAINT |
| MISTI KROEKER, I C | ) PURSUANT TO 42 U.S.C. §1983 |
| SOLUTIONS CORRECTIONAL | ) JURY TRIAL DEMAND |
| INC., JAMES SKIDMORE, | ) |
| JOHN P. STIFFIN, sued | ) Case No. 5:21-cv-03100-SAC |
| in their individual capacities, | ) |
| and DAN SCHNURR, SHANNON | ) |
| L. MEYER, sued in their | ) |
| individual and official cap- | ) |
| acities | ) |
| Defendants. | ) |

## Preliminary Statement

This is a civil rights action filed by Kenneth D. Leek, a state prisoner, for damages and injunctive relief under 42 USC §1983 and the contract laws of the state of Kansas, alleging inadequate access to the court and breach of contract.

## Jurisdiction

1. The court has jurisdiction over plaintiff's claims of violation of federal constitutional rights under 42 USC §1331(a), 1343 and 1983
2. The court has jurisdiction over plaintiff's claims of violations of breach of contract under 28 U.S.C. §1367(c)

## Parties

3. The plaintiff, KENNETH D. LEEK, was incarcerated at Hutchinson Correctional Facility ("HCF") and Lansing Correctional Facility

("LCF") during the events described in this complaint.

4. Defendant Kathryn A. Androski, is a librarian employed by H.C.F. She is sued in her individual capacity.

5. Defendant Misti Krueker is an administrator and contract monitor employed by H.C.F. She is sued in her individual capacity.

6. Defendant IC Solutions is a communications company in a contract with the Kansas Department of Corrections ("KDOC") and has an office in Topeka, KS. It is sued in its individual capacity.

7. Defendant James Skidmore is the Deputy Warden of Operations at L.C.F. He is sued in his individual capacity.

8. Defendant John P. Stiffin is the head librarian employed by L.C.F. He is sued in his individual capacity.

9. Defendant Dan Schnurr is the Warden at H.C.F. He is sued in his individual and official capacity as Warden.

10. Defendant Shannon L. Meyer is the Warden at L.C.F. She is sued in her individual and official capacity as Warden.

11. The defendants have acted, and continue to act, under color of state law at all times relevant to this complaint.

## Facts

### Library Access In General Population at H.C.F.

12. Defendant Androski is the head librarian at H.C.F. and has been employed there over 20 years.

13. Androski is in control of every aspect of the central library and has supervisory authority and responsibility over the East and South units.

14. As privilege restriction is the most frequent punishment handed out by disciplinary officers at H.C.F., plaintiff has found himself serving out multiple restriction sentences.

15. Plaintiff had the occasion to fill out a partnership research request form with inmate Neloms as the requested partner. When he gave the form to Androski for processing he was on restriction. Androski told plaintiff, "inmates on restriction are not allowed to do partners research," and gave the form back to plaintiff.

16. Plaintiff told Androski there is nothing in the facility rules that bars inmates serving a privilege restriction sentence from doing partners legal research.

17. Androski told plaintiff she was not going to debate the rules with him and if he wanted to attend partners law library he should follow the rules and he wouldn't be on restriction.

18. Androski refused to process the law library request form.

19. Plaintiff and inmate Neloms have similar issues of ineffective

assistance of counsel and time bar issues related to the filing of state habeas petitions. They sought to share and do research with each other and hopefully find a way to meet the exception criteria and file out of time, successive petitions.

20. With both plaintiff and Neloms being subsequently placed on long-term administrative segregation months later, they never had an opportunity to work together or file anything.

21. Plaintiff also learned inmates on privilege restriction are also only allowed to be scheduled to attend law library twice a week, in theory for a total of 2 ½ hours a week.

22. Plaintiff told Androski he was working on something that was time sensitive and asked if that would be a reason sufficient enough to allow her to schedule him for more appointments.

23. Androski told plaintiff, "the rules state you get one appointment on Monday and Wednesday, there are no exceptions."

24. Androski's response made no sense to plaintiff as if you are not serving a sentence of privilege restriction you are allowed to request extra scheduling if you have a court deadline you can prove. It's written right on the request form.

25. Plaintiff told Androski with the research computers constantly freezing up and needing to be rebooted, inmates constantly being let out of their cells late to attend library, and her running inmates out early, plaintiff is lucky to actually get 45-50 actual minutes of library time per session, and she should be more flexible.

26. Androski replied, "No. The rules are the rules."

27. After his run in with Androski petitioner reviewed prison policy in regards to the operation of the library. He learned H.C.F. General Order ("G.O.") 15-104 lists the "privileges" an inmate has when serving a sentence of privilege restriction. The Order states inmates can make appointments on Mondays and Wednesdays only, but says nothing about legal assistance/partners research.

28. While the G.O. seems to limit the days a prisoner on restriction can be scheduled, when and how legal assistance/partners research is scheduled is left to the discretion of Androski. She has made her own personal policy of scheduling legal assistance/partners research on Wednesday and Sunday nights.

29. H.C.F. G.O.'s are drafted and signed by the Warden of the prison.

30. The G.O.'s are also reviewed yearly and the Warden may amend or repeal them at that time.

31. Schnurr has not amended G.O. 15-104 in regard to inmates on privilege restriction attending law library.

32. Defendants treat inmates attending law library as a privilege, not as a right.

(3)

33. Plaintiff's personal experiences have taught him that he can't do much, if anything, with only a theoretical 2½ hours a week of access to the H.C.F. law library.

34. While at H.C.F. plaintiff has been max custody and unemployed while on privilege restriction.

35. If you live in C cellhouse, as plaintiff did, and you are unemployed you must attend lay in yard at 8:30 a.m., Mon-Sat.

36. It is routine for yard to run late due to security issues or breakfast mealline running behind.

37. On days that happens the yard schedule is either moved forward or early gate check in is cancelled, which takes place approximately 45 minutes into a 1½ long yard period, and the inmate is forced to stay on the yard the entire yard period.

38. A lot of times there is no announcement made and the inmate doesn't know what option the captain will choose until it is actually happening.

39. Since G.O. 15-104 only allows inmates on restriction to be scheduled in the morning slots on Wednesdays, whenever the plaintiff is on restriction it creates an automatic conflict between yard or law library attendance. Plaintiff has discussed the matter with Androski on numerous occasions.

40. Due to the policy being strickly enforced, if plaintiff chooses yard attendance over law library he will only receive one hour of law library that week.

41. When faced with this Hobson's choice plaintiff usually gives up his yard period to attend law library.

42. Plaintiff has asked Androski could she either allow him to attend at a time that didn't force him to choose between yard and library, or change her scheduling practices all together and she said, "No. If you want to come to the library then don't go to yard."

## Library Access In Segregation at H.C.F.

43. On or about November 4, 2020 plaintiff was removed from the prison general population and placed in administrative segregation for being in possession of a contraband cell phone.

44. Plaintiff was issued a disciplinary report to which he plead guilty to and receive a sanction of 15 days disciplinary segregation.

45. When plaintiff's disciplinary sentence was completed he received notification that his classification status had been changed to Other Security Risk ("OSR") and he would be held in segregation while an investigation was being conducted.

46. The length of OSR placement is indeterminate and requires the approval of the segregation review board to be changed.

47. At the time of the writing of this complaint plaintiff has been in segregation a total of 9 months.

48. There are five (5) segregation cellhouses at H.C.F., A1, A2, A3, B1, and C1. These cellhouses hold well over 300 inmates on any given day.

49. At the time the actions complained of in this complaint took place Jordan Bell was the unit team manager in charge of all segregation living units.

50. All five segregation cellhouses are set up pretty much the same with little variance in operation.

51. The procedure for an inmate to access materials in the law library are uniform for all segregation living units. He has to turn in a " SEGREGATION / RESTRICTION REQUEST FOR LIBRARY LEGAL INFORMATION " form to security staff requesting whatever resources he wants which in turn will be placed in a large mail bag and picked up by the librarian.

52. The form has slots for the inmate to request six cases by citation only. Any lack of information for a particular case cite will result in that particular request not being processed, which is very common.

53. When received in the library the two so-called law clerks will locate the cases on the LexisNexis research computer, print them, staple them individually in file folders, assign them bar code numbers, and deliver them to the librarian so they can be sent to the various segregation cellhouses.

54. Once the inmate receives the cases they do not become his personal property. At the top of the request form the inmate is placed on notice that, " All material requested via this form is on loan to you — it must be returned by 5:30 p.m. on the following Tuesday. If it is not returned, you will not be allowed to check out new material." All too often plaintiff has received notices from the library his materials were not turned in timely and his order would not be processed, even though the borrowed materials were turned in Sunday night.

55. If plaintiff wants a copy of the case he can keep there is a way he can do so. The request form states, " Requests for copies should be submitted on the copy request form and accompanied by a copy ticket."

56. A copy ticket costs $2.00 and has 20 uses on it which averages out to $.10 a copy.

57. The length of most cases along with spending limits placed on inmates in regard to canteen purchases makes paying for copies very prohibitive. Plaintiff may have to forgo basic hygeine purchases to buy copy tickets. Which he is not willing to do.

58. If plaintiff submits his request form to prison officials on Monday morning so he can make the Tuesday deadline, he will usually receive

the requested material on Thursday afternoon. That means plaintiff will only have from Thursday afternoon until Sunday night to read, analyze, and take notes on a huge amount of case law.

59. Plaintiff has learned that doing legal research that way is cumbersome, ineffective, and frustrating.

60. A common problem with Androski's outdated form of library access is when the forms don't get turned in by prison officials in a timely manner, the inmate pays the cost by not receiving his requested materials.

61. The request form allows plaintiff to request more than just cases. He can also order "LEGAL FILES," which are packets of information made up by various clerks over the years.

62. Plaintiff has ordered some of the files and has learned that most of them are out of date and if relied on could cause him to lose his suit.

63. The form also allows plaintiff to order various books. One of those books is the Prisoner's Self Help Litigation Manual.

64. When plaintiff ordered and received the book, however, he learned that it was a second edition printed prior to 1995 — and the Prison Litigation Reform Act — and was totally useless to him.

65. Plaintiff sent a request form informing Androski of the problem and requesting a later edition, which he knew to be on the reference book shelf.

66. Plaintiff was later informed the library had no newer edition of the book by one of the clerks.

67. It's clear to plaintiff that no one in the library has a clue what's going on.

68. Prior to going to segregation plaintiff had filed multiple lawsuits in regards to conditions of confinement in both state and federal court. He had Leek v. Brown, et al., Reno County Case Number 20-CV-01 in limbo between the district court and the Kansas Court of Appeals. It has now been assigned Appellate Case Number 21-123711-A.

69. Plaintiff also had filed a suit pursuant to 42 USC §1983 in this court in regards to multiple prison employees violating his constitutional rights under the First and Eighth Amendments encaptioned Leek v. Scoggin, et al., 20-CV-03051-SAC.

70. While in segregation defendants in the federal lawsuit have filed multiple responsive pleadings to plaintiff's complaint, including a motion to dismiss. [Doc. 34]

71. In response to their motion plaintiff sent a request form ("Form-9") to the library asking the clerks to research if contract personnel working in state prisons are "persons" acting under color of state law. The librarian responded to the request by ~~state.....~~ informing plaintiff they are not allowed to do research.

72. Having run out of options plaintiff filed a motion for the appointment of counsel [Doc. 36] alleging, among other things, that he did not have proper access to the court, that the prison law clerks had no

knowledge of the law, and that he could not respond to defendant's motion to dismiss.

73. This court denied plaintiff's motion without prejudice. [Doc. 36]

74. Plaintiff has no way to research defendant's position or to amend his complaint to avoid dismissal.

75. In regards to the state action, the rules of the court mandate plaintiff file his appeal brief within a certain amount of days of it being docketed. While plaintiff was housed at H.C.F. in segregation he had no way to research or write an appeal brief due to his lack of access to law library resources and/or persons trained in the law.

76. Plaintiff was forced to seek appointment of counsel in that suit due to a lack of meaningful access to the court.

77. In general population at H.C.F. inmates have access to 10 research computers with word processors and Lexis Nexis loaded on them.

78. The library also has all the legal reference materials and books in file cabinets and on book shelves readily accessible to them.

79. None of the H.C.F. segregation units have those materials or any form of satellite library available.

80. Kansas law, including but not limited to, K.S.A. 75-5252 makes Schnurr responsible for inmates at H.C.F. having proper access to the court.

Breach of Contract

81. Prior to being placed in segregation plaintiff did a Kansas Open Records Act ("KORA") request requesting access to the contract between the KDOC and CenturyLink Public Communications, the at-the-time provider of electronic communications for inmates and their families.

82. Ms. Bell subsequently provided plaintiff with the contract, ID Number 44861.

83. Plaintiff made the request because a prison official told him the tablet was supposed to have an interface with Lexis Nexis and allow prisoners to do legal research, even in segregation.

84. While reading the contract plaintiff learned that CenturyLink was the main contractor but the company subcontracted with Global Tel* Link ("GTL") to provide the tablet services to KDOC inmates.

85. The contract at section 4.18.11 states, "tablets provided by contractor shall be configured to provide certain free services to the inmate population at no charge. Such free services shall include:..... 4.18.11.21 Law Library"

86. The contract at section 4.18.12 states, "Free tablet applications, as specified in section 4.18.11 to be provided by contractor via tablets shall be made available within one-hundred eighty (180) days of the

execution of the contract between KDOC and contractor. Failure to provide the free tablet applications, as specified, within one-hundred eighty (180) days of contract execution may be subject to liquid damages as specified in Section 2, Subsection 2.10."

87. The contract was executed on June 8, 2018 according to the signatures.

88. The period of the contract is five (5) years.

89. As of the present date — July 24, 2021 — over three years into the five (5) year contract, the GTL tablets do not have the ability to provide inmates access to law library.

90. Though CenturyLink was the contractor and GTL is the company that actually provides the tablet services, the contract at Section 1.22. States, "The contractor is totally responsible for all actions and work performed by its subcontractors. All terms, conditions and requirements of the contract shall apply without qualification to any services performed or goods provided by any subcontractor."

91. Plaintiff was recently notified by the public information officer that defendant IC Solutions Corrections Inc. purchased the inmate communications business from CenturyLink and is now the contractor party to the contract. The agreements and terms in the prior contract remain the same in the new contract.

92. As all the services provided by IC Solutions Correctional Inc. are for the benefit of plaintiff, he is a third-party beneficiary to the contract and has standing under the laws of Kansas to bring a claim of breach of contract against them.

93. Plaintiff avers that GTL's inability to provide KDOC inmates with free access to law library materials on their tablets is a clear breach of contract under the laws of the state of Kansas.

94. As plaintiff has access to the GTL tablet in segregation, having free access to law library materials on the tablet would have kept him from having to file motions for appointment of counsel, would have allowed him to respond to defendant's pleadings, and allowed him to research and write his appeal brief.

95. On February 1, 2021 plaintiff wrote defendant Misti Kroeker a letter explaining his lack of adequate access to the court and CenturyLink's/ GTL's failure to provide him with free access to Lexis Nexis on the tablet.

96. Kroeker was contacted because she is the contract monitor at HCF, in charge of overseeing the contract between IC Solutions Corrections Inc. and the KDOC.

97. Even though plaintiff informed Kroeker of the problem and told her that a failure to intervene would result in litigation, Kroeker never replied to his letter or took any remedial action.

98. The REQUEST FOR LEGAL ASSISTANCE form mentioned above also has the following statement written on the back: "HCF libraries can assist you only to locate specified reference material. If you need assistance in interpreting a law, in how to proceed with your case, or in preparing a motion you need to contact your attorney or Legal Services For Prisoners, Inc. Charles J. Cavanee, Director, P.O. Box 12438, Overland Park, KS 66282."

99. Plaintiff wrote Mr. Cavanee a letter on March 1, 2021 informing him about the issues complained of in this complaint and asking him to do some research and/or represent him.

100. In a letter dated March 5, 2021 Cavenee wrote plaintiff back and informed him he could not assist him in researching his claims nor could he represent him.

101. As it stands, plaintiff does not have reasonable access to the law library or to persons trained in law when in segregation at H.C.F.

## Library Access In The LTRH unit at L.C.F.

102. On April 28, 2021 plaintiff was transferred from H.C.F. to L.C.F.

103. Upon plaintiff's arrival at L.C.F, he was immediately placed in segregation.

104. Shortly after his arrival unit team manager Lindsey Wildermuth came to plaintiff's cell to orient him to his new living situation.

105. Wildermuth advised plaintiff he was in a newly conceived and hastily opened program called the Long Term Restrictive Housing unit. ("LTRH")

105. Plaintiff immediately advised Wildermuth that he had multiple lawsuits pending and wanted to know what the law library process was for the living unit.

106. Wildermuth advised there was no law library on site in the unit but plaintiff could give her a Form-9 directed to the library requesting specific cases by cite, but no law books would be delivered to the unit.

107. Plaintiff complained that such a system does not provide him with meaningful access to the court. Wildermuth advised if plaintiff wasn't happy he was welcome to file a grievance.

108. Plaintiff submitted multiple Form-9's requesting cases from the library. Approximately a week later Wildermuth came to plaintiff's cell with one of the Form-9's with some cases stapled to it. Defendant Stiffin, the civilian librarian, wrote on the disposition "only three cases at a time. Please return in one week."

109. The other two Form-9's plaintiff had sent to the library were later returned unprocessed with similar instructions from Stiffin.

110. Plaintiff attempted to order three more cases the following week

without returning the cases he'd received. Stiffin instructed plaintiff he would receive nothing until the other cases were returned.

113. Unlike H.C.F. segregation there is no special form informing LTRH unit prisoners of the resources available from the law library or how to access them. The prisoner just has to figure it out for himself if he can.

114. Plaintiff got a letter from the Kansas Court of Appeals in regards to the filing of his appellate brief in Leek V. Brown et. al. He was being reminded he had a certain amount of days to have his appellate brief filed from the day his appeal was docketed.

115. Plaintiff submitted a Form-9 to the library requesting assistance researching the issues contained in his habeas petition. They were never answered.

116. Upon knowledge and belief the sole law clerk assigned to segregation is not allowed to do research for segregated prisoners.

117. Plaintiff subsequently had to file a motion for the appointment of counsel because he had no way to research and write an appellate brief while in the LTRH unit.

118. At the time of the filing of this complaint his motion remains pending before the district court on remand.

119. While in the LTRH unit this court has issued a memorandum and order directing plaintiff to show cause why his complaint should not be dismissed after screening in Leek V. Scoggin, et al.

120. Due to the deficiencies in the law library plaintiff was forced to draft his response with only the few cases, notes, and books he had in his personal property.

121. Plaintiff was not pleased with his responsive pleading and the fate of his case remains pending before this court.

122. As head librarian Stiffin has total control of the system in place to afford segregated prisoners meaningful access to the court.

123. His responsibilities are clearly outlined in Kansas Department of Corrections policies and procedures.

124. Stiffin can change the processes in which he affords segregated prisoners access to library resources at any time he wishes.

125. Plaintiff has inquired to Wildermuth why there is no small law library in the LTRH unit and he was advised that such an option has never been explored.

126. Plaintiff has much more access to the GTL tablets in the LTRH unit than he had at H.C.F.

127. The tablets at L.C.F., however, do not have the ability to access Lexis Nexis either.

128. Prior to the opening of the LTRH unit multiple meetings were held in regard to the general operation of the unit. Defendant Meyer was present at those meetings.

129. As Warden defendant Meyer had final say over any decisions made in regard to the operation of the unit.

130. Meyer deferred how LTRH unit prisoners would receive meaningful access to the court to Stiffin.

130. KDOC policy and procedure as well as Kansas law, including but not limited to, KSA. 75-5252 makes Meyer responsible for inmates at L.C.F. having proper access to the court.

131. The law clerk in the library has no formal training in the law.

132. Prison Legal Services is available at L.C.F. but the same restrictions apply as at any other prison.

133. No licensed attorney visits or works with prisoners in the LTRH unit.

134. Law library is the only means LTRH unit prisoners have to access the court.

135. Upon knowledge and belief Stiffin has become resentful of plaintiff. On 7/9/21 plaintiff sent a Form-9 to the library requesting the KDOC's IMPP or L.C.F.'s General Orders that apply to prisoners on hunger strike.

136. On 7/21/21 Stiffin wrote plaintiff back instructing him to contact Legal Services for Prisoners about his request.

137. Plaintiff has requested other IMPP's and General Orders from the library and most of the time they were provided in a timely manner.

138. It is unheard of for a prisoner to have to contact Legal Services for Prisoners for a KDOC document.

139. Plaintiff maintains the same Lexis Nexis research computers available to prisoners in general population should be available in the LTRH unit.

140. Defendants believe LTRH inmates are not entitled to access to the court.

Inmate Assistance In The LTRH Unit

141. A few days after their arrival at the LTRH unit inmate Winston asked plaintiff if he could assist him in figuring out what issues he may have in a post-conviction habeas corpus petition.

142. KDOC policy and procedures as well as facility General Orders make clear prisoners have to seek permission from the unit team prior to any documents with another inmate's name on them being transferred from person to person.

143. On 5/16/21 plaintiff sent Wildermuth a Form-9 requesting permission to assist Mr. Winston with his habeas petition.

144. Wildermuth replied on 5/10/21 that defendant Skidmore and Major Ball denied the request.

145. The next day plaintiff asked Wildermuth how LTRH unit prisoners could be denied the ability to assist one another in legal matters.

146. Wildermuth advised that the inmates in the LTRH unit are too

much of a security threat to pass legal documents back and forth, even through the unit team per order of Deputy Warden Skidmore.

146. Wildermuth further advised she didn't believe not allowing prisoners to assist each other in legal matters was wise but Skidmore was her boss and the final say on the matter.

147. After the prisoners in the LTRH unit realized how many constitutional violations were taking place it was clear some form of litigation was going to be necessary to correct their conditions of confinement.

148. Inmate Roland Hill is taking a course in paralegal studies and plaintiff was interested in working with him to research and possibly litigate about the conditions of confinement in the LTRH unit.

149. On 5/23/21 plaintiff submitted a Form-9 to Wildermuth asking if he and Hill could mutually assist one another - through her - so that we could seek to change our conditions of confinement.

150. On 5/25/21 Wildermuth responded that plaintiff's request was denied without further explanation.

151. The next day plaintiff asked Wildermuth why his request was denied and she informed him Skidmore wanted no inmate legal assistance to take place in the LTRH unit, period.

152. Since there is no licensed attorney assigned to assist prisoners in the LTRH unit and the law clerk can't do research, assisting each other is basically the only option available to those inmates.

153. Kansas law, specifically K.A.R. 44-12-702, makes clear that inmates can assist each other in legal matters as long as a fee is not charged.

154. Skidmore has made it impossible to assist another inmate or to be assisted in legal matters in the LTRH unit.

## Exhaustion of Administrative Remedies

155. Plaintiff has completely exhausted his administrative remedies in regards to all the claims raised in this complaint. Those grievances are attached to this complaint.

## Claims For Relief

156. The actions of defendant Androski in refusing to schedule plaintiff for partners law library so he could receive mutual legal assistance from another inmate, simply because he was serving a disciplinary sanction of privilege restriction, violated his right of access to the court under the First, Sixth and Fourteenth Amendments of the United States Constitution.

157. The actions of defendant Androski in refusing to schedule plaintiff to more than one hour a week of law library, simply because he was serving a disciplinary sanction of privilege restriction and wanted to attend yard, violated his right of access to the court under the First, Sixth and Fourteenth Amendments of the United States Constitution.

158. The actions of defendant Schnurr in promulgating and/or having his subordinates enforce a prison policy that restricts inmates serving a disciplinary sanction of privilege restriction to only 2 hours a week violates plaintiff's right of access to the court under the First, Sixth and Fourteenth Amendments of the United States Constitution.

159. The actions of defendant Schnurr in promulgating and/or having his subordinates enforce a prison policy that restricts inmates serving a disciplinary sanction of privilege restriction to choose between attending outdoor recreation or law library violates plaintiff's right to remain free of cruel and unusual punishment in violation of the Eighth Amendment, or of his right of access to the court pursuant to the First, Sixth and Fourteenth Amendments of the United States Constitution.

160. The action of defendant Schnurr in promulgating and/or having his subordinates enforce a prison policy that restricts inmates serving a disciplinary sanction of privilege restriction from receiving mutual assistance from another inmate violates plaintiff's right of access to the court under the First, Sixth and Fourteenth Amendments of the United States Constitution.

161. The actions of defendant Androski in creating and maintaining a system that provides inmates in segregation with law library access by a specific page cite system, and distributes out of date books and legal files, violates plaintiff First, Sixth and Fourteenth Amendment rights of access to the court.

162. The actions of defendant Schnurr in allowing Androski to fail to provide plaintiff with proper access to the court and to an adequate law library, while having full supervisory authority and responsibility for his subordinate, and failing to supervise and/or train her, contributed to and proximately caused a violation of plaintiff's right of access to the court pursuant to the First, Sixth and Fourteenth Amendments of the United States Constitution.

163. The actions of defendants Androski and Schnurr in failing to provide plaintiff with an adequate law library and proper access to the court precluded plaintiff from being able to file responsive pleadings in lawsuits he had pending and thus violated his right of access to the court pursuant to the First, Sixth and Fourteenth Amendments to the United States Constitution.

164. The actions of IC Solutions Corrections Inc. in not providing plaintiff with free access to law library materials on the GTL tablets constitutes a breach of contract under the laws of Kansas and contributed to and proximately caused a violation of plaintiff's right of access to the court pursuant to the First, Sixth and Fourteenth Amendment of the United States Constitution.

165. The actions of defendant Kroeker in allowing IC Solutions Correctional Inc. to fail to provide plaintiff with free access to law library materials on the GTL tablet, with her designation as contract monitor, contributed to and allowed the breach of contract to go unchecked and violate plaintiff's right of access to the court pursuant to the First, Sixth and Fourteenth Amendments of the United States Constitution.

166. The actions of defendant Stiffin in creating and maintaining a system that provides inmates in the LTRH unit with law library access by a specific page cite system only, and refusing to send law books to the unit, violates plaintiff's First, Sixth and Fourteenth Amendment rights of access to the court.

167. The actions of defendant Meyer in allowing Stiffin to fail to provide plaintiff with proper access to the court, while having full supervisory authority and responsibility for her subordinate, and failing to supervise and/or train him, contributed to and proximately caused a violation of plaintiff's right of access to the court pursuant to the First, Sixth and Fourteenth Amendments of the United States Constitution.

168. The actions of defendant Skidmore in instituting a policy where prisoners in the LTRH unit are not allowed to mutually assist one another in legal matters violates plaintiff's right of access to the court pursuant to the First, Sixth and Fourteenth Amendments of the United States Constitution.

## Relief Requested

Wherefore, plaintiff requests that the court grant the following relief:

A. Issue a declaratory judgment stating that:
   1. That defendants violated plaintiff's rights as set out in paragraphs 156-168, supra.

B. Issue an injunction ordering defendant Androski to:
   1. Allow plaintiff to be scheduled for partner law library whether he be serving a sentence of privilege restriction or not.
   2. Allow plaintiff to be scheduled for law library more than (2) sessions a week whether he be serving a sentence of privilege

restriction or not.

3. Provide plaintiff with constitutionally sufficient access to law library materials — that are up to date — when he is in segregation.

4. Provide plaintiff with a way to attend law library that does not force him to choose between attending outdoor recreation or law library while on restriction.

5. Be properly educated as to what constitutes an adequate law library and meaningful access to the court.

C. Issue an injunction ordering defendant Schnurr, in his capacity as Warden of H.C.F., to:

1. Amend H.C.F. G.O. 15-104 in a manner in which it allows plaintiff to be scheduled for partners law library whether he be serving a sentence of privilege restriction or not.

2. Amend H.C.F. G.O. 15-104 in a manner in which it allows plaintiff to be scheduled for more than 2 sessions a week whether he be serving a sentence of privilege restriction or not.

3. Promulgate a new policy or modify an existing one to allow plaintiff to attend law library and yard without having to choose between the two, whether he be serving a sentence of privilege restriction or not.

D. Issue an injunction ordering defendant JC Solutions Corrections Inc. to:

1. Specifically perform on the terms and conditions of their contract and provide plaintiff with free access to law library materials.

E. Issue an injunction ordering defendant Stiffin to:

1. Provide plaintiff with constitutionally sufficient access to law library materials while in the LTRH unit.

2. Be properly educated as to what constitutes meaningful access to the court for prisoners.

F. Issue an injunction ordering defendant Skidmore to:

1. Refrain from imposing a policy that restricts prisoners in the LTRH unit from assisting each other in legal matters.

G. Issue an injunction ordering defendant Meyer to:

1. To promulgate a new policy or modify an existing one that allows plaintiff meaningful access to the court while in the LTRH unit.

H. Award compensatory damages in the following amounts:

1. $1,000 jointly and severally against defendants Androski

and Schaver for their interference with plaintiff's access to the Court.
2. $1,000 jointly and severally against defendants Stittin and
   Meyer for their interference with plaintiff's access to the court.

I.   Award punitive damages in the following amounts:
     1. $3,000 against defendant Androski
     2. $3,000 against defendant Schaver
     3. $3,000 against defendant Stittin
     4. $3,000 against defendant Meyer

J.   Award actual damages jointly and severally against all defendants
     for the costs associated with this lawsuit.

K.   Grant nominal damages individually in the amount of $1.00 against
     all defendants.

L.   Grant such other relief as it may appear that the plaintiff is entitled.

Date 7/26/21

                              Respectfully Submitted
                                Kenneth D. Leek
                              KENNETH D. LEEK


            DECLARATION

     Pursuant to 28 USC §1746, I declare under the penalty of perjury
that the foregoing is true and correct.

                              Kenneth D. Leek
                              KENNETH D. LEEK

(16)