FILED
United States Court of Appeals
Tenth Circuit

April 18, 2022

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

KENNETH D. LEEK,

    Plaintiff - Appellant,

v.

KATHRYN A. ANDROSKI; MISTI KROEKER; IC SOLUTIONS; DAN SCHNURR; JAMES SKIDMORE; JOHN P. STIFFIN; SHANNON L. MEYER,

    Defendants - Appellees.

No. 21-3165
(D.C. No. 5:21-CV-03100-SAC)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **MORITZ**, **BALDOCK**, and **EID**, Circuit Judges.
_____

Kenneth Leek, proceeding pro se,[1] appeals the district court's dismissal of his access-to-courts claims under 42 U.S.C. § 1983 and his supplemental breach-of-

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[1] Because Leek proceeds pro se, "we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). "[B]ut we do not act as his advocate." *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019).

contract claim under Kansas law. For the reasons explained below, we affirm in part, reverse in part, and remand.

## Background

Because this case comes to us from the dismissal of Leek's second amended complaint, we take these facts from that complaint. *See Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009) (noting that in appeal from dismissal, we accept allegations in complaint as true). We also take judicial notice of court filings in Leek's separate but related district-court case. *See Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (explaining that we may take judicial notice of records from underlying court proceedings). Broadly, Leek alleges that he was prevented from effectively conducting legal research at two Kansas state prisons—the Hutchinson Correctional Facility and the Lansing Correctional Facility.

### I.   Leek's Time at Hutchinson

At Hutchinson, Leek and another prisoner wanted to conduct legal research together regarding their respective habeas petitions that raised similar issues. The two wanted to "find a way to meet the exception criteria and file out[-]of[-]time" petitions, but the head librarian did not permit them to collaborate. R. 224. Some months later, in November 2020, Leek and the other prisoner were placed in long-term administrative segregation and were never able to file their petitions.

Leek describes an arduous process for a prisoner housed in administrative segregation to obtain materials from the Hutchinson law library. Such a prisoner must submit a form on which he or she can request up to six cases by noting each case's

exact legal citation. Those cases are then delivered to the prisoner's segregation cellhouse. But if a prisoner submits a case citation lacking certain identifying information, the case will not be provided. Once the cases are delivered, a prisoner has four days to digest them before they must be returned. If borrowed cases are not returned (or returned but not correctly processed by the facility), the prisoner is prevented from borrowing new cases. Hutchinson prisoners in segregation can also order certain books and "legal files," which are "packets of information made up by various clerks over the years." *Id.* These are frequently out of date and, if relied on, "could cause [Leek] to lose his [law]suit."[2] *Id.*

Here, Leek alleges that before being placed in segregation, he had filed separate lawsuits in state and federal court. While Leek was housed in segregation, the defendants in his federal lawsuit—*Leek v. Scoggin*, No. 20-cv-03051 (D. Kan. 2020)—moved to dismiss his complaint. Leek then submitted a form requesting research on certain legal topics, but prison staff responded that they are not allowed to conduct research for prisoners. Unable to conduct research that would permit him to respond to the defendants' allegations, Leek moved for the appointment of counsel. Despite acknowledging Leek's argument that he was housed in long-term segregation without proper access to a law library, the district court denied that

---

[2] For instance, one book, the Prisoner's Self-Help Litigation Manual, is an edition printed before the enactment of the Prison Litigation Reform Act (PLRA) of 1995.

motion. Shortly after, the district court held the *Scoggin* defendants' motion to dismiss in abeyance, explaining that it would first screen Leek's complaint.

Similarly, with respect to his state-court lawsuit, now pending before the Kansas Court of Appeals, Leek was required to submit an appellate brief. But at Hutchinson, Leek contends, he "had no way to research or write" his brief "due to his lack of access to law[-]library resources." *Id.* at 228.

## II.  Leek's Time at Lansing

On April 28, 2021, Leek was transferred to Lansing and immediately placed in the facility's long-term restrictive-housing unit. Leek told Lindsey Wildermuth, a Lansing employee, that he had multiple pending lawsuits and asked her to describe the law-library process for prisoners in restrictive housing. Wildermuth advised Leek that there was no law library in the unit but that he could submit a form requesting specific cases by providing their exact citations. She further explained that no law books would be delivered to the unit.

Leek complied and submitted multiple forms requesting cases. About a week later, Wildermuth came to Leek's cell with one of his forms and several cases stapled to it. John Stiffin, the head librarian at Lansing, wrote on the form: "[O]nly three cases at a time. Please return in one week." *Id.* at 230. Forms Leek had submitted requesting additional cases were returned to him, unprocessed, with similar instructions from Stiffin. When Leek again attempted to request more cases, Stiffin told Leek he would not receive them until he returned the prior cases.

After arriving at Lansing, Leek and other restrictive-housing unit prisoners "realized how many constitutional violations" were occurring and determined that "it was clear" litigation would be "necessary to correct their conditions of confinement." *Id.* at 233. Leek submitted a form requesting that he and another prisoner be given time to "mutually assist one another" so that they could "seek to change [their] conditions of confinement." *Id.* Wildermuth denied that request.

Around that time, Leek received a notification from the Kansas Court of Appeals reminding him that his brief was due soon. Leek submitted a prison form requesting research assistance, but it was never answered. Leek also moved to have counsel appointed for his state-court appeal. The docket in that case shows his motion has since been granted.

After Leek's transfer to Lansing, the federal district court in *Scoggin* ordered Leek to show cause why his complaint should not be dismissed for failure to state a claim. Due to deficiencies in the law library, Leek was forced to draft what he viewed as a suboptimal response "with only the few cases, notes, and books he had" as personal property. *Id.* at 231. The federal district court found Leek's response to its show-cause order unpersuasive and dismissed his complaint for failure to state a claim. It denied as moot the *Scoggin* defendants' earlier motion to dismiss, which had been held in abeyance.

### III. The Proceedings Below

On April 13, 2021, just over two weeks before his transfer to Lansing, Leek initiated this action. The district court screened the complaint under 28 U.S.C.

§ 1915A and ordered Leek to file an amended complaint, finding Leek had failed to comply with the procedural joinder requirements of Federal Rules of Civil Procedure 18 and 20. After Leek amended his complaint, he moved to supplement it with additional allegations. The district court granted that motion and construed the supplemented pleading as Leek's second amended complaint.

Leek's second amended complaint alleged access-to-court claims under § 1983 against several Hutchison and Lansing employees. It also asserted a breach-of-contract claim under state law against Misti Kroeker, a "contract monitor" at Hutchinson, as well as IC Solutions, Inc., a company alleged to have contracted with the Kansas Department of Corrections to provide prisoners with tablets to conduct free legal research. R. 217.

The district court screened Leek's second amended complaint under § 1915A. This time, the district court reached the merits and dismissed it for failing to state a claim. The district court gave Leek just over a month "to show cause why th[e] case should not be dismissed or to file another amended complaint" that states a federal claim; the district court cautioned Leek that failing to do so could result in dismissal of his case.[3] *Id.* at 214. Two days after the deadline had passed, Leek had done

---

[3] Leek contends in his appellate brief that, given the constraints under which he was operating, responding to the district court's order within 30 days "was an impossibility" and that it took him the full 30 days to obtain all the cases cited in the district court's dismissal order because he is litigating this appeal under the exact-citation system described above. Aplt. Br. 6.

neither, so the district court dismissed the case without prejudice under § 1915A(b)(1).[4] Leek appeals.

## Analysis

We review de novo the district court's dismissal for failure to state a claim under § 1915A(b)(1). *Young*, 554 F.3d at 1256. "We must accept all the well-pleaded allegations of the complaint as true" and "construe them in the light most favorable to the plaintiff." *Id.* (quoting *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)). We review the complaint "to determine whether [it] includes enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *KT & G Corp. v. Att'y Gen. of Okla.*, 535 F.3d 1114, 1134 (10th Cir. 2008)). In addition to the complaint itself, we may refer to documents referenced in the complaint if they are central to the plaintiff's claims. *See Gee*, 627 F.3d at 1186; *Reed v. Heimgartner*, 579 F. App'x 624, 625 (10th Cir. 2014) (unpublished) (stating this principle in context of § 1915A dismissal).[5] We may also take judicial notice of court records in underlying judicial proceedings. *Gee*, 627 F.3d at 1191.

---

[4] The district court's initial order did not indicate whether the case was dismissed with or without prejudice. Accordingly, the district court filed an application with this court for leave to correct its order under Federal Rule of Procedure 60(a). We granted the application, abated the appeal, and remanded the case for the district court to correct its order and judgment. After the district court did so, we lifted the abatement.

[5] We cite this unpublished case only for its persuasive value. *See* 10th Cir. R. 32.1(A).

### I.  Access-to-Courts Claims

Leek argues that he has sufficiently alleged access-to-courts claims. Prisoners do not have a "freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Thus, to state an access-to-courts claim, the plaintiff must satisfy a "threshold determination" that he or she has "standing to assert" such a claim by alleging actual injury. *Simkins v. Bruce*, 406 F.3d 1239, 1244 n.5 (10th Cir. 2005). To establish actual injury, the plaintiff "must show that any denial or delay of access to the court prejudiced him [or her] in pursuing litigation." *Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006) (quoting *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996)). A plaintiff, therefore, "cannot establish relevant actual injury simply by establishing that his [or her] prison's law library or legal[-]assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. Rather, the plaintiff "must go one step further and demonstrate that the alleged shortcomings in the library or legal[-]assistance program hindered his [or her] efforts to pursue a legal claim." *Id*. The plaintiff "need not show," however, that he or she would have prevailed on the interfered-with claim, "only that it was not frivolous." *Simkins*, 406 F.3d at 1244. To be nonfrivolous, the plaintiff's underlying claim must be "described well enough . . . to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002).

In his appellate brief and second amended complaint, Leek identifies four instances of alleged prejudice:

1. At Hutchinson, he and another prisoner were prohibited from working together to file an untimely habeas petition;
2. At Lansing, Leek was not permitted to conduct research with another prisoner to challenge the conditions of confinement in the restrictive-housing unit;
3. At both facilities, Leek could not draft his appellate brief in compliance with his deadline in the Kansas Court of Appeals; and
4. At Lansing, Leek could not adequately respond to the district court's order to show cause in *Scoggin*, his now-dismissed federal case alleging unconstitutional conditions of confinement at Hutchinson.

The district court concluded that all of Leek's allegations of prejudice were "merely general assertions that fail to show that he has been unable to present his cases and claims." R. 213. For all but the last instance listed above, we agree that Leek fails to allege a nonfrivolous claim. *See Simkins*, 406 F.3d at 1244.

First, Leek fails to explain how his potential habeas petition, which he admits would be filed "out of time," would not be frivolous. R. 225. Second, regarding his conditions-of-confinement claim in Lansing's restrictive-housing unit, Leek's complaint says nothing about the nature of the alleged unconstitutional conditions of confinement, much less describes them "well enough . . . to show that the 'arguable' nature of the underlying claim[s] is more than hope." *Christopher*, 536 U.S. at 416. Third, our review of the Kansas state-court appellate docket shows that Leek's motion for appointment of counsel has been granted and his opening brief has been filed. And as we have recognized, "[i]t is well established that providing legal

9

counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library." *United States v. Taylor*, 183 F.3d 1199, 1204 (10th Cir. 1999).

But when it comes to Leek's allegations about his attempt to litigate *Scoggin* while at Lansing, we disagree with the district court. Leek alleged that when he arrived at Lansing, he was immediately placed in segregation in the restrictive-housing unit where there is no law library. Leek was informed that to obtain cases, he had to submit forms "requesting specific cases by cit[ation]" and that "no law books would be delivered" to the restrictive-housing unit. R. 230. When Leek submitted forms requesting cases from the library, he received some cases but was informed that he could only request "three cases at a time" and had to return them within one week. *Id.* Some forms Leek submitted went unprocessed. And when Leek requested additional cases, prison officials would not provide any until he returned the ones he had previously requested. Consequently, Leek was consigned to respond to the district court's show-cause order in *Scoggin* "with only the few cases, notes, and books he had in his personal property." *Id.* at 231. Since then, the district court in that case (the same district judge who presided over this one) has dismissed the case for failure to state a claim.[6]

---

[6] We note that neither the district court's dismissal order in *Scoggin* nor the subsequent judgment in that case specifies whether that dismissal was with or without prejudice. We have previously explained that when a district court fails to specify whether its dismissal was with or without prejudice, we treat the decision as a dismissal was with prejudice. *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1162 (10th Cir. 2007); *see also Holden v. GEO Grp. Priv. Prison Contractors*, 767 F. App'x 692, 696 (10th Cir. 2019) (unpublished) (applying that principle to § 1915A dismissal).

We conclude that the district court should not have dismissed Leek's access-to-courts claim stemming from the impediments he faced in litigating *Scoggin* while at Lansing.[7] The facts here resemble those in *Trujillo*. There, we reversed the district court's dismissal after the pro se plaintiff complained about an "exact[-]cite system" much like the one Leek describes here—the prisoner in *Trujillo* alleged that he was "expected to know exactly what [legal materials] he need[ed] without any knowledge of what materials might be available to him." 465 F.3d at 1226. We observed that the allegations relating to the exact-citation system "may state a viable claim of denial of access to courts." *Id.*; *see also Clayton v. Tansy*, 26 F.3d 980, 982 (10th Cir. 1993) (remanding for district court to consider whether "exact[-]cite paging system for access to the law library" amounted to violation of prisoner's constitutional rights); *Corgain v. Miller*, 708 F.2d 1241, 1244, 1250 (7th Cir. 1983) (noting that prison's library system had not satisfied constitutional demands because "the inmate could obtain state[-]law materials only by providing precise citations[] and could obtain precise citations only if he could refer to state[-]law materials"); *Griffin v. Grijalva*, 773 F. App'x 1003 (9th Cir. 2019) (unpublished) (reversing and remanding dismissal where prisoner alleged he was "required to use a paging system in order to obtain access to legal materials" and "that his requests through the paging system were

---

[7] We also conclude, however, that Leek was not prejudiced by any such impediments at Hutchinson: Because the district court held the *Scoggin* defendants' motion to dismiss in abeyance while the show-cause order was pending, Leek was never required to respond to that motion. He therefore experienced no actual injury to his ability to litigate *Scoggin* during his time at Hutchinson.

11

denied"). Here, as in *Trujillo*, Leek specifically alleges that he was seeking "legal materials relevant" to his underlying federal case, *Scoggin*, but that the restrictive-housing unit's "exact[-]cite system left him with inadequate materials to pursue such litigation." 465 F.3d at 1227.

To be sure, on its face, Leek's second amended complaint does not "specifically explain" how his now-dismissed federal case "was nonfrivolous." *Id.* But Leek does allege that he was prevented from effectively responding to the district court's show-cause order in an already-filed conditions-of-confinement case. *See Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) (explaining that "'actual injury'" requirement can be satisfied by showing plaintiff was "hindered [in his or her] efforts to pursue a nonfrivolous claim" (quoting *Lewis*, 518 U.S. at 356)). And in so doing, he references his underlying *Scoggin* complaint, his response to the district court's show-cause order drafted while in the restrictive-housing unit at Lansing, and the district court's dismissal order. Because Leek references those documents in his complaint and they are central to his claim, we may—and do—consider them to determine whether he has plausibly alleged that he was hindered in pursuing a nonfrivolous claim. *See Gee*, 627 F.3d at 1186 (explaining that extrinsic documents may be considered at dismissal stage when they are central to plaintiff's claim). In addition, we take judicial notice of the documents in Leek's underlying proceedings. *Id.* at 1191.

Looking at those documents reveals that in *Scoggin*, Leek alleged (among other claims) that his Eighth Amendment rights were violated after Linda Scoggin, a

supervisor in the prison's kitchen, told other prisoners that Leek was a snitch after Leek reported her to a superior for making rude comments. Leek further alleged that Scoggin had worked in the prison for over ten years and so understood the consequences that can follow from labeling a prisoner a snitch. He also alleged that, after Scoggin labeled him a snitch, he was stressed and concerned about being assaulted. The district court dismissed Leek's Eighth Amendment claim because he did not allege that he faced any repercussions, that he suffered any physical injury, or that Scoggin intended other prisoners to injure Leek.

We express no ultimate opinion on the merits of the district court's dismissal in *Scoggin*. We note, however, that this court—and our sibling circuits—have repeatedly held that labeling a prisoner a snitch can rise to the level of deliberate indifference to a substantial risk of serious harm, in violation of the Eighth Amendment.[8] *See Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (collecting cases from this circuit and sibling circuits); *Northington v. Marin*, 102 F.3d 1564, 1567–68 (10th Cir. 1996) (explaining that "telling inmates [plaintiff] was a snitch" was "not inconsistent with a knowing disregard of a substantial risk to [plaintiff's] safety"). We have also held that the PLRA's physical-injury requirement under 42 U.S.C. § 1997e(e)—one of the district court's grounds for dismissing Leek's Eighth Amendment claim—does not restrict recovery of punitive damages

---

[8] Because we conclude Leek's Eighth Amendment claim is nonfrivolous, we need not address Leek's other *Scoggin* claims. That is, the nonfrivolous nature of one claim in *Scoggin* is sufficient to support our conclusion in this case that Leek has adequately alleged prejudice for purposes of his access-to-court claim.

when a prisoner establishes a constitutional violation. *See Searles v. Van Bebber*, 251 F.3d 869, 881 (10th Cir. 2001) (explaining that jury verdict finding constitutional violation without any physical injury entitles plaintiff to award of nominal damages and observing that physical-injury requirement does not preclude punitive damages). And Leek's prayer for relief in *Scoggin* requests punitive damages.

But for purposes of assessing Leek's access-to-courts claim at issue in this litigation, we need not determine that his Eighth Amendment claim in the underlying *Scoggin* action would or should have succeeded if Leek had been allowed greater access to the law library. *See Simkins*, 406 F.3d at 1244. Instead, the actual-injury requirement for Leek's access-to-courts claim requires "only that [the underlying claim] was not frivolous." *Id.* We think Leek has cleared that bar and, for screening purposes under § 1915A, hold that the district court erred when it concluded Leek did not plausibly allege interference in pursuing a nonfrivolous claim in the *Scoggin* litigation.

Accordingly, we reverse the district court's dismissal of Leek's access-to-court claim against the Lansing defendants stemming from the alleged hinderances he faced in attempting to litigate *Scoggin* while housed in Lansing's restrictive-housing unit and remand for further proceedings. But we affirm the dismissal of his access-to-court claims against the Hutchinson defendants because those claims are too

speculative and fail to allege any nonfrivolous claims that Leek was prevented from or hindered in pursuing.[9]

## II. Supplemental State-Law Claim

As a final matter, Leek argues that if we reinstate any of his federal claims, his supplemental breach-of-contract claim under Kansas law against IC Solutions and Kroeker should be reinstated. We agree. Since we partially reinstate Leek's access-to-court claim, "the district court should reconsider," at the proper procedural juncture, whether "to decline supplemental jurisdiction over [Leek's] state-law claim[]." *Baca v. Sklar*, 398 F.3d 1210, 1222 n.4 (10th Cir. 2005).

As to the specifics of Leek's state-law claim, we observe that the district court, in declining to exercise supplemental jurisdiction, noted that "none of the individual defendants are alleged to be parties to the contract with IC Solutions and therefore are not liable for breach of contract." R. 214. Yet Leek's second amended complaint alleges that he is a third-party beneficiary to the contract between IC Solutions and the Kansas Department of Corrections. And when "a plaintiff and defendant lack privity, Kansas law allows a qualified third-party beneficiary plaintiff to enforce a contract expressly made for his or her benefit even though he or she was not a party to the transaction." *Kansas ex rel. Stovall v. Reliance Ins. Co.*, 107 P.3d 1219, 1230–31 (Kan. 2005). So although we express no opinion as to the overall merit of Leek's state-law claim, we urge the district court, when reconsidering whether to exercise

---

[9] Given this conclusion, we need not decide whether Leek's claims for declaratory and injunctive relief against the Hutchinson defendants are moot.

supplemental jurisdiction over that claim, not to overlook whether Leek has plausibly alleged a breach-of-contract claim under a third-party-beneficiary theory.

## Conclusion

We reverse the district court's dismissal of Leek's access-to-courts claim against the Lansing defendants relating to his attempts to litigate *Scoggin*. We also reinstate Leek's state-law claim for breach of contract against IC Solutions and Kroeker and instruct the district court to reconsider whether to exercise supplemental jurisdiction over that claim at the appropriate procedural juncture. We affirm the district court's dismissal of all other claims against all other defendants and remand for further proceedings consistent with this opinion.

    Entered for the Court

    Nancy L. Moritz
    Circuit Judge