

**STATE OF KANSAS**

Department of Administration
Office of Procurement and Contracts
900 S.W. Jackson St., Room 451 South
Topeka, KS 66612

Phone: (785) 296-2376
Fax: (785) 296-7240
http://admin.ks.gov/offices/procurement-and-contracts

Governor Jeff Colyer, M.D.
Sarah Shipman, Secretary

# CONTRACT AWARD

**Date of Award:**          June 1, 2018

**Contract ID:**          0000000000000000000044861
**Event ID:**          EVT0005345

**Replace Contract:**          37748 & 37806

**Procurement Officer:**          Neal Farron
**Telephone:**          785/296-3122
**E-Mail Address:**          neal.farron@ks.gov
**Web Address:**          http://admin.ks.gov/offices/procurement-and-contracts

**Item:**          Inmate Communication Services
**Agency/Business Unit:**          Department of Corrections
**Period of Contract:**          June 01, 2018 through May 31, 2023
          (With the option to renew for two (2) additional one (1) year periods)

**Contractor:**          CenturyLink Public Communications, Inc.
          100 CenturyLink Drive
          Monroe LA 71203
          FEIN: 59-3268090
          SMART Supplier ID: 0000155806

          Contact Person: Paul Cooper
          600 New Century Parkway
          New Century, KS 66031
          E-Mail: Paul.N.Cooper@centurylink.com
          Local Telephone: 913-353-7388

**Payment Terms:** Net 30

**Political Subdivisions:** Pricing is available to the political subdivisions of the State of Kansas.

**Procurement Cards:** Agencies may use a P-Card for purchases from this contract.

**Administrative Fee:** No Administrative Fee will be assessed against purchases from this contract.

The above referenced contract award was recently posted to Procurement and Contracts website. The document can be downloaded by going to the following website: http://www.da.ks.gov/purch/Contracts/

Kenneth D. Leek v. Kathryn A. Anonymous, USDC of Kansas 5:21-cv-03100. For use in this case only

## 1. Terms and Conditions

### 1.1. Contract

The successful bidder will be required to enter into a written contract with the State.  The contractor agrees to accept the provisions of Form DA 146a (Contractual Provisions Attachment), which is incorporated into all contracts with the State and is incorporated into this bid event.

### 1.2. Contract Documents

This bid event, any amendments, the response and any response amendments of the Contractor, and the State of Kansas DA-146a (Contractual Provision Attachment) shall be incorporated into the written contract, which shall compose the complete understanding of the parties.

In the event of a conflict in terms of language among the documents, the following order of precedence shall govern:

- Form DA 146a;
- written modifications to the executed contract;
- written contract signed by the parties;
- the Bid Event documents, including any and all amendments; and
- Contractor's written offer submitted in response to the Bid Event as finalized.

### 1.3. Captions

The captions or headings in this contract are for reference only and do not define, describe, extend, or limit the scope or intent of this contract.

### 1.4. Definitions

A glossary of common procurement terms is available at http://admin.ks.gov/offices/procurement-and-contracts, under the "Procurement Forms" link.

### 1.5. Contract Formation

No contract shall be considered to have been entered into by the State until all statutorily required signatures and certifications have been rendered and a written contract has been signed by the contractor.

### 1.6. Statutes

Each and every provision of law and clause required by law to be inserted in the contract shall be deemed to be inserted herein and the contract shall be read and enforced as though it were included herein.  If through mistake or otherwise any such provision is not inserted, or is not correctly inserted, then on the application of either party the contract shall be amended to make such insertion or correction.

### 1.7. Governing Law

This contract shall be governed by the laws of the State of Kansas and shall be deemed executed in Topeka, Shawnee County, Kansas.

### 1.8. Jurisdiction

The parties shall bring any and all legal proceedings arising hereunder in the State of Kansas District Court of Shawnee County, unless otherwise specified and agreed upon by the State of Kansas.  Contractor waives personal service of process, all defenses of lack of personal jurisdiction and forum non conveniens.  The Eleventh Amendment of the United States Constitution is an inherent and incumbent protection with the State of Kansas and need not be reserved, but prudence requires the State to reiterate that nothing related to this Agreement shall be deemed a waiver of the Eleventh Amendment

### 1.9. Mandatory Provisions

The provisions found in Contractual Provisions Attachment (DA 146a) are incorporated by reference and made a part of this contract.

Kenneth D. Lee v. Allan A. Anderson   USDC of Kansas 5:21-cv-03100 for use in this case only

## 1.10.  Termination for Cause

The Director of Purchases may terminate this contract, or any part of this contract, for cause under any one of the following circumstances:

- the Contractor fails to make delivery of goods or services as specified in this contract;
- the Contractor provides substandard quality or workmanship;
- the Contractor fails to perform any of the provisions of this contract, or
- the Contractor fails to make progress as to endanger performance of this contract in accordance with its terms.

The Director of Purchases shall provide Contractor with written notice of the conditions endangering performance.  If the Contractor fails to remedy the conditions within ten (10) days from the receipt of the notice (or such longer period as State may authorize in writing), the Director of Purchases shall issue the Contractor an order to stop work immediately.  Receipt of the notice shall be presumed to have occurred within three (3) days of the date of the notice.

## 1.11.  Termination for Convenience

The Director of Purchases may terminate performance of work under this contract in whole or in part whenever, for any reason, the Director of Purchases shall determine that the termination is in the best interest of the State of Kansas.  In the event that the Director of Purchases elects to terminate this contract pursuant to this provision, it shall provide the Contractor written notice at least 30 days prior to the termination date.  The termination shall be effective as of the date specified in the notice.  The Contractor shall continue to perform any part of the work that may have not been terminated by the notice.

## 1.12.  Rights and Remedies

If this contract is terminated, the State, in addition to any other rights provided for in this contract, may require the Contractor to transfer title and deliver to the State in the manner and to the extent directed, any completed materials.  The State shall be obligated only for those services and materials rendered and accepted prior to the date of termination.

In the event of termination, the Contractor shall receive payment prorated for that portion of the contract period services were provided to or goods were accepted by State subject to any offset by State for actual damages including loss of federal matching funds.

The rights and remedies of the State provided for in this contract shall not be exclusive and are in addition to any other rights and remedies provided by law.

## 1.13.  Debarment of State Contractors

Any Contractor who defaults on delivery or does not perform in a satisfactory manner as defined in this Contract may be barred for a period up to three (3) years, pursuant to KSA 75-37,103, or have their work evaluated for pre-qualification purposes pursuant to K.S.A. 75-37,104.

## 1.14.  Antitrust

If the Contractor elects not to proceed with performance under any such contract with the State, the Contractor assigns to the State all rights to and interests in any cause of action it has or may acquire under the anti-trust laws of the United States and the State of Kansas relating to the particular products or services purchased or acquired by the State pursuant to this contract.

## 1.15.  Hold Harmless

The Contractor shall indemnify the State against any and all loss or damage to the extent arising out of the Contractor's negligence in the performance of services under this contract and for infringement of any copyright or patent occurring in connection with or in any way incidental to or arising out of the occupancy, use, service, operations or performance of work under this contract.

The State shall not be precluded from receiving the benefits of any insurance the Contractor may carry which provides for indemnification for any loss or damage to property in the Contractor's custody and control, where such loss or destruction is to state property.  The Contractor shall do nothing to prejudice the State's right to recover against third parties for any loss, destruction or damage to State property.

### 1.16.  Force Majeure

The Contractor shall not be held liable if the failure to perform under this contract arises out of causes beyond the control of the Contractor.  Causes may include, but are not limited to, acts of nature, fires, tornadoes, quarantine, strikes other than by Contractor's employees, and freight embargoes.

### 1.17.  Assignment

The Contractor shall not assign, convey, encumber, or otherwise transfer its rights or duties under this contract without the prior written consent of the State.  State may reasonably withhold consent for any reason.

This contract may terminate for cause in the event of its assignment, conveyance, encumbrance or other transfer by the Contractor without the prior written consent of the State.

### 1.18.  Third Party Beneficiaries

This contract shall not be construed as providing an enforceable right to any third party.

### 1.19.  Waiver

Waiver of any breach of any provision in this contract shall not be a waiver of any prior or subsequent breach.  Any waiver shall be in writing and any forbearance or indulgence in any other form or manner by State shall not constitute a waiver.

### 1.20.  Injunctions

Should Kansas be prevented or enjoined from proceeding with the acquisition before or after contract execution by reason of any litigation or other reason beyond the control of the State, Contractor shall not be entitled to make or assert claim for damage by reason of said delay.

### 1.21.  Staff Qualifications

The Contractor shall warrant that all persons assigned by it to the performance of this contract shall be employees of the Contractor (or specified Subcontractor) and shall be fully qualified to perform the work required.  The Contractor shall include a similar provision in any contract with any Subcontractor selected to perform work under this contract.

Failure of the Contractor to provide qualified staffing at the level required by the contract specifications may result in termination of this contract or damages.

### 1.22.  Subcontractors

The Contractor shall be the sole source of contact for the contract.  The State will not subcontract any work under the contract to any other firm and will not deal with any subcontractors.  The Contractor is totally responsible for all actions and work performed by its subcontractors.  All terms, conditions and requirements of the contract shall apply without qualification to any services performed or goods provided by any subcontractor.

The agency reserves the right to review Contractor's contracts with its subcontractors to ascertain whether Contractor has the necessary operational systems in place to fulfill the requirements of this RFP.

### 1.23.  Independent Contractor

Both parties, in the performance of this contract, shall be acting in their individual capacity and not as agents, employees, partners, joint ventures or associates of one another.  The employees or agents of one party shall not be construed to be the employees or agents of the other party for any purpose whatsoever.

The Contractor accepts full responsibility for payment of unemployment insurance, workers compensation, social security, income tax deductions and any other taxes or payroll deductions required by law for its employees engaged in work authorized by this contract.

### 1.24.  Worker Misclassification

The Contractor and all lower tiered subcontractors under the Contractor shall properly classify workers as employees rather than independent contractors and treat them accordingly for purposes of workers' compensation insurance coverage, unemployment taxes, social security taxes, and income tax withholding.  Failure to do so may result in contract termination.

Contract ID: 00000000000000000000044861
Event ID: EVT0005345
Page 5

**1.25.  Immigration and Reform Control Act of 1986 (IRCA)**
All contractors are expected to comply with the Immigration and Reform Control Act of 1986 (IRCA), as may be amended from time to time.  This Act, with certain limitations, requires the verification of the employment status of all individuals who were hired on or after November 6, 1986, by the Contractor as well as any subcontractor or sub-contractors.  The usual method of verification is through the Employment Verification (I-9) Form.

With the submission of this bid, the Contractor hereby certifies without exception that such Contractor has complied with all federal and state laws relating to immigration and reform.  Any misrepresentation in this regard or any employment of persons not authorized to work in the United States constitutes a material breach and, at the State's option, may subject the contract to termination for cause and any applicable damages.

Unless provided otherwise herein, all contractors are expected to be able to produce for the State any documentation or other such evidence to verify Contractor's IRCA compliance with any provision, duty, certification or like item under the contract.

Contractor will provide a copy of a signed Certification Regarding Immigration Reform and Control Form (http://admin.ks.gov/docs/default-source/ofpm/procurement-contracts/irca.doc?sfvrsn=6) with the technical proposal.

**1.26.  Proof of Insurance**
Upon request, the Contractor shall present an affidavit of Worker's Compensation, Public Liability, and Property Damage Insurance to Procurement and Contracts.

**1.27.  Conflict of Interest**
The Contractor shall not knowingly employ, during the period of this contract or any extensions to it, any professional personnel who are also in the employ of the State and providing services involving this contract or services similar in nature to the scope of this contract to the State.  Furthermore, the Contractor shall not knowingly employ, during the period of this contract or any extensions to it, any state employee who has participated in the making of this contract until at least two years after his/her termination of employment with the State.

**1.28.  Nondiscrimination and Workplace Safety**
The Contractor agrees to abide by all federal, state and local laws, and rules and regulations prohibiting discrimination in employment and controlling workplace safety.  Any violations of applicable laws or rules or regulations may result in termination of this contract.

**1.29.  Confidentiality**
The Contractor may have access to private or confidential data maintained by State to the extent necessary to carry out its responsibilities under this contract.  Contractor must comply with all the requirements of the Kansas Open Records Act (K.S.A. 45-215 et seq.) in providing services under this contract.  Contractor shall accept full responsibility for providing adequate supervision and training to its agents and employees to ensure compliance with the Act.  No private or confidential data collected, maintained or used in the course of performance of this contract shall be disseminated by either party except as authorized by statute, either during the period of the contract or thereafter.  Contractor agrees to return any or all data furnished by the State promptly at the request of State in whatever form it is maintained by Contractor.  On the termination or expiration of this contract, Contractor shall not use any of such data or any material derived from the data for any purpose and, where so instructed by State, shall destroy or render it unreadable.

**1.30.  Environmental Protection**
The Contractor shall abide by all federal, state and local laws, and rules and regulations regarding the protection of the environment.  The Contractor shall report any violations to the applicable governmental agency.  A violation of applicable laws or rule or regulations may result in termination of this contract for cause.

**1.31.  Care of State Property**
The Contractor shall be responsible for the proper care and custody of any state owned personal tangible property and real property furnished for Contractor's use in connection with the performance of this contract.  The Contractor shall reimburse the State for such property's loss or damage caused by the Contractor, except for normal wear and tear.

Kenneth D. Leake King v. Kansas USD of Kansas 5:2 1-cv-03100 For use in case only

**1.32. Prohibition of Gratuities**
Neither the Contractor nor any person, firm or corporation employed by the Contractor in the performance of this contract shall offer or give any gift, money or anything of value or any promise for future reward or compensation to any State employee at any time.

**1.33. Retention of Records**
Unless the State specifies in writing a different period of time, the Contractor agrees to preserve and make available at reasonable times all of its books, documents, papers, records and other evidence involving transactions related to this contract for a period of five (5) years from the date of the expiration or termination of this contract.

Matters involving litigation shall be kept for one (1) year following the termination of litigation, including all appeals, if the litigation exceeds five (5) years.

The Contractor agrees that authorized federal and state representatives, including but not limited to, personnel of the using agency; independent auditors acting on behalf of state and/or federal agencies shall have access to and the right to examine records during the contract period and during the five (5) year post-contract period.  Delivery of and access to the records shall be within five (5) business days at no cost to the state.

**1.34. Off-Shore Sourcing**
Off-Shore sourcing shall not be permitted.

**1.35. On-Site Inspection**
Failure to adequately inspect the premises shall not relieve the Contractor from furnishing without additional cost to the State any materials, equipment, supplies or labor that may be required to carry out the intent of this Contract.

**1.36. Indefinite Quantity Contract**
This is an open-ended contract between the Contractor and the State to furnish an undetermined quantity of a good or service in a given period of time.  The quantities ordered will be those actually required during the contract period, and the Contractor will deliver only such quantities as may be ordered.  No guarantee of volume is made.    An estimated quantity based on past history or other means may be used as a guide.

**1.37. Prices**
Prices shall remain firm for the entire contract period and subsequent renewals. Prices shall be net delivered, including all trade, quantity and cash discounts. Any price reductions available during the contract period shall be offered to the State of Kansas.  Failure to provide available price reductions may result in termination of the contract for cause.

**1.38. Upgrades**
The Contractor shall provide upgrades for any software, firmware, or hardware at no cost to the agency unless mutual agreed to by written amendment.

**1.39. Payment**
Payment Terms are Net 30 days.  Payment date and receipt of order date shall be based upon K.S.A. 75-6403(b). This Statute requires state agencies to pay the full amount due for goods or services on or before the 30th calendar day after the date the agency receives such goods or services or the bill for the goods and services, whichever is later, unless other provisions for payment are agreed to in writing by the Contractor and the state agency. NOTE:  If the 30th calendar day noted above falls on a Saturday, Sunday, or legal holiday, the following workday will become the required payment date.

Payments shall not be made for costs or items not listed in this contract.

Payment schedule shall be on a frequency mutually agreed upon by both the agency and the Contractor.

**1.40. Accounts Receivable Set-Off Program**
If, during the course of this contract the Contractor is found to owe a debt to the State of Kansas, a state agency, municipality, or the federal government, agency payments to the Contractor may be intercepted / setoff by the State of Kansas.  Notice of the setoff action will be provided to the Contractor.  Pursuant to K.S.A. 75-6201 et seq, Contractor

Kenneth Dwight Rauck, Andraski, USDC Kansas 5:21-cv-03100. For use in this case only

shall have the opportunity to challenge the validity of the debt.  The Contractor shall credit the account of the agency making the payment in an amount equal to the funds intercepted.

K.S.A. 75-6201 et seq. allows the Director of Accounts & Reports to setoff funds the State of Kansas owes Contractors against debts owed by the Contractors to the State of Kansas, state agencies, municipalities, or the federal government.  Payments setoff in this manner constitute lawful payment for services or goods received.  The Contractor benefits fully from the payment because its obligation is reduced by the amount subject to setoff.

### 1.41.  Federal, State and Local Taxes
Unless otherwise specified, the contracted price shall include all applicable federal, state and local taxes.   The Contractor shall pay all taxes lawfully imposed on it with respect to any product or service delivered in accordance with this Contract.  The State of Kansas is exempt from state sales or use taxes and federal excise taxes for direct purchases.  These taxes shall not be included in the contracted price.  Upon request, the State shall provide to the Contractor a certificate of tax exemption.

The State makes no representation as to the exemption from liability of any tax imposed by any governmental entity on the Contractor.

### 1.42.  Debarment of State Contractors
Any Contractor who defaults on delivery or does not perform in a satisfactory manner as defined in this Agreement may be barred for up to a period of three (3) years, pursuant to K.S.A. 75-37,103, or have its work evaluated for pre-qualification purposes.  Contractor shall disclose any conviction or judgment for a criminal or civil offense of any employee, individual or entity which controls a company or organization or will perform work under this Agreement that indicates a lack of business integrity or business honesty.  This includes (1) conviction of a criminal offense as an incident to obtaining or attempting to obtain a public or private contract or subcontract or in the performance of such contract or subcontract; (2) conviction under state or federal statutes of embezzlement, theft, forgery, bribery, falsification or destruction of records, receiving stolen property; (3) conviction under state or federal antitrust statutes; and (4) any other offense to be so serious and compelling as to affect responsibility as a state contractor.  For the purpose of this section, an individual or entity shall be presumed to have control of a company or organization if the individual or entity directly or indirectly, or acting in concert with one or more individuals or entities, owns or controls 25 percent or more of its equity, or otherwise controls its management or policies.  Failure to disclose an offense may result in the termination of the contract.

The Contractor certifies that neither it, its principals, or any subcontractor which the Contractor will utilize in furtherance of this agreement are presently debarred, suspended, proposed for debarment, declared ineligible or voluntarily excluded from participation in this Agreement by any federal department or agency.

### 1.43.  Materials and Workmanship
The Contractor shall perform all work and furnish all supplies and materials, machinery, equipment, facilities, and means, necessary to complete all the work required by this Contract, within the time specified, in accordance with the provisions as specified.

The Contractor shall be responsible for all work put in under these specifications and shall make good, repair and/or replace, at the Contractor's own expense, as may be necessary, any defective work, material, etc., if in the opinion of agency and/or Procurement and Contracts said issue is due to imperfection in material, design, workmanship or Contractor fault.

### 1.44.  Industry Standards
If not otherwise provided, materials or work called for in this contract shall be furnished and performed in accordance with best established practice and standards recognized by the contracted industry and comply with all codes and regulations which shall apply.

### 1.45.  Implied Requirements
All products and services not specifically mentioned in this contract, but which are necessary to provide the functional capabilities described by the specifications, shall be included.

### 1.46.  Submission of the Bid

Kenneth D. Leek v. Kathryn Andraski, KDOC, et al., 5:21-cv-03100 for use in this case only

Submission of the bid will be considered presumptive evidence that the bidder is conversant with local facilities and difficulties, the requirements of the documents and of pertinent State and/or local codes, state of labor and material markets, and has made due allowances in the proposal for all contingencies. Later claims for labor, work, materials, equipment, and tax liability required for any difficulties encountered which could have been foreseen will not be recognized and all such difficulties shall be properly taken care of by Contractor at no additional cost to the State of Kansas.

**1.47. Inspection**
The State reserves the right to reject, on arrival at destination, any items which do not conform with specification of the Contract.

**1.48. Acceptance**
No contract provision or use of items by the State shall constitute acceptance or relieve the Contractor of liability in respect to any expressed or implied warranties.

**1.49. Ownership**
All data, forms, procedures, software, manuals, system descriptions and work flows developed or accumulated by the Contractor under this contract shall be owned by the using agency. The Contractor may not release any materials without the written approval of the using agency.

**1.50. New materials, Supplies or Equipment**
Unless otherwise specified, all materials, supplies or equipment offered by the Contractor shall be new, unused in any regard and of most current design. All materials, supplies and equipment shall be first class in all respects. Seconds or flawed items will not be acceptable. All materials, supplies or equipment shall be suitable for their intended purpose and, unless otherwise specified, fully assembled and ready for use on delivery.

**1.51. Information/Data**
Any and all information/data required to be provided at any time during the contract term shall be made available in a format as requested and/or approved by the State.

**1.52. Certification of Materials Submitted**
The Bid document, together with the specifications set forth herein and all data submitted by the Contractor to support their response including brochures, manuals, and descriptions covering the operating characteristics of the item(s) proposed, shall become a part of the contract between the Contractor and the State of Kansas. Any written representation covering such matters as reliability of the item(s), the experience of other users, or warranties of performance shall be incorporated by reference into the contract.

**1.53. Transition Assistance**
In the event of contract termination or expiration, Contractor shall provide all reasonable and necessary assistance to State to allow for a functional transition to another vendor.

**1.54. Integration**
This contract, in its final composite form, shall represent the entire agreement between the parties and shall supersede all prior negotiations, representations or agreements, either written or oral, between the parties relating to the subject matter hereof. This Agreement between the parties shall be independent of and have no effect on any other contracts of either party.

**1.55. Modification**
This contract shall be modified only by the written agreement and approval of the parties. No alteration or variation of the terms and conditions of the contract shall be valid unless made in writing and signed by the parties. Every amendment shall specify the date on which its provisions shall be effective.

**1.56. Severability**
If any provision of this contract is determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this contract shall not be affected and each provision of this contract shall be enforced to the fullest extent permitted by law.

**1.57.  HIPPA Confidentiality**
Per the Health Insurance Portability and Accountability Act (1996) (HIPAA), the agency is a covered entity under the act and therefore Contractor is not permitted to use or disclose health information in ways that the agency could not. This protection continues as long as the data is in the hands of Contractor.

Contractor shall establish and maintain procedures and controls acceptable to the agency to protect the privacy of members' information. Unless Contractor has the member's written consent, Contractor shall not use any personally identifiable information obtained for any reason other than that mandated by this contract.

**1.58.  ADA Compliance and Accessibility**
The Contractor agrees that the products or services to be provided under this Contract shall comply with applicable state and federal law. This includes Section 508 of the Rehabilitation Act of 1973 and any amendments thereto, (29 U.S.C. & 794d), and its implementation of Electronic and Information Technology Accessibility Standards (36 CFR § 1194).

Furthermore the applications must meet all State of Kansas requirements for accessibility as defined in Kansas Information Technology Policy 1210 Revision 2 https://oits.ks.gov/kito/itec/itec-policies/itec-policy-1210
Additional information is available at this link: http://oits.ks.gov/kpat/policy

**1.59.  Information Security Requirements**
The Contractor agrees to follow industry best practices, policies and protocols in regards to security. The Contractor will comply with all laws and regulations applicable to the use and provision of the services and products. This includes "K.S.A 50-7a02. Security breach; requirements."  Prompt notification will be made the State of Kansas when any security breach occurs.

## 2.  Additional Terms and Conditions

### 2.1.  Standard Contract Length

2.1.1.  KDOC will award a contract for a period of five (5) years. The contract will remain in force for an initial term of five (5) years and shall not bind, nor purport to bind, KDOC for any contractual commitment in excess of the initial term. However, KDOC shall have the right to renew the subsequent contract for two (2) additional one (1) year terms, with thirty (30) days written notice to Contractor prior to the expiration of the initial term or renewal term(s) of the contract. In the event KDOC exercises such right, all terms and conditions, requirements and specifications of the subsequent contract shall remain the same and apply during the renewal term(s). The subsequent contract will not automatically renew.

### 2.2.  Surety Bond

2.2.1.  The successful Contractor must furnish a Surety Bond in the form of a bond issued by a Surety Company authorized to do business in Kansas, a Cashier's Check, or Irrevocable Letter of Credit payable to KDOC within ten (10) calendar days after award of the subsequent contract and prior to any installation work or equipment delivery.

2.2.2.  The Surety Bond must be made payable to KDOC in the amount of Five Hundred Thousand Dollars ($500,000.00) and will be retained during the full period of the subsequent contract and/or renewal term(s).

2.2.3.  No personal or company checks are acceptable. The subsequent contract number (if applicable) and dates of performance must be specified in the Surety Bond.  In the event that KDOC exercises its option to extend the subsequent contract for an additional period, the Contractor shall be required to maintain the validity and enforcement of the Surety Bond for the said period, pursuant to the provisions of this paragraph, in an amount stipulated at the time of the subsequent contract renewal.

### 2.3. Minimum Annual Guarantee

2.3.1. KDOC requires Contractor to provide an upfront Minimum Annual Guarantee (MAG) per year for all of the Inmate Communications Services (ITS, VVS, Tablets) as part of the of the revenue share proposal in Section 6. The awarded Contractor's first MAG payment shall be due KDOC within 5 days of execution of the subsequent contract to this RFP. Subsequent MAG payments for each year of this contract shall be due to KDOC by the anniversary date of each contract year and any renewal terms. Should the sum of revenue share calculated on the Gross Revenue for any contract year be greater than the MAG, Contractor shall calculate the additional revenue share due KDOC as described in Sections 2.11, 2.12, and 2.13.

### 2.4. Discrepancy

2.4.1. Exceptions or objections to specific RFP provisions in the Contractor's Response that have not been explicitly accepted by KDOC in writing shall not be included in this Contract and shall be given no weight or consideration.

### 2.5. Insurance

2.5.1. During the period of the Contract, Contractor at its own expense agrees to carry and maintain the following minimum insurance policy of public liability and property damage issued by a casualty company authorized to do business in the state of Kansas and in a standard form approved by the Board of Insurance Commissioners in the state of Kansas. The insurance company should have a Best Rating of no less than A. Coverage provisions should insure KDOC from any loss or damage that may arise to any person or property as a result of the services rendered by Contractor.

2.5.2. Contractor shall provide KDOC with a thirty (30) day advance written notice of cancellation or material changes in said insurance.

2.5.3. Annual renewals for the term of this policy should be submitted prior to the expiration date of any policy.

2.5.4. Contractor shall provide KDOC a Certificate of Insurance, on an original ACORD certificate, evidencing required coverage described below, within ten (10) days after receipt of notice of award. Said certificate shall show KDOC as an additional insured and shall include a waiver of subrogation.

| Automobile Liability | |
|---|---|
| Bodily Injury – Each Person | ▓▓▓▓ |
| Bodily Injury – Each Accident | ▓▓▓▓ |
| General Liability | |
| Bodily Injury or Death – Each Person | ▓▓▓▓ |
| Property Damage – Per Incident (Resulting in Injury/Destruction of Property) | ▓▓▓▓ |
| Excess Liability | |
| Umbrella Form | ▓▓▓▓ |
| Worker's Compensation | Statutory |

2.5.5. KDOC agrees to provide Contractor with reasonable and timely notice on any claim, demand or cause of action made by or brought against KDOC arising out of the service provided by Contractor. At its election, KDOC may choose to defend any such claim at its sole cost and expense and with its exclusive discretion, or it may tender to Contractor the right to defend any such claim at its sole cost and expense and with its exclusive discretion.

Kenneth D. Lee v. Zanthry, University of Kansas, 21-cv-03100. For forensics case only

2.5.6.  For any person or contractor with whom Contractor enters into a contract to provide the services defined in this Contract, Contractor must:

2.5.6.1.  Provide a certificate of coverage, for all persons providing the services defined in this Contract. Coverage shall be based on proper reporting of classification codes and payroll amounts and filing of any coverage agreements, which meets the statutory requirements of State Name Labor Code;

2.5.6.2.  Provide a new certificate, prior to the end of the coverage period, of coverage showing extension of coverage if the coverage period shown on Contractor current certificate of coverage ends during the duration of the project;

2.5.6.3.  Retain all required certificates of coverage for the duration of the project and for 2 years thereafter; and

2.5.6.4.  Notify KDOC in writing, within ten (10) business days after Contractor knew or should have known, of any change that materially affects the provision of coverage of any person providing services on the project.

## 2.6.   Regulatory Changes and Cost Recoupment

2.6.1.  Should a material change in the rules or policies of the FCC or other regulatory body applicable to inmate communication services occur following the execution of the Contract, which change affects (a) the rates permitted to be charged by the Contractor to inmates under the Contract; (b) the right of KDOC to recover its costs; or (c) the ability for Contractor to pay to KDOC a revenue share, fees (including but not limited to a cost recoupment payment as defined below) or other cost recovery mechanisms, then, at KDOC's request, Contractor and KDOC will negotiate in good faith an amendment to the Contract reasonably acceptable to KDOC that enables KDOC to fully recover its costs in a manner compliant with the change in the FCC's (or other regulatory body's) rules or policies.  If Contractor and KDOC are unable to mutually agree on such a Contract amendment within thirty (30) days of KDOC's request, then KDOC may terminate the Contract at its sole discretion and without penalty or liability to KDOC, and KDOC may select another inmate communication services provider.

2.6.2.  KDOC reserves the right to recoup from Contractor certain administrative and operational expenses ("Cost Recoupment Payment") in connection with the provision of inmate communication services.  Such Cost Recoupment Payment may take the form of a per-minute rate, flat monthly payment, or other fee structure. The Cost Recoupment Payment shall be due and payable upon receipt of the invoice by the Contractor.  KDOC may accompany the Cost Recoupment Payment invoice with a supporting report documenting the administrative and operational expenses incurred by KDOC in association with inmate communication services covered by the Cost Recoupment Payment. KDOC does not require a Cost Recoupment Payment upon execution of the Contract.  In the event KDOC wishes to utilize its option to implement the Cost Recoupment Payment, then, at KDOC's request, KDOC and Contractor shall negotiate in good faith an amendment to the Contract reasonably acceptable to KDOC to document KDOC-imposed Cost Recoupment Payment.  If Contractor and KDOC are unable to mutually agree on such a Contract amendment within thirty (30) days of KDOC's request, then KDOC may terminate the Contract at its sole discretion and without penalty or liability to KDOC, and KDOC may select another provider.

## 2.7.   Drug-Free Workplace

2.7.1.  Contractor shall provide any and all notices as may be required under the Drug-Free Workplace Act of 1998, 28 CFR Part 67, Subpart F, and any applicable Kansas laws, to the employees and all subcontractors to ensure the facility(s) maintains a drug free workplace. KDOC reserves the right to review drug-testing results of Contractor's personnel assigned to work at the Facilities. KDOC may require, at Contractor's expense, drug testing of Contractor's personnel if no drug testing records exist or if such test results are older than six (6) months.

**2.8.** **Limitation of Liability**

    2.8.1.  In no event shall either party be liable hereunder for loss of profits, loss of goodwill, consequential or punitive damages of any kind regardless of the form or theory of any claim and irrespective of whether such party has been advised of the possibility of such damages.

**2.9.** **Contractor Costs and Taxes and Fees on Services**

    2.9.1.  It is expressly understood that KDOC is not responsible in any way, manner or form for any of Contractor's costs, including but not limited to, taxes (including sales tax), shipping charges, network and associated infrastructure, insurance, interest, penalties, attorney fees, liquidated damages, licenses, fees, tariffs or other costs related to any and all Contractor's services. Contractor agrees that it is entirely responsible for calculating, collecting and remitting all fees and taxes, including sales tax where applicable, on all services and items provided to the inmates. Including, but not limited to, any and all taxes as applicable for the inmate communication services such as; collect, debit, pre-paid and any other calls, video visitation sessions and Tablet applications and transactions.

**2.10.** **Liquidated Damages**

    2.10.1.  Contractor's failure to meet Contract requirements both correctly and on time may result in substantial injury KDOC; the amount of damages resulting from such failure may not always be quantified with certainty. Each failure to meet a requirement, both correctly and on time, may be subject to fines and liquidated damages as outlined herein. Any enforced fines/liquidated damages will be invoiced by KDOC to Contractor. Payments due KDOC for the invoiced amount(s) shall be due within thirty (30) days of Contractor's receipt of the invoice.

| LIQUIDATED DAMAGES | |
|---|---|
| **Description** | **Amount** |
| **ITS**<br>Any changes to the monthly collect call threshold, all changes must be approved by KDOC prior to implementation. | █████ per day from the day the unauthorized change was implemented through the date Contractor discontinues the unapproved fees and/or charges. |
| **All Inmate Communication Services**<br>Any charges/fees added to the called party's bill or account or inmate without the express written consent of KDOC. | █████ per day from the date the additional charges/fees were first added through the date the charges/fees were discontinued. |
| **All Inmate Communication Services**<br>Unauthorized free calls, video visitation sessions or Tablet transactions completed by Contractor including allowing access to unauthorized wireless networks. | █████ per completed, unauthorized free call or transaction. |
| **All Inmate Communication Services**<br>Revenue share payments, ITS traffic detail reports, billing files, CDRs, VVS detail reports, Tablet transaction reports and/or all other reports not containing the required fields, received by KDOC after the date specified in **Section 4, Subsection 4.14, Subsection 4.15, Subsection 4.16,** and/or **Subsection 4.17**. If the revenue share payment is late, reporting is late and/or reports do not contain all required fields, late charges/interest for all three shall apply. Revenue share payment discrepancies must be resolved by Contractor and to KDOC's reasonable satisfaction, within thirty (30) days of receipt of notification of a discrepancy from KDOC and/or its Designated Agent or such discrepancy is subject to late charges, as described and/or termination of this Contract at the sole discretion of KDOC and/or any legal course of action KDOC elects to pursue. | █████ per month of the revenue share amount due.<br><br>█████ per month for each report not received by the due date specified or for each report that does not contain all of the fields and information required.<br><br>█████ per day for any daily CDR reports not submitted by Contractor, for each day where the CDR report does not contain all of the fields and information identified in **Section 4, Subsection 4.14**. |

Kenneth D. Estes v. ACCESS USLC of Kansas, et al cv-03100 for use in this case only

| | |
|---|---|
| **All Inmate Communication Services**<br>Any changes to the rates without the express written approval of KDOC. Contractor must issue refunds to all overcharged end-users or inmates within five (5) business days; a list of the issued credits must be provided to KDOC as documentation. KDOC will not issue a refund of revenue-share or cost recoupment for unapproved rate increases. | ▇▇▇ per completed call, video visitation session or Tablet transaction which was rated/charged using the unauthorized rate(s). |
| **ITS**<br>Any bill types, transactions or applications implemented or removed regarding the processing and/or completion of inmate telephone calls without the express written consent of KDOC. | ▇▇▇ per day for each day the bill type, transaction or applications is implemented or removed. |
| **All Inmate Communication Services**<br>Due to Contractor's action(s), if any installation, initial or additionally requested inmate communications equipment and/or application is not completed within the timeframe allowed in the agreed-upon implementation plan. | ▇▇▇ per day for each day the after the agreed-upon date until the installation is complete. |
| **All Inmate Communication Services**<br>Contractor shall be responsible for resolving any reported repairs or replacements within ten (10) calendar days following the date of notification of a service request or inmate communication service failure ("Cure Period"). Should Contractor fail to resolve the reported repair or replacement within the specified Cure Period, Contractor may be liable for liquidated damages. | ▇▇▇ for each day after the Cure Period and for each reported repair or replacement that the Contractor fails to resolve, until each reported repair or replacement is resolved by Contractor. |
| **ITS and VVS**<br>When KDOC suffers one or more lost, unrecoverable or un-useable recording(s). KDOC agrees to notify Contractor of such instances and provide up to seven (7) days per instance for Contractor to produce the call or visitation recordings. | ▇▇▇ per occurrence. |
| **All Inmate Communication Services**<br>Contractor shall adhere to KDOC's performance process when upgrading each inmate communications service, software, equipment, or performing any changes to the inmate communications which affect the scope under this Contract. Any deviation from the process may result in liquidated damages incurred by Contractor. | ▇▇▇ per occurrence. |
| **All Inmate Communication Services**<br>Any security breach which results in the disclosure of federal taxpayer identification and/or personally identifiable information. | ▇▇▇ per individual, per day until security breach is resolved and a solution to protect individuals affected is implemented. |

## 2.11. ITS Revenue Share, Payment and Reporting

2.11.1. Gross Revenue generated by and through the proposed ITS consists of all compensation, earnings, gain, income, generated revenue, payment, proceeds or receipts paid to or received by Contractor that are in any way connected to the provision of ITS service pursuant to this RFP and Contract. Gross Revenue includes, by way of example and not limitation, all the following: all surcharges; per minute fees and any additional fees and/or charges generated by the completion of all calls (including any combination of free, collect, debit, and pre-paid Local, Intralata/Intrastate, Intralata/Interstate, Interlata/Intrastate, Interlata/Interstate and International calls); additional fees and/or charges added to the total cost of a call or added to the called party's bill; or any other compensation received by Contractor.

Kenneth D. Leek within Alston v. USD, Kansas, cv-03100. For use in this case only

2.11.2. Contractor shall not reduce total Gross Revenue (as defined above) for any deductions associated with fees, adjusted durations, unbillable calls, bad debt, uncollectible calls, taxes, fraudulent calls, LEC adjustments or any other Contractor expense.

2.11.3. Any additional fees to be added to the called party's bill or paid by the calling or called party (including those associated with establishing/funding pre-paid collect accounts) for inmate telephone calls from the Facilities must be approved by KDOC prior to implementation.

    2.11.3.1. KDOC shall notify Contractor of any unapproved additional fees and/or charges associated with ITS of which KDOC becomes aware are charged. The unapproved fees and/or charges are subject to liquidated damages as specified in Section 2, Subsection 2.11.

    2.11.3.2. Should KDOC and Contractor mutually agree that the charges/fees are to be discontinued, Contractor shall refund each called party for the unapproved charges/fees from the date the charges/fees were implemented until the date the charges/fees were discontinued.

2.11.4. Notwithstanding the foregoing, Gross Revenue does not include the following items:

    2.11.4.1. Required regulatory charges and taxes that are intended to be paid by the called party or inmate and then remitted 100% by the billing party to the appropriate governmental agency.

    2.11.4.2. A Free call shall be defined as a call not generating any revenue or compensation for Contractor. Calls to telephone numbers that appear on the free call list supplied by KDOC or from inmate telephones approved by KDOC to process free calls shall not generate revenue or compensation for Contractor and shall not be eligible for revenue-share to KDOC. Only those numbers designated by KDOC on the free call list and inmate telephones approved by KDOC to process free calls shall be marked as Free in the ITS and designated as such in the call detail records. In the event Contractor receives revenue or compensation, notwithstanding the source, from any third party related to a completed free call, such revenue shall be included in Gross Revenue and eligible for revenue-share to KDOC. Unauthorized free calls are subject to liquidated damages as specified in Section 2, Subsection 2.11.

    2.11.4.3. Complimentary calls associated with Contractor's pre-paid collect program are not included in Gross Revenue and revenue share is not payable by Contractor.

    2.11.4.4. Pre-Paid Collect Funding Fees - Pre-paid collect funding fees are defined as fees imposed on called parties who set up or fund a pre-paid collect account with Contractor or a third party (i.e. Western Union) to accept calls. The pre-paid collect funding fee shall not be applied on a per-call basis. All pre-paid collect fees must be approved by KDOC and are subject to liquidated damages as specified in Section 2, Subsection 2.11.

    2.11.4.5. Collect Billing Fees - Collect-billing fees shall be defined as fees charged to the called parties for processing a collect call on a LEC telephone bill or obtaining a hard copy bill of a direct bill account. The collect billing fee shall not be applied on a per-call basis. All collect billing fees must be approved by KDOC and are subject to liquidated damages as specified in Section 2, Subsection 2.11.

2.11.5. A call is deemed complete, and considered part of Gross Revenue (as described above), when a connection is made between the inmate and the called party, whether such connection is established by positive acceptance or by live or automated machine pick-up (e.g. when the ITS considers a tone from an answering machine, voicemail as acceptance). The call shall be deemed complete and eligible for revenue-share regardless if Contractor can bill or collect revenue on the call.

2.11.6. Contractor agrees that it is entirely responsible for calculating, collecting and remitting all fees and taxes, including sales tax where applicable, on all services and items provided to the inmates, including but not limited to any and all taxes as applicable for the ITS services such as collect, debit, pre-paid and any other calls.

2.11.7.  Contractor may, upon request from KDOC, utilize the onsite commissary provider to distribute and charge for inmate telephone services, provided there is a written agreement regarding the form and manner of how the associated taxes are to be collected and remitted.  In the event the commissary provider collects and remits taxes for inmate telephone services, Contractor is solely responsible for obtaining a resale certificate from the commissary provider. Contractor is responsible for obtaining all proper documentation from the commissary provider. Contractor's agreement with the commissary provider must address the requirements set forth in this section.

2.11.8.  Revenue share for debit calls shall be based upon total Gross Revenues (as defined above) generated from debit call purchases and is payable as described in this section.

2.11.8.1.  On the fifth (5th) day of the month following the month of traffic, Contractor shall submit a monthly invoice and corresponding debit purchases report to KDOC for the full amount of the debit purchased (less any issued refunds) for the prior traffic month.

2.11.8.2.  Payments and reports for ITS are due to KDOC on or before the 15th day of the month following the traffic month.

2.11.9.  KDOC requests that all payments be sent via wire transfer; and KDOC requires that the traffic detail reports be sent electronically in Comma Separated Values (CSV) format.

2.11.10.  Traffic detail reports shall include a detailed breakdown of all ITS activity, including but not limited to all collect, pre-paid and debit calls for each inmate telephone at the Facilities:

2.11.10.1.  Facility Name;
2.11.10.2.  Facility Identification Number/Agency Identification Number;
2.11.10.3.  Facility Address (Street, City, State and Zip);
2.11.10.4.  Automatic Number Identifier;
2.11.10.5.  Inmate Telephone Station Port/Identifier;
2.11.10.6.  Inmate Telephone Location Name;
2.11.10.7.  Local Calls, Minutes, Gross Revenue (Per Inmate Telephone);
2.11.10.8.  Intralata/Intrastate Calls, Minutes, Gross Revenue (Per Inmate Telephone);
2.11.10.9.  Interlata/Intrastate Calls, Minutes, Gross Revenue (Per Inmate Telephone);
2.11.10.10. Intralata/Interstate Calls, Minutes, Gross Revenue (Per Inmate Telephone);
2.11.10.11. Interlata/Interstate Calls, Minutes, Gross Revenue (Per Inmate Telephone);
2.11.10.12. International Calls, Minutes Gross Revenue (Per Inmate Telephone);
2.11.10.13. Revenue Share Rate (%);
2.11.10.14. Total Calls, Minutes, Gross Revenue and Revenue Share Amount (Per Inmate Telephone); and
2.11.10.15. Traffic Period and Dates.

2.11.11.  [Reserved]

2.11.12.  Contractor shall provide daily raw Call Detail Records (CDRs) the next business day following the day of traffic and monthly billing files to KDOC no later than the 15th day of the month following the month of traffic.

2.11.13.  Billing files shall contain all fields which are legally permitted to be released, with the contents of said fields in the exact format and content as those files prepared and submitted for billing to Contractor's billing company and ultimately delivered to the called party.  The billing files shall be accompanied by a complete file map and complete field legend. The billing files shall include (without limitation) the following information:

2.11.13.1.  Record Identifier;
2.11.13.2.  Facility Name;
2.11.13.3.  Facility Identification Number;
2.11.13.4.  From ANI;
2.11.13.5.  To ANI;
2.11.13.6.  Seconds;

2.11.13.7. Date (yymmdd);
2.11.13.8. Connect Time (hhmmss);
2.11.13.9. Billable Time (hhmmss);
2.11.13.10. Personal Identification Number Digits;
2.11.13.11. Originating City;
2.11.13.12. Originating State;
2.11.13.13. Bill City;
2.11.13.14. Bill State;
2.11.13.15. Bill Number;
2.11.13.16. Settlement Code;
2.11.13.17. Charge Amount;
2.11.13.18. Additional Fees and Line Surcharges;
2.11.13.19. Rate Period; and
2.11.13.20. Rate Class.

2.11.14. The daily raw CDRs shall contain all calls (both attempted and completed) which originate from the Facilities for each day and each time of the day for the period said raw CDRs are requested. The raw CDRs shall contain the unedited data including all fields and all field content which is legally permitted to be released. The CDRs shall be accompanied with a complete file map and complete file legend. The raw CDRs shall include (without limitation) the following fields:

2.11.14.1. Facility Name;
2.11.14.2. Facility Identification Number;
2.11.14.3. From ANI;
2.11.14.4. To ANI;
2.11.14.5. Batch Number / ID;
2.11.14.6. From City;
2.11.14.7. From State;
2.11.14.8. To City;
2.11.14.9. To State;
2.11.14.10. Station Port/Identifier;
2.11.14.11. Phone Name or Location;
2.11.14.12. Inmate Name;
2.11.14.13. Inmate Identification Number;
2.11.14.14. Personal Identification Number;
2.11.14.15. Pre-Paid Card Identification Number;
2.11.14.16. Revenue Period;
2.11.14.17. Call Start (yymmdd; mmss);
2.11.14.18. Call End (yymmdd; mmss);
2.11.14.19. Seconds;
2.11.14.20. Call Type (e.g. local, etc.);
2.11.14.21. Bill Type (e.g. free, collect, etc.);
2.11.14.22. Call Cost;
2.11.14.23. Tax;
2.11.14.24. Validation Result;
2.11.14.25. Termination Reason;
2.11.14.26. LIDB Status/Code; and
2.11.14.27. Completion/Accept Indicator.

2.11.15. Contractor shall provide a miscellaneous charges/fees report which shall include a breakdown of all charges and fees applied to (without limitation) calls and accounts from the Facilities covered under the RFP and subsequent Contract, including but not limited to: single call fee(s), pre-paid collect funding fee(s), collect billing fee(s) regardless of whether the charge/fee was assessed directly by Contractor or a third party.   The miscellaneous charges/fees report shall contain (without limitation) the following information:

2.11.15.1. Facility Identification Number;
2.11.15.2. Date;

Kenneth D. Lee et al. v. Aramark, USDC of Kansas 5:21-cv-03100. For use in this case only

2.11.15.3.  Customer Identification Number;
2.11.15.4.  To ANI;
2.11.15.5.  Billed Account;
2.11.15.6.  Transaction Type;
2.11.15.7.  Bill Type;
2.11.15.8.  Fee Type;
2.11.15.9.  Instance Type; and
2.11.15.10. Fee Amount.

2.11.16.  Revenue share payments, usage detail reports, or reports not containing the required fields, received by KDOC after the date specified above are subject to liquidated damages as specified in Section 4, Subsection 4.12.

## 2.12.  VVS Revenue Share, Payment and Reporting

2.12.1.  VVS Gross Revenue consists of all compensation, earning, gain, income, generated revenue, payment, proceeds or receipts paid to or received by Contractor and in any way connected to the provision of video visitation service pursuant to this Contract. Gross Revenue includes, by way of example and not limitation, the following:  all costs, charges, and fees added to the total cost to visitors or inmates for the completion/scheduling of all remote video visitation sessions, or any other compensation received by Contractor for the completion of all remote video visitation sessions.

2.12.2.  Notwithstanding the foregoing, Gross Revenue does not include the following items:

2.12.2.1.  A Free video visitation session defined as a video visitation session not generating any revenue or compensation for Contractor.  Approved video visitation sessions included on the free video visitation list shall not generate any revenue or compensation for Contractor and shall not be eligible for revenue share to KDOC.  Only those visitors or inmates designated by KDOC to process free video visitation sessions shall be marked as Free in the VVS and designated as such in the VVS detail records.  In the event Contractor collects any revenue or compensation, notwithstanding the source, from any third party related to a completed/scheduled video visitation session, such amounts shall be included in Gross Revenue and eligible for revenue share to KDOC.

2.12.2.2.  Required regulatory charges and taxes that are intended to be paid by the visitor or inmate and then remitted 100% by the billing party to the appropriate governmental agency.

2.12.3.  If Contractor receives revenue or compensation, notwithstanding the source, from any third party related to a completed video visitation session between an inmate and a visitor, such revenue shall be included in Gross Revenue and revenue share shall be payable to KDOC.

2.12.4.  Any additional fees to be charged to inmates or visitors for video visitation sessions from the Facilities must be approved by KDOC prior to implementation. KDOC and Contractor shall mutually agree on the method of revenue share due to KDOC associated with the additional charges/fees.

2.12.4.1.  KDOC shall notify Contractor of any unapproved fees and/or charges associated with the VVS of which KDOC becomes aware. Unapproved fees and/or charges are subject to liquidated damages as specified in Section 2, Subsection 2.11.

2.12.4.2.  Should KDOC and Contractor mutually agree that the charges/fees are to be discontinued, Contractor shall refund each visitor or inmate for the unapproved charges/fees from the date the charges/fees were implemented until the date the charges/fees were discontinued.

2.12.5.  A video visitation session is deemed complete and considered part of Gross Revenue (as described above), when the video visitation session is scheduled and a connection is made by both parties.

2.12.6.  Payments and reports for video visitation sessions are due to KDOC on or before the fifteenth (15th) day of the month following the activity/session month.

Kenneth D. Leek v. Kathryn A. Kfurrus, CDOC, Kansas 5:21-cv-03100. For use in this case only

2.12.7.  Contractor shall provide monthly video visitation detail records, in CSV format, which shall include a detailed breakdown of activity for all video visitation sessions, including but not limited to:

    2.12.7.1.  Facility Name;
    2.12.7.2.  Facility Identification Number/Site Identification Number;
    2.12.7.3.  VVS Station Identifier;
    2.12.7.4.  VVS Station Location Name;
    2.12.7.5.  Free Video Visitation Sessions, Minutes (Per VVS Station);
    2.12.7.6.  Facility to Facility Video Visitation Sessions, Minutes and Gross Revenue (Per VVS Station);
    2.12.7.7.  Remote Video Visitation Sessions, Minutes and Gross Revenue (Per VVS Station);
    2.12.7.8.  Revenue Share (Per VVS Station);
    2.12.7.9.  Total Video Visitation Sessions, Minutes Gross Revenue; and
    2.12.7.10.  Traffic Period and Dates.

2.12.8.  Revenue share payments, usage detail reports, or reports not containing the required fields, received by KDOC after the date specified above are subject to liquidated damages as specified in Section 2, Subsection 2.11.

## 2.13.  Tablet Revenue Share, Payment and Reporting

2.13.1.  Gross Revenue generated by and through the proposed Tablet solution consists of all compensation, earning, gain, income, generated revenue, payment, proceeds or receipts paid to or received by Contractor in any way connected to the provision of Tablets pursuant to the RFP.  Gross Revenue includes, by way of example and not limitation, all of the following:  all per minute fees, application charges, equipment costs and any additional fees/charges generated by the accessibility of Tablets and all additional fees charged to the end-user or inmate and any other compensation received by Contractor.

2.13.2.  Contractor shall absorb all costs of providing Tablets including the provision of support, maintenance, necessary hardware, software, bandwidth, wiring, infrastructure, fee collection and accounting.

2.13.3.  Notwithstanding the foregoing, Gross Revenue does not include the following items:

    2.13.3.1.  A Free transaction or application defined as a transaction or application not generating any revenue or compensation for Contractor.  Approved Tablet transactions or applications shall not generate any revenue or compensation for Contractor and shall not be eligible for revenue share to KDOC.   Only those transactions or applications designated by KDOC as free shall be marked as Free in the Tablet solution and designated as such in the Tablet detail records.  In the event Contractor collects any revenue or compensation, notwithstanding the source, from any third party related to Tablet transactions or applications, such amounts shall be included in Gross Revenue and eligible for revenue share to KDOC.

    2.13.3.2.  Required regulatory charges and taxes that are intended to be paid by the end-user or inmate and then remitted 100% by the billing party to the appropriate governmental agency.

    2.13.3.3.  If Contractor receives revenue or compensation, notwithstanding the source, from any third party related to Tablets, such revenue shall be included in Gross Revenue and Contractor shall pay a revenue share to KDOC.

2.13.4.  Any additional fees to be charged to end-users or inmates for the use of Tablets or Tablet applications at the Facilities must be approved by KDOC prior to implementation. KDOC and Contractor shall mutually agree on the method for revenue share due KDOC associated with the additional charges/fees.

    2.13.4.1.  KDOC shall notify Contractor of any unapproved additional fees and/or charges associated with the use of Tablets of which KDOC becomes aware. The unapproved fees and/or charges are subject to liquidated damages as specified in Section 2, Subsection 2.11.

2.13.4.2.   Should KDOC and Contractor mutually agree that the charges/fees are to be discontinued, Contractor shall refund each end-user or inmate for the unapproved charges/fees from the date the charges/fees were implemented until the date the charges/fees were discontinued.

2.13.4.3.   Should KDOC and Contractor mutually agree that the charges/fees will remain, KDOC and Contractor shall mutually agree on a method for compensation.

2.13.5.   Payments and reports for Tablets are due to KDOC on or before the 15th day of the month following the month of activity.

2.13.6.   Contractor shall provide monthly Tablet detail reports/records, CSV format, which shall include a detailed breakdown of the activity for all transaction types, including but not limited to, electronic messages, photos, attachments, videos, media, application usage, for each Tablet.  Tablet detail records shall include, at a minimum, each of the following items for each Tablet and each transaction or application type:

2.13.6.1.   Facility Name;
2.13.6.2.   Facility Identification Number/Site Identification Number;
2.13.6.3.   Facility Address, Street, City, State, and Zip;
2.13.6.4.   Tablet Identifier (where applicable);
2.13.6.5.   Number to Transactions for Each Transaction Type (Per Tablet);
2.13.6.6.   Minutes of Usage for Each Application Type (Per Tablet);
2.13.6.7.   Gross Revenue for Each Transaction / Application (Per Tablet);
2.13.6.8.   Revenue Share Rate;
2.13.6.9.   Total Revenue Share (Per Tablet);
2.13.6.10.  Total Transactions/Applications, Minutes of Usage, Gross Revenue and Revenue Share;
2.13.6.11.  Traffic Period and Dates; and
2.13.6.12.  Tablet Logon Date and Time.

2.13.7.   On the fifth (5th) day of the month following the month of traffic, Contractor shall submit a monthly invoice and corresponding tablet usage report to KDOC for the full amount of the tablet purchases for the prior traffic month.

2.14.  **Rate Requirements**

2.14.1.   Contractor must agree to provide the required calling rates, video visitation rates, and tablet rates and all related fees specified as found in Section 6 and must comply with Kansas laws and applicable regulations.

2.14.2.   Before any new rate increases or decreases are implemented for any of the inmate communication services required in this RFP, Contractor must submit a written request to receive approval from KDOC at least thirty (30) days prior to the proposed implementation date. KDOC will respond in writing to Contractor's request.  Unapproved adjustments implemented without the prior written approval from KDOC are subject to liquidated damages as specified Section 2, Subsection 2.11.

2.14.3.   In the event Contractor increases the usage rates for any of the inmate communication services required in this RFP without the prior written approval of KDOC, Contractor must issue refunds to all overcharged end-users, visitors or inmates within five (5) business days; a list of the issued credits must be provided to KDOC as documentation. KDOC will not issue a refund of revenue-share or cost recoupment for unapproved rate increases.

2.14.4.   Contractor will implement any rate adjustments for any and all inmate communication systems requested by KDOC within ten (10) calendar days of said request, subject to regulatory approval, as applicable.

2.14.5.   Contractor's ITS shall rate all calls to U.S. Territories including but not limited to: Puerto Rico, U.S. Virgin Islands, Guam, American Samoa and Saipan/Mariana Islands as Domestic International.  Calls to all other countries shall be rated as International.  The calling rates for both Domestic International and International are specified in Appendix A.

2.14.6. Contractor shall calculate the raw duration of each inmate telephone call, video visitation session and Tablet usage (if applicable) in seconds based on the time the call is accepted, video visitation session is completed or Tablet usage begins and the time the call, session or usage is terminated by the ITS, VVS or Tablets respectively. For calls, video visitation sessions or Tablet usage where the duration is at least one (1) second, the duration, in seconds, shall be rounded up to the next whole minute increment and shall be converted from rounded seconds to minutes before the rates are applied.

2.14.7. During the rating process, Contractor shall round the raw calculated amount to the nearest hundredth decimal place (up or down) using normal accounting practices.

## 2.15. Pre-paid and Debit Applications

2.15.1. The pre-paid and/or debit application shall allow for pre-payment for a specific end-user, visitor, telephone number or an inmate.

2.15.2. KDOC requires that Contractor issue refunds to end-users of any inmate communication services for any pre-paid funds remaining in any pre-paid account upon the end-user's request whether the account is active or inactive. Should an account be deactivated by Contractor and the end-user requests to reactivate the account and utilize inmate communication services from inmates at the Facilities, the funds shall be made available to the end-user by Contractor. No fees shall be charged to the end-user for refunds or reactivation of funds associated with a pre-paid account.

2.15.3. Should Contractor adjust the rates in order to complete a call, Contractor shall incur liquidated damages as specified in Section 2, Subsection 2.11. KDOC shall notify Contractor of any approved adjustments in the rates of which KDOC becomes aware.

2.15.4. Contractor shall not prevent the completion of a pre-paid collect call if the end-user's pre-paid collect balance is less than the average cost of a call (regardless of call type) from the Facilities.

2.15.5. The pre-paid and/or debit application shall be internal to KDOC's ITS, VVS, and Tablet and shall not require external applications.

2.15.6. Contractor shall provide the inmate with the balance of the pre-paid or debit account at the time of the call or Tablet application.

2.15.7. The ITS and VVS shall provide the called party with the balance of their pre-paid collect account at the time of the call or scheduling of a video visitation session, as applicable.

2.15.8. The pre-paid and/or debit application shall allow international calls.

2.15.9. The ITS shall be capable of interfacing with the current commissary or JMS provider for ease of transferring money from the inmate's trust /commissary account to the ITS debit account as well as refunding any unused funds to the trust account upon the inmate's release.

2.15.10. It is Contractor's responsibility to initiate and establish a business relationship and necessary interface(s) with the JMS Provider and Commissary Provider. KDOC shall not be responsible for paying any amounts associated with the required interface(s).

2.15.11. Contractor shall supply, at KDOC's request, signage, brochures, and flyers regarding the ITS, VVS and Tablets and/or Contractor's pre-paid and debit programs at no cost to KDOC.

## 2.16. Payments for Video Visitation System Sessions

2.16.1. Contractor shall refund all visitation fees if the video visitation session is dropped due to Contractor related issues.

2.16.2. Contractor shall provide an option for an itemized receipt for all transactions, charges and fees for all video visitation sessions.

### 2.17.  Vendor Retention of End-User Account

2.17.1.  For the purpose of aiding in investigations the Contractor must retain ITS, VVS, and Tablet account information pertaining to an end-user's pre-paid collect, direct bill, and similar accounts for a period of two (2) years after the expiration/termination of the Contract. The information shall include, but not be limited to, the end-user's billing name, address and telephone number.

2.17.2.  KDOC shall have access to such account information upon request, to the extent permissible by law.

### 2.18.  Systems Maintenance

2.18.1.  Contractor shall respond to repair requests from the KDOC Facility by arriving at the site promptly after reasonable notice has been given on a 24-hours a day, 7-days a week, 365-days a year basis.

2.18.2.  Repairs or replacement of nonworking or damaged equipment or software shall be started by a qualified technician within four (4) hours following notification of a service request or system failure.

2.18.3.  Contractor must exhibit to KDOC a best effort approach to the completion of the repairs or replacement during the first 24-hours following notification of a problem.

2.18.4.  KDOC shall be notified of progress and/or delays in progress until the problems are resolved.

2.18.5.  Contractor shall notify KDOC any time a technician will be dispatched to the Facilities and prior to the technician's arrival.

2.18.6.  Additionally, KDOC may cancel the Contract with Contractor if Contractor has not cured a service problem within 10 days of Contractor receiving notice of the problem from KDOC and the Contractor may be subject to liquidated damages as specified in Section 2, Subsection 2.11.

2.18.7.  Each party shall report to the other party any misuse, destruction, damage, or vandalism. Contractor will assume liability for any and all such damages.

2.18.8.  All operation, maintenance and repair issues regarding the ITS, VVS, and Tablet services shall be reported by Contractor to KDOC promptly.

2.18.9.  Contractor shall provide KDOC with ITS, VVS and Tablet technology software upgrades as they become available.  All upgrades must be provided to KDOC at no additional cost.

## 3.  Specifications

3.1  The Contractor is to provide Inmate Communication Services including Inmate Telephone Services (ITS), Video Visitation Services (VVS), and Tablet Services at the Kansas Department of Corrections (KDOC) Facilities listed in Appendix B of the RFP (hereinafter referred to as "Facilities").

A turnkey inmate calling solution is to be provided that shall include, without limitation, collect, pre-paid collect, pre-paid cards, debit and free calls. Contractor shall install and operate inmate telephones and related equipment. Contractor shall, without cost to KDOC, provide all wiring for the inmate and visitation telephones (if applicable), install the inmate and visitation telephones (if applicable) and the related hardware and software specifically identified herein, to enable inmates at the Facilities to complete without limitation, local, long distance and/or international collect, pre-paid collect, debit and/or free calls from the Facilities.

Contractor shall provide turnkey video visitation solution (VVS) which shall include, without limitation, automated scheduling software, and completion of remote video visitation sessions.  Contractor shall install and operate all video visitation stations and related equipment.  Contractor shall, without cost to KDOC, provide all wiring for the video visitation stations, install the video visitation stations and related hardware and software specifically identified herein, to enable visitors/end-users to schedule and complete remote video visitation sessions with inmates from the Facilities.

Contract ID: 00000000000000000000044861
Event ID: EVT0005345
Page 22

Contractor shall provide a solution that allows inmates access to electronic messaging, inmate requests, financial transactions, and other inmate informational, educational or recreational services. KDOC, at its sole discretion, will select the solution that best meets KDOC's needs from the following:

Contractor shall provide a correctional-grade mobile device/tablet solution ("Tablets") at no cost to KDOC. The Tablets shall, at a minimum, have the capability to access to various applications including electronic messaging, PAN request submission, education, instructional material, entertainment, media, inmate requests, medical requests, grievances and commissary ordering. KDOC reserves the right to add an ITS and/or VVS application to the tablets.

The Contractor's provided solution will meet the requirements specified in the RFP bid document and Attachments and as described in the Contractor bid submittal.

4. **Inmate Communication Systems Requirements**

    4.1    **Standards**

        4.1.1.    Inmate telephone services are to be provided and shall comply with all applicable Federal Communication regulations relating to inmate communication services in correctional facilities.

        4.1.2.    Contractor shall comply with all applicable laws, rules, regulations, and orders of any authorized agency, commission, unit of the federal government, or state, county, or municipal government.

    4.2.    **Implementation**

        4.2.1.    Contractor shall submit an implementation plan for all inmate communications services, which shall include an installation schedule, for each Facility, including ITS, VVS, and Tablets. The implementation plans shall be a part of this Contract and must be followed.

        4.2.2.    Initial installations for the ITS must be completed within sixty (60) days of the execution of the Contract between KDOC and the selected Contractor. Failure to implement within sixty (60) days will result in liquidated damages as specified in Section 2, Subsection 2.11. Implementation plan(s) will become a part of the Contract and must be followed.

        4.2.3.    Initial installations for the VVS and Tablets must be completed within one-hundred eighty (180) days respectively of the execution of the Contract between KDOC and the selected Contractor. Failure to implement within one-hundred eighty (180) days will result in liquidated damages as specified in Section 4, Subsection 4.12. Implementation plan(s) will become a part of the Contract and must be followed.

    4.3.    **Transition Requirements**

        4.3.1.    For the initial installation, Contractor will work with KDOC and the incumbent inmate communication services provider to ensure an orderly transition of services, responsibilities and continuity of the services required by KDOC.

        4.3.2.    Upon expiration, termination, or cancellation of the Contract, Contractor shall accept the direction of KDOC to ensure all inmate communication services are smoothly transitioned. At a minimum, the following shall apply:

        4.3.2.1    At no cost to KDOC, Contractor shall supply twenty-five (25) workstation(s) which shall become the property of KDOC after expiration, cancellation or termination of the Contract to allow KDOC access to all CDRs, visitation detail, Tablet detail, recordings (audio and video), documentation, reports, and data contained in the inmate communication applications/systems.

        4.3.2.2.    Contractor shall discontinue providing service or accepting new assignments under the terms of the Contract, on the date specified by KDOC. Contractor agrees to continue providing all services

Kenneth D. Leek v. Kenny, Andrews (USDC Kansas) 5:21-cv-03100. For use in this case only

Contract ID: 000000000000000000044861
Event ID: EVT0005345
Page 23

in accordance with the terms and conditions, requirements and specifications of the Contract for a period not to exceed ninety (90) calendar days after the expiration, termination or cancellation date of the Contract. Revenue share/cost recoupment payments will be due and payable by Contractor to KDOC at the percentage provided in the Contract until inmate communication services are no longer handled by Contractor.

4.3.3.   Contractor agrees to remove its equipment at the conclusion of the Contract in a manner that will allow the reuse of wiring/cabling associated with all inmate communication services.

## 4.4.   General Installation Requirements

4.4.1.   Contractor shall be responsible for all costs associated with the installation of the inmate communication services including but not limited to ITS, VVS, and Tablets which shall include but not be limited to, the necessary labor, parts, materials, transportation, purchase of equipment, wiring, new electrical circuits, cables, installation, service, maintenance, network and transmission and day-to-day operation to maintain all proposed system components in good working order and in compliance with the equipment manufacturer's specifications.

4.4.2.   Contractor shall install the quantity of inmate telephones, standard visitation telephones, video visitation stations, Tablets, and Tablet Charging Stations as detailed in Attachment A.

4.4.3.   Contractor shall install a separate, dedicated network to accommodate all inmate communication services. Contractor's inmate communication services shall not be configured to reside on or use KDOC's network.

4.4.4.   Contractor shall install/mount all inmate communication services equipment in accordance with KDOC's requirements.

4.4.5.   Use of existing conduit, raceways, cable, wiring, switches, circuits, and terminals within the Facilities is at the risk of Contractor. Exposed wiring is not permitted. Ownership of any wiring or conduit installed under the Contract by Contractor becomes KDOC's property upon termination and/or expiration of the Contract.

4.4.6.   Contractor agrees that if any cabling work is required as part of any installation, all new cables shall be used and marked clearly and legibly at both ends, and meet all applicable wiring standards for commercial buildings and must be approved by the Facilities maintenance personnel.

4.4.7.   Contractor shall be responsible for installing all new wiring, power, cabling and network circuits at no cost to KDOC to support the provision of the outlined inmate communication services at no cost to KDOC.

4.4.8.   Contractor agrees to obtain KDOC's written approval before making any physical changes to the Facilities, such as drilling into walls, floors, ceilings or any other portion of the Facilities. This includes existing, newly constructed and/or expanded Facilities.

4.4.9.   Contractor shall provide, install, maintain, replace and upgrade adequate surge and lightening protection equipment to protect all lines, circuits and equipment used for the inmate communication services.

4.4.10.  Contractor shall provide, install, maintain, replace and upgrade an Uninterruptible Power Supply (UPS) back-up power for the inmate communication services to ensure there is no loss of call, video or transaction processing and data storage in the event of a power failure.

4.4.11.  A separate power supply shall not be required for the inmate communication services equipment. A power source will be made available by KDOC for the inmate communication services.

4.4.12.  Installation of all cabling, telephones, video visitation stations, Tablets, and related equipment shall be accomplished during normal business hours at the Facilities or as otherwise specified by the Warden or Central Office.

Kenneth D. Lee v. Kansas Dept. of Corrections 5:21-cv-03100-SAC-ADM For use in litigation only

4.4.13.  Contractor shall install, repair, and maintain all Contractor-provided equipment, including but not limited to, any wiring or cable work required from the demarcation throughout the Facilities. All Contractor-provided equipment, installation, maintenance, repair costs, and all costs or losses due to vandalism shall be the total responsibility of Contractor.

4.4.14.  Contractor shall clean-up and remove all trash and packaging materials resulting from work performed. Unless otherwise specified by KDOC, no equipment, inventory or spare parts shall be stored by Contractor at the Facilities.

4.4.15.  Contractor shall correct any damage to KDOC's property caused by maintenance or installation associated with the inmate communication services, including repairs to walls and ceilings.

4.4.16.  Contractor shall provide written documentation via an acceptance test manual indicating that all circuits and network have been tested and all cables, pairs, fiber strands, blocks are legibly marked after the completion of each installation associated with the inmate communication services. KDOC must sign off on the acceptance test manual to verify the work has been completed.

## 4.5.  Personnel Security

4.5.1.  All Contractor employees shall obtain, at Contractor's cost, the appropriate personnel background security clearance prior to arrival at the Facilities.

4.5.2.  All Contractor employees will comply with KDOC's policies and procedures.

4.5.3.  Entry to the Facilities is subject to the approval of KDOC's Warden or Central Office.

## 4.6.  Training

4.6.1.  Contractor shall provide in-person training for each inmate communication service to KDOC's staff. Additional training (in-person or via the web) shall be provided to new staff at no cost to KDOC. Training manuals shall be provided to KDOC's staff at all training meetings and will become the property of KDOC. At KDOC's request, Contractor shall provide a downloadable version of all user manuals and training materials.

4.6.2.  When requested by KDOC, informational pamphlets shall be available to inmates and end-users and shall describe the applicable features and functionalities of each inmate communication service.

4.6.3.  Contractor will also provide full documentation for all inmate communication services features and documentation for any and all added technology features that are provided under this Contract.

## 4.7.  Upgrades and Performance Process

4.7.1.  Contractor shall notify KDOC with written notice, including detailed information, of any new inmate communications service software upgrades, patches, or additional features to be added to either system, within thirty (30) days of KDOC acceptance of the new software, patch, or feature.

4.7.2.  Contractor shall provide KDOC with inmate communication services software upgrades as they become available. All upgrades must be within one (1) release of the newest operating system and provided to KDOC at no additional cost.

4.7.3.  Contractor shall adhere to the following performance process when upgrading the ITS, VVS and Tablet software, equipment, or performing any changes to either system at the Facilities. Any deviation from this process may result in liquidated damages incurred by Contractor as described in Section 2, Subsection 2.11.

4.7.4.  Contractor shall perform extensive testing on all system changes or upgrades to any of the inmate communication services, prior to introducing them to KDOC. At a minimum, this shall include the following:

Contract ID: 00000000000000000000044861
Event ID: EVT0005345
Page 25

4.7.4.1.  Circuit/network testing;

4.7.4.2.  Configuration / setting preservation testing;

4.7.4.3.  ITS: call processing, debit/pre-paid availability, international calling;

4.7.4.4.  VVS: video visitation session quality and scheduling application;

4.7.4.5.  Tablets:  access to all transactions, applications and applicable purchase processes;

4.7.4.6.  Access to all inmate communication service user applications; and

4.7.4.7.  Performance testing.

4.7.5.  Contractor shall provide KDOC with written details regarding any change to voice prompts, dialing, video visitation or Tablet procedures or processes impacting inmates and end-users/visitors.

4.7.6.  Contractor shall receive written permission from KDOC, before scheduling or proceeding with any functionality changes to the inmate communication services at the Facilities, especially if the changes will cause an interruption in service.

4.7.7.  KDOC, at its option, shall have a minimum of thirty (30) days to notify inmates at the Facilities of any inmate communication services changes that affect the inmates or end-users/visitors.

4.7.8.  Contractor shall work with the Facilities to schedule all changes and/or upgrades during a time when the inmate communication services are not being used regularly by the inmates. Contractor shall coordinate a convenient time and day with KDOC to implement the changes or upgrades to avoid an interruption in service.

4.7.9.  At the request of KDOC, Contractor shall coordinate the presence of a technician at the Facilities on the day of implementation to place test calls, video visitation session and Tablet transactions and ensure all inmate communication services are functioning properly.

4.7.10. All said changes shall be made by Contractor at no cost to KDOC.

## 4.8.  ITS Specific Installation Requirements

4.8.1.  All telephone equipment provided shall be operational at the time of the initial installation.

4.8.2.  ITS shall meet current industry standard of less than 1.0% packet loss, latency of less than 150 MS, and jitter of less than 30 MS.

4.8.3.  The telephone sets shall be suitable for a correctional environment, stainless steel, sturdy, non-coin, vandal and tamper resistant; the cord length for the inmate and visitation telephones is specified in Attachment A.

4.8.4.  Contractor shall install all new telephone equipment even if the selected Contractor is the incumbent inmate telephone service provider.

4.8.5.  The telephone terminal network cable shall power all telephone equipment, not require an additional power source.

4.8.6.  The telephones must not contain any exterior removable parts.

4.8.7.  All telephone sets shall include volume control, as needed and as specified by KDOC.

4.8.8.  Contractor shall place placards containing dialing instructions in English, Spanish, and Braille on/near each telephone as needed and each time an inmate telephone set is replaced.

4.8.9.  At no cost to KDOC, Contractor shall install additional telephones (inmate and visitation), monitoring and recording equipment as needed, within thirty (30) days of request. This includes newly constructed or expanded buildings and Facilities.

Contract ID: 00000000000000000000044861
Event ID: EVT0005345
Page 26

4.8.10. If the installation of the additional telephones (inmate and visitation) is not completed within thirty (30) days, Contractor may incur liquidated damages as described in Section 2, Subsection 2.10.

4.8.11. KDOC requires the ITS be fully installed and configured over PTDSN, either fiber or Ethernet connectivity and shall not require the use of copper.

Kenneth D. Leek v. Kathryn A. Androski, USDC of Kansas 5:21-cv-03100. For use in this case only

**4.9.    ITS and User Application Specifications**

4.9.1.    The ITS shall be capable of providing all operational features and system requirements applicable to all calls placed through the system, including local, long distance, and international calling and visitation sessions.

4.9.2.    The ITS shall be configured to process all or any combination of the following bill types, without limitation; collect, free, pre-paid collect, pre-paid card, debit and/or speed dial.

4.9.3.    Contractor shall provide a sufficient size of bandwidth and network resources needed to accommodate for jitter, latency, and packet loss to ensure inmates are allowed to place calls 99.9% of the time. KDOC reserves the right to require Contractor to revise its configuration to KDOC's reasonable satisfaction to resolve any inmate complaints of reception degradation or unavailable service which arise as a result of Contractor's ITS configuration. Such changes shall be completed by Contractor at no cost to KDOC.  At KDOC's request, Contractor shall provide a report documenting the completion ratio on a monthly basis or other frequency designated by KDOC.

4.9.4.    The reception quality shall meet telecommunication industry standards and shall be at least equal to the quality available to the general public at a Mean Opinion Score (MOS) score of at least 4.0. Contractor shall accept KDOC's reasonable decision regarding whether the reception quality is acceptable.

4.9.5.    Call acceptance by the called party shall be accomplished for all calls through Dual-Tone Multi-Frequency (DTMF) confirmation (positive acceptance). Voice recognition is not an acceptable method for positive acceptance.

4.9.6.    The ITS shall be capable of recognizing and distinguishing standard or irregular busy signals, standard or irregular ringing signals, answering machines, voicemail, cellular telephones, ring-back tones, chain dialing.

4.9.7.    The ITS shall be configured to monitor the switch hook on the telephone sets. If the switch hook is pushed down or moved from its idle position, the call must be disconnected immediately and the call prompts must come on to prevent fraud or unauthorized dialing. Contractor must assume all responsibility for fraud or unauthorized dialing occurring as a result of the ITS failing to meet this requirement.

4.9.8.    With each call, the ITS must provide an automated message to advise the called party that:

4.9.8.1.    That the call is coming from a correctional facility.

4.9.8.2.    The call is coming from a specific inmate.

4.9.8.3.    The call may be monitored and recorded.

4.9.9.    With each call, the ITS shall clearly identify the type of call being placed to the called party: collect, pre-paid, free. This recording must be free of any charges.

4.9.10.   The ITS shall be able to accommodate any of the following options for recording and playback of an inmate's name to the called party:

4.9.10.1.    The inmate may record a name each time a call is placed. KDOC requires no more than 2 seconds be allowed for the inmate to record a name; this setting shall be configurable in the ITS;

4.9.10.2.    The inmate may record a name only once (with the first call attempted); the recorded name will be stored in the ITS and shall be played back with all subsequent call attempts. KDOC requires no more than 2 seconds be allowed for the inmate to record a name; this setting shall be configurable in the ITS; or

4.9.10.3.    No name is recorded. If KDOC selects this option, the announcement to the called party should not include silence or an interruption where the name recording would normally be included.

Kenneth D. Leek v. Kathy Allbrook, US Dist of Kansas, 21-cv-03100, for use in this case only

Contract ID: 0000000000000000000044861
Event ID:  EVT0005345
Page 28

4.9.11.  For calls that are not completed, the ITS shall play a recorded message to the inmate detailing why the call was not completed. KDOC reserves the right to request Contractor to modify/revise the recordings at any time during the Contract at no cost to KDOC and within 30 days of the request.

4.9.12.  Following the dialing sequence, Contractor shall configure the ITS to allow inmates to remain muted while still being able to hear the call progress (ex: ringing on the line, voicemail pick-up).

    4.9.12.1.  Allow inmates to remain muted while still being able to hear the call progress (ex: ringing on the line, voicemail pick-up); or

    4.9.12.2.  Place the inmate on-hold and not permit the inmate to hear the call progress.

    4.9.12.3.  In no event shall the inmate be allowed to communicate with the called party until the call is positively accepted.

4.9.13.  The ITS shall be capable of processing and completing international collect calls.

4.9.14.  The ITS user application shall allow the following search criteria and filters (without limitation) to be applied to the CDR queries:

    4.9.14.1.  Inmate Name (First, Last);
    4.9.14.2.  Inmate Personal Identification Number;
    4.9.14.3.  Record Identifier;
    4.9.14.4.  Date Range (Start Date/Time and End Date/Time);
    4.9.14.5.  Facility;
    4.9.14.6.  Called Number;
    4.9.14.7.  Originating Number;
    4.9.14.8.  Station Name;
    4.9.14.9.  Call Type;
    4.9.14.10.  Bill Type;
    4.9.14.11.  Duration;
    4.9.14.12.  Call Amount;
    4.9.14.13.  Flagged Calls;
    4.9.14.14.  Monitored Calls;
    4.9.14.15.  Recording Type;
    4.9.14.16.  Completion Type;
    4.9.14.17.  Termination Type;
    4.9.14.18.  Validation Result;
    4.9.14.19.  Pre-Paid Card Number;
    4.9.14.20.  Phone Group(s);
    4.9.14.21.  Visitation Phone(s); and
    4.9.14.22.  Custom Search.

4.9.15.  The ITS user application shall allow KDOC to export the reports in a format selected by KDOC (.csv, PDF, Microsoft Excel 2010 or greater).

4.9.16.  At a minimum, the ITS user application shall be equipped to generate the following standard reports in addition to the CDRs:

    4.9.16.1.  Call Statistics by Date Range;
    4.9.16.2.  Frequently Called Numbers;
    4.9.16.3.  Frequently Used Personal Identification Numbers;
    4.9.16.4.  Commonly Called Number;
    4.9.16.5.  Call Detail Report;
    4.9.16.6.  Gross Revenue Report by Date Range;
    4.9.16.7.  Facility Totals and Statistics;
    4.9.16.8.  Called Party/Number Accepting Report;
    4.9.16.9.  Number of calls rejected to resource unavailable;

Kenneth D. Leavitt-Kratzman v. Abrински, USDC of Kansas 5:21-cv-03100 for use in this case only

4.9.16.10.  Fraud/Velocity Report;

4.9.16.11.  Total Calls;

4.9.16.12.  Personal Allowable Numbers (PAN) Report;

4.9.16.13.  Pre-Paid Card Report;

4.9.16.14.  Debit Usage Report;

4.9.16.15.  Debit Balance and Funding Report;

4.9.16.16.  Pre-Paid Card Balance Report;

4.9.16.17.  Bill and Call Type Distribution;

4.9.16.18.  Phone Usage;

4.9.16.19.  Reverse Look-Up; and

4.9.16.20.  User Audit Trail.

4.9.17.  The ITS user application shall allow KDOC to export the reports in a format selected by KDOC (.csv, PDF, Microsoft Excel 2010 or greater).

4.9.18.  Contractor shall provide KDOC with the capability to search, query and export end-user pre-paid account information for investigative purposes. KDOC shall be capable of validating account holder status, number of pre-paid deposits and associated amounts, generating reports identifying, at a minimum, associated telephone numbers, method of payment, inmates from which calls are accepted, the number of completed calls with an associated date and time, any pre-paid funding fees and other applied charges and taxes.

4.9.19.  The ITS shall have the capability to customize reports in a form mutually agreed upon by KDOC and Contractor.

4.9.20.  Contractor's ITS user application shall at a minimum allow:

4.9.20.1.  Report generation to include the reports listed above;

4.9.20.2.  The creation, modification and deactivation of user accounts;

4.9.20.3.  The creation, modification and deactivation of inmate accounts;

4.9.20.4.  The creation and modification of telephone numbers in the ITS including entry of free and privileged telephone numbers without the assistance of Contractor;

4.9.20.5.  Assignment of inmates or an inmate type to an agency, inmate telephone or a group of inmate telephones;

4.9.20.6.  Locating and accessing a specific recording by utilizing a unique recording/call identifier;

4.9.20.7.  Block/unblock telephone numbers without the assistance of Contractor;

4.9.20.8.  Configure an alert that will detect and prohibit a call made to a restricted number, a call using a restricted Personal Identification Number, or a call made from a restricted telephone.

4.9.20.9.  Program a specific speed dial code to selected telephone numbers as determined by KDOC and at no cost to KDOC and without the assistance of Contractor; and

4.9.20.10.  Query the CDRs for inmate activities and calling patterns, including the provision of reverse look-up at no cost to KDOC. The reverse look-up feature shall include, at a minimum, the end-user's name and billing address for all collect and pre-paid calls.

4.9.21.  The ITS shall have the capability to allow KDOC to create, view and track service tickets associated with the ITS or Facilities.

4.9.22.  Contractor shall ensure continuous diagnostics and supervision for call processing and call recording. Contractor shall be capable of performing remote diagnostics to the ITS to determine if a problem exists with the telephone, station port, channel.

4.9.23.  The ITS shall comply with the Americans with Disabilities Act (ADA) requirements including, but not limited to, providing telephones which are accessible to persons in wheelchairs and providing devices that are compatible with Telephone Devices for the Deaf (TDD) and Video Phone/Video Relay Services (VRS) and meet these requirements:

4.9.23.1.  Contractor shall provide the number of TDD telephones and ports and VRS units specified in Attachment A; and

Contract ID: 00000000000000000000044861
Event ID: EVT0005345
Page 30

4.9.23.2.   TDD telephones shall be able to work with the ITS at the Facilities.

4.9.23.3.   The ITS must offer the called party an option to receive a rate quote during the call acceptance process.

4.9.24.   The ITS shall be able to accommodate pro-bono calls to consulates for all countries which may be required for ICE detainees. This option, when requested by KDOC, shall be provided at no cost to KDOC. Contractor shall accept KDOC's direction for how pro bono calling services are configured via the ITS.

4.9.25.   Contractor shall be able to establish an informant line at no cost to KDOC. Calls to the informant line shall be free and shall be routed via the ITS to a destination designated by KDOC. Contractor shall accept KDOC's direction for how the informant line is configured through the ITS.

4.9.26.   Contractor shall work with KDOC to implement a reporting line, which complies with the Prison Rape Elimination Act (PREA) of 2003. At a minimum, Contractor shall:

4.9.26.1.   Route free calls via the ITS to a destination provided and designated by KDOC which may be the same as that used for the KDOC informant line.

4.9.26.2.   At no cost to KDOC, provide a telephone line to KDOC dedicated for PREA calls to which the calls will be routed as free.

4.9.26.3.   Contractor shall have the capability to allow KDOC to maintain the same telephone number currently in place at all Facilities and/or utilize any telephone number specified by KDOC.

4.9.27.   Contractor shall establish a child abuse hotline at no cost to KDOC at the Kansas Juvenile Correctional Complex. Calls to the child abuse hotline shall be free and without the use of a PIN and shall be routed via the ITS to the Kansas Department for Children and Families. Such calls shall be confidential unless authorized KDOC personnel activate the recording capabilities.

## 4.10.  ITS Security Features

4.10.1.  The ITS shall prohibit:

4.10.1.1.   Direct-dialed calls of any type;
4.10.1.2.   Access to a live operator for any type of calls;
4.10.1.3.   Access to 411 information services;
4.10.1.4.   Access to 911;
4.10.1.5.   Access to 800, 866, 888, 877, 900, and any other 800 or 900 type services; and
4.10.1.6.   Access to multiple long-distance carriers via 950, 800 and 10 10-XXX numbers.

4.10.2.  The ITS shall prevent call collision or conference calling among telephone stations.

4.10.3.  The ITS shall be able to shut down and/or disable an individual telephone or telephone group(s) quickly and selectively without affecting other telephones or telephone group(s). KDOC must be able to shut down the ITS via a workstation, the ITS user application and/or by cut-off switches at several locations including, but not limited to:

4.10.3.1.   At demarcation location;
4.10.3.2.   Central control; and
4.10.3.3.   By select housing units.

4.10.4.  The ITS shall not accept any incoming calls. Contractor shall work with the LEC to ensure such control.

4.10.5.  The ITS, upon detection of a three-way call, forwarded call, conference call, and/or transferred call, shall be able to flag and/or terminate the call immediately. These calls shall be flagged in the CDRs as such.

4.10.6. The ITS shall allow the called party to block their telephone number during the call acceptance process.

4.10.7. As specified by KDOC, the ITS shall have the capability to allow calls to specific numbers at specified times during the day.

4.10.8. The ITS shall be capable of limiting the length of a call, providing service at specified times of the day and allowing a maximum number of minutes or seconds per inmate, per month. The current call time limit for the Facilities is specified in Attachment A.

**4.11.  Personal Identification Number Application**

4.11.1. The Personal Identification Number (PIN) application shall work with the ITS allowing inmates to use PINs to complete calls via the ITS and include all of the following features and functionalities:

4.11.1.1. The capability to provide collect, pre-paid and debit, free and speed dial calling utilizing a PIN;

4.11.1.2. The capability to interface with KDOC's JMS to allow for inmate PINs to be automatically transferred to the ITS. It is Contractor's responsibility to contact the JMS provider, establish a working business relationship and identify the requirements necessary to interface with the JMS to ensure Contractor will be able to meet the PIN requirements listed below with the initial implementation. KDOC shall not be responsible for paying any amount associated with the required interface.

4.11.1.3. The capability to receive, accept and apply alphanumeric characters in an inmate's ID.

4.11.1.4. The capability of accommodating any of the following options for how PINs are received and/or generated by the ITS:

4.11.1.4.1. JMS generates and sends to the ITS an inmate ID. The ITS stores the inmate ID and generates an additional unique identifier to be added to the inmate ID. The combination of the inmate ID and the additional unique identifier shall be the PIN;

4.11.1.4.2. JMS generates and sends to the ITS an inmate ID along with additional inmate data. The ITS stores the inmate ID and utilizes the additional inmate data to create the complete PIN;

4.11.1.4.3. JMS generates and sends the complete PIN to the ITS. The ITS stores the complete PIN;

4.11.1.4.4. The ITS, without an interface with the JMS, auto-generates the complete PIN.

4.11.1.5. The ITS shall be capable of accepting a CSV file of existing PIN information from the incumbent Contractor.

4.11.1.6. The ITS shall be capable of accepting a manually entered PIN.

4.11.1.7. The interface between the JMS and ITS shall automatically update the status and location of the PIN in the ITS based on the inmate's status and location in the JMS (e.g. newly booked, transferred, released, housing unit, cell location,).

4.11.1.8. KDOC-issued inmate ID is the PIN and is 7 digits in length.

4.11.1.9. PINs shall not be required for booking/intake phone(s).

4.11.1.10. Once a PIN has been activated in the ITS, the inmate shall only be allowed to place calls from a designated Facility or group of inmate telephones located at the Facility.

4.11.1.11. When an individual PIN is added or modified in the system, the ITS shall document the date/time and the user making the change.

Kenneth D. Lee v. Kansas, A Artifest of KDOC of Kansas 5:21 Document For use in this case only

Contract ID: 0000000000000000000044861
Event ID: EVT0005345
Page 32

4.12.  **Personal Allowed Numbers**

4.12.1.  The ITS shall have the capability to store a list of Personal Allowed Numbers (PAN) associated with each PIN.

4.12.2.  The quantity of approved telephone numbers within a PAN shall be configurable.

4.12.3.  The ITS shall allow authorized users to set a universal quantity of PANs at the inmate level or override the default quantity of PANs for an inmate.

4.12.4.  PANs shall allow authorized users to set a universal quantity of approved telephone numbers for each PIN.

4.12.5.  The ITS shall have the capability to track PAN changes based on a frequency required by KDOC. The ITS shall have the capability to notify the user if a PAN change is requested to be made outside of the allowed timeframe (e.g. every ninety (90) days).

4.12.6.  The proposed ITS shall document all updates, modifications and/or details for a PAN (e.g. user name, modification made, time/date stamp).

4.12.7.  ITS shall be capable of storing the following information (at a minimum) for each telephone number on the PAN; telephone number, called party name, address and relationship to inmate.

4.13.  **ITS Monitoring and Recording Requirements**

4.13.1.  The ITS shall be capable of monitoring and recording all inmate calls and visitation sessions from any telephone within the Facilities unless there are restrictions that prohibit the recording and monitoring of certain calls and visitation sessions such as attorney-client privilege.

4.13.2.  The ITS shall be able to exclude all restricted or privileged calls and visitation sessions and clearly designate non-recorded calls/visitation session within the ITS user application.

4.13.3.  The ITS shall allow designated users at the Facilities to play back a recorded call/visitation session in progress (e.g. live monitoring) via the ITS user application.

4.13.4.  The ITS shall be capable of recording calls/visitation sessions in a manner allowing designated users to isolate the inmate or the end-user side of the recording for playback.

4.13.5.  The ITS shall provide simultaneous playback and continuous recording of calls and visitation sessions.

4.13.6.  The live monitoring feature shall display a list of calls in progress to allow KDOC to scan through all calls in progress or to listen to a specific call. At a minimum, the default view shall sort calls in chronological order. Private calls, such as attorney calls, shall be indicated as such in the display window. For the purpose of call monitoring, KDOC prefers that the ITS display the fields below. Contractor shall indicate any display fields not currently available.

    4.13.6.1.  Call Start Time;
    4.13.6.2.  Facility;
    4.13.6.3.  Phone Location Name;
    4.13.6.4.  Inmate Name;
    4.13.6.5.  Inmate PIN;
    4.13.6.6.  Called Number;
    4.13.6.7.  Private/Attorney Call;
    4.13.6.8.  Called City, State;
    4.13.6.9.  Call Type;
    4.13.6.10.  Bill Type;
    4.13.6.11.  Cost;
    4.13.6.12.  Call Status;

Kenneth D. Lewis v. Jeff Zmuda, et al. USDC of Kansas 5:21-cv-03100. For use in this case only

4.13.6.13.  Alert; and

4.13.6.14.  Duration.

4.13.7.  All CDRs, including all attempted and completed calls, shall be stored online for the life of the Contract. A copy of all CDRs shall be stored offline by Contractor for a minimum period of five (5) years following the expiration of the Contract.

4.13.8.  All call recordings and visitation sessions shall be stored online for the life of the Contract. A copy of all recordings shall be stored offline by Contractor for a period of five (5) years following the expiration or termination of the Contract and any renewal terms.

4.13.9.  Contractor shall be responsible for supplying all storage media (CDs/DVDs, USB drives) at no cost to KDOC throughout the life of the Contract and any renewal terms.

4.13.10.  Contractor shall provide KDOC with the number of workstations indicated in Attachment A. The workstations shall work in real-time with the ITS, for such monitoring, recording and reporting. The workstations shall each include a CD/DVD burner, flat screen monitor, speakers (built in or external), mouse, keyboard, data/audio burning software, laser printer and a licensed copy of Microsoft Office (or equivalent).

4.13.11.  Contractor shall provide remote access to the ITS at no cost to KDOC.

4.13.12.  The provision of remote access shall allow KDOC the same features and functionalities, permitted by the user's level of access, available on a Contractor-provided workstation.

4.13.13.  For term of the Contract, KDOC shall have access to all CDRs from all workstations and remote access computers, based on the user's access level.

4.13.14.  The ITS shall be capable of providing alerts for certain calling events and, at a minimum, allow designated users to receive or be forwarded a live call/visitation session to a specified destination.

4.13.15.  The ITS user application shall copy/export recordings with no loss in quality and shall be capable of placing an audio and visual date/time stamp with the recording.

4.13.16.  The ITS shall be capable of emailing and copying recorded calls and visitation sessions onto a CD/DVD or other storage medium in audio or MP3/data format with tamper free capabilities.

4.13.17.  The copying/burning application shall be internal to the ITS.

4.13.18.  KDOC reserves the right to require Contractor to provide onsite storage of all call recording as no cost.

4.14. **Video Visitation Services**

4.14.1.  The VVS shall consist of hardware, firmware and software designed to enable KDOC to initiate, monitor, record, and retrieve video visitation sessions.

4.14.2.  The proposed VVS shall provide all operational features and system requirements applicable to all video visitation sessions placed through the VVS including inmate to general public, inmate to court, and inmate to attorney video visitation sessions.

4.14.3.  The VVS shall interface with KDOC's JMS/ITS to allow for inmate and visitor information to be automatically transferred between the JMS and VVS. KDOC will not be responsible for paying any amount(s) interface associated with the required interface(s).  KDOC prefers the inmate identifier utilized for the ITS is the same inmate identifier for the VVS.

4.14.4.  Contractor shall provide internet test capability to remote video visitors.

4.14.5. The VVS must be able to shut down and/or disable an individual video visitation station or group of video visitation stations quickly and selectively without affecting other video visitation stations.

4.14.6. The VVS shall be capable of limiting the length of a video visitation session providing service at certain times of the day/week/month and allowing a maximum number of video visitation sessions per inmate per week or month.

4.14.7. Contractor must have the capability to provide remote access to the VVS at no additional cost.  The provision of remote access shall allow KDOC the same features and functionalities, permitted by the user's level of access, available on a control workstation.

**4.15.** <u>VVS Specific Installation Requirements</u>

4.15.1. Contractor shall provide KDOC the number of VVS control workstation(s) specified in Attachment A. The workstations shall work in real-time with the VVS, for monitoring, recording and reporting. The workstation shall each include a CD/DVD burner, two (2) flat screen monitors, built in speakers, mouse, keyboard, data/audio burning software, laser printer and a licensed copy of Microsoft Office (or equivalent). Contractor shall also provide KDOC the number of monitoring TVs (46" or greater) specified in Attachment A.

4.15.2. VVS stations shall be suitable for a correctional environment, stainless steel, sturdy, vandal and tamper resistant with a shatter proof screen. VVS stations shall include the cord length requirements as those for inmate telephone sets as described in Attachment A.

4.15.3. The VVS stations shall not include any removable parts.

4.15.4. The VVS stations shall include volume control.

4.15.5. VVS stations shall include picture-in-picture viewing.

4.15.6. Upon installation of the VVS, Contractor will be responsible for providing all labor, equipment, supplies, materials, software, configuration (hardware, software, networking and bandwidth), documentation, testing and training necessary for the completion of the installation.

4.15.7. The VVS must provide high-quality, stereo audio and broadcast-quality video while meeting the industry quality standards; specifically, audio of G.711 or better and video of H.264 or better.

4.15.8. Upon completion of the initial installation and any ongoing installations, Contractor shall provide KDOC with a list of inmate and visitor video visitation stations, specifications, and location of each unit.

4.15.9. Contractor shall place instructions in English and Spanish on or near each station.   Instructions shall be replaced each time a VVS station is replaced.

4.15.10. Video visitation rate use flyers and/or additional video visitation related information shall be provided by Contractor upon KDOC's request and at no cost.

4.15.11. At no cost to KDOC, Contractor shall install additional VVS stations, including monitoring and recording equipment as needed, within thirty (30) days of request. This includes newly constructed or expanded Facilities. If Contractor fails to provide and install the additional visitation units within thirty (30) days Contractor shall be liable for liquidated damages as described in Section 2, Subsection 2.11.

**4.16.** <u>VVS Registration and Scheduling</u>

4.16.1. The VVS shall include a web-based scheduling application allowing visitors (public and professional) to register, schedule, fund and/or cancel standard and remote video visitation sessions using an internet browser and internet connection.

4.16.2.  The VVS shall prohibit the scheduling of video visitation sessions for any visitor who has not been approved by KDOC following the registration process.

4.16.3.  The VVS shall have the capability to allow smart phone scheduling.

4.16.4.  The VVS shall allow visitors to log in using a unique visitor ID or an email address and password.

4.16.5.  The VVS shall be capable of requiring the general public to acknowledge and agree to the terms and conditions associated with KDOC's visitation policies as part of the registration process and with each scheduled visitation session.

4.16.6.  At a minimum, the VVS shall obtain and store the following information for the visitor as part of the registration process:

    4.16.6.1.  First Name;
    4.16.6.2.  Last Name;
    4.16.6.3.  Email;
    4.16.6.4.  Telephone Number / Cell Phone;
    4.16.6.5.  Username; and
    4.16.6.6.  Password.

4.16.7.  At a minimum, the VVS shall obtain and store the following information for the visitor as part of the scheduling process:

    4.16.7.1.  First Name;
    4.16.7.2.  Middle Name;
    4.16.7.3.  Last Name;
    4.16.7.4.  Credit Card;
    4.16.7.5.  Email;
    4.16.7.6.  Physical Address (Street Address, City, State, Zip);
    4.16.7.7.  Telephone Number;
    4.16.7.8.  Identification Type;
    4.16.7.9.  ID Number;
    4.16.7.10.  Username; and
    4.16.7.11.  Password.

4.16.8.  The VVS shall have the capability to track all inmate housing unit assignments, movements, and releases.  The VVS shall automatically cancel all sessions associated with an inmate if the inmate is released.

4.16.9.  The VVS shall be capable of sending the general public an email or text notification confirming the scheduled or canceled visit.

4.16.10.  The VVS shall have the capability to display upcoming daily video visitation session information on one or multiple inmate station screens (i.e. inmate name, time of visit).

4.16.11.  The VVS shall allow authorized users at the Facility to approve visitors before video visitation sessions can be scheduled; the VVS shall only allow the scheduling of sessions for approved visitors.

4.16.12.  The VVS must provide specific information for tracking inmate and visitor activities and patterns by, at a minimum, the following criteria:

    4.16.12.1.  Inmate ID number;
    4.16.12.2.  Inmate name;
    4.16.12.3.  Visitor name;
    4.16.12.4.  Date and time of visit;
    4.16.12.5.  Inmate video visitation station; and
    4.16.12.6.  Daily, weekly and monthly visit statistics.

4.16.13. The VVS shall have the capability to allow authorized KDOC staff to create the following restrictions with customizable durations:

4.16.13.1. Restrict a visitor from visiting certain inmate(s);
4.16.13.2. Restrict an inmate from visiting ALL visitors; and
4.16.13.3. Restrict a visitor from visiting ALL inmates.

4.16.14. The VVS user application shall have the capability to support the following functions:

4.16.14.1. Set user ID;
4.16.14.2. Set/reset password;
4.16.14.3. Capture the user's first, middle and last name;
4.16.14.4. Manually terminate standard or video visitation sessions;
4.16.14.5. Report status of all standard and video visitation sessions (online or idle);
4.16.14.6. Stop, pause and restart any running visit;
4.16.14.7. Allow KDOC to enter comments or add notes to a visit;
4.16.14.8. Allow for station reassignment during any running visit;
4.16.14.9. Allow for visitation time extension during any running visit;
4.16.14.10. Customize the number of visits per the monitoring screen and the page rotation duration;
4.16.14.11. Designate a visitor as being an attorney (or other professional) type of visitor;
4.16.14.12. Manually schedule standard or video visitation sessions for a particular inmate, station, and date and time, on behalf of visitor(s);
4.16.14.13. Allow authorized users the ability to mandate specific visits, visitors and/or inmates to be recorded;
4.16.14.14. Allow authorized users to download, share and/or view recordings; and
4.16.14.15. Include an audit trail function and the capability to track users who have viewed and/or downloaded the recording files(s).

## 4.17. VVS Monitoring and Recording Requirements

4.17.1. The VVS must permit KDOC to fully record and monitor all standard and video visitation sessions from any standard or video visitation station within the Facilities unless there are restrictions that prohibit the recording and monitoring of certain sessions such as attorney-client restrictions.

4.17.2. The VVS shall automatically start each video visitation session at the designated start time.

4.17.3. The VVS shall allow KDOC to determine if a visit is to be cancelled if the visitor does not check-in on time or after a set amount of time, and if the visitation session will count against the inmate's visitation quota.

4.17.4. The VVS shall automatically attempt to reconnect a video visitation session if connectivity is lost.

4.17.5. The VVS shall include an alert system that will detect visitation sessions made by a particular inmate or visitor.

4.17.6. The VVS should have the capability to display an onscreen countdown clock timer on the inmate and the visitor stations.

4.17.7. KDOC requires the retention of video visitation sessions online for ninety (90) days.

4.17.8. Storage of all video visitation sessions offline shall be for the life of the Contract plus two (2) years after termination of the Contract.

## 4.18. Tablet Specifications

4.18.1. Tablets shall interface with KDOC's JMS, commissary, ITS, and/or VVS, at no cost to KDOC allowing inmates to access Tablet services; KDOC prefers the same inmate identifier is used for Tablets as the inmate identifier for ITS and VVS.  KDOC will not be responsible for paying any amount(s) associated with the required interface(s).

4.18.2. KDOC will supply Contractor a daily file with inmate housing location four times a day.

4.18.3. Tablets shall be capable of restricting access to inmates based on housing location.

4.18.4. Tablets shall be configured to only allow inmates access to the services and applications approved by KDOC. Additional applications shall be mutually agreed upon by KDOC and Contractor. Inmates shall be prohibited from having any access to any external applications. Tablets must communicate with pre-approved applications and servers only.

4.18.5. Tablets shall be restricted to Contractor wireless access points only and shall be unable to connect to other wireless network access points.

4.18.6. Contractor shall provide KDOC and its Designated Agent with remote access to Tablets at no cost to KDOC for the purpose of administering, monitoring, overseeing and reviewing transactions and activity associated with the applications and services offered.  The following reports (at a minimum), shall be made available for each Facility as applicable for monitoring and investigative purposes.  New reports, as requested by KDOC, shall be developed and provided by Contractor at no cost to KDOC:

    4.18.6.1.   Transactions by inmate;
    4.18.6.2.   Application usage by inmate;
    4.18.6.3.   Messages by inmate;
    4.18.6.4.   Messages by sender;
    4.18.6.5.   Messages by Tablet or group of Tablets;
    4.18.6.6.   Unified inmate data sets;
    4.18.6.7.   Totals by inmate;
    4.18.6.8.   Totals by Tablet;
    4.18.6.9.   Totals by Facility;
    4.18.6.10.  Totals by transaction type; and
    4.18.6.11.  Daily, weekly and monthly statistics.

4.18.7. Contractor's user application for the Tablet solution shall provide the capability to export the reports in a mutually agreed upon format agreed to by KDOC and Contractor.

4.18.8. The reports shall be available to KDOC and its agency partners from all control workstations and remote access computers depending on the user's access level.

4.18.9. Contractor shall have the capability to disable and/or shut off services to a single Tablet or group Tablets based on the user level and password without interrupting other Tablets.

4.18.10. Tablets shall be provided to KDOC pre-loaded with KDOC approved applications offering a variety of games, music and entertainment, as well as free applications/services and educational programs including educational licenses.

4.18.11. Tablets provided by Contractor shall be configured to provide certain free services to the inmate population at no charge. Such free services shall include:

    4.18.11.1.  Clock;
    4.18.11.2.  Calendar;
    4.18.11.3.  Dictionary;
    4.18.11.4.  Calculator;
    4.18.11.5.  PDF documents approved by KDOC;
    4.18.11.6.  PDF viewer;
    4.18.11.7.  Electronic submission of inmate requests (KDOC Form 9);
    4.18.11.8.  Electronic submission of calling lists;
    4.18.11.9.  Commissary purchases;
    4.18.11.10. Automatic Withdrawal Request Form (AWR Form);
    4.18.11.11. Debit purchases;

4.18.11.12. Trust/commissary/debit account look-up;

4.18.11.13. Inmate Handbook and Inmate Rule Book;

4.18.11.14. Inmate notices/bulletins;

4.18.11.15. Court date/release information;

4.18.11.16. Electronic grievances;

4.18.11.17. Phone minute purchases via ITS;

4.18.11.18. Receiving and Diagnostics Unit (RDU) Forms;

4.18.11.19. General Education Diploma (GED) preparation software (Aztec);

4.18.11.20. Access to education providers' learning management system;

4.18.11.21. Law library; and

4.18.11.22. Sick call requests

4.18.12. Free Tablet applications, as specified in Section 4.18.11, to be provided by Contractor via Tablets shall be made available within one-hundred eighty (180) days of execution of the Contract between KDOC and Contractor. Failure to provide the free Tablet applications, as specified, within one-hundred eighty (180) days of Contract execution may be subject to liquidated damages as specified in Section 2, Subsection 2.10.

4.18.13. Contractor shall provide inmates with the capability to purchase debit telephone purchases using Contractor's Tablet application.

4.18.13.1. Contractor shall send a file each business day to KDOC to validate funds in the inmate trust accounts. KDOC will validate the purchases and send a return file to Contractor containing validated purchases. Contractor shall send the inmate notification if the purchase was not validated. Contractor shall then add debit telephone purchases for each business day upon validation.

4.18.13.2. Should KDOC award ITS and Inmate Tablets separately, upon validation with KDOC of the debit telephone purchases, Contractor shall send the file each business day to the inmate telephone provider with the inmate debit purchases. It is the Contractor's responsibility to create and establish a business relationship and necessary integration. KDOC shall not be responsible for paying any amounts associated with the required integration.

4.18.14. Contractor shall provide a method for inmates to submit a PAN list through Contractor's Tablet application at no cost to KDOC and as directed by KDOC.

4.18.15. Contractor's Tablet application shall allow an inmate to view their current PAN list via the Tablet application.

4.18.16. Contractor's Tablet application shall allow an inmate to submit an initial PAN list as well as make changes to an existing PAN list.

4.18.17. Contractors' ITS application shall have the capability to allow designated users to approve the PAN lists. Once calling lists are approved, Contractor shall automatically add the approved PANs to the inmate's PAN list.

4.18.17.1. Should KDOC award the ITS and Inmate Tablets separately, upon entry of a PAN list by an inmate, the Contractor shall submit the entered PAN lists to the inmate telephone provider for approval.

4.18.18. Contractor shall interface with KDOC's banking system for the purpose of validating inmate account balances, at no cost to KDOC.

4.18.19. Tablets, upon each login, shall provide the inmate with an option to obtain his/her account balance. KDOC will provide Contractor a direct link to the KDOC banking application allowing inmates access to their trust account using Contractor's Tablet application.

Contract ID: 00000000000000000000044861
Event ID: EVT0005346
Page 39

4.18.20. If an inmate does not have sufficient funds to process a transaction, the Tablet shall provide the inmate with a decline message stating there are insufficient funds in the account to process a transaction.

## 4.19. Tablet Specific Installation Requirements

4.19.1. Tablets shall be suitable for a correctional environment, sturdy, vandal and tamper resistant and shall be enclosed in a durable, sealed case. KDOC reserves the right to request commercially reasonable modifications to the tablets in the event KDOC deems they are not correctional grade.

4.19.2. Tablets shall not utilize external speakers.  Contractor shall ensure earbuds are clear and designed in accordance with standard correctional security and environmental concerns, including suicide prevention.

4.19.3. Tablets shall be capable of restricting inmate usage to the specific housing units to which the inmate is assigned.

4.19.4. Contractor shall provide informational flyers/posters in both English and Spanish outlining all Tablet services/offerings, and the cost of those services to post at the Facilities at no cost to KDOC.

4.19.5. Upon completion of the initial installation and any ongoing installations, Contractor shall provide KDOC with a list of all Tablets, charging stations, equipment specifications and locations of each device.

4.19.6. Contractor shall provide KDOC with the number of Tablets and mobile charging stations as identified in Attachment A.

## 4.20. Tablet Electronic Messaging Requirements and Administration

4.20.1. The Tablets shall have an electronic messaging feature, including SMS electronic messaging, to allow inbound and outbound electronic messaging, video messages and photos.

4.20.2. Electronic messages shall be configurable to limit the number of allowed characters.

4.20.3. Inbound electronic messages from the general public may include attachments. The file size per attachment/picture shall not exceed one (1) megabyte (MB).  Each electronic message shall be limited to a maximum of five (5) attachments.

4.20.3.1. The party sending an inmate an electronic message may be provided the opportunity to pre-pay for the inmate's response to the electronic message being sent.

4.20.3.2. Inmates may request a printout of an electronic message or an attachment/picture using a Tablet and while logged into his/her individual account.  Inmates shall not incur a cost for viewing an electronic message.

4.20.3.3. Electronic message prints shall be processed through the Facility's mailroom, following KDOC's processes and procedures for regular mail received by the Facility.

4.20.3.4. Each electronic message and/or attachment print, at a minimum, shall include the inmate's first and last name, current housing unit, and the inmate's identification number.

4.20.4. Inbound electronic message attachments shall have the capability to include a thirty (30) second video message.

4.20.5. Standard transaction fees charged to the party or to the inmate for each electronic message, attachment and prints are identified in Section 6.

4.20.5.1. Inmates shall be required to send an electronic invitation to a party from the Tablet requesting electronic communication with the party. To submit the invitation, the inmate must be required to include the full email address of the party.

Contract ID: 00000000000000000000044861
Event ID: EVT0005345
Page 40

4.20.5.2.   Invitations shall not contain any personal messages and shall be in a generic format from the named inmate.

4.20.5.3.   The invitation shall clearly state that it is from a correctional facility and provide instructions on how the recipient may refuse the invitation and how to notify KDOC if they do not wish to receive invitations from inmates in KDOC facilities.

4.20.5.4.   Invitations shall not be sent to any given email address more than twice.

4.20.6.  Contractor's electronic messaging shall have the capability to globally block invitations by domain (ex: .gov, .org, .edu).

4.20.7.  Contractor's system shall have the capability to block specific email addresses from receiving an invitation from all KDOC inmates.

4.20.8.  Contractor shall work with KDOC to implement a designated email address allowing inmates to submit PREA messages to designated KDOC staff.  PREA electronic messages shall be anonymous and free of charge to the inmates.

4.20.9.  Inmates shall be limited to responding to received electronic messages and writing new electronic messages only to a party from which an inmate has previously received an electronic message or from a party which accepted an invitation from an inmate.

4.20.10.  Each incoming and each outgoing message and/or attachment shall be routed by Contractor's system to the Facility's mailroom workstation(s) for review and approval in accordance with KDOC's censorship's rules and regulations. Contractor shall ensure no messages can be viewed by the inmates prior to approval by KDOC and/or the mailroom staff. Contractors system shall identify or group electronic messages based on the status of the messages i.e. awaiting approval from KDOC, released to inmates, censored, etc. in order for staff to easily identify messages that require further attention.

4.20.11.  Should KDOC reject a message and/or an attachment, Contractor's system shall transmit a notification message to the party initiating the message and/or attachment and to the inmate in which the electronic message was addressed indicating that the message and/or attachment has not been approved for delivery as well as the reason for which the message and/or attachment was not approved.

4.20.12.  During the life of the subsequent Contract and any extensions, Contractor shall store all messages, reports and data online indefinitely. Contractor shall store all messages, reports and data offline for a period of five (5) years beyond the last date of service under the subsequent Contract and any extensions. Archived and/or offline messages, reports and data shall be retrieved and provided by Contractor to KDOC within two (2) business days upon receipt of the requested messages, reports and/or data.

4.20.13.  Contractor's system shall have the capability for KDOC and its Designated Agents all stored passwords for inmate Tablet accounts as well as the capability to reset an individual password.

4.20.14.  Contractor's system shall have the capability for KDOC and its Designated Agents to allow KDOC to query all messages, attachments and data stored for the Facilities.

4.20.15.  Contractor's system shall have the capability to alert KDOC personnel of specific activity based on pre-set criteria in Contractor's system, through email.

4.20.16.  Contractor's system shall have the capability to translate messages. The required languages are Spanish and English.

4.20.17.  Tablets shall allow for electronic messages to be sent from the KDOC staff to the inmates or a group of inmates as designated by KDOC. Groups shall be configurable ranging from inmates in a particular cell house or living unit, a specific security perimeter of a facility, an individual facility or selection of facilities, or all inmates within KDOC facilities. Tablets shall be capable of allowing inmates to initiate an electronic

Contract ID: 00000000000000000000044861
Event ID: EVT0005345
Page 41

message or reply/respond to the KDOC staff electronic messages via the Tablets. Tablets shall allow the inmate to staff messaging capability to be disabled by KDOC approved users on an individual basis without impacting an inmate's ability to correspond with family/friends. All electronic messages between inmates and KDOC staff shall be at no cost to the inmate or KDOC.

4.20.18.   The electronic messaging feature shall allow inmates at the Facilities to retain an inbox of received electronic messages. The inbox limit for read and unread electronic messages shall be configurable and designated by KDOC. Upon an inmate's release or transfer out of KDOC custody, the inmate's account must be deactivated. However, even upon deactivation, the inmate's activity and data shall be stored in accordance with Section 4.20.12 to allow for monitoring and administration by KDOC.

4.20.19.   The electronic messaging feature shall allow inmates at the Facilities to retain a draft folder of electronic messages. KDOC shall have access to view an inmate's draft folder.

4.20.20.   Contractor shall provide a chart of all transaction fees and post within each housing unit at each KDOC Facility identified in Attachment A.

4.20.21.   Contractor shall provide and install the number of workstations and color printers specified in Attachment A for each Facility mailroom. Contractor shall be responsible for providing the supply of paper and toner at no cost to KDOC throughout the life of the Contract and any renewal term(s).

4.20.22.   All electronic messages shall be retained for the life of the Contract plus five (5) years after the termination of the Contract.

## 5.   Additional Contract Terms

### 5.1.   General Responsibilities

5.1.1.   Contractor shall agree to all terms and conditions set forth in this Contract, and Contractor shall agree to the specifications, including, but not limited to, the features and functionalities of the Inmate Communications Systems listed in Section 4 of this Contract. If KDOC designates an agent, Contractor shall follow KDOC's direction in working with such Designated Agent.

5.1.2.   In the event of an operational problem occurring at one or more of the Facilities, Contractor shall notify the Warden of the particular Facility and KDOC's Telecommunications Manager of such problem. If either party believes the other party has violated the terms of this Contract, the party having such belief shall notify the other party, in writing, of the alleged violation. The parties shall then meet and confer on the issue within five (5) days of receipt of the written notice.

### 5.2.   Access to Correctional Facilities; Training of Contractor's Employees; compliance with Applicable Law by Contractor and Any Approved Subcontractor

5.2.1.   Any civilian employee of Contractor or approved subcontractor shall be subject to an initial and continuing security clearance by the Wardens of the respective correctional facilities. A security clearance is required before entrance into the security perimeter of the Facilities. Contractor shall submit the names of the civilian employees, together with an authorization for the release of information signed by the employee on forms provided by KDOC.

5.2.2.   In recognition of the sensitive nature of correctional facilities, Contractor agrees that in the event that the Warden of any of the Facilities, in the Warden's discretion, is dissatisfied with any Contractor employee who is employed, whether full time or part time, at that facility, KDOC, acting through the Warden, may deny access of such employee to the Facility. The facility Warden shall give written notice to Contractor of such fact and the reasons therefore, and Contractor shall promptly remove the individual in question from employment at the facility and shall cover with other appropriate personnel until an approved replacement is found. Contractor shall include a provision of like effect in its agreement with any subcontractor providing services on the premises of a correctional facility.

5.2.3.   All civilian personnel employed by Contractor or any approved subcontractor pursuant to this Contract shall attend an orientation program and annual training designed by the Wardens of the respective Facilities. Contractor's employees shall promptly notify staff at the Facilities of any security problems that come to their attention.

5.2.4.   All personnel of Contractor and any approved subcontractor shall comply with the published and written regulations and policies and procedures of KDOC, with general orders from the Facility, and the laws of the State of Kansas and the United States of America. Contractor's personnel shall adhere to the same standards of personal appearance as are applicable to non-uniformed staff of KDOC. Contractor specifically agrees that its employees will comply with KDOC's policy regarding sexual harassment and discrimination.

5.2.5.   Contractor shall at all times comply with the National Standards promulgated under the Prison Rape Elimination Act (42 U.S.C. § 15601, et seq.), which are found at 28 CFR 115.5 to 115.93, inclusive, and the provisions of KDOC Internal Management Policy and Procedure (IMPP) 10-103, in regard to any of its employees who have or may reasonably be expected to have contact with inmates in delivering services and/or goods pursuant to this Agreement. In particular, Contractor shall:

   5.2.5.1.   Prior to the hiring of any employee reasonably expected to have contact with inmates, submit name and necessary identifying information to the KDOC for a criminal background check, as required by 28 CFR 115.17; and also shall inquire of prospective hires and employees considered for promotion as to their involvement in any prior events involving sexual misconduct set forth at subsection (a) thereof, also per 28 CFR 115.17;

   5.2.5.2.   Promptly make its employees available for orientation and periodic training provided by KDOC in regard to the obligations and requirements imposed by said Act and National Standards, as required by 28 CFR 115.32 and IMPP 10-103, Sec. II;

   5.2.5.3.   Promptly make available upon request to KDOC in any sexual abuse incident review conducted pursuant to 28 CFR 115.86 in which any of BAC's employees is involved as the target of the investigation and review, or witness thereto, any of its employees for interview by the Sexual Abuse Incident Review Board, as well as any pertinent records regarding the incident in question; and

   5.2.5.4.   Promptly make available upon request any records necessary for KDOC to meet the requirements for data collection, review for corrective action, and audits, as set forth at 28 CFR 115.87, 115.88, 115.93.

5.2.6.   Contractor further acknowledges that KDOC must bar any employee of Contractor found to have engaged in sexual abuse from its facilities' premises, as well as report any such employee to law enforcement agencies and relevant licensing bodies, and that KDOC otherwise must take appropriate remedial measures in response to any violation of its sexual abuse or sexual harassment policies, as set forth at CFR 115.77. Contractor further acknowledges and agrees that KDOC, in its sole discretion, may bar any employee of Contractor under investigation for alleged sexual abuse or sexual harassment during the investigation.

**5.3.   ITS Specific Installation Requirements**

5.3.1.   Section 4.8.4 of this Contract is hereby deleted.

**5.4.   Pre-Paid Debit Applications**

5.4.1.   Should KDOC select different JMS and Commissary Providers during the life of this Contract, it shall be Contractor's responsibility to work with the new provider to develop the necessary interface(s). KDOC

shall not be responsible for paying any amounts associated with the initial required interface(s) or any subsequent required interface(s).

## 5.5. Transition Requirements

5.5.1. Contractor agrees to work with KDOC and the incumbent provider for electronic messaging to ensure all electronic message credits at the time of transition are transferred to Contractor's electronic messaging application.

## 5.6. Personal Allowed Numbers

5.6.1. Upon implementation of the Tablets, Contractor shall have a developed and integrated PAN application through the Tablets to avoid manual entry of PANs. The ITS and Tablet application shall be capable of capturing the following information (at a minimum) for each telephone number on the PAN: telephone number, called party name, address and relationship to inmate.

5.6.2. The PAN application's automated feature shall include the capability of providing a drop-down menu for the PAN relationship to include the most commonly used PAN relationships, which excludes the option for privileged and/or attorney telephone numbers. Contractor agrees that any software development associated with the automated feature and/or the drop-down menu capabilities will be completed within the 180 days of the execution of this Contract.

5.6.3. Contractor's system shall allow users to select the reason for censoring the electronic message or attachments using a dropdown box. Censoring reasons shall be specified by KDOC.

5.6.4. Should the automated feature not be developed in time for the tablet deployment or should there be issues with the automated feature, either of which require manual entry of inmate PAN's, Contractor shall be responsible for entering those PAN's into the ITS.  In the event Contractor is required to manually enter PAN's into the ITS, Contractor shall guarantee entry of PAN's within 48 hours of receipt.

## 5.7. VVS Specific Installation Requirements

5.7.1. VVS stations provided by Contractor shall be configurable to provide certain free services to the inmate population, including segregation inmates. VVS stations requiring access to such free services shall be designated by KDOC.  The free services shall include, but not be limited to, the following:

5.7.1.1. PDF documents approved by KDOC;
5.7.1.2. PDF viewer;
5.7.1.3. Electronic submission of inmate requests (KDOC Form 9);
5.7.1.4. Electronic submission of calling lists;
5.7.1.5. Commissary purchases;
5.7.1.6. Automatic Withdrawal Request Form (AWR Form);
5.7.1.7. Debit purchases;
5.7.1.8. Trust/commissary/debit account look-up;
5.7.1.9. Inmate Handbook and Inmate Rule Book;
5.7.1.10. Inmate notices/bulletins;
5.7.1.11. Court date/release information;
5.7.1.12. Electronic grievances;
5.7.1.13. Debit purchases via ITS; and
5.7.1.14. Sick call requests

## 5.8. VVS Monitoring and Recording Requirements

5.8.1. Sections 4.17.7 and 4.17.8 of this Contract are hereby deleted. Per Amendment 2 to the RFP, dated November 17, 2017, video recordings of video visitation sessions shall be retained for 30 days. Audio recordings of VVS sessions shall be retained in accordance with Section 4.13.8 of this Contract.

Kenneth D. Lee v. ... KDOC Licenses 5:21-cv-03... For use in this case only

5.8.2.   KDOC has elected to not implement live VVS monitoring. Should KDOC choose to implement live VVS monitoring, either statewide or at specific sites, KDOC and Contractor shall mutually agree upon specifications and cost via written amendment to this Contract.

**5.9.   Tablet Specifications**

5.9.1.   Section 4.18.11.10 of this document is amended to read "Automatic Withdrawal Request Form (AWR).

5.9.2.   Sick call requests shall be added to list of free tablet services specified in Section 4.18.11.

5.9.3.   Contractor agrees to provide educational, rehabilitative, and entertainment content via the Edovo platform at no cost to KDOC or users. All content shall be reviewed and approved by KDOC prior to being deployed. KDOC reserves the right to remove content at its sole discretion.

5.9.4.   Premium content shall be made available. Pricing and purchasing shall be mutually agreed upon by both parties. All content shall be reviewed and approved by KDOC prior to being deployed. KDOC reserves the right to remove content at its sole discretion.

5.9.5.   Prior to implementation of SMS electronic messaging:

    5.9.5.1.   Contractor shall provide comprehensive training for staff for each inmate communication service to KDOC's staff, and provide references from other correctional facilities to KDOC's satisfaction

    5.9.5.2.   Contractor shall work with KDOC staff to ensure that the alert features meet KDOC's requirements

    5.9.5.3.   Both Parties acknowledge that SMS electronic messaging is an important revenue stream for Contractor, and that permission to proceed or cure will not be unreasonably withheld.  If access to SMS electronic messaging is not permitted per KDOC's request, liquidated damages will not apply.

5.9.6.   KDOC may require Contractor to cease providing electronic messaging for software-related security concerns that may arise at the fault of Contractor.  KDOC will allow Contractor to cure the issue within a reasonable timeframe and provide permission to proceed, not to exceed a fifteen (15) day period.  If the issue is not capable of resolution within fifteen (15) days, Contractor will engage in diligent efforts in good faith to provide resolution, with permission to proceed to KDOC to occur within seven (7) days of the resolution, or in a timeframe mutually agreeable to the parties.  KDOC agrees not to unreasonably withhold permission to proceed.

**5.10.   Tablet Specific Installation Requirements**

5.10.1.   Contractor shall provide additional Tablets and mobile charging stations as needed and at no cost to KDOC within (30) days of request. This includes newly constructed or expanded Facilities.  Should KDOC request a quantity of Tablets which is more than a 10% increase, KDOC and Contractor shall mutually agree on the method of payment for said Tablets.  If Contractor fails to provide and install the additional Tablets within thirty (30) days Contractor shall be liable for liquidated damages as described in Section 2, Subsection 2.11.

**5.11.   Additional Services**

5.11.1.   Contractor agrees to provide Cellebrite UFED Ultimate Cell Phone Forensic Laboratory on a trial basis at no cost to KDOC. Should KDOC choose to implement the Cellebrite UFED Ultimate Cell Phone Forensic Laboratory, either statewide or at specific sites, KDOC and Contractor shall mutually agree upon specifications and cost via written amendment to this Contract.

Kenneth D. Lee v. Katherine Ambrose, et al., Case No. 21-cv-3100. For use in this case only

6.  **Costing Sheets**

RATES FEES AND REVENUE SHARE

| ITS REQUIRED CALLING RATES (Adult and Juvenile Facilities) | | |
|---|---|---|
| Category | Per Minute Rate | Avg Cost of 10 Min. Call: |
| **All Domestic Calls** | | |
| Collect/Direct Bill | $ ▮ | $ ▮ |
| Pre-Paid Collect | $ ▮ | $ ▮ |
| Debit | $ ▮ | $ ▮ |
| **Domestic International** | | |
| Collect/Direct Bill | N/A | N/A |
| Pre-Paid Collect | N/A | N/A |
| Debit | $ ▮ | $ ▮ |
| **International** | | |
| Collect/Direct Bill | N/A | N/A |
| Pre-Paid Collect | N/A | N/A |
| Pre-Paid Card/Debit | $ ▮ | $ ▮ |

| ITS REQUIRED FEES | | |
|---|---|---|
| Fee Type | Amount | Frequency |
| **Collect Billing Fee** | ▮ | monthly |
| **Pre-Paid Collect Funding Fee** | | |
| IVR/Automated | ▮ | Per transaction |
| Live Representative | ▮ | Per transaction |
| Western Union Swift Pay | ▮ | Per transaction |
| Western Union Quick Collect* | ▮ | Per transaction |

 * CenturyLink uses Western Union exclusively for third-party cash payments due to their agreement to validate ID at point of sale. In addition, we recently discontinued Quick Collect in order to minimize fees to consumers.

| ITS REVENUE SHARE | |
|---|---|
| Category | Amount |
| Revenue Share (%) | ▮ |
| Monthly Cost Recoupment Amount | N/A (cost recoupment provided through upfront MAG) |
| Upfront Minimum Annual Guarantee (MAG) | ▮ |
| Supplemental Incentive | unrestricted incentive |

For use in this case only.
USDC of Kansas, 5:21-cv-03100. For use in this case only.
Kenneth D. Isaak, Kathryn A. Andracki, USDC of Kansas, 5:21-cv-03100.

| VVS REQUIRED RATES/FEES | |
|---|---|
| **Category** | **30-Minute Video Visitation Session** |
| 30-Minute Remote Video Visitation Session: | ▮ or ▮ Per Minute |
| All Other Fees: | N/A |
| **VVS REVENUE SHARE:** | ▮ |

| TABLET REQUIRED RATES | | |
|---|---|---|
| **Type Usage** | **Amount Charged** | **Unit of Measure** |
| Electronic Message/Photo | ▮ | Per Email/Photo |
| 30-Second Video Attachment | ▮ | Per Video Attachment |
| Print Email | ▮ | Per Printed Email |
| Print Attachment/Photo | ▮ | Per Printed Attachment/Photo |
| Additional Contractor Proposed Services | Contractor Proposed | See additional information below |
| LMS (educational, rehabilitative, and entertainment content) | $0.00 | Unlimited Usage |

| TABLET REVENUE SHARE | |
|---|---|
| **Category** | **Amount** |
| Electronic Messages/Photo | ▮ |
| 30-Second Video Attachment | ▮ |
| Print Email | ▮ |
| Print Attachment/Photo | ▮ |
| Additional Contractor Proposed Services | ▮ (Premium Content) ▮ (SMS Electronic Messaging) |

Kenneth D. Leek v. Kathryn A. Androski, USDC of Kansas 5:21-cv-03100. For use in this case only

In Witness Whereof, the Parties have set their hands as on the day and year witten below acting through their Authorized representatives

**Kansas Department of Corrections:**

_Authorized Signature_

JL Norwood
_Typed or Printed Name_

Secretary of Corrections
_Title_

June 8, 2018
_Date_

**Division of Purchases:**

Tracy Diel NF
Tracy Diel
Director of Purchases

**CenturyLink Public Communications, Inc.**

_Authorized Signature_

BARRY BRINKER
_Typed or Printed Name_

DIRECTOR, NATIONAL OPS & TECHNOLOGY
_Title_

MAY 31, 2018
_Date_

Kenneth D. Leek v. Kathryn A. Androski, USDC of Kansas 5:21-cv-03100. For use in this case only

Contract ID: 00000000000000000044861
Event ID: EVT0005346
Page 48

State of Kansas
Department of Administration
DA-146a   (Rev. 06-12)

**CONTRACTUAL PROVISIONS ATTACHMENT**

Important:  This form contains mandatory contract provisions and must be attached to or incorporated in all copies of any contractual agreement. If it is attached to the vendor/contractor's standard contract form, then that form must be altered to contain the following provision:

"The Provisions found in Contractual Provisions Attachment (Form DA-146a, Rev. 06-12), which is attached hereto, are hereby incorporated in this contract and made a part thereof."

The parties agree that the following provisions are hereby incorporated into the contract to which it is attached and made a part thereof, said contract being the _____ day of _____, 20___.

1. **Terms Herein Controlling Provisions**: It is expressly agreed that the terms of each and every provision in this attachment shall prevail and control over the terms of any other conflicting provision in any other document relating to and a part of the contract in which this attachment is incorporated. Any terms that conflict or could be interpreted to conflict with this attachment are nullified.

2. **Kansas Law and Venue**: This contract shall be subject to, governed by, and construed according to the laws of the State of Kansas, and jurisdiction and venue of any suit in connection with this contract shall reside only in courts located in the State of Kansas.

3. **Termination Due To Lack Of Funding Appropriation**: If, in the judgment of the Director of Accounts and Reports, Department of Administration, sufficient funds are not appropriated to continue the function performed in this agreement and for the payment of the charges hereunder, State may terminate this agreement at the end of its current fiscal year. State agrees to give written notice of termination to contractor at least 30 days prior to the end of its current fiscal year, and shall give such notice for a greater period prior to the end of such fiscal year as may be provided in this contract, except that such notice shall not be required prior to 90 days before the end of such fiscal year. Contractor shall have the right, at the end of such fiscal year, to take possession of any equipment provided State under the contract. State will pay to the contractor all regular contractual payments incurred through the end of such fiscal year, plus contractual charges incidental to the return of any such equipment. Upon termination of the agreement by State, title to any such equipment shall revert to contractor at the end of the State's current fiscal year. The termination of the contract pursuant to this paragraph shall not cause any penalty to be charged to the agency or the contractor.

4. **Disclaimer Of Liability**: No provision of this contract will be given effect that attempts to require the State of Kansas or its agencies to defend, hold harmless, or indemnify any contractor or third party for any acts or omissions. The liability of the State of Kansas is defined under the Kansas Tort Claims Act (K.S.A. 75-6101 et seq.).

5. **Anti-Discrimination Clause**: The contractor agrees: (a) to comply with the Kansas Act Against Discrimination (K.S.A. 44-1001 et seq.) and the Kansas Age Discrimination in Employment Act (K.S.A. 44-1111 et seq.) and the applicable provisions of the Americans With Disabilities Act (42 U.S.C. 12101 et seq.) (ADA) and to not discriminate against any person because of race, religion, color, sex, disability, national origin or ancestry, or age in the admission or access to, or treatment or employment in, its programs or activities; (b) to include in all solicitations or advertisements for employees, the phrase "equal opportunity employer"; (c) to comply with the reporting requirements set out at K.S.A. 44-1031 and K.S.A. 44-1116; (d) to include those provisions in every subcontract or purchase order so that they are binding upon such subcontractor or vendor; (e) that a failure to comply with the reporting requirements of (c) above or if the contractor is found guilty of any violation of such acts by the Kansas Human Rights Commission, such violation shall constitute a breach of contract and the contract may be cancelled, terminated or suspended, in whole or in part, by the contracting State agency or the Kansas Department of Administration; (f) if it is determined that the contractor has violated applicable provisions of ADA, such violation shall constitute a breach of contract and the contract may be cancelled, terminated or suspended, in whole or in part, by the contracting state agency or the Kansas Department of Administration.

Contractor agrees to comply with all applicable state and federal anti-discrimination laws.

The provisions of this paragraph number 5 (with the exception of those provisions relating to the ADA) are not applicable to a contractor who employs fewer than four employees during the term of such contract or whose contracts with the contracting State agency cumulatively total $5,000 or less during the fiscal year of such agency.

6. **Acceptance Of Contract**: This contract shall not be considered accepted, approved or otherwise effective until the statutorily required approvals and certifications have been given.

7. **Arbitration, Damages, Warranties**: Notwithstanding any language to the contrary, no interpretation of this contract shall find that the State or its agencies have agreed to binding arbitration, or the payment of damages or penalties. Further, the State of Kansas and its agencies do not agree to pay attorney fees, costs, or late payment charges beyond those available under the Kansas Prompt Payment Act (K.S.A. 75-6403), and no provision will be given effect that attempts to exclude, modify, disclaim or otherwise attempt to limit any damages available to the State of Kansas or its agencies at law, including but not limited to the implied warranties of merchantability and fitness for a particular purpose.

8. **Representative's Authority To Contract**: By signing this contract, the representative of the contractor thereby represents that such person is duly authorized by the contractor to execute this contract on behalf of the contractor and that the contractor agrees to be bound by the provisions thereof.

9. **Responsibility For Taxes**: The State of Kansas and its agencies shall not be responsible for, nor indemnify a contractor for, any federal, state or local taxes which may be imposed or levied upon the subject matter of this contract.

10. **Insurance**: The State of Kansas and its agencies shall not be required to purchase any insurance against loss or damage to property or any other subject matter relating to this contract, nor shall this contract require them to establish a "self-insurance" fund to protect against any such loss or damage. Subject to the provisions of the Kansas Tort Claims Act (K.S.A. 75-6101 et seq.), the contractor shall bear the risk of any loss or damage to any property in which the contractor holds title.

11. **Information**: No provision of this contract shall be construed as limiting the Legislative Division of Post Audit from having access to information pursuant to K.S.A. 46-1101 et seq.

12. **The Eleventh Amendment**: "The Eleventh Amendment is an inherent and incumbent protection with the State of Kansas and need not be reserved, but prudence requires the State to reiterate that nothing related to this contract shall be deemed a waiver of the Eleventh Amendment."

13. **Campaign Contributions / Lobbying**: Funds provided through a grant award or contract shall not be given or received in exchange for the making of a campaign contribution. No part of the funds provided through this contract shall be used to influence or attempt to influence an officer or employee of any State of Kansas agency or a member of the Legislature regarding any pending legislation or the awarding, extension, continuation, renewal, amendment or modification of any government contract, grant, loan, or cooperative agreement.

Kenneth O. Barsalou-Ann-Manfrusk-University of Kansas. Do not use or reuse this case only

Contract ID: 00000000000000000000044861
Event ID:  EVT0005346
Page 49

## ATTACHMENT A — FACILITIES

**Main Facilities:**

El Dorado Correctional Facility
1737 SE Hwy 54, PO Box 199
El Dorado, KS  67042

Ellsworth Correctional Facility
1607 State Street
Ellsworth, KS  67439

Hutchinson Correctional Facility
500 Reformatory Road
Hutchinson, KS  67504

Lansing Correctional Facility
301 E. Kansas
Lansing, KS  66043-1619

Larned Correctional Mental Health Facility
1318 Highway 264
Larned, KS  67550

Norton Correctional Facility
11130 Road E-4
Norton, KS  67654

Topeka Correctional Facility
815 SE Rice Road
Topeka, KS  66607

Wichita Work Release Facility
401 S. Emporia
Wichita, KS  67202

Winfield Correctional Facility
1806 Pinecrest Circle
Winfield, KS  67156

Kansas Juvenile Correctional Complex
1430 N.W. 25th Street
Topeka, KS  66618

**Satellite Facilities:**

El Dorado Correctional Facility
SE Medium Unit (Oswego)
2501 W. 7th Street
Oswego, KS  67356

El Dorado Correctional Facility
SE Minimum Unit (Oswego)
1022 Fordyce Blvd
Oswego, KS  67356

Norton Correctional Facility (Stockton)
1210 E. Cedar
Stockton, KS  67669

Contract ID: 00000000000000000000044861
Event ID:  EVT0005345
Page 50

## ATTACHMENT A — FACILITIES

### Specifications by Facility

| Data Category | Facility Name | | |
|---|---|---|---|
| | El Dorado CU | EDCF (SE) Oswego | Ellsworth |
| Average Daily Population (ADP): | 1,638 | 262 | 910 |
| Number of Beds: | 1,693 | 262 | 913 |
| Inmate Type: | medium/maximum | minimum/medium | minimum/medium |
| Call Time Limit: | 60 minutes | 60 minutes | 60 minutes |
| Hours of Availability for Inmate Telephones: | varies by facility | varies by facility | varies by facility |
| Inmate Telephones Required: | 451 | 20 | 80 |
| Required Telephone Cord Length (Inmate Telephones): | 18 inches | 18 inches | 18 inches |
| Visitation Telephones Required: | 6 | 0 | N/A |
| Required Telephone Cord Length (Visitation Telephones): | 18 inches | 18 inches | 18 inches |
| Portable/Cordless Phones Required: | 2 | 2 | 2 |
| ITS Workstations Required: | 2 | 1 | 1 |
| TDD Units Required: | 2 | 1 | 2 |
| VRS Units Required: | 2 | 1 | 2 |
| Inmate Video Visitation Stations Required: | 31 | 3 | 23 |
| Required Cord Length (Inmate Video Visitation Stations): | 18 inches | 18 inches | 18 inches |
| VVS Control Workstation Required: | 1 | 1 | 1 |
| Required Tablets: | 410 | 66 | 224 |
| Mobile Charging Stations: | TBD | TBD | TBD |
| Email Printing Workstations: | 1 | 1 | 1 |

Kenneth D. Leek v. Kathryn A. Androski, USDC of Kansas 5:21-c-03100. For use in this case only

Contract ID: 00000000000000000000044861
Event ID:  EVT0005346
Page 51

| Data Category | Facility Name | | |
|---|---|---|---|
| | **Hutchinson** | **Lansing** | **Larned** |
| Average Daily Population (ADP): | 1,862 | 1,837 | 525 |
| Number of Beds: | 1,861 | 1,811 | 598 |
| Inmate Type: | maximum, medium, minimum | maximum, medium, minimum | medium, minimum |
| Call Time Limit: | 60 minutes | 60 minutes | 60 minutes |
| Hours of Availability for Inmate Telephones: | varies by facility | varies by facility | varies by facility |
| Inmate Telephones Required: | 85(CU) 50(EU) | 1,309 | 34 |
| Required Telephone Cord Length (Inmate Telephones): | 18 inches | 18 inches | 18 inches |
| Visitation Telephones Required: | 5 (CU) | 3 | N/A |
| Required Telephone Cord Length (Visitation Telephones): | 18 inches | 18 inches | N/A |
| Portable/Cordless Phones Required: | 12 | 2 | 2 |
| ITS Workstations Required: | 2(CU) 1(EU) | 2 | 1 |
| TDD Units Required: | 2(CU) 1(EU) | 2 | 1 |
| VRS Units Required: | 2(CU) 1(EU) | 2 | 1 |
| Inmate Video Visitation Stations Required: | 45 | 60 | 11 |
| Required Cord Length (Inmate Video Visitation Stations): | 18 inches | 18 inches | 18 inches |
| Control Workstation Required: | 1 | 1 | 1 |
| Required Tablets: | 463 | 459 | 150 |
| Mobile Charging Stations : | TBD | TBD | TBD |
| Email Printing Workstations: | 1 | 1 | 1 |

Contract ID: 00000000000000000000044861
Event ID: EVT0005345
Page 52

| Data Category | Facility Name | | |
|---|---|---|---|
| | Norton | Stockton | Topeka |
| Average Daily Population (ADP): | 813 | 128 | 845 |
| Number of Beds: | 867 | 128 | 903 |
| Inmate Type: | minimum, maximum | minimum | maximum, medium, minimum |
| Call Time Limit: | 60 minutes | 60 minutes | 60 minutes |
| Hours of Availability for Inmate Telephones: | varies by facility | varies by facility | varies by facility |
| Inmate Telephones Required: | 60 | 7 | 54 |
| Required Telephone Cord Length (Inmate Telephones): | 18 inches | 18 inches | 18 inches |
| Visitation Telephones Required: | 4 | 0 | N/A |
| Required Telephone Cord Length (Visitation Telephones): | 18 inches | 18 inches | N/A |
| Portable/Cordless Phones Required: | 2 | 2 | 2 |
| ITS Workstations Required: | 1 | 1 | 1 |
| TDD Units Required: | 1 | 1 | 2 |
| VRS Units Required: | 1 | 1 | 2 |
| Inmate Video Visitation Stations Required: | 18 | 3 | 23 |
| Required Cord Length (Inmate Video Visitation Stations): | 18 inches | 18 inches | 18 inches |
| Control Workstation Required: | 1 | 1 | 1 |
| Required Tablets: | 226 | 32 | 208 |
| Mobile Charging Stations: | TBD | TBD | TBD |
| Email Printing Workstations: | 1 | 1 | 1 |

Kenneth D. Leek v. Kathryn A. Androski, USDC of Kansas 5:21-cv-03100, for use in this case only

Contract ID: 00000000000000000000044861
Event ID:  EVT0005345
Page 53

| Data Category | Facility Name | | |
|---|---|---|---|
| | Wichita | Winfield | Kansas Juvenile |
| Average Daily Population (ADP): | 246 | 546 | 205 |
| Number of Beds: | 250 | 554 | 270 |
| Inmate Type: | work release | minimum | medium, maximum |
| Call Time Limit: | 60 minutes | 60 minutes | 15 minutes |
| Hours of Availability for Inmate Telephones: | varies by facility | varies by facility | 7:00am - 8:30pm |
| Inmate Telephones Required: | 29 | 64 | 50 |
| Required Telephone Cord Length (Inmate Telephones): | 18 inches | 18 inches | 18 inches |
| Visitation Telephones Required: | N/A | N/A | N/A |
| Required Telephone Cord Length (Visitation Telephones): | N/A | N/A | N/A |
| Portable/Cordless Phones Required: | 2 | 2 | 0 |
| ITS Workstations Required: | 1 | 1 | 1 |
| TDD Units Required: | 1 | 1 | 1 |
| VRS Units Required: | 1 | 1 | 1 |
| Inmate Video Visitation Stations Required: | 6 | 14 | 4 |
| Required Cord Length (Inmate Video Visitation Stations): | 18 inches | 18 inches | N/A |
| Control Workstation Required: | 1 | 1 | 1 |
| Required Tablets: | 63 | 139 | 52 |
| Mobile Charging Stations: | TBD | TBD | TBD |
| Email Printing Workstations: | 1 | 1 | 0 |

Kenneth D. Leek v. Kathryn A. Androski, USDC of Kansas 5:21-cv-03100 For use in this case only