# KANSAS DEPARTMENT OF CORRECTIONS

| | **I**NTERNAL **M**ANAGEMENT **P**OLICY AND **P**ROCEDURE | **SECTION NUMBER** 20-104 | **PAGE NUMBER** 1 of 5 |
|---|---|---|---|
| | | **SUBJECT:** SEGREGATION: Purpose of Administrative Segregation & Appropriate Placements | |
| **Approved By:** *[signature]* **Secretary of Corrections** | | **Original Date Issued:** 02-15-02 | |
| | | **Current Amendment Effective:** 07-21-04 | |
| | | **Replaces Amendment Issued:** 07-21-03 | |
| **Reissued By:** *[signature]* **Policy & Procedure Coordinator** | | The substantive content of this IMPP has been reissued as per the appropriate provisions of IMPP 01-101. The only modifications within the reissue of this document concern technical revisions of a non substantive nature. **Date Reissued:** 08-12-11 | |

## POLICY

Administrative segregation procedures shall be established for the control of inmates for necessary administrative purposes other than punishment. Procedures shall be effectively related to the control of the inmate for stated purposes. These procedures may be increased in scope and extent as necessary to maintain effective control.

## DEFINITIONS

None.

## PROCEDURES

**I. Types of Inmates or Situations for Use of Administrative Segregation**

    A.    Inmates may be confined in administrative segregation for any of the reasons or conditions articulated under procedure I.B. of this IMPP.

        1.    Any inmate may be held in administrative segregation under any subsection or combination of subsections of this IMPP simultaneously.

            a.    If the inmate is held under more than one subsection, that fact shall be stated in the administrative segregation report.

    B.    Independent criteria for placement of an inmate into administrative segregation include:

        1.    Protective custody (P.C.).

            a.    Any inmate who requests security segregation for personal safety, or who the warden has reason to believe to be in serious and imminent danger, may be placed in administrative segregation if:

                (1)    The warden explains the reason in writing, and refers to the documents or other basis for the administrator's knowledge.

    (2) Documentation that protective custody is warranted and that reasonable alternatives are not available shall be provided. A denial of protective custody shall be fully documented.

2. Pending results of investigation.

  a. Inmates may be placed in administrative segregation pending the completion of an investigation to determine whether charges should be brought.

  b. Any inmate held in administrative segregation pending results of an investigation shall be charged or released within three working days, unless a continued holding in administrative segregation under this section is justified in writing and approved by the warden.

    (1) This notice and explanation shall be given to the inmate in writing.

3. To prevent:

  a. Communication and collaboration between inmates involving an attempt to improperly or dishonestly coordinate the testimony which might be given;

  b. The possible intimidation of witnesses or accusers; or

  c. Further disruption, if a threat to security and control, including danger to other inmates, continues to exist in the judgment of the warden.

4. Pre-hearing detention.

  a. If necessary to maintain security and control, any inmate who has been charged with an alleged violation of law or a class I or II offense may be held in administrative segregation pending a hearing before the institution disciplinary board, or pending a trial by a court.

    (1) Credit for this time shall be given against any sentence of disciplinary segregation which might result from that hearing.

    (2) The inmate's status shall be reviewed by the warden or designee within three working days.

5. Communicable disease.

  a. Any inmate whom a doctor of medicine, nurse, or nurse practitioner has declared to be carrying any communicable disease, or any inmate who refuses to participate in testing for communicable disease, may be placed in administrative segregation status until any danger of contagion is past.

6. Critical monitoring inmate.

  a. Administrative segregation may be applied to the following types of inmates:

    (1) Any inmate accused of or who has a history of aggressive or forcible sexual attacks may be placed in administrative segregation.

      (a) The history shall be verified and documented, or a psychiatrist or psychologist shall verify, after any such occurrence, that a recurrence is probable.

      (2)    Any inmate with suicidal tendencies may be placed in administrative segregation if the condition is verified by a qualified mental health professional before, or within three working days after placement in administrative segregation.

7. Any inmate who inflicts any self-injury may be placed in administrative segregation for up to three working days, for observation and to give clinical staff an opportunity to determine whether the injury is a significant indication of a suicidal tendency.

   a. The shift supervisor may make the initial placement and determine the level of observation required, but shall make immediate and continuing efforts to consult with the assigned mental health professional, who shall thereafter make this determination.

      (1) These attempts shall be documented.

   b. At or prior to the end of the three working day period, the mental health professional shall recommend to the administrative segregation review board the appropriate placement for the inmate.

      (1) In the event such placement is made without a hearing, pursuant to I.B. of IMPP 20-105, then the warden or the warden's designee shall review the placement within three working days.

8. Inmates with a history of self-mutilation or self-injury may be placed in administrative segregation after a demonstration has been made from the inmate's record that this history exists.

   a. The shift supervisor may make the initial placement and determine the level of observation required, but shall make immediate and continuing efforts to consult with the assigned mental health professional, who shall thereafter make this determination.

      (1) These attempts shall be documented.

   b. In the event such placement is made without a hearing, pursuant to I.B. of IMPP 20-105, then the warden or his/her designee shall review the placement within three working days.

9. Inmates with mental or emotional problems which cause them to be a threat to themselves or others, when that mental or emotional problem has been verified by a psychiatrist or psychologist may be placed in administrative segregation.

   a. The shift supervisor may make the initial placement and determine the level of observation required, but shall make immediate and continuing efforts to consult with the assigned mental health professional, who shall thereafter make this determination.

      (1) These attempts shall be documented.

   b. In the event such placement is made without a hearing, pursuant to I.B. IMPP 20-105, then the warden or the warden's designee shall review the placement within three working days.

Case 5:21-cv-03100-SAC-ADM   Document 47-13   Filed 10/03/22   Page 3 of 17

10. Any inmate may be placed in administrative segregation in an emergency situation in which the violent behavior of the inmate indicates that the inmate is potentially dangerous to the

inmate's self, or others.

    a.   Segregation in this case may continue for three working days.

11. Any inmate who has been determined by the warden or, in the warden's absence, by the deputy warden, to be an extreme risk of escape may be placed in administrative segregation.

    a.   The reason shall be explained in writing and reference made to the documents or other basis for the placement by the warden or deputy warden, unless already apparent from the information shown in the inmate's record.

    b.   When these officers are absent during an emergency, segregation may be authorized by the highest ranking officer on duty.

        (1)   The warden or the deputy warden shall review the placement within three working days, and shall either approve continued placement in administrative segregation or direct some other appropriate placement.

12. Consistent bad behavior.

    a.   Any inmate may be placed in administrative segregation indefinitely when the inmate's record has shown consistent bad behavior, as evidenced by three documented instances of bad behavior within the preceding 12 months, and when:

        (1)   The instances are a substantial threat to the safety and security of the institution or facility; and

        (2)   The instances arise from separate fact situations.

    b.   Placement under this ground shall be with the prior written approval of the warden.

13. Other security risk.

    a.   The warden may place in administrative segregation, or secure confinement in the inmate's own cell, any inmate or group of inmates if the inmate or inmate's have engaged in behavior which has threatened the maintenance of security or control in the correctional facility.

        (1)   The warden shall, within three working days of the placement, explain, in writing, the threat to security and show justification for effecting either segregation or secure confinement under these circumstances.

        (2)   A copy of this explanation and justification shall be provided to the Secretary of Corrections.

14. Holdovers.

    a.   The warden or his designee may place in administrative segregation inmates who are identified as holdovers.

        (1)   Holdover inmates are those inmates who fall into one of the following categories:

            (a)   Any newly committed inmate awaiting transportation to Topeka or El Dorado Correctional Facility reception and diagnostic unit;

            (b)   Any inmate who is otherwise being held in a facility temporarily while in transit between one facility and another; or

Page 5 of 5, IMPP 20-104
Effective 07-21-04

      (c)    Any parolee, conditional releasee, or post-release supervision releasee who has waived a preliminary violation hearing or is being held at a facility pending a hearing to determine if probable cause exists that a violation of conditions of release occurred.

  (2)    An individual shall not be held on holdover status for a period longer than reasonably necessary to accomplish the transfer to another facility.

15.    An inmate may be placed in administrative segregation when the inmate refuses to participate in an identification procedure, including fingerprinting and photographing.

16.    An inmate may be placed in administrative segregation if the inmate has been sentenced to death subsequent to his or her conviction of a capital offense, and such inmates shall not be subject to the periodic Program Management Committee reviews required within the provisions of IMPP 20-106 unless there is some departure from their capital status due to any substantive action taken by the courts.

## II.     Timeframes Related to Administrative Segregation

A.    For purpose of this regulation, the term "working days" means any day except Saturday, Sunday, a holiday, or any other day as authorized by the governor.

**NOTE:** The policy and procedures set forth herein are intended to establish directives and guidelines for staff and offenders and those entities that are contractually bound to adhere to them.  They are not intended to establish State created liberty interests for employees or offenders, or an independent duty owed by the Department of Corrections to employees, offenders, or third parties.  Similarly, those references to the standards of various accrediting entities as may be contained within this document are included solely to manifest the commonality of purpose and direction as shared by the content of the document and the content of the referenced standards.  Any such references within this document neither imply accredited status by a Departmental facility or organizational unit, nor indicate compliance with the standards so cited. The policy and procedures contained within this document are intended to be compliant with all applicable statutes and/or regulatory requirements of the Federal Government and the state of Kansas This policy and procedure is not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties.

### REPORTS REQUIRED

None

### REFERENCES

KSA 75-5210, 75-5251, 75-7552
ACI 3-4128-2, 3-4223, 3-4238, 3-4239, 3-4268-M

### ATTACHMENTS

None



**Department of Corrections**

**INTERNAL MANAGEMENT POLICY & PROCEDURE**

Applicability:  **X** ADULT Operations Only    _ JUVENILE Operations Only    _ DEPARTMENT-WIDE

---

**IMPP #: 20-104A**                                                                                                       **PAGE #: 1 of 6**

**SEGREGATION/RESTRICTIVE HOUSING: Purpose of Administrative Restrictive Housing and Appropriate Placements**

Original Date Issued: 10-11-21    Replaces IMPP Issued: N/A    CURRENT EFFECTIVE DATE: 10-11-21

Approved By: _____ Secretary    Next Scheduled Review: 04/2023

---

## POLICY

The inability to isolate disruptive, violent and/or residents capable of influencing violence and disruption in a prison environment compromises the safety of both residents and staff. Administrative restrictive housing procedures are to be established for the control of residents necessary for purposes other than punishment. Residents are to be housed in the general population at the lowest appropriate custody level unless circumstances or resident behavior dictate otherwise. Only residents who require restrictive housing are to be assigned there. Procedures are to be effectively related to the control of the resident for stated purposes. These procedures may be increased in scope and extent as necessary to maintain effective control. When the need to isolate a resident in restrictive housing no longer exists, the resident is to be returned to the general population.

## DEFINITIONS

Restrictive Housing: A generic term used to describe housing which separates residents from the general population for both administrative and disciplinary purposes.

Administrative Restrictive Housing: A form of restrictive housing used for residents who pose a threat to life, property, self, staff, or other residents; or when a resident's continued presence threatens the secure and orderly operation of the facility.

Disciplinary Restrictive Housing: A form of restrictive housing to which a resident can be sentenced following conviction of a rule violation through disciplinary proceedings.

Short-Term Administrative Restrictive Housing: Restrictive housing placement less than 15 days. For purposes of accounting days, the date of admission to restrictive housing is considered day one (1). Classification categories include:

- Disciplinary Restrictive Housing
- Pending Results of an Investigation (PI)
- To prevent further collaboration, intimidation, or disruption
- Pre-Hearing Detention (PHD)
- Communicable Disease
- Critical Monitoring
- Emergency Situations
- Hold Overs
- Refusing to participate in identification procedures

Long-Term Administrative Restrictive Housing: Restrictive housing placement for 15 or more continuous days which requires comprehensive and individualized planning and services to aid in the return of the resident into the general

population setting. For purposes of accounting days, the date of admission to restrictive housing is considered day one (1): Classification categories include:

- Protective Custody (PC) refer to IMPP 20-108D [Protective Custody]
- Consistent Bad Behavior (CBB)
- Other Security Risk (OSR)
- Capital Punishment

Long-Term Restrictive Housing Committee: A committee comprised of the sending facility Warden, KDOC Risk Manager, KDOC Classification Manager, Enforcement, Apprehension, and Investigations (EAI) Director or designee, and the KDOC Deputy Secretary of Facility Management.

Severe and Persistent Mental Illness (SPMI): A mental health illness that is prolonged and recurrent, impairs activities of daily living and requires long-term treatment.

Single Event: A situation or instance involving a single or series of related actions or behaviors defining a single incident.

**PROCEDURES**

**I. General Procedures**

A. Residents may be confined in administrative restrictive housing for any of the reasons or conditions articulated within this policy.

1. Any resident may be held in administrative restrictive housing under any subsection or combination of subsections of this policy simultaneously.

a. If the resident is held under more than one (1) subsection, that fact is to be stated in the administrative restrictive housing report in accordance with IMPP 20-105A.

B. Residents with disabilities must be placed in cells that accommodate their disability.

1. Residents must not be placed in restrictive housing solely due to their disability or due to the lack of available accessible cells.

C. Juveniles, pregnant women or women who recently gave birth, and residents with a severe and persistent mental illness (SPMI) must be considered for alternative placement in the infirmary, a mental health unit or in a unit on a suicide watch or crisis level placement.

1. Residents considered to be severely and persistently mentally ill for the purpose of this policy are to be assessed for placement in restrictive housing pursuant to short-term restrictive housing categories only.

**II. Guidelines for Use of Short-Term Administrative Restrictive Housing**

A. The time a resident may be placed in any combination of short-term restrictive housing classifications must not exceed 15 days based on a single event. The Warden/Deputy Secretary of Facility Management must approve any placement considered to be Short Term Restrictive Housing resulting in more than 15 days within a 30-day period.

B. The conditions of confinement for residents in short-term restrictive housing are to be followed according to IMPP 20-101D.

C. Restraints are to be utilized during movement that occurs outside a resident's cell and/or unit, unless the use of restraints worsens a resident's condition, or the use of restraints is unwarranted.

1. Exceptions to the use of restraints is to be granted by the Warden, or Chief of Security in the Warden's absence.

2. Facility Wardens may establish procedures in General Orders for limited movement

without restraints for residents housed in double-bunked cell assignments, to activities such as showers and recreation.

III. **Classification Categories and Independent Criteria for Placement in Short-Term Administrative Restrictive Housing**

    A. Pending results of investigation:

        1. Residents may be placed in administrative restrictive housing pending the completion of an investigation to determine whether charges are to be brought.

        2. Any resident held under pending results of an investigation is to be charged or released within three (3) working days, unless a continued holding in administrative restrictive housing under this section is justified in writing and approved by the Warden.

            a. This notice and explanation is to be provided to the resident in writing.

    B. To prevent the following:

        1. Further disruption, if a threat to security and control, including danger to others, continues to exist in the judgment of the Warden.

        2. The possible intimidation of witnesses or accusers; or

        3. Communication and collaboration between residents involving an attempt to improperly or dishonestly coordinate the testimony which might be given.

    C. Pre-hearing detention:

        1. If necessary to maintain security and control, any resident who has been charged with an alleged violation of law, or a class I or II rule violation, may be held in administrative restrictive housing pending a hearing before the facility disciplinary board, or pending a trial by a court.

            a. Time served in restrictive housing under pre-hearing detention is to be credited towards a sanction of disciplinary restrictive housing resulting from a disciplinary conviction.

            b. The resident's status is to be reviewed by the Warden or designee within three (3) working days.

    D. Communicable disease:

        1. Any resident whom a Doctor of Medicine, nurse, or nurse practitioner has declared to be carrying any communicable disease, or any resident who refuses to participate in testing for communicable disease, may be placed in administrative restrictive housing status until any danger of a contagion is past.

    E. Critical monitoring resident:

        1. As applicable administrative restrictive housing may be applied to the following types of residents. In the event such placement is made without a hearing, pursuant to Section I.B. of IMPP 20-105A, the Warden or his/her designee is to review the placement. Residents are to be assessed for application of the Offender Companion Program pursuant to IMPP 10-144A for constant observation.

            a. Any resident accused of or who has a history of aggressive or forcible sexual attacks may be placed in administrative restrictive housing.

            b. Any resident with suicidal tendencies may be placed in administrative restrictive

housing under appropriate observation providing the condition is verified by a qualified behavioral mental health professional and a clinical observation is not available.

c. Any resident exhibiting self-injurious behavior under appropriate observation and to give clinical staff an opportunity to determine whether the injury is a significant indication of a suicidal tendency.

d. Residents with behavioral, mental health, or emotional problems which cause them to be a threat to themselves or others, when that behavioral, mental health or emotional problem has been verified by a psychiatrist or psychologist, may be placed in administrative restrictive housing under appropriate observation when clinical observation is not available.

e. Residents suspected to be under the influence of an illicit substance may be placed in restrictive housing under appropriate observation when clinical or unit observation is not available and or not appropriate.

F. Emergency situations:

1. Any resident, or group of residents, may be placed in administrative restrictive housing or secure confinement in the resident(s) own cell(s) if the resident, or residents, engaged in behavior that threatened the maintenance, security, or control of the facility creating an emergency situation that presents a danger to the resident or others.

    a. A copy of this explanation and justification shall be provided to the Deputy Secretary of Corrections of Facilities Management.

    b. Placement may continue for up to three (3) working days.

2. Any resident who has been determined by the Warden or, in the Warden's absence, by the Deputy Warden, to be an extreme risk of escape may be placed in administrative restrictive housing.

    a. The reason is to be explained in writing and reference made to the documents or other basis for the placement unless already apparent from the information shown in the resident's record.

    b. When these staff are absent during an emergency, restrictive housing may be authorized by the highest-ranking officer on duty.

        (1) The Warden or the Deputy Warden is to review the placement within 24-hours and must either approve continued placement in administrative restrictive housing or direct other appropriate housing.

G. Holdovers:

1. The Warden or designee may place residents in administrative restrictive housing who are identified as holdovers.

    a. Holdover residents are those residents who fall into one (1) of the following categories:

        (1) Any newly committed resident awaiting transportation to Topeka or El Dorado Correctional Facility reception and diagnostic unit.

        (2) Any resident who is otherwise being held in a facility temporarily while in transit between one facility and another; or,

        (3) Any parolee, conditional releasee, or post-release supervision releasee who has waived a preliminary violation hearing or is being held at a facility

pending a hearing to determine if probable cause exists that a violation of conditions of release occurred.

  b. A resident is not to be held on holdover status longer than 15 days to accomplish the transfer to another facility.

 H. Refusal to participate:

  1. A resident may be placed in administrative restrictive housing when the resident refuses to participate in an identification procedure, including fingerprinting and photographing.

## IV. Guidelines for Use of Long-Term Restrictive Housing

 A. In the event that a resident presents an extended security threat due to violent and/or disruptive behaviors, or the influence of such, the Restrictive Housing Review Board is to complete and submit a long-term restrictive housing referral to the Warden for review and approval.

 B. Restrictive housing placement in excess of 15 days requires extended planning and services for eventual placement into a general population setting.

  1. Residents on long-term restrictive housing status are to have the same housing standards, conditions of confinement for short-term restrictive housing, and opportunities for three (3) hours or more a day out of cell time.

  2. Facility General Orders are to specify the process for development of the planning and services specific for each individual resident.

## V. Classification Categories and Independent Criteria for Placement in Long-Term Administrative Restrictive Housing

 A. Consistent bad behavior:

  1. Any resident may be placed in administrative restrictive housing indefinitely when the resident's record has shown consistent bad behavior, as evidenced by three (3) single events of documented bad behavior within the preceding 12 months, and when:

   a. The instances are a substantial threat to the safety and security of the institution or facility; and

   b. The instances arise from separate fact situations.

  2. Placement under this classification requires the prior written approval of the warden and is to be within 30 days of approval by the Long-Term Restrictive Housing Committee.

 B. Other security risk:

  1. The Warden may place in administrative restrictive housing, or secure confinement in the resident's own cell, any resident or group of residents, if the resident or residents have engaged in behavior which has threatened the maintenance, security or control of the correctional facility.

   a. The Warden is to, within three (3) working days of the placement, explain in writing the threat to security and show justification for effecting secure confinement under these circumstances to the Deputy Secretary of Facility Management.

    (1) An exception to the extended planning and services required under long-term restrictive housing placements may be requested with supporting written justification by the Warden.

    (2) A copy of this explanation and justification shall be provided to the

                  Secretary of Corrections.

    C.    Protective Custody:

        1.    Pursuant to IMPP 20-108 [Protective custody] any resident who requests restrictive housing for personal safety, or who the Warden has reason to believe to be in serious and imminent danger, may be placed in administrative restrictive housing if:

            a.    Documentation that protective custody is warranted is provided in writing by the Warden and reasonable alternatives are not available.

            b.    A denial of protective custody is to be fully documented in the EAI file.

## VI. Timeframes Related to Administrative Restrictive Housing

    A.    For purpose of this regulation, the term "working days" means any day except Saturday, Sunday, a holiday, or any other day as authorized by the Governor.

**NOTE:** The policy and procedures set forth herein are intended to establish directives and guidelines for staff, residents and offenders and those entities that are contractually bound to adhere to them. They are not intended to establish State created liberty interests for employees, residents or offenders, or an independent duty owed by the Department of Corrections to employees, residents, offenders, or third parties. Similarly, those references to the standards of various accrediting entities as may be contained within this document are included solely to manifest the commonality of purpose and direction as shared by the content of the document and the content of the referenced standards. Any such references within this document neither imply accredited status by a Departmental facility or organizational unit, nor indicate compliance with the standards so cited. The policy and procedures contained within this document are intended to be compliant with all applicable statutes and/or regulatory requirements of the Federal Government and the state of Kansas. This policy and procedure are not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties.

## REPORTS

None.

## REFERENCES

IMPP 10-110D, 10-144A, 12-120A, 20-105A, 20-106, 20-108D

## HISTORY

10-11-21 Original

## ATTACHMENTS

None.



**Kansas Department of Corrections**

# INTERNAL MANAGEMENT POLICY & PROCEDURE

**Applicability:**  **X** ADULT Operations Only    \_ JUVENILE Operations Only    \_ DEPARTMENT-WIDE

**IMPP #:** 20-104A                                                                                                   **PAGE #:** 1 of 6

**SEGREGATION/RESTRICTIVE HOUSING: Purpose of Administrative Restrictive Housing and Appropriate Placements**

**Original Date Issued:** 10-11-21    **Replaces IMPP Issued:** 10-11-21    **CURRENT EFFECTIVE DATE:** 05-13-22

**Approved By:** _[signature]_, **Secretary**    **Next Scheduled Review:** 06/2024

## POLICY

The inability to isolate disruptive, violent and/or residents capable of influencing violence and disruption in a prison environment compromises the safety of both residents and staff. Administrative restrictive housing procedures are to be established for the control of residents necessary for purposes other than punishment. Residents are to be housed in the general population at the lowest appropriate custody level unless circumstances or resident behavior dictate otherwise. Only residents who require restrictive housing are to be assigned there. Procedures are to be effectively related to the control of the resident for stated purposes. These procedures may be increased in scope and extent as necessary to maintain effective control. When the need to isolate a resident in restrictive housing no longer exists, the resident is to be returned to the general population.

## DEFINITIONS

Restrictive Housing: A generic term used to describe housing which separates residents from the general population for both administrative and disciplinary purposes.

Administrative Restrictive Housing: A form of restrictive housing used for residents who pose a threat to life, property, self, staff, or other residents; or when a resident's continued presence threatens the secure and orderly operation of the facility.

Disciplinary Restrictive Housing: A form of restrictive housing to which a resident can be sentenced following conviction of a rule violation through disciplinary proceedings.

Short-Term Administrative Restrictive Housing: Restrictive housing placement less than 15 days. For purposes of accounting days, the date of admission to restrictive housing is considered day one (1). Classification categories include:

- Disciplinary Restrictive Housing
- Pending Results of an Investigation (PI)
- To prevent further collaboration, intimidation, or disruption
- Pre-Hearing Detention (PHD)
- Communicable Disease
- Critical Monitoring
- Emergency Situations
- Hold Overs
- Refusing to participate in identification procedures

Long-Term Administrative Restrictive Housing: Restrictive housing placement for 15 or more continuous days which requires comprehensive and individualized planning and services to aid in the return of the resident into the general

population setting. For purposes of accounting days, the date of admission to restrictive housing is considered day one (1): Classification categories include:
- Protective Custody (PC) refer to IMPP 20-108D [Protective Custody]
- Consistent Bad Behavior (CBB)
- Other Security Risk (OSR)
- Capital Punishment

<u>Long-Term Restrictive Housing Committee:</u> A committee comprised of the sending facility Warden, KDOC Risk Manager, KDOC Classification Manager, Enforcement, Apprehension, and Investigations (EAI) Director or designee, and the KDOC Deputy Secretary of Facility Management.

<u>Severe and Persistent Mental Illness (SPMI):</u> A mental health illness that is prolonged and recurrent, impairs activities of daily living and requires long-term treatment.

<u>Single Event:</u> A situation or instance involving a single or series of related actions or behaviors defining a single incident.

### **PROCEDURES**

**I.  General Procedures**

A.  Residents may be confined in administrative restrictive housing for any of the reasons or conditions articulated within this policy.

1.  Any resident may be held in administrative restrictive housing under any subsection or combination of subsections of this policy simultaneously.

a.  If the resident is held under more than one (1) subsection, that fact is to be stated in the administrative restrictive housing report in accordance with IMPP 20-105A.

B.  Residents with disabilities must be placed in cells that accommodate their disability.

1.  Residents must not be placed in restrictive housing solely due to their disability or due to the lack of available accessible cells.

C.  Juveniles, pregnant women or women who recently gave birth, and residents with a severe and persistent mental illness (SPMI) must be considered for alternative placement in the infirmary, a mental health unit or in a unit on a suicide watch or crisis level placement.

1.  Residents considered to be severely and persistently mentally ill for the purpose of this policy are to be assessed for placement in restrictive housing pursuant to short-term restrictive housing categories only.

**II.  Guidelines for Use of Short-Term Administrative Restrictive Housing**

A.  The time a resident may be placed in any combination of short-term restrictive housing classifications must not exceed 15 days based on a single event. The Warden/Deputy Secretary of Facility Management must approve any placement considered to be Short Term Restrictive Housing resulting in more than 15 days within a 30-day period.

B.  The conditions of confinement for residents in short-term restrictive housing are to be followed according to IMPP 20-101A.

C.  Restraints are to be utilized during movement that occurs outside a resident's cell and/or unit, unless the use of restraints worsens a resident's condition, or the use of restraints is unwarranted.

1.  Exceptions to the use of restraints is to be granted by the Warden, or Chief of Security in the Warden's absence.

2.  Facility Wardens may establish procedures in General Orders for limited movement without

restraints for residents housed in double-bunked cell assignments, to activities such as showers and recreation.

### III. Classification Categories and Independent Criteria for Placement in Short-Term Administrative Restrictive Housing

    A.    Pending results of investigation:

        1.    Residents may be placed in administrative restrictive housing pending the completion of an investigation to determine whether charges are to be brought.

        2.    Any resident held under pending results of an investigation is to be charged or released within three (3) working days, unless a continued holding in administrative restrictive housing under this section is justified in writing and approved by the Warden.

            a.    This notice and explanation is to be provided to the resident in writing.

    B.    To prevent the following:

        1.    Further disruption, if a threat to security and control, including danger to others, continues to exist in the judgment of the Warden.

        2.    The possible intimidation of witnesses or accusers; or

        3.    Communication and collaboration between residents involving an attempt to improperly or dishonestly coordinate the testimony which might be given.

    C.    Pre-hearing detention:

        1.    If necessary to maintain security and control, any resident who has been charged with an alleged violation of law, or a class I or II rule violation, may be held in administrative restrictive housing pending a hearing before the facility disciplinary board, or pending a trial by a court.

            a.    Time served in restrictive housing under pre-hearing detention is to be credited towards a sanction of disciplinary restrictive housing resulting from a disciplinary conviction.

            b.    The resident's status is to be reviewed by the Warden or designee within three (3) working days.

    D.    Communicable disease:

        1.    Any resident whom a Doctor of Medicine, nurse, or nurse practitioner has declared to be carrying any communicable disease, or any resident who refuses to participate in testing for communicable disease, may be placed in administrative restrictive housing status until any danger of a contagion is past.

    E.    Critical monitoring resident:

        1.    As applicable administrative restrictive housing may be applied to the following types of residents.  In the event such placement is made without a hearing, pursuant to Section I.B. of IMPP 20-105A, the Warden or his/her designee is to review the placement.  Residents are to be assessed for application of the Offender Companion Program pursuant to IMPP 10-144A for constant observation.

            a.    Any resident accused of or who has a history of aggressive or forcible sexual attacks may be placed in administrative restrictive housing.

            b.    Any resident with suicidal tendencies may be placed in administrative restrictive

     housing under appropriate observation providing the condition is verified by a qualified behavioral mental health professional and a clinical observation is not available.

    c. Any resident exhibiting self-injurious behavior under appropriate observation and to give clinical staff an opportunity to determine whether the injury is a significant indication of a suicidal tendency.

    d. Residents with behavioral, mental health, or emotional problems which cause them to be a threat to themselves or others, when that behavioral, mental health or emotional problem has been verified by a psychiatrist or psychologist, may be placed in administrative restrictive housing under appropriate observation when clinical observation is not available.

    e. Residents suspected to be under the influence of an illicit substance may be placed in restrictive housing under appropriate observation when clinical or unit observation is not available and or not appropriate.

 F. Emergency situations:

   1. Any resident, or group of residents, may be placed in administrative restrictive housing or secure confinement in the resident(s) own cell(s) if the resident, or residents, engaged in behavior that threatened the maintenance, security, or control of the facility creating an emergency situation that presents a danger to the resident or others.

    a. A copy of this explanation and justification shall be provided to the Deputy Secretary of Corrections of Facilities Management.

    b. Placement may continue for up to three (3) working days.

   2. Any resident who has been determined by the Warden or, in the Warden's absence, by the Deputy Warden, to be an extreme risk of escape may be placed in administrative restrictive housing.

    a. The reason is to be explained in writing and reference made to the documents or other basis for the placement unless already apparent from the information shown in the resident's record.

    b. When these staff are absent during an emergency, restrictive housing may be authorized by the highest-ranking officer on duty.

     (1) The Warden or the Deputy Warden is to review the placement within 24-hours and must either approve continued placement in administrative restrictive housing or direct other appropriate housing.

 G. Holdovers:

   1. The Warden or designee may place residents in administrative restrictive housing who are identified as holdovers.

    a. Holdover residents are those residents who fall into one (1) of the following categories:

     (1) Any newly committed resident awaiting transportation to Topeka or El Dorado Correctional Facility reception and diagnostic unit.

     (2) Any resident who is otherwise being held in a facility temporarily while in transit between one facility and another; or,

     (3) Any parolee, conditional releasee, or post-release supervision releasee who has waived a preliminary violation hearing or is being held at a facility

        pending a hearing to determine if probable cause exists that a violation of conditions of release occurred.

    b.    A resident is not to be held on holdover status longer than 15 days to accomplish the transfer to another facility.

H.    Refusal to participate:

    1.    A resident may be placed in administrative restrictive housing when the resident refuses to participate in an identification procedure, including fingerprinting and photographing.

I.    Disciplinary Restrictive Housing

    1.    Placement of any resident in disciplinary restrictive housing requires full compliance with all applicable provisions and requirements of the disciplinary procedures set forth within K.A.R. 44-13-101 *et seq.*

## IV. Guidelines for Use of Long-Term Restrictive Housing

A.    In the event that a resident presents an extended security threat due to violent and/or disruptive behaviors, or the influence of such, the Restrictive Housing Review Board is to complete and submit a long-term restrictive housing referral to the Warden for review and approval.

B.    Restrictive housing placement in excess of 15 days requires extended planning and services for eventual placement into a general population setting.

    1.    Residents on long-term restrictive housing status are to have the same housing standards, conditions of confinement for short-term restrictive housing, and opportunities for three (3) hours or more a day out of cell time.

    2.    Facility General Orders are to specify the process for development of the planning and services specific for each individual resident.

## V. Classification Categories and Independent Criteria for Placement in Long-Term Administrative Restrictive Housing

A.    Consistent bad behavior:

    1.    Any resident may be placed in administrative restrictive housing indefinitely when the resident's record has shown consistent bad behavior, as evidenced by three (3) single events of documented bad behavior within the preceding 12 months, and when:

        a.    The instances are a substantial threat to the safety and security of the institution or facility; and

        b.    The instances arise from separate fact situations.

    2.    Placement under this classification requires the prior written approval of the warden and is to be within 30 days of approval by the Long-Term Restrictive Housing Committee.

B.    Other security risk:

    1.    The Warden may place in administrative restrictive housing, or secure confinement in the resident's own cell, any resident or group of residents, if the resident or residents have engaged in behavior which has threatened the maintenance, security, or control of the correctional facility.

        a.    The Warden is to, within three (3) working days of the placement, explain in writing the threat to security and show justification for effecting secure confinement under these circumstances to the Deputy Secretary of Facility Management.

      (1) An exception to the extended planning and services required under long-term restrictive housing placements may be requested with supporting written justification by the Warden.

      (2) A copy of this explanation and justification shall be provided to the Secretary of Corrections.

  C. Protective Custody:

    1. Pursuant to IMPP 20-108 [Protective custody] any resident who requests restrictive housing for personal safety, or who the Warden has reason to believe to be in serious and imminent danger, may be placed in administrative restrictive housing if:

      a. Documentation that protective custody is warranted is provided in writing by the Warden and reasonable alternatives are not available.

      b. A denial of protective custody is to be fully documented in the EAI file.

**VI.** **Timeframes Related to Administrative Restrictive Housing**

  A. For purpose of this regulation, the term "working days" means any day except Saturday, Sunday, a holiday, or any other day as authorized by the Governor.

**NOTE:** The policy and procedures set forth herein are intended to establish directives and guidelines for staff, residents and offenders and those entities that are contractually bound to adhere to them. They are not intended to establish State created liberty interests for employees, residents or offenders, or an independent duty owed by the Department of Corrections to employees, residents, offenders, or third parties. Similarly, those references to the standards of various accrediting entities as may be contained within this document are included solely to manifest the commonality of purpose and direction as shared by the content of the document and the content of the referenced standards. Any such references within this document neither imply accredited status by a Departmental facility or organizational unit, nor indicate compliance with the standards so cited. The policy and procedures contained within this document are intended to be compliant with all applicable statutes and/or regulatory requirements of the Federal Government and the state of Kansas. This policy and procedure are not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties.

**REPORTS**

None.

**REFERENCES**

IMPP 10-110D, 10-144A, 12-120A, 20-105A, 20-108D

**HISTORY**

10-11-21 Original
05-13-22 Revision 1

**ATTACHMENTS**

None.