Mr. Kenneth D. Leek #63523
E.D.C.F. 1737 S.E. U.S. Hwy. 54
El Dorado, KS 67042-0311

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KENNETH D. LEEK,                   )
   Plaintiff,                      )
                       )
                       ) Case No. 21-3100-HLT-ADM
   VS.                            )
                       )
KATHRYN A. ANDRUSKI, et al.,        )
   Defendants.                     )

PETITIONER'S MOTION IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

   Plaintiff, Kenneth D. Leek, pro se, respectfully request that
this Court deny defendants' motion to dismiss all claims against
them pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) and their
alternative request to grant summary judgment pursuant to
Fed. R. Civ. P. 56. In compliance with D. Kan. Rule 7.1 and 7.6, a
memorandum in support is filed with this motion.

                      Respectfully Submitted,
                       Kenneth D. Leek

CERTIFICATE OF SERVICE

   The undersigned hereby certifies that he hand-delivered this
PETITIONER'S MOTION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT to prison officials
for e-filing using the cm/ECF system on this 25th day of
November, 2022.

                      Kenneth D. Leek
                      KENNETH D. LEEK

mr. Kenneth D. Leek #63523
E.D.C.F. 1737 S.E. U.S. Hwy. 54
El Dorado, KS 67042-0311

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KENNETH D. LEEK,
    Plaintiff,

vs.                ) Case No. 21-3100-HLT-ADM

KATHRYN A. ANDROSKI, et al.,
    Defendants.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR
SUMMARY JUDMENT

    In accordance with D.Kan. Rules 7.1(a) and 7.6 Plaintiff, Kenneth D. Leek, pro se, submits this memorandum in opposition to the KDOC Defendants' motion under Fed.R.Civ.P. 12(b)(2) and 12(b)(6) or Fed.R.Civ.P. 56. Plaintiff respectfully request their motion be denied, or in the alternative, summary judgment is not granted in their favor and this matter proceeds to trial. Plaintiff attaches sixteen new exhibits, outlined in the table below, and states the following in support:

INDEX OF EXHIBITS

| EXHIBIT | Description |
|---------|-------------|
| A | Grievance response of Jeremy Hoepner |
| B | Correspondence from Charles Cavenee regarding representation |
| C | Form-9 request and response from John Stiffin |
| D | Form-9 request to Legal Services for Prisoners and their response to hunger strike policy |
| E | Tablet e-message from Brian Buchholtz regarding the launch of the LEXIS NEXIS app on prisoner tablets |

| F | E-message from plaintiff to Brian Buchholtz and his response in regard to limitations on access to legal research tablets |
| G | Notice to 10th Circuit that plaintiff lacked sufficient access to legal resources to file his appellate brief in this case. |
| H | Form-9 request to John Stiflin and his response in regard to request for cases cited in courts order of dismissal |
| I | Letter to Warden requesting exemption from property limitation and for an extra legal box and his response |
| J | Form-9 to Lindsay Wildermuth and her response |
| K | Letter to Joe Norwood requesting the sale of laptops to prisoners and his designee's response |
| L | Letter to Jeff Zmuda requesting the sale of laptops to prisoners and his designee's response |
| M | Form-9 to library requesting Jamerson case and Stiflin's response |
| N | Administrative grievance in regard to segregation unit lacking clean sheets, blankets, exposure to bird feces and no clean clothes |
| O | Declaration of Kenneth D. Leek |
| P | Declaration of Darren Hickson |
| Q | KDOC IMPP 12-120 (Control of inmate property) |

## NATURE OF THE CASE

Since November 4, 2020 plaintiff has been in segregation, while in the custody and control of the Kansas Department of Corrections (KDOC), at Hutchinson Correctional Facility (HCF) Lansing Correctional Facility (LCF) and El Dorado Correctional Facility (EDCF). (Doc. 4)-1 pgs. 1-2) While at HCF plaintiff filed the instant action alleging the defendants violated his right of access to the court by preventing him from working with other prisoners to do legal research and by failing to provide him with adequate legal resources while he litigated two cases — one in state court and one in this court. (Doc. 4) pg. 2) Plaintiff also alleged that IC Solutions failed to provide access to LEXIS NEXIS to KDOC prisoners on the GTL tablets which was a breach of contract. (Doc. 9, para. 81-97) Defendant misti Kroeker, the HCF contract monitor, was notified by plaintiff of the breach of contract and requested to promptly intervene and she took no action or gave any reply (Doc. 9,

(2)

para. 95-97)

As a result of defendants' actions plaintiff seeks declaratory relief, injunctive relief; and nominal, compensatory, and punitive damages, along with costs. (Doc. 9, pgs. 12-16)

On September 2, 2021, while screening the instant matter pursuant to the 28A, this court dismissed all of plaintiff's claims. (Doc. 11) On appeal the Tenth Circuit affirmed the dismissal of most claims, but (1) reversed the dismissal of his access to the courts claim against the KDOC Defendants in so far as it relates specifically to his attempts to respond to a June 16, 2021 order to show cause in Scaggia and (2) reinstated his state law breach of contract claim against JC Solutions and Kroelker for this court to "reconsider whether to exercise supplemental jurisdiction over that claim at the appropriate procedural juncture." (Doc. 23 at 8-9, 16)

JC Solutions subsequently filed a motion to dismiss alleging the plaintiff did not have standing to sue them as he was not in privity with them and thus did not have legal standing to sue. (Doc. 32) On September 9, 2022 the court granted the motion. (Doc. 45)

When plaintiff was transferred from HCF to LCF's new Long Term Restrictive Housing Unit (LTRHU) he and other prisoners quickly learned they were moved in haste, that the facility did not have a sufficient supply of basic necessities to give them and litigation would be necessary to challenge the conditions of their confinement. (Doc. 9, para. 147-151, plain. Exh. O, para. 34-41) Plaintiff filed a grievance in regards to the LTRHU's lack of clean sheets and blankets, his exposure to ridiculous amounts of bird feces in the yard cages and inadequate food portions being served by contract provider Aramark. (Plain. Ex. N) Due to the defendants' exact cite system afforded to LTRHU prisoners to do research, plaintiff has never been able to bring a suit in court. (Plain. Ex. O, para. 41)

In regards to the remaining access to the courts claim now before the court, plaintiff has averred that the defendants provided him with inadequate legal resources for him to adequately respond to the court's June 16, 2021 order to show cause within thirty days why it should not be dismissed or

(3)

file an amended complaint. (Doc. 9, para. 116-134) Defendants only provided him with an exact cite system to do his research. (Doc. 9, para. 106-107) Plaintiff filed a notice with his opening appellate brief informing the court his brief was being prepared with only the cases, notes and personal law books plaintiff had in his possession. (Plain. Ex. G)

This court has subject matter jurisdiction over plaintiff's access to the courts claim and the defendants are not entitled to Eleventh Amendment immunity. Plaintiff has stated a claim upon which relief can be granted. Alternatively, summary judgment should not be granted to the defendants on this claim because the record does not support it but instead supports plaintiff's claim. Plaintiff is entitled to the relief he seeks as his claims are not moot as the defendants maintain. Further, plaintiff should be granted leave to amend his complaint to add another claim of a violation of access to the court by the defendants as their actions precluded him from bringing suit to challenge the conditions of his confinement in the LTRHU.

## CHALLENGE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

1. At LCF, LTRHU inmates do not receive a list of law books upon request as defendants allege in their motion on page 11, para. 50. (Plain. Ex. J, O para. 4, P para. 3)

2. At LCF, LTRHU inmates can check out three items at a time and must return them in one week, not two as defendants maintain in their motion on page 11, para. 53. (Doc. 9, para. 108, 109; Plain. Ex. H)

3. At LCF, LTRHU inmates cannot ask their unit team for an exception to the checkout limit based on the demands and deadlines of the resident's active court cases, nor are they ever advised of this. Furthermore, the librarian, defendant Stiffin, does not allow any exceptions to his three case a week limit as defendants maintain in their motion on page 11, para. 54.

(4)

(Plain. Ex. O, para. 9-12; Plain. Ex. P, para. 7)

4. Plaintiff has checked out far more than the 12 cases while in the LTRHU as alleged by defendants in their motion on page 13, para. 59 (Plain. Ex. O, para. 13, Plain. Ex. M)

5. Plaintiff never sent the library a Form-9 asking " for assistance interpreting IMPP's " as defendants allege in their motion at page 13, para. 68. He requested a copy of the policy on hunger strikes. (Doc. 9, para. 135-138; Plain. Ex. C)

6. Defendants maintain that paperwork limits apply to inmates to help prevent contraband like drugs soaked in paper, fire hazards, arson, clutter and visibility obstruction in their motion on page 13, para. 70. Plaintiff maintains the defendants use property compliance as a means to stifle prisoner litigation and that they have no real penological interest in reducing the amount of paper in a prisoner's cell. (Plain. Ex. K; L; O para. 18-22; P para. 9)

7. Facility attorneys do not grant prisoners exceptions to the amount of paperwork they can keep in their cells based on demands and deadlines of an inmates active court cases as the defendants maintain in their motion on page 13, para. 71. Inmates are not told this nor does KDOC policy contain language of any such exception. (Plain. Ex. I; O para. 23,24; Plain. Ex. P, para. 10; Plain. Ex. Q)

8. Defendants maintain that partners research is not allowed for LTRHU inmates " to prevent dangerous communications" in their motion on page 13, para. 72. That is a lie. Partners research is not allowed because the KDOC does not want like minded prisoners to put their heads together to sue them. (Plain. Ex. O, para. 25; P para. 11)

9. Defendants maintain plaintiff's request to assist another resident was denied to "prevent communication with

other residents as an attempt to introduce contraband
or pass on security threat group (STG) information " in
their motion on page 14, para, 73. That statement is
false and an attempt to use security as a shield to violate
the rights of prisoners. All LTRHU inmates can communicate
and/or pass stuff off by going to yard, mental health
groups or even talking out the cell doors. (Plain. Ex. O para.
25; Plain. Ex. P, para, 12)

10. Defendants maintain that since LEXIS NEXIS is now available
to segregation prisoners on tablets they have the same time
to conduct research as general population prisoners on page
14, para, 77 in their motion. That is a false assertion that's
easily rebutted. (Plain. Ex. E, F, O para, 26-30 and P
para, 13-15)

      STATEMENT OF MATERIAL FACTS AS TO WHICH
            NO GENUINE ISSUE EXISTS

Long Term Restrictive Housing Unit at L.C.F. (Central)

1. On April 28, 2021 plaintiff was transferred from H.C.F. to
L.C.F.'s LTRHU and was classified as Other Security Risk
(OSR). (Def. Ex. A at 2)

2. Communication between prisoners in the LTRHU is not easily
controlled, nor do correctional staff that work in the
unit bother to try. (Plain. Ex. O para. 25; Plain. Ex. P,
para, 12)

3. Plaintiff spent approximately one year straight in the
LTRHU. (Def. Ex. A at 2)

4. Since leaving the L.C.F. LTRHU he has been transferred
back to L.C.F. twice and was in segregation both
times because of his OSR status: from June 21, 2022
until June 28, 2022 then from July 5, 2022 until July
12, 2022. (Plain. Ex. A)

5. Plaintiff is still in segregation at EDCF on OSR status.
(Plain. Ex. O, para. 27)

### The Scoggin Case

6. On February 10, 2020, plaintiff filed his initial complaint in the Leek v. Scoggin case. No. 20-3051-SAC, WL 4263502 (D. Kan.) (Doc. 1)

7. On July 3, 2020, plaintiff filed his first amended complaint in the case. (Doc. 14)

8. On April 28, 2021, while the Scoggin case was still pending, plaintiff was transferred to the LCF LTRHU. (Def. Ex. A at 2)

9. On June 16, 2021, this court ordered plaintiff to show cause why his first amended complaint should not be dismissed in the Scoggin case. (Doc. 47)

10. On July 12, 2021, plaintiff filed a sub-par response to the court's order to show cause with only the few cases, notes, and law books he has in his personal property because of the exact cite system in effect at LCF. (Doc. 48; Doc. 9, para. 119-122)

11. Plaintiff wanted to save his case so he filed a motion for appointment of counsel (Doc. 36) which was denied. (Doc. 9, para. 73)

12. On September 20, 2021, the court dismissed the Scoggin case. (Docs. 51, 52)

13. Plaintiff could not file an amended complaint or appeal his case to the tenth circuit due to the exact cite system in place in the LTRHU. (Doc. 9, para. 120; Plain. Ex. O, para. 31, 32)

<u>Library Services For Segregation Prisoners</u>

14. When plaintiff arrived at the LTRHU he immediately
conferred with unit team manager Lindsay Wildermuth
on how to obtain legal services. She advised that
materials could be received from the library on loan
by giving the librarian the specific case cite or statute
but no law books would be sent to the living unit. (Doc. 9,
para. 106; Plain. Ex. J)

15. When asked why there was no small satellite library in
the LTRU Wildermuth advised such an option had not been
explored and they felt the system in place was fine.
(Plain. Ex. O, para. 5; Doc. 9, para. 125)

16. The legal resources provided to LTRHU prisoners, or
segregation prisoners in general, are not on par with
those in general population. (Doc. 9, para. 127, 139, 140;
Plain. Ex. O, para. 38)

17. Prison facilities have their own General Orders for the
management and control of legal materials (Def. Ex. K,
§§ II(B)) However, IMPP 12-120, which also controls
regulation of all inmate property, is superior to facility
General Orders. (Plain. Ex. Q)

18. While in the LTRHU plaintiff did not have access to
LEXIS NEXIS while general population prisoners did.
(Def. Ex. E, para. 38)

19. Plaintiff never asked the defendants to restrain and
escort LTRHU prisoners to the law library so they could
use the research computers. He instead suggested a small
satellite library should have been in the LTRHU along
with the LEXIS NEXIS app on the tablets that could
be checked out. (Doc. 9, para. 94, 135, 139)

20. LTRHU prisoners are escorted from the living unit to

(8)

the clinic daily and pass by dozens of general population inmates. Plaintiff has never heard any security staff complain about prisoners talking or any incidents that occured during a transport. (Plain. Ex. O, para. 8; Plain. Ex. P, para. 5)

21. Plaintiff was never told he could receive a list of the legal books available upon request. (Doc. 9, para. 113)

22. Plaintiff was never informed he could receive photocopies of the table of contents of a book or a particular section of a book nor do defendants point to a policy that outlines the alleged option. (Def. Ex. E and G; Plain. Ex. O, para. 45)

23. At LCF segregation prisoners are allowed to check out cases for a week and then must return them. (Doc. 9, para. 108, 109; Plain. Ex. H)

24. There is no written policy plaintiff is aware of that allows him to seek an exception to the three cases a week checkout limit, nor has he ever heard of any prisoner receiving such an exemption. (Plain. Ex. O, para. 11, 12; Plain. Ex. P, para. 7)

25. Plaintiff had checked out far more than 12 cases while housed in the LTBHV. It is perceived defendant Stiffin has a faulty system of records. (Plain. Ex. M; Plain. Ex. O, para. 13)

26. Plaintiff averred in his complaint that IMPPs are not always available to him upon request. (Doc. 9, para. 135-138; Plain. Ex. C)

27. Over the years prisons have strictly enforced the property limits outlined in Impp 12-120 (Plain. Ex. D) on plaintiff causing him to mail out large amounts of hiss stuff or have it forcibly destroyed. In an attempt to be

(9)

proactive plaintiff has reached out to several secretaries of corrections in an attempt to get a policy change where prisoners can buy stripped down laptops or tablets so their paper documents could be reduced to digital media and excess paper could be removed from the cells. Each time plaintiffs request was "noted" but no policy change to reflect his wishes has become manifest. (Plain. Ex. K and L; Plain. Ex. O, para. 18-21)

28. Plaintiff has never been told exceptions to the paperwork limits can be granted by facility attorneys based on the "demands and deadlines of an inmate's active court cases," nor does he know of anyone who has received such an exception. (Plain. Ex. O, para. 23; Plain. Ex. P, para. 10)

29. Partners research is not allowed in the LTRHU because the KDOC does not want like minded prisoners coming together to sue them, not to "prevent dangerous communications." (Plain. Ex. O, para. 25)

### LEXIS NEXIS on Tablets

30. The KDOC views the LEXIS NEXIS app being provided to a prisoner as a privilege. Plaintiff sees it as a means to ensure the constitutional rights of prisoners' access to the courts since segregation inmates do not have physical access to the law library. (Doc. 47 pg. 14, para. 74; Doc. 9, para. 94, 101)

31. The KDOC only begrudgingly decided to persuade IC Solutions to put the LEXIS NEXIS app on the tablets as a result of plaintiff filing the instant lawsuit three years into a five year contract. (Plain. Ex. O, para. 26; Doc. 9, para. 88-89)

32. The KDOC does have multiple policies and procedures on the books in regards to tablets and library services afforded to prisoners, but none of those policies mention the LEXIS NEXIS app, how often or for how long prisoners should have access to the tablet, who is responsible for assuring

compliance with such a policy or any other useful information.
(Def. Ex. J, K, L, O, P)

33. Segregation prisoners do not have the same time to conduct legal research as general population inmates. In fact, since there is no official policy in place outlining the issuance of the law library tablets, unit teams and correctional staff just wing it and create hate and discontent while yealding wildly inconsistent results. (Plain. Ex. O, para. 27-30; Plain. Ex. P, para. 15-16)

34. Plaintiff struggles mightily to get his hands on a law library tablet and has complained to prison authorities about the unwritten policy they have adopted to pass them out. For example, the unit team recently sent all segregation inmates an e-mail saying over 100 prisoners are supposed to share ONE law library tablet that you have to sign up for and will be issued on a "first come first serve" basis. You can use the tablet for two hours a week. (Plain. Ex. E and F)

35. Plaintiff has told prison officials he is exhausting his administrative remedies, that their e-mails will be exhibits in this case, and that an alleged two hours a week access to the tablet — if you can get it — is not nearly enough access. (Plain. Ex. F; Plain. Ex. O, para. 30)

36. Plaintiff's complaint will have to be amended to address the constitutionality of the tablet regulation(s) and issuance process.

### QUESTIONS PRESENTED

I. Should Deputy Warden Skidmore be dismissed from this case when all claims against him have already been dismissed?

II. As a matter of law, does the Eleventh Amendment bar plaintiff's §1983 claim against Warden Shannon L. Meyer in her official capacity for monetary damages and for

(11)

declaratory relief?

II. Does plaintiff lacks constitutional standing to bring his access to the courts claim for failure to allege an actual injury when his underlying case was not materially impacted?

III. Are the defendants entitled to qualified immunity because their actions did not violate clearly established law of which reasonable state officials would have known?

V. Does the record in this case conclusively show that plaintiff had access to more than just an exact cite system for retrieving legal resources?

VI. Is plaintiff entitled to compensatory damages under the Prison Litigation Reform Act when he cannot show physical injury or that his underlying claim would have had a more favorable outcome?

VII. Is plaintiff entitled to punitive damages due to defendants' conduct being motivated by evil intent or were taken with reckless or callous indifference to his constitutional rights?

VIII. Are plaintiff's requests for injunctive relief moot when the KDOC has taken corrective measures, he's been moved to a different facility, and some claims have been dismissed?

IX. Should plaintiff's breach of contract claim be dismissed?

XI. Should plaintiff be given leave to amend his complaint?

ARGUMENTS AND AUTHORITIES

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss claims for lack of subject matter jurisdiction. This is because "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute."

Kline v. Biles, 861 F.3d 1177, 1180 (10th Cir. 2017) Plaintiff, as the party invoking the Court's jurisdiction, bears the burden of showing its existence. Id. A federal court must generally "satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999)

## Standard on Motion to Dismiss for Failure to State a Claim

On a Rule 12(b)(6) motion to dismiss, such as the one made by the defendants, a court must accept as true all well pleaded factual allegations in the complaint. Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009), but a complaint must also contain enough facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

Although the sufficiency of a complaint generally rests on its contents alone, the court may also consider (1) documents that the complaint incorporates by reference, (2) documents that the complaint references if they are central to the plaintiff's claims, and (3) documents of which a court may take judicial notice, which includes court records in any related court proceedings. Gee v. Pacheco, 627 F.3d 1178, 1186, 1191 (10th Cir. 2010)

## Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); McCoy v. Meyers, 887 F.3d 1034, 1044 (10th Cir. 2018). The court views the evidence and draws all reasonable inferences in a light most favorable to the nonmoving party. McCoy, supra, at 1044. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and "an issue of fact is 'material' if under the substantive law

it is essential to the proper disposition of the claim." Adler v. Wal-mart Stores, Inc., 144 F.3d 664, 620 (10th Cir. 1998)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) When there is no genuine dispute of material fact on an essential element of the nonmovant's claim, then summary judgment is appropriate. See Sports Unlimited, Inc. v. Lankford Enters., 275 F.3d 996, 999 (10th Cir. 2002)

## Qualified Immunity Standard

Qualified immunity protects from civil liability government officials whose actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014). Qualified immunity is an affirmative defense that can be raised in a motion to dismiss or in a motion for summary judgment. Id. When a §1983 defendant raises the qualified immunity defense, it creates a presumption that the defendant is immune from suit. Jaany v. Gamez, 8 F.4th 883, 913 (10th Cir. 2021). To overcome this presumption, the burden shifts to the plaintiff to show (1) the defendants' alleged conduct violated a federal constitutional right, and (2) that right was clearly established at the time of the alleged violation. Id. At the motion to dismiss stage, courts look to the defendants' conduct as alleged in the complaint, while at the summary judgment stage, courts look at the defendants' conduct according to the evidence in the light most favorable to the plaintiff. Thomas, supra, at 1194. "The court has discretion to decide which of the two prongs of the qualified-immunity analysis to address first." Grissom v. Roberts, 902 F.3d 1162, 1167 (10th Cir. 2018)

Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Kisela v. Hughes, 138 S.Ct. 1148, 1152 (2018) In order to overcome the defendants' assertion of qualified immunity, plaintiff must show not only that they violated his federally secured rights, but also that objectionably reasonable officials could not have thought the conduct constitutionally permissible. Cortez v. McCauley, 478 F.3d 1108, 1128 (10th Cir. 2007); Ashcroft v. al-Kidd, 563

(16)

U.S. 731, 741 (2011) (stating clearly established case law must answer the "constitutional question 'beyond debate'"). If a plaintiff fails to satisfy either prong of the qualified immunity test, a court must grant the defendant qualified immunity. Grissom, supra, at 1167.

There are two ways the plaintiff can show the challenged conduct violates clearly established constitutional rights: "the plaintiff must show there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Colbruno v. Kessler, 928 F.3d 1155, 1161 (10th Cir.2019)

## Voluntary Cessation Exception to Mootness Standard

Under the voluntary cessation exception to mootness, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." Already LLC v. Nike, Inc., 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013) The exception "exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resume the illegal conduct," Ind v. Colo. Dep't of Corr., 801 F.3d 1209, 1214 or "evade judicial review by temporarily altering questionable behavior," Brown v. Buhman, 822 F.3d 1151, 1166 (10th Cir. 2016)

The voluntary cessation exception does not apply, and a case is moot, "if the defendant carries 'the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" Already, supra, at 91. This burden is "stringent" and "heavy." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc., 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed. 2d 610 (2000) The inquiry is fact-specific. See United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)

To carry its burden, a defendant must do more than offer "a mere informal promise or assurance that the challenged practice will cease" or "announce an intention to change," Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1118 (10th Cir. 2010) A defendant's corrective actions that "do not fully comport with the relief sought" are also insufficient. Wiley v. Nat'l Collegiate

Athletic Ass'n, 613 F.3d 473, 476 (10th Cir. 1979). Instead, a defendant must undertake "changes that are permanent in nature" and "fore-close a reasonable chance of recurrence of the challenged conduct." Tandy V. City of Wichita, 380 F.3d 1277, 1291 (10th Cir. 2004). Such changes could include "withdrawal or alteration of administrative policies" through a formal process, Rio Grande Silvery Minnow, supra, at 1117, or a declaration under penalty of perjury, so that plaintiff "faces no credible threat of prosecution." Brown, supra, at 1172.

In contrast, however, an action becomes moot "if an intervening circumstance deprives the plaintiff of a personal stake at any point." Brown, supra, at 1165. In a moot case, a plaintiff no longer suffers a redressable "actual injury." Ind, supra, at 1213. But a case is not moot if a plaintiff has a concrete interest, however small, in the outcome." Knox V. Serv. Emps. Int'l Union, Local 1000, 567 U.S. 298, 307-308, 132 S.Ct. 2277, 183 L.Ed. 2d 281 (2012)

No matter what the court must decide whether a case is moot as to "each form of relief sought." Collins V. Daniels, 916 F.3d 1302, 1314 (10th Cir. 2019) Thus, interim developments that moot a claim for prospective relief do not necessarily moot a claim for damages. Utah Animal Rights Coal. V. Salt Lake City Corp., 371 F.3d 1248, 1257-58 (10th Cir. 2004) And "the mootness of a plaintiff's claim for injunctive relief is not necessarily dispositive regarding the mootness of his claim for a declaratory judgment." Jordan V. Sosa, 654 F.3d 1012, 1025 (10th Cir. 2011)

I. The claim against Deputy Warden James Skidmore has already been dismissed, so he should be dismissed from the case.

The defendants are correct that the Tenth Circuit ruled that plaintiff failed to state a claim against Skidmore when it was alleged his no inmate assistance policy violated his right of access to the courts. Therefore, Skidmore should officially be removed from this case.

II. Plaintiff's access to the courts claim should not be dismissed
for lack of subject matter jurisdiction due to Eleventh Amend-
ment immunity nor for lack of constitutional standing.

A. The Eleventh Amendment bars any claims against Warden
Meyer in her official capacity for monetary damages and
for declaratory relief.

Defendant Warden Shannon Meyer alleges that she is
immune from plaintiff's request for monetary damages and
declaratory relief pursuant to the Eleventh Amendment of
the U.S. Constitution. She is correct. See White v. Colorado,
82 F.3d 364, 366 (10th Cir. 1996) What Meyer conveniently
omits is the fact that she is sued in both her official and individual
capacities. (Doc. 9 (caption); Doc. 9 pg. 2, para. 10)
Meyer does correctly state that an exception to sovereign
immunity allows the plaintiff to seek prospective injunctive relief
against state officials for ongoing violations of federal law.
Muscogee (Creek) Nation v. Pruitt, 669 F.3d 1159, 1166 (10th Cir. 2012)
For the record, plaintiff only seeks injunctive relief against her
in her official capacity. All other forms of relief are made against
Meyer in her individual capacity, which is the proper capacity.
Cornforth v. Univ. of Okla. Bd. of Regents, 263 F.3d 1129, 1132-
1133 (10th Cir. 2001)

B. Plaintiff does not lack constitutional standing for his
access to the courts claim as he has alleged an actual
injury impairing his access to the courts because his
underlying case was materially impacted.

The defendants maintain plaintiff's access to the courts
claim against them should be dismissed "for lack of subject
matter jurisdiction" because he can allege no actual injury
impacing his right of access to the courts. (Doc. 47, pg. 28)
Defendants' are wrong.
The defendants drone on for nine consecutive pages citing
dozens of cases and espousing multiple arguments as to why
their actions had no material impact in regard to the Scossia

(17)

case being dismissed. Plaintiff will use their own theories and cases against them.

First, defendants plead with this court not to view the Tenth Circuit's remand order under the laws of the case theory for good reason: it's damaging to their case. (Doc.47, point) Plaintiffs claims began on the premise that the exact cite form of library access offered to him to do research precluded him being able to amend his complaint or otherwise file a motion in regard to the order to show cause. (Doc. 9, pages 116-134) While the defendants vehemently assert there was nothing meaningful access to the library could have done to assist plaintiff in saving his case, plaintiff is not so sure. The Tenth Circuit stated:

"We express no ultimate opinion on the merits of the district court's dismissal in Scoggin. We note, however, that this court – and our sibling circuits – have repeatedly held that labeling a prisoner a snitch can rise to the level of deliberate indifference to a substantial risk of serious harm, in violation of the Eighth Amendment. See Benefield v. McDowell, 241 F.3d 1267, 1271 (10th Cir. 2001); Northington v. Marin, 102 F.3d 1564, 1567-68, (10th Cir. 1996) (explaining that 'telling inmates plaintiff was a snitch' was 'not inconsistent with a knowing disregard to a substantial risk to plaintiff's safety')) We have held that the PLRA's physical injury requirement under 42 U.S.C. § 1997e(e)- one of the district court's grounds for dismissing Leek's Eighth Amendment claim – does not restrict recovery of punitive damages when a prisoner establishes a constitutional violation. See Searles v. Van Bebber, 251 F.3d 869, 881 (10th Cir. 2001) (explaining that jury verdict finding constitutional violation without any physical injury entitles plaintiff to award of nominal damages and observing that physical injury requirement does not preclude punitive damages) And Leek's prayer for relief in Scoggin requests punitive damages. (Emphasis Added) (Remand Order at pages 13-14)

A review of the court's order makes it clear the Scoggin case was improperly dismissed. If the plaintiff had proper access to

law library resources would he have been able to find cases like Northington and Searles and subsequently been able to file a motion to show cause why his suit should have not been dismissed? Who knows. All that matters is Lewis v. Casey, 518 U.S. 343 (1996) and most of the other cases cited by defendants make clear ~~plaintiff should if had the opportunity.~~

In closing out their lengthy argument defendants state:

"...it is implausible that [plaintiff], if he had received additional legal resources while later in Restrictive Housing at LCF would have amended his complaint to allege facts that contradict those which he earlier declared under penalty of perjury. Therefore, [he] fails to plausibly allege that the prison's provision of allegedly inadequate resources had a material impact on his claim..." (Doc. 47, pg. 32)

Notwithstanding the fact that Northington, a case plaintiff didn't have a chance to find, makes clear that Scoggin telling her crew of workers plaintiff was a snitch was a "knowing disregard" of his safety, defendants have no idea if plaintiff could have amended his complaint or not. Plaintiff didn't have to commit perjury to save his case, just provide the court with additional facts or, in the alternative, file the motion in opposition citing cases like Northington and Searles to show the counts application of law on the subject was wrong. Williams v. Leeke, 584 F.2d 1336, 1339 (4th Cir. 1978), cert. denied 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 276 (1979) is enlightening:

"Ordinarily a prisoner should have direct access to a law library if the state chooses to provide a prison law library as its way of satisfying the mandate of Bounds. Simply providing a prisoner with books in his cell, if he requests them, gives the prisoner no meaningful chance to explore the legal remedies he might have. Legal research often requires browsing through various materials in search of inspiration; tentative theories may have to be abandoned in the course of research in the face of unfamiliar adverse precedent. New theories may occur as a result of a chance

(19)

discovery of an obscure or forgotten case. Certainly a prisoner, unversed in the law and the matter of legal research, will need more time or more assistance than the trained lawyer exploring his case. It is unrealistic to expect a prisoner to know in advance what materials he needs to consult." (Emphasis Added)

In sum, the exact cite cell delivery system afforded to plaintiff gave him "no meaningful chance to explore the legal remedies" he had to save the Scoggin case from dismissal. Therefore, he has plausibly alleged that the inadequate form of legal resources available had a material impact on his claim.

There is another way defendants' actions had an impact on his claim. plaintiff could not appeal his case to the Tenth Circuit. When the court dismissed every count and claim against every defendant his case was "final" and able to appealed. 28 U.S.C. § 1291. The problem is, however, the court of appeals has rules that even pro se litigants must follow when they filed their briefs. Fed. R. Civ. P. 28(a), Fed. R. Civ. P. 32(a) For example, one such requirement is that each issue presented include "a concise statement of the applicable standard of review." Fed. R. Civ. P 28 (a)(9) How was plaintiff supposed to determine that for the numerous claims in his suit with an exact cite system.

Another requirement was each issue had to state the reasons plaintiff thought the court should rule in his favor and citation to statutes, cases, and rules that supported the argument. Fed. R. Civ. P 28 (a)(8) Where was plaintiff supposed to get those?

There is one other consideration worth mentioning: cost. It would have cost plaintiff $500 to file an appeal with basically no cases or statutes supporting his arguments, a losing proposition for sure. He could not then claim a separate access to the courts violation because he was able to make "a feeble attempt to access the courts" by filing a subpar brief. See Myers v. Province, 376 F. App'x 815, 816 (10th Cir. 2010) While plaintiff strongly wanted to appeal his case the thought of throwing $500.00 out the window because he couldn't properly submit his claims was a strong deterrant. (Plain. Ex. 'O' para. 31-32) In this circuit loss of ability to appeal is an injury. Simkins v. Bruce, 406 F.3d 1239, 1244 (10th Cir. 2005)

(20)

Plaintiff's access to the courts claim should not be dismissed for lack of subject matter jurisdiction due to lack of standing as he has stated an actual injury.

III. The court should not dismiss plaintiff's access to the courts claim for failure to state a claim because defendants are not entitled to qualified immunity since their conduct violated clearly established law.

The defendants made the following statement in their plea for qualified immunity:

" The KDOC Defendants are entitled to qualified immunity because there was no clearly established law within this Circuit, or a robust consensus of cases outside of it, that their alleged actions violated clearly established law, particularized to the facts of this case. Specifically, Leek has not shown any law that put the KDOC Defendants on notice that the alleged exact-cite system infringes on an inmate's right of access to the courts. " (Emphasis Added)

Defendants' position is incorrect and there is plenty of case law to support plaintiff's claim.

What are the particularized facts of this case?

1. Plaintiff could only do research by requesting a specific case or statute by form-9. (Doc. 9, para. 106)

2. Inmate law clerks were not allowed to do research for segregation inmates. (Doc. 47-7 para. 42)

3. Partners law research is not allowed in segregation. (Doc. 47-6 para. 29)

4. Legal Services for Prisoners could not take plaintiff's case or offer him any assistance. (Plain. Ex. B)

5. Law books were not sent to or allowed in segregation. (Doc. 47-5, para. 19-20)

6. There was no satellite law library in the LTRHU, but there was plenty of room for one. (Plain. Ex. O, para. 5,6)

7. Plaintiff could only receive 3 cases a week and had to return them. (Plain. Ex. O, para. 33)

8. Plaintiff was never told he could request a list of resources or table of contents from the library. (Plain. Ex. D, para. 9)

9. Plaintiff was never told he could request an exception to the 3 cases a week limit, nor would Griffin grant such a request (Plain. Ex. D, para. 11,12)

10. Plaintiff attempted to get such an exemption when his case was dismissed and Griffin refused. (Plain. Ex. H)

11. Plaintiff could not properly litigate or appeal the Scoggin case, which was subsequently dismissed, due to the exact cite system in place in the LCRHU. (Plain. Ex. D, para. 31, 32)

Defendants seem to forget they were just served in this matter and plaintiff has never had an opportunity or need to provide them or the court with the case law that put them on notice that the exact cite system infringes on his right of access to the court. He will do so now, however.

As far as Tenth Circuit case law goes, defendants attempt to play semantics due to the court using the word "may" as opposed to "does" when explaining if exact cite research systems violate a prisoner's right of access to the court. The court only uses the word "may" because the determination is fact specific. For example, the exact cite system would not violate the prisoner's right if he also had "adequate assistance from persons trained in law." See Baca V. Mondragon, 89 F.3d 840, 1996 U.S. App. LEXIS 34989 at pg. 7 (10th Cir. 1996) ("The significant question is whether the materials requested by Mr. Baca were received by Mr. Baca, The record shows they were.") The Baca case is further instructive on if this issue was clearly established:

"This is not the first time a prisoner complained about the exact-cite paging system utilized to provide access to this prison law library. In Clayton we remanded to the trial court with instructions to determine whether the exact cite paging system resulted in a denial of the right of access to the courts. (Baca, supra, at pg. 7)

The court of appeals is not in the habit of remanding issues that are not clearly established. One could say the exact cite issue has been clearly established in this circuit since Clayton V. Tansy, 26 F.3d 980 (10th Cir. 1993)

(22)

Defendants maintain also:
"While a few cases in other circuits have held an exact-
cite system to be unconstitutional, these cases are not pervasive
enough to constitute a robust consensus of cases outside
of this circuit." (Doc. 47, pg. 34) (Emphasis Added)

After a few hours of research plaintiff sees there are a LOT of cases
holding the antiquated, archaic practice of providing prisoners
with an exact cite system to do legal research is unconstitutional.
What's more, defendants cite Toussaint v. McCarthy, 801 F.2d
1080, 1109-10 (9th Cir. 1986), holding inmates must be provided
either physical access to a law library or provided legal assistance
and holding all paging systems for access to legal resources uncon-
stitutional, was abrogated by Lewis v. Casey. (Doc. 47, pg. 34)
Clearly, defendants have not read a Ninth Circuit case from 2012
entitled Daye v. Ballard, 2012 U.S. Dist. LEXIS 38436 (S.D. W.V. 2012)
where the court held:
"In case after case courts examining prison attempts to enforce an
exact cite paging system make it clear that if prison adminis-
trators wish to restrict a prisoner's access to libraries, they must
offer some sort of assistance from persons trained in the law,
and reliance on untrained clerks is simply not the form of legal
assistance contemplated in Casey, Lewis and Johnson. Also,
see Glover v. Johnson, 850 F.Supp. 592, C.E.O. Mich. 1994)'
Madrid v. Gomez, 190 F.3d 990 (9th Cir. 1999); Alvarez v.
Hill, 518 F.3d 1152 (9th Cir. 2008); Rean v. City of Las Vegas,
2010 LEXIS U.S. Dist. LEXIS 131141 (D. Nev. 2010) (exact cite/
book paging system held unconstitutional); Nett v. McDaniel,
2010 U.S. Dist. LEXIS 102468 (D. Nev. 2010 (the Ninth Circuit
abolishes the exact cite paging system as a prisoner's sole
means of access to the courts.)

These types of rulings are not limited to the Ninth Circuit. Knop v.
Johnson, 977 F.2d 996, 1006-07 (6th Cir. 1992); De Mallory v.
Cullen, 855 F.2d 442, 446-47 (7th Cir. 1988); Nolley v. County
of Erie, 776 F.Supp. 715, 716 (W.D.N.Y. 1991); Martino v. Carey,
563 F.Supp. 984, 1003-04 (D. Or. 1983), just to name a few.
Defendants maintain there is no "robust consensus of cases"

(23)

that support plaintiff's position but they are clearly wrong. Prison administrators using such a system before and after _Lewis v. Casey_ have been held accountable when the system caused actual harm. The defendants cannot seriously claim they were not on notice that their actions were unlawful under the circumstances. Defendants are not entitled to qualified immunity and plaintiff's claim must proceed.

IV. Alternatively, the court should not grant summary judgment to the KDOC Defendants because the record does not support it and the record shows plaintiff's claims to be well founded.

A. The evidentiary record in this case supports the denial of the qualified immunity defense.

Defendants further maintain that they are entitled to qualified immunity because "a prisoner's access to legal resources can be restricted if the restrictions are reasonably related to legitimate penological interests and are not an exaggerated response to those concerns." (Doc. 47, pg. 36) They then, citing _Beard v. Banks_, 548 U.S. 521, 528 (2006) go into "reasonable relationship" analysis of the use of the exact cite delivery system, limitation of three cases per week and LTRHU prisoner's inability to be escorted to the prison law library. Plaintiff will address the _Turner_ factors in order.

1. Is there a valid, rational connection between the prison regulation and the governmental interest put forward to justify it?

First, defendants maintain the defendants placed restrictions on legal resources available to LTRHU inmates because they "are considered especially dangerous inmates." (Doc. 47, pg. 37) While it's arguable if plaintiff is "especially dangerous," even if he is such a designation does not in and of itself place a wall between himself and his constitutional right of access to the court. _Peterkin v. Jeffes_, 855 F.2d 1021, 1038 (3rd Cir. 1988) (holding segregation inmates' right of access to the court is "undiminished")

(24)

Next, defendants maintain their restrictive policy is legitimate because not escorting the prisoners will "prevent violent incidents and dangerous communications" and "because of the staffing requirements" needed to escort them. (Doc. 47, pg. 37) As a preliminary matter it must be stated here the plaintiff NEVER alleged a complaint against not being escorted to the prison law library. Instead he inquired as to why there was no satellite library in the LTRHU since it's a self-contained security unit. (Doc. 9, para. 125; Plain. EX. O, para. 5, 7) Plaintiff was of the mind that a small law library could easily have been set up in one of the cages or spare rooms with ease. (Plain. EX. O, para. 7, Plain EX. P, para. 4)

In response to the defendants' specific argument, however, plaintiff maintains their claim denying escorts from the LTRHU to the library to prevent violent incidents and dangerous communications disingenuous. (Plain. EX. O, para. 8, Plain. EX. P, para. 5) As is stated above, LTRHU prisoners are escorted daily to clinic and dental appointments by the SoRT members. Those escorts would, in theory, pose the same alleged risks that an escort to the library would pose.

In regards to the "staffing requirements" needed to perform the escorts, that could easily be solved by taking LTRHU prisoners to the library when the facility is locked down as was done with protective custody inmates for years. Whatever the case, a lack of sufficient staff does not provide penological justification for violation of a constitutional right. Gilland v. Owens, 718 F. Supp. 665, 685 (W.D. Tenn. 1989)

Plaintiff concedes not allowing hardback books into the LTRHU is a legitimate safety concern. But the defendants also don't send paperback law books because they are considered reference materials. (Doc. 47, pg. 37) That means no books are allowed in the LTRHU. While plaintiff avers such restrictions, in light of what is available in segregation, violates his right of access to the court, it is not on him to prove the violation. Bluth v. Kansas, 951 F.2d 1504, 1508 (9th Cir. 1991) (Prison officials have the burden of showing the adequacy of their access to the court); Cruz v. Hauck, 627 F.2d 710, 719 (5th Cir. 1980) (same.)

The defendants maintain the checkout limit of three cases a week helps manage the costs of providing copies and to limit contraband, fire hazards, arson, clutter and visibility obstruction

(25)

(Doc. 47, pg. 35), but state exceptions to the checkout limit can be granted by facility attorneys based on demands and deadlines of an inmate's case. (Doc. 47, pg. 36) While budgetary constraints can be a legitimate penological interest, it is not a get out of jail free card for prison officials, especially under Turner analysis. Beerheide v. Suthers, 286 F.3d 1179, 1191 (10th Cir. 2002) Furthermore, as stated above, the paperwork limit has nothing to do with preventing contraband, fire hazards, arson, clutter and visibility obstruction. (Plain. Ex. K and L, Plain. Ex. O, para. 18-21, Plain. Ex. P, para. 9) If only takes one sheet of paper to cover a cell window. Not to mention prisoners still have dozens of pounds of paper in their cells in total conformity with Impp 12-120's property limits. (Plain. Ex. Q)

Defendants maintain an exception to the limit can be granted but none of the rules they submitted with their brief confirm it (Def. Ex. J-R) nor does any rule or regulation known to plaintiff support such a action.

Last but not least, defendants maintain partners research is not allowed in the LTRHU "to prevent dangerous communications that can lead to contraband or other security threats." (Doc. 47, pg. 38) As is noted above, plaintiff maintains that is an outright lie as LTRHU prisoners communicate all the time, just not in front of cases and notes. (Plain Ex. O, para. 25, Plain Ex. P, para. 11)

There is no doubt prison officials are entitled to deference in the decisions they make in the day-to-day operations of their prisons. Even so, "[i]n order to warrant deference, prison officials must present credible evidence to support their penological goals." Beerheide, supra, at 1189. The defendants have not done that here. See also Wares v. VanBebber, 319 F.Supp.2d 1237, 1248 - 50 (D.Ksn. 2004) (holding " defendants are not entitled to the deference afforded to them under the Turner framework if their conduct was not actually motivated by legitimate penological interests at the time they acted."); Whitney v. Brown, 882 F.2d 1068, 1074-76 (6th Cir. 1989) ("glaring" inconsistencies between security arguments for restricting religious services and other practices of defendants rendered restrictions irrational) The first Turner factor does not weigh in their favor.

(26)

2. Are there alternative means of exercising the right that remain open to prison inmates?

At the time the claims arose giving rise to this complaint there were No alternative means available to plaintiff to exercise his right of access to the court: Physical access to the library was denied, there is no satellite law library in the LTRHU, inmate assistance is banned, Prison Legal Services is barred from aiding prisoners that sue for money, and the court denied plaintiff's requests for counsel several times. All plaintiff had available to him was the exact cite cell delivery system in place.

3. What impact will accommodation of the asserted constitutional right have on guards and other inmates, and the allocation of prison resources generally?

Plaintiff couldn't help but notice the defendants failed to address this prong of Turner in their brief. Rightfully so, as resolution does not weigh in their favor. Nevertheless, plaintiff will address the prong here.
This issue has to be analyzed from two different aspects: a request for the LEXIS NEXIS app to be uploaded to the GTL tablets issued to prisoners, and a request for a satellite law library to be installed in the LTRU. As is stated in the complaint, prison officials and KDOC counsel had convened on numerous occasions to discuss how to better give Kansas prisoners more effective access to the courts. They decided to enter into contract with JC Solutions to provide law library access, free of charge to prisoners, on the tablets the company provides. (Doc. 9, para. 86-88) According to the defendants, the KDOC pulled the plug on the app due to the cost associated with the service. (Doc. 47, pg. 9, para. 39) Since JC Solutions was getting paid for a service they were not providing, and that service was the means of giving plaintiff meaningful access to the court in segregation, he sued them for breach of contract requesting specific performance on said contract. (Doc. 9, pg. 15, para. D) When plaintiff contacted defendant Kroeker the HCF contract monitor, and requested her assistance she refused to take any action or even write back. (Doc. 9, para. 96-97)

(27)

Plaintiff maintains accomodating his right of access to the Court by having the LEXIS NEXIS app uploaded to the tablets would have had little to no impact on the guards or inmates as the guards already had to pass tablets out in the segregation units and keep a log of who had them checked out. Since the cost to the KDOC to have the app installed was a drop in the bucket of the overall KDOC yearly budget, they can hardly complain such an expenditure would have had a significant impact on said budget. This must be so since they installed it after the Tenth Circuit remanded this case, _Beerheide_, _supra_, at 1191-92 (the court compared the amount of money involved in providing prisoners with Kosher food to the total food service budget of the KDOC, holding that $13,000 a year would have de minimis impact because it amounted to 0.158% of an $8.25 million dollar budget)

In regards to installing a satellite law library in the LTRHU, the impact and cost would have been minimal and far cheaper than uploading the LEXIS NEXIS app to 18 tablets. The guards have to escort people all over the unit for video visits, yard, showers, unit team phone calls etc. So moving plaintiff from his cell to a room in the living unit to access legal resources would not cause a significant disruption. As stated above, the third _Turner_ factor weighs in plaintiff's favor.

4. Were there ready alternatives available to further the government's interests?

Regarding the fourth _Turner_ prong, defendants are correct in that prison officials do not have to set up and shoot down every conceivable method of accomodating the prisoner's constitutional complaint. But " if an inmate claimant can point to an alternative that fully accomodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." _Turner v. Safely_, 482 U.S. 78, 91 (1987) Plaintiff maintains in light of what is laid out in his argument in regard to the third _Turner_ prong there can be no doubt there were ready alternatives available to further the government's interests. This must be so since the KDOC switched course and had the LEXIS NEXIS app installed to accomodate KDOC

prisoners' right of access to the court, regardless of his or her
security classification or where they may be housed. See Nully, supra,
at 715, 736, 741 ( when jail officials violated their own regulations,
or later changed their regulations to accomodate prisoners, following
the new regulation constituted an alternative to restricting the
plaintiff's rights)

A reasonable Knoc employee could not believe that the prehistoric
form of access given to segregation inmates did not violate their
right of access to the courts, especially in light off all the judicial
holdings condemning the exact cite system. Accordingly, the court
must deny summary judgment to the defendants on qualified immunity
grounds.

B. The record does not conclusively show plaintiff had access
to more than an exact cite system for retrieving legal
resources.

The defendants allege, quite incorrectly, that plaintiff had
access to more than an exact cite system for retreiving legal
resources. (Doc. 47, pg 38) They claim plaintiff could have asked
the library for a list of law books, a table of contents of law
books, copies of sections of law books and cases by name. As
plaintiff has said time and time again, along with the declaration
of inmate Hickson, those allegations are false and even the
rules and regulations submitted by the defendants dont support
it. (Plain. Ex. O and P, generally ; Defen. Ex. I-R )- Since there is
" sufficient evidence on each side so that a rational trier of fact
could resolve the issue either way," summary judgment on this
particular point is not proper. Adler, supra, at 670.
Next, the defendants explain the public information officer,
which has nothing to do with the prison law library or access to the
court, answers Kansas Open Records Act requests, the library
provides "legal packs" of supplies, e-files documents for prisoners,
responds to Form-9 requests and delivers legal resources to the
segregation units daily. (Doc. 47, pg. 39) The PIO doesn't do
legal research, the plaintiff is not indigent and doesn't qualify
for "legal packs" which again have nothing to do with legal research,
the e-filing of plaintiff's pleadings is a court ordered mandate

that has nothing to do with legal research, and neither does the law clerks or Stiffin delivering the supplies and Form-9 requested cases to the LTRHU. None of the points espoused by the defendants has any relevancy whatsoever to the issue of meaningful research.

The defendants further allege having access to Legal Services for Prisoners and being able to "contact individuals outside the prison" somehow gave him more resources than the exact cite system. As stated above, LSP would not and could not assist plaintiff, (Plain. Ex. B) And even if plaintiff could contact people outside the prison for assistance, the constitution does not mandate they have to give him meaningful access, prison officials do.

The defendants further state Stiffin could not do anything to change the exact cite system plaintiff complained of because the grievance went to the unit team, not to him, (Doc. 47, pg. 39) Even if that's true, it's irrelevant. McClary v. Coughlin, 87 F.Supp. 2d 205, 215 (W.D.N.Y. 2000) ("Personal involvement does not hinge on who has the ultimate authority. Rather, the proper focus is the defendant's direct participation in, and connection to, the constitutional deprivation.")

In closing, the defendants again ask this court to ignore the analysis of the Tenth Circuit's remand order. (Doc. 47, pgs. 39-40) The court explained clearly why the defendants' actions violated plaintiff's right of access to the court. (Doc. 25, pgs. 10-12) For the defendants to now claim they are entitled to summary judgment on his access to the courts claim is rediculous. Griffin v. Grijalva, 773 F. App'x 1003 (9th Cir. 2019) (reversing and remanding dismissal where prisoner alleged he was "required to use a paging system in order to obtain access to legal materials")

V. If plaintiff's claim survives summary judgment he is entitled to the damages he seeks, so this court should deny defendants' prayer for partial summary judgment to limit other remedies.

Fed. R. Civ. P. 56 is the correct rule to use for a request for partial summary judgment, but the defendants are not entitled to such a ruling.

A. Plaintiff is entitled to compensatory damages as he can show his claims in Scoggin would have succeeded, settled, or otherwise resulted in a payout the he could be compensated for not receiving.

Compensatory damages are not discretionary; if a plaintiff proves that a violation of his rights caused injury, compensatory damages must be awarded. Smith v. Wade, 461 U.S. 30, 52, 103 S.Ct. 1625 (1983) The violation must have been the "proximate cause" of the injury, which means that "except for the constitutional tort, such injuries and damages would not have occured and damages were the reasonably forseeable consequences of the acts or omissions in issue." Jackson v. Souls, 206 F.3d 1156, 1168 (11th Cir. 2000) To receive compensatory damages a plaintiff need not prove the precise dollar value of constitutional violations, but instead must provide an evidentiary basis for the court or jury to work from. Sample v. Diecks, 885 F.2d 1099, 1112 (3rd Cir. 1989) (" Surely, if we required an accountants methodology to be applied in such matters no price could be fixed and constitutional wrongs would go uncompensated entirely, as well as undeterred")

Defendants are correct in alleging that in order to receive compensatory damages for their actions plaintiff must show that his underlying claim in Scoggin would have succeeded, settled or otherwise resulted in a payout that he must now be compensated for not receiving. (Doc. 47, page10) He can do so;

As is outlined fully in Issue II(B), supra, the Tenth Circuit court of appeals' order goes into great detail and cited many cases that show conclusively that the dismissal of the Scoggin case was improper. Those cases show there is case law on point with the facts of plaintiff's where the court held calling an inmate a snitch is a knowing disregard to inmate safety, that plaintiff was not barred from receiving the punitive damages he requested, despite not being injured, and the PLRA does not bar such relief. Without the defendants' exact cite-cell delivery system which was the "proximate cause" of plaintiff not being able to amend his complaint or respond to the show cause order which led to the case being dismissed, plaintiff is confident;

(31)

and the law supports the proposition that he could have succeeded in or settled the Scoggin case. What is more, as plaintiff has already explained, the same exact cite system kept him from appealing the Scoggin case, which it appears from the order of the court of appeals, would have been successful.

Plaintiff as a matter of law, is entitled to the nominal damages, costs, and punitive damages he sought in Scoggin as the defendants must "compensate" him for the monetary losses he suffered.

At the end of their argument defendants again state plaintiff "has not alleged that his underlying claim in Scoggin would have had a more favorable outcome without the alleged interference of the KoDe defendants, much less any grounds upon which that claim could have succeeded." (Doc. 47, page 41) Plaintiff assumes the defendants are referring to such allegations not being made in the amended complaint. Plaintiff will address that here.

A look at the complaint shows that at the time the complaint was filed the Scoggin case was still pending before the court. (Doc. 9, para. 121) As such, it would be a physical impossibility for plaintiff to have alleged how his claim in Scoggin "would have had a more favorable outcome" when there was yet to be an outcome.

The defendants further maintain that since Scoggin was decided as a matter of law plaintiff has to provide legal grounds upon which it could have succeeded so that a jury could find the case would have had a "more favorable outcome." (Doc. 47, pg. 41) Again, plaintiff will assume the defendants are referring to making those allegations in the complaint.

As can be seen from the arguments and cases cited by plaintiff in this motion, it should be clear he can and has provided legal grounds upon which prove the Scoggin case could have succeeded or had a more favorable outcome. If, however, these claims need to be made in an amended complaint, this court should grant plaintiff leave to do so. Oxendine v. Kaplan, 241 F.3d 1272, 1275 (10th Cir. 2001) ("Dismissal of a pro-se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.")

Plaintiff is entitled to compensatory damages in this case.

(32)

B. Plaintiff is entitled to punitive damages as he can show
   the defendants' conduct was motivated by evil intent or
   was undertaken with reckless or callous indifference
   to his constitutional rights.

   Defendants maintain that plaintiff is not entitled to punitive
damages because he did not plead or prove that the defendants
"acted with the required maliciousness, evil motive, or with reckless
indifference" to his civil rights. (Doc. 47, pg. 41) This is a lawsuit
in regards to the plaintiff being denied access to the courts,
When this complaint was filed he was unaware he needed to make
such pleadings or showings. As such, if this court believes
plaintiff has not sufficiently plead or proven the necessary
facts and allegations against the defendants to justify the award
of punitive damages, he should be given leave to amend his
complaint. Oxendine, supra at 1275.

   C. Plaintiff's requests for injunctive relief are not moot
      because the KDOC has taken corrective measures or he has
      been moved to a different facility.

   Plaintiff has already outlined the proper standard of review
for the voluntary cessation exception to mootness doctrine on
pages 15-16, supra. Plaintiff will now address defendants'
claims and arguments.
   Defendants maintain that plaintiff's request for injunctive
relief against defendants Meyer and Stiffin in regards to
providing additional legal resources to LTRHU inmates at L.C.F.
is moot because "the KDOC has already implemented a program
that provides additional resources to these inmates through
a new tablet program." (Doc. 47, pg. 43) Defendants are
incorrect that the matter is moot.
   In denying prison officials' claim of mootness with facts
similar to those in this case, the court in Ybanez v. Raemisch,
2018 U.S. Dist. LEXIS 100962 (D. Colo. 2018) stated:

   " Here, the defendants have not conceded that the challenged
     versions of the policy violated the First Amendment.

(32)

nor has any Defendant submitted any affidavit or otherwise stating that the prior policies were constitutionally suspect and, therefore, will never be re-implemented by the CDOC. Rather, the evidence submitted with Defendants' Reply indicates the changes were made for clarification purposes. Defendants have not pointed to any legal or practical barrier to their reinstatement of the previous versions of the policy, and they have failed to even offer a bald conclusory pledge not to return to such policies." Prison Legal News V. Stolle, 319 F.Supp. 3d 830 (E.D.Va. 2015), Young V. Raemisch, 2015 U.S. Dist. LEXIS 102788 (D.Colo. Aug. 3, 2015) (rejecting Defendants argument regarding mootness where there was "nothing to assure the court that the officials responsible for the mail policy recognize the need to consider the First Amendment") Ybanez, supra, slip op. at 8-9.

Let's look at the evidence of record in this case. Here, not only have the defendants "not conceded" that the exact cite system violated plaintiff's rights, they go a step further and allege there "is no clearly established law in this circuit stating there is anything wrong with the exact cite system and they are immune from suit." (Doc. 47, pg. 33) This is because they were never placed "on notice that the exact cite system" infringed on plaintiffs rights. (Doc. 47, pg. 33) That's bold.

The defendants submitted multiple declarations and prison policies with their motion to dismiss (Def. Ex. E-S) In none of those declarations did any state official state that the exact cite system was suspect or that it would ever be implemented again by the KDOC. In fact, defendants admit the legal research app was uploaded to the tablets but offer no explanation why. (Def. Ex. F para. 33 Def. Ex. G para. 33)

Finally, the defendants have "not pointed to any legal or practical barrier" to their reinstatement of the exact cite system as the sole means of providing segregation prisoners with access to the courts, nor have they even offered "a bald conclusory pledge not to return" to the exact cite system. Cursory review of the policies submitted by the defendants clearly show there are no specific rules as to how the tablets should be issued, who is

(34)

responsible, what rights and/or remedies are available to the inmate, or even a Statement that the LEXIS NEXIS app is available as a means of providing prisoners with access to the courts.

The defendants also allege since plaintiff is no longer housed at LCF, he cannot "demonstrate a good chance of being likewise injured by the defendants in the future," (Doc 49, pg, 43) So his request for injunctive relief is moot. Again, defendants are incorrect.

A prisoner's transfer from one prison to another can moot his claims for declaratory and injunctive relief at the prior facility. Abdulhaseeb V. Calbone, 600 F.3d 1301, 1311 (10th Cir. 2010) The Supreme Court has repeatedly held, however, that certain cases which appear technically mooted, are in reality live controversies because they will recur again and again and evade review. Spencer V. Kemna, 523 u.S. 1, 17-18 (1998) The capable of repetition yet evading review exception to mootness applies in those exceptional situations when (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party would be subject to the same action again. Nathan M. V. Harrison School District Nead, 942 F.3d 1034, 1040 (10th Cir. 2019) Plaintiff's claims fall into that exception.

Plaintiff has been back and forth three times to LCF in the last two and one half years alone. With that much movement there is clearly not enough time to litigate a constitutional wrong to completion.

Plaintiff is serving a life sentence. In the 27 years he's been incarcerated he's spent over 10 years in segregation and has been to all three KDOC max prisons three or four times. If he is ever given parole, he will be on supervision for life so there is no reason to believe he wont come back to prison. These are the very circumstances found to create an exception to mootness, Clark V. Brewer, 776 F.2d 226, 229 (8th Cir. 1985) (release from segregation did not moot case because there was a virtual certainty he would return); Demery V. Arpaio, 378 F.3d 1020, 102? (9th Cir. 2004) (challenge to jail practice was not moot where plaintiff had spent most of his life sentence in segregation units and would probably return); Mitchell V. Angelone, 82 F.Supp, 2d 485, 490 (E.D. Va. 1999) (holding plaintiff had been transferred so frequently that there was a

(35)

reasonable expectation he would be returned to the prison sued about)
   Under the circumstances presented, plaintiff's claims cannot
be considered moot. As such, defendants prayer for summary
judgment and partial summary judgment must be denied.

VI.   The court should not dismiss the state law breach of contract
      claim against IC Solutions for a lack of contractual standing
      or decline to exercise supplemental jurisdiction.

      The defendants are correct that the court granted IC Solutions'
motion to dismiss plaintiff's breach of contract claim on the basis
that he was not an intended third-party beneficiary and therefore
lacked standing to bring the claim. (Doc. 45) Based on the court
of appeals' analysis of the breach of contract/third-party-
beneficiary claim being in total conflict with that of Judge
Sam Crow (Remand Order at pgs. 15-16), plaintiff plans to appeal
IC Solutions' dismissal. He will not not now agree they should be
dismissed from the suit.
      Defendants maintain "the reasoning supporting that dismissal
applies equally to Defendant Kroeker." (Doc. 47, pg. 44) Defendants
are wrong. Kroeker was not sued for breach of contract, she
was sued for violating plaintiff's right of access to the courts
under the First, Sixth and Fourteenth Amendments of the U.S.
Constitution. (Doc. 9, para. 165) This is because:

      "A court properly "impose 42 USC §1983 liability upon individual
      defendants who act with the requisite degree of culpability
      to promulgate, create, implement or otherwise possess respon-
      sibility for the continued operation of policies that cause
      the deprivation of a person's federally protected rights"
      Dodds V. Richardson, 614 F.3d 1185, n.12 (10th cir. 2010);
      See also Gordon-Smith V. Baldwin, 2007 U.S. Dist. LEXIS
      6961 *9, (D. Colo. 2007) (holding prison official contract
      monitor liable under theory of supervisor liability)

      For the reasons stated above, plaintiff's claims should proceed.

II. Should plaintiff be granted leave to amend his complaint?

In plaintiff's amended complaint he stated he and inmate Hill were wishing to do legal research together because their constitutional rights were being violated in the CTRHU and "it was clear some form of litigation was going to be necessary to correct their conditions of confinement." (Doc. 9, para. 147)

Plaintiff didn't get to work with Hill but using the books, notes and cases he had in his cell he threw together a grievance to preserve the issues and properly exhaust his administrative remedies. (Plain. Ex. N) He complained of a lack of clean sheets and blankets in the living unit, large amounts of bird feces all over the exercise cages, lack of clean clothing, missing showers, and improper portions of food being served by Aramark. (Id.) Due to the exact same system he was unable to research Kansas State law or Tenth Circuit law on the issues and/or file a complaint while living in the CTRHU. (Plain. Ex. O, para. 41)

When plaintiff got to EDCF and the LEXIS NEXIS app was uploaded to the tablet he was able to do a little research. He found out Tenth Circuit case law on the subject of exposure to bird feces was slim to none but found Johnson v. Fischer, 2011 U.S. Din. LEXIS 182153 where the court stated it could find no case dealing with exposure to bird feces so it evaluated the plaintiff's claim under the case law on exposure to human feces. Citing multiple cases the court noted while the exposure to feces is lengthy all the prisoner cases were allowed to proceed to trial. Plaintiff also found Willey v. Kirk-patrick 2d U.S. Dist. LEXIS 14935 X8 (W.D. N.Y. 2015) where the court cited multiple cases where exposure to bird feces were allowed to proceed to trial. Lastly, he found Hall v. Nicholson, 584 F.Supp. 3d 589, 94-95 (N.D. Fl. 2022) where the court held the fact the warden knew of infestation and exposure problems in the prison, liability could be inferred with no direct contact with plaintiff. Defendant Meyer was aware of plaintiff's exposure and failed to act. (Plain. Ex. N, pgs. 1 and 4) Plaintiffs bird poop exposure claim was not legally frivolous.

Plaintiff was also able to find Puckey v. McKune, 2001 U.S. Dist. LEXIS 21658, at pgs. 15-17 (D. Kan. 2001) where the court held denying inmate plaintiff clean bedding and sheets for weeks at a time may be violative of the Eighth Amendment and denied the defendants' motion

to dismiss. He also found Ramos v. Lamm, 639 F.2d 559, 568 (10th Cir. 1980) and Mitchell v. Maynard, 80 F.3d 1433 (10th Cir. 1996) which over the Eighth Amendment claim has been clearly established, thus it is not frivolous.

That same research, however, showed plaintiff his complaint about missing showers was not worth pursuing in the Tenth Circuit unless the deprivation was EXTREME, which his wasn't. See Thompson v. Lengrich, 2021 U.S. Dist. LEXIS 61883 (2021)

Lewis, supra, states that to plead a claim of a violation of access to the courts the plaintiff must show the inadequacies or restrictions caused "actual injury, such as a nonfrivolous legal claim being frustrated or impeded. Id. at 350-351. This can be done by proving he was "so stymied by inadequacies of the law library he was unable to even file a complaint," Id. at 351. Plaintiff believes the actions and policies of Meyer and Stittin fit that criteria. Plaintiff could not file a complaint about his living conditions the entire time he was in the STRHU. A review of plaintiff's exhibits N, O, P and the argument here will support that theory.

In light of that stated above, plaintiff moves this court for leave to amend his complaint to add additional access to the court claims against Meyer and Stittin. See Oxendine, Supra.

## CONCLUSION

The court should deny the defendants' motion to dismiss or in the alternative for summary judgment. Further, plaintiff should be given leave to amend his complaint.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he hand-delivered this MOTION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN THE ALTER-NATIVE FOR SUMMARY JUDGEMENT to prison officials for e-filing with the U.S. District Court on this 25th day of November, 2022.

Kenneth P. Leek

KENNETH P. LEEK