EXHIBIT A



**Kansas**

Department of Corrections

¹Landon State Office Building
900 SW Jackson, 4ᵗʰ Floor
Topeka, KS 66612

phone: (785) 296-3317
fax: (785) 296-0014
kdocpub@doc.ks.gov
www.doc.ks.gov

Jeff Zmuda, Secretary of Corrections

Laura Kelly, Governor

**TO:** Leek, Kenneth #63523 B1-262

**DATE:** 7/21/2022

**SUBJECT:** Grievance

**FROM:** J. Hoepner
UTM B cell house

**FINDINGS OF FACT:**    You filed a grievance regarding a root canal that was started by the medical staff at Lansing Correctional Facility, and was not completed prior to your transfer here to the El Dorado Correctional Facility. During a two month process beginning in May 2022, you submitted sick call slips to be seen by the dental staff here at EDCF. The issues pertaining to your root canal being partially completed involved an open creator in your nostril, excessive pain, as well as the tooth that had the root canal on was starting to become infected.

**CONCLUSIONS MADE:**   It was determined that DR. Lopez here at EDCF could not complete the root canal that was started at Lansing Correctional due to not having the equipment to complete a root canal. It was advised that you needed to be transferred back to Lansing to have the root canal completed, as LCF is the only KDOC facility that handles root canals, and has the equipment to conduct said root canals.

**ACTION TAKEN:**   HSA Madgwick, this author,  as well as the EDCF Classification Administrator here at  worked to have you transferred to LCF to have your root canal that was partially started completed. On 6/21/22 you were transferred to LCF. Due to complications at LCF, the root canal was not completed and you were transferred back to EDCF. Once this author, and HSA Madgwick learned what had taken place. Calls were made to the medical staff at LCF. It was determined that an error was made in the scheduling. On 7/5/22, you were sent back to LCF, and had the root canal completed fully at that time. Although issues occurred to have your root canal completed, the staff here at EDCF worked tirelessly to get this surgery scheduled, and completed. Unforeseen circumstances beyond the facilities control took place, yet a solution was able to be reached and your medical needs were met. No further action required at this time.

UTM J. Hoepner

**CC: Inmate**

EXHIBIT B

**LEGAL SERVICES FOR PRISONERS, INC.**
**P. 0. Box 12438**
**Overland Park, Kansas 66282**
**(785) 746-7437**

March 5, 2021

Kenneth D. Leek #63523
Hutchinson Correctional Facility
P. O. Box 1568
Hutchinson, KS 67504-1568

Mr. Leek:

I have received your request for my assistance with the legal research required for several civil cases you have filed. We cannot assist you with cases where you would be requesting that the court award you money. The case you describe in your letter would seem to be a case where you would be seeking money damages, so we cannot advise or assist you in that case.

Charles Cavenee, Director

CJC:pdh

Form 9
For Cellhouse Transfer
Work Assignment _____
Interview Requests

EXHIBIT C

LEEK

**Last Name Only**

**KANSAS DEPARTMENT OF CORRECTIONS**

63523

**Number**

**INMATE REQUEST TO STAFF MEMBER**

To: Library

Date: 7/19/21

(Name and Title of Officer or Department)

State completely but briefly the problem on which you desire assistance. (Be specific.)

I need whatever IMPP's and General Orders you have
on inmate hunger strikes,

Thanks

Work Assignment: NONE

Living Unit Assignment: A2- 101

Comment: _____

Detail or C.H. Officer: _____

Disposition: _____

To: _____

Date: 7/21/21

(Name & Number)

Disposition: Please contact legal services.

Employee's Signature

To be returned to inmate.

P-0009

EXHIBIT C   Attachment #(A)

# Send a form 9 to Legal Services: Chuck Cavanee or write to this address:

**Legal Services for Prisoners, Inc.**

**PO Box 12438**

**Overland Park, Kansas 66282**

**785-296-8867**

**Director: Charles J. Cavenee**



EXHIBIT D

Form 9
For Cellhouse Transfer
Work Assignment
Interview Requests

8-16  *Kenneth* LEEK
*Kenneth*
**Last Name Only**

### KANSAS DEPARTMENT OF CORRECTIONS

63523
**Number**

### INMATE REQUEST TO STAFF MEMBER

To: Legal Services For Prisoners          Date: 7/26/21
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

The librarian here told me to request any IMPP or L.C.F. General
Order you may have on inmate hunger strikes.

          Thanks

Work Assignment: NONE                    Living Unit Assignment: A2-234

Comment: _____          Detail or C.H. Officer: _____

Disposition:

August 17, 2021

    The IMPP dealing with inmate hunger strikes is IMPP 12-119D. You will need to contact the library to read this IMPP because due to our limited budget, Legal Services For Prisoners does not provide copies of cases, statutes, regulations or IMPPs etc. It is also my understanding that the IMPPs are available on the inmate tablets.

To:                                                   Date: _____
(Name & Number)
Charles J. Cavenee, Director
Legal Services for Prisoners

Disposition:

Employee's Signature                          To be returned to inmate.

P-0009

EXHIBIT E

262

Facility: El Dorado Correctional Facility - (KS DOC)
Created Date: 2022-08-30 T 13:29:07 by: Brian Buchholz
Participants:
Visitor: Brian Buchholz
Date Range: 2022-07-30 T 00:00:00 - 2022-08-30 T 23:59:59
Number of Records: 1
Timezone: America/Chicago

| MESSAGE TYPE | DATE SENT | DATE READ | MESSAGE SUBJECT | Attachments | MESSAGE BODY | STATUS | SENDER | RECIPIENT |
|---|---|---|---|---|---|---|---|---|
| Facility Message | 2022-08-23 T 15:25:00 | 2022-08-30 T 12:04:03 | Lexis Nexis Tablet | | Effective Sept. 12th Lexis Nexis will be available on the tablet. ACH and BCH has two tablets that have the program loaded on it. This means that there will be one tablet per each side. Residents will be able to check the tablet out. You can check it out by submitting a paper Form-9. Resident can sign up for (1) two hour block each week. It will be first come first serve and then will be in the order as request come in. Tablet will be handed out from 0900-1100 and 1300-1500 on the day that is your tablet. THANK YOU UTS B. Buchholz | Read | Brian Buchholz | 2 Room |

EXHIBIT F

262

**Request #197614012**

| | |
|---|---|
| **Profile Photo:**  | **Resident Info** |
| | Name: Kenneth Leek (1975-08-18) |
| | Booking Number: 63523 |
| | Submitted Date: 08/25/22 09:00 |
| | Submitted from Location/Room: 07,AB1262/B |
| | Current Location/Room: 07,AB1262/B |
| | Facility: El Dorado Correctional Facility - (KS DOC) |

**Audit Photo:**

Audit Photo

**Form Info**

Category: Form 9
Form: Unit Team Form 9
Internal Tag: No Tag

**Request Info**

Status: CLOSED by Brian Buchholz
Facility Deadline: 09/08/22 23:59

**Details of Request:**

Law Library on tablet

**Details of Request:**

**To::**
*(Name and Title of Officer or Department)*
Unit Team Buchholtz

**Please provide details about your request:**
*State completely but briefly the problem on which you desire assistance. (Be specific)*
Exhaustion of administrative remedies pursuant to KSA 75-52,138
We both know this newly added application of Lexis Nexis to the tablet is the result of a lawsuit I filed and am preparing to go to trial on. What I'd like to know is who decided to restrict its use to two days a week and only two hours per session? With only one tablet per side this will result in basically no access to the app. There are over 100 inmates on each side of the unit!!! When I need it I won't have access to it and when everyone is asleep and I can actually get some work done it will be locked up in the storage cabinet. How does this solve anything? Who signed off on the protocols 'cause I need to address this.

Please print this and the message you put on the tablet about use of Lexis Nexis tablets. They will be exhibits. Thanks

**Work Assignment:**
None

**Comment:**
Informal resolution

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 08/26/22 11:41 | Brian Buchholz | Staff Response | Me. GP get 45minutes twice a week with only allowing to sign up once a week for two sessions. You are get the same allowed time, sorry if this is not enough this is not set in stone this is what was determine to be easiest for both party at the time. |
| 08/26/22 11:41 | Brian Buchholz | Changed Status | From 'Open' to 'Closed' |
| 08/25/22 09:00 | Kenneth Leek | Submitted New | Law Library on tablet |

EXHIBIT G

Mr. Kenneth D. Leek # 63523
L.C.F. 301 E. Kansas Ave.
Lansing, KS  66043-0002

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

KENNETH D. LEEK,
          Plaintiff - Appellant,

                                        No. 21-3165
          V.                            C.D.C. No. 5:21-cv-3100 SAC)
                                             (D. Kan.)

RATHRYN A. ANDROSKI, et al.,
          Defendants - Appellees.

NOTICE

NOTICE IS HEREBY GIVEN that KENNETH D. LEEK, plaintiff-
defendant, pro se, in the above-captioned cause, has been directed
by this Court to draft and file an appellate brief in the matter. He
has requested appointment of counsel which has been denied. As such,
since he has no access to the court by and through the prison law library he
is filing said brief with only the use of the few notes, cases, and personal
law books he has in his possession. He has no access to the Federal Rules
of Civil Procedure, Appellate Rules or local rules. He further has no
way to shepardize or otherwise research any of the cases and legal
theories used in his brief.
     Plaintiff - appellant's brief is being filed simultaneously with this notice.

                              Respectfully Submitted,
                              Kenneth D. Leek
                              KENNETH D. LEEK

CERTIFICATE OF SERVICE

     The undersigned hereby certifies under the penalties and pains of perjury,
28 USC § 1746, that he hand-delivered this NOTICE to prison officials for
mailing, postage prepaid, addressed to: Clerk of the Court, 1823 Stout St.,
Denver, CO 80257 on this 20th day of November, 2021.

                              Kenneth D. Leek
                              KENNETH D. LEEK

EXHIBIT H

**Form 9**
For Cellhouse Transfer
Work Assignment _____
Interview Requests

A2 234

LEEK
**Last Name Only**

**KANSAS DEPARTMENT OF CORRECTIONS**

63523
**Number**

**INMATE REQUEST TO STAFF MEMBER**

To: Library                                                    Date: _____
**(Name and Title of Officer or Department)**
State completely but briefly the problem on which you desire assistance. (Be specific.)

Why did you only send me 3 cases when I told you I only had a few weeks to research the court's order and respond to it.

I need: Wardell v. Duncan, 470 F.3d 954 (10th Cir. 2006)
Ruppert v. New Mexico Dept. of Corr. 625 Fed. Apex 826 (10th Cir. 2015)
Mc Bride v. Deer, 240 F.3d 1287 (10th Cir. 2001)

Work Assignment: NONE                    Living Unit Assignment: A2-234

Comment: _____                 Detail or C.H. Officer: _____

Disposition: _____
_____
_____
_____

To: _____                                   Date: 9/2/21
**(Name & Number)**

Disposition: We sent three. After you read them return them. Then we send the next three.

_____

J. Griffin
Employee's Signature                                  **To be returned to inmate.**

P-0009

EXHIBIT I



El Dorado Correctional Facility
1737 SE Hwy 54
P.O. Box 311
El Dorado, KS. 67042

**Kansas**
Department of Corrections

Phone: (316) 321-7284
Fax: (316) 322-2018
www.doc.ks.gov/facilities/edcf

Jeff Zmuda, Secretary

Tommy Williams, Warden

Laura Kelly, Governor

To: Leek, Kenneth #63523 B1-262                    Date: 07/08/2022

I have received your letter regarding an extra-legal box. I will not approve for you to
keep an extra-legal box in your possession, but you can have a second box, which will be
kept in property. You can switch out boxes as needed by requesting this through your unit
team.

Matthew Moore
Deputy Warden

1

TO: mr. Tommy Williams
     Warden
     E.D.C.F. P.O. Box 311
     El Dorado, Ks 67042-0311

                      July 4, 2022

FROM: Mr. Kenneth D. Leek # 63523
       1737 S.E. U.S. Hwy. 54
       El Dorado, Ks 67042

RE: Property Compliance

Dear Sir,

    I am writing you at this time at the referral of my unit team in hope that you may be willing to aid and assist me with a recurring problem I'm having here at E.D.C.F. To make a very long story short, I'm litigating several cases against numerous KDOC employees (none at EDCF) and have amassed a lot of paper documents over the last two years. In the last few months alone coII C. Mitchell, the chief property officer, has cited me for not being in compliance

                                     2

with Impp 12-120 twice due mainly to my collection of legal documents. As a result, I've been forced to mail out a large portion of my legal documents in order to keep my trial transcripts that are worth thousands of dollars. That action has created a whole new set of problems.

What I'd like to ask you is if you will approve me to have an extra legal box until I can complete prosecuting these cases. After that I wont need the metriction of documents anymore.

Thank you for your time and assistance in this matter. I will patiently await your reply.

Respectfully,
Kenneth D. Leek

KENNETH D. LEEK

CC: File
   T.W. w/attachment

3

(2)

## Request #187044842

**Profile Photo:**
Profile Photo

**Resident Info**

**Name:** Kenneth Leek (1975-08-18)
**Booking Number:** 63523
**Submitted Date:** 06/30/22 12:39
**Submitted from Location/Room:** 07,AB1262/B
**Current Location/Room:** 07,AB1262/B
**Facility:** El Dorado Correctional Facility - (KS DOC)

**Audit Photo:**
Audit Photo

**Form Info**

**Category:** Form 9
**Form:** Unit Team Form 9
**Internal Tag:** No Tag

**Request Info**

**Status:** CLOSED by Brian Buchholz
**Facility Deadline:** 07/14/22 23:59

**Summary of Request:**

Property Compliance

**Details of Request:**

**To::**
*(Name and Title of Officer or Department)*
Unit Team Buchholtz

**Please provide details about your request:**
*State completely but briefly the problem on which you desire assistance. (Be specific)*
Exhaustion of administrative remedies pursuant to K.S.A. 75-52,138

Please explain to me how I can be in the midst of prosecuting two lawsuits against the KDOC and my property is being held hostage because it all won't fit in one pack out box? Unit team staff have brought me envelope after envelope and brief after brief sent to me by the courts and various attorneys which by themselves fill up that tiny legal box. Not to mention I have to request cases and legal materials from the library in paper form which further effect storage space. Additionally, I have all my general population clothing and laundry bag that was issued to me because I'll soon need it. That doesn't even apply to the language of IMPP 12-120. What I wish to know is who can authorize me to be in possession of my excess legal materials until these cases are completed so Ms. Mitchell will stop forcing me to mail out or destroy my other property because it doesn't fit in a damn box! Two thirds of my property is paper, mostly legal. I've been trying to leave EDCF out of this lawsuit but if no one will help me that will no longer be possible.

**Work Assignment:**
None

**Comment:**
Informal Resolution

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 07/01/22 10:17 | Brian Buchholz | Changed Status | From 'Open' to 'Closed' |
| 07/01/22 10:17 | Brian Buchholz | Staff Response | You can request through the Warden to have an extra Legal Box. You need to submit it in writing. No is holding it hostage we were waiting for a time that works to bring it done and you were on Hunger Strike so you could not get all you property as well. This would make it difficult to do an audit and allow you to be put into compliance. I'm sure that you clothing was sent back to GP. UTS B. Buchholz |
| 07/01/22 10:17 | Brian Buchholz | Changed Status | From 'Open' to 'Closed' |
| 06/30/22 12:39 | Kenneth Leek | Submitted New | Property Compliance |

4

TO: Mr. Matthew Moore
Deputy Warden
E.D.C.F. P.O. Box 311
El Dorado, KS 67042-0311

July 15, 2022

From: Mr. Kenneth D. Leek # 63523
1737 S.E. U.S. Hwy. 54
El Dorado, KS 67042

RE: Property Compliance

Dear Mr. Moore,

I am in possession of your letter dated 7/6/22 where you responded to my request for an extra legal box. While I certainly appreciate you giving my request due consideration, your alternative to my suggestion is unworkable. As I explained in the first letter, the documents Ms. Mitchell is currently holding hostage all relate to the several civil cases I'm currently prosecuting at this time. The legal box in my possession contains such items as the federal rules of civil procedure, "How to litigate in Federal Court," Black's Law Dictionary, a compilation of sample motions and excerpts from the "Self-Help Prison Litigation Manual." If I were to do as you suggest and send this legal box to property in trade for my pending case files I'd have my briefs and motions and correspondence from the defendants to the litigation but be without the sample motions, procedural rules and other resources needed to properly respond to them. I'd be solving one problem and creating several new ones, not an ideal situation.
While we debate this issue I've received a motion to dismiss from one of the defendants in my suit. I have 21 days to respond to this motion which is down to about 14 now. I have no way to do that since my entire case file is in the property room. So, how do we resolve this?

Respectfully,
Kenneth D. Leek
Kenneth D. Leek

cc: file

5

Form 9
For Cellhouse Transfer
Work Assignment ___INFORMAL RESOLUTION___ A2-200

_LEEK_
Last Name Only

**KANSAS DEPARTMENT OF CORRECTIONS**

_63523_
Number

**INMATE REQUEST TO STAFF MEMBER**

To: _Unit Team Wildermuth_          Date: _5/10/21_
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

① The court advised me that I have 30 days to research, write and file my appeal brief. We have no research computer or legal resources down here — how am I supposed to do that?

② IMPP 11-101 and 12-120 state that as a level 3 inmate I'm supposed to have access to my tv, and be able to order canteen. Why is that not happening here?

Work Assignment: _NONE_                Living Unit Assignment: _A2-260_

Comment: _____        Detail or C.H. Officer: _____

Disposition: _____

To: _Leek #L63523_              Date: _5/11/2021_
(Name & Number)

Disposition: You can request certain legal materials from the law library on loan.

IMPP 11-101 & 12-120 are being changed this was in effect April 1st, 2021 per KDOC secretary of corrections.
— Wildermuth UTM.

To be returned to inmate.

P-0009

_EXHIBIT J_

EXHIBIT K



AD ASTRA PER ASPERA

# Kansas
Department of Corrections

714 S.W. Jackson St., Suite 300
Topeka, KS 66603

Phone: (785) 296-3317
Fax: (785) 296-0014
kdocpub@doc.ks.gov
doc.ks.gov

Joe Norwood, Secretary

Sam Brownback, Governor

H-218

March 31, 2017

TO:    0063523 LEEK, KENNETH        NCF

       El Dorado Correctional Facility

RE:    Correspondence

I received your letter requesting that offenders be allowed to purchase and possess electronic devices such as tablets and laptops.

KDOC is continually reviewing products that may be beneficial to offenders.

Your request has been noted and will be kept on file.

Sincerely,

Douglas W. Burris
Corrections Manager, Risk Management

cc:    Correspondence
       Warden Heimgartner
       w/attachments

RECEIVED

APR 1 9 2017

Wardens Office



TO: Mr. Joe Norwood
    Secretary of Corrections
    900 S.W. Jackson St., 4TH Floor
    Topeka, KS 66612

                                        March 22, 2017

FROM: Mr. Kenneth D. Leek #63523
      1737 S.E. U.S. Hwy. 54
      El Dorado, Kansas [67042] - 0311

RE: Transitioning from paper to computer

Dear Mr. Norwood:

   Greetings from within the walls of confinement. My name is Kenneth Leek, one of the 9,800 prisoners under your custody and care in the Kansas Department of Corrections. I'm writing you at this time because I have a proposition for you, one I believe makes sense for both sides.

   One of security personnel's primary complaints is the copious amount of property prisoners possess, especially in paper form. They don't like to inventory it, pack it, or dig through it searching for contraband. In addition to that the KDOC amended IMPP 12-120 in large part due

③

to an audit declaring it an official fire hazard. Since that amendment the problem has only gotten worse. My proposition consists of a means to remove a good deal of this nuisance paperwork while earning the KDOC a substantial influx in revenue in the process.

In my 20 years of incarceration I've witnessed the natural evolution of technology as it applies to corrections: televisions went from black and white to huge 13" CRT-types to the 15" flat screens we have now. We went from huge "ghetto blaster" style radios to Panasonic tape decks to digital AM/FM radios to MP3 players to the MP4 players (with movie/video playing capability) we have now. The contract the KDOC has with Access Corrections has netted it untold thousands of dollars I might add. The common theme, however, is the KDOC has usually kept in time with the evolution of technology. That's not the case when it comes to computers.

Since the 70's prison law libraries have supplied prisoners with typewriters to assist them in the preparation of their legal documents. The state has borne the cost of their purchase, maintenance, correction tape, paper and ribbons. From my personal experience there have never been enough typewriters to meet the needs of the prison population. This shortage routinely leads to verbal disputes and wasted sessions in the law library.

④

In 2007 the EDCF administration initiated a pilot program in its law library. Four computers were installed loaded with Open Office, which is a free, on line version of Windows. This allowed prisoners to professionally generate their legal documents and briefs with the added bonus of saving them on the prison server. The software is fantastic and the program worked so well they eventually added more terminals. Since prisoners now payed for their copies it actually cut costs to the operation of the law library.

I was volunteering in the library at the time the program started and the IT technician and librarian informed me the purpose of the program in the long run was to afford prisoners the ability to move from prison to prison and still have access to their legal documents on the server. That was brilliant in form but due to the economic collapse, among other things, the program never made it past EDCF.

If a prisoner has advanced to the proper incentive level he is allowed to purchase a personal typewriter for the exorbitant price of $357.61, Add in $11.00 for a disposable ribbon and an additional $13.00 for correction tape and it can actually be used for about $380.00. Since typewriters are obsolete and the cost is prohibitive, almost no one purchases them. Some would argue that's by design but such debate is not the purpose of this missive.

In recent years educational institutions have moved away from the pen and pad and moved on to mostly electronic media. Children are going to school with laptop bags and stylus pens instead of

[ PROPOSAL TO JOE NORWOOD PAGE 3 of 5 ]

(5)

Big Chief tablets and pencils; schools assign students laptops and/or tablets loaded with the curriculum as opposed to costly, easily damaged paperback books; children learn home row keys instead of how to write in cursive. Sixth graders are learning how to code for God's sake! All of this comes at a savings to the schools of tens of thousands of dollars a year!

Schools are not the only institution that's going digital. Federal prisons in some locales allow prisoners to purchase IPad or similar tablets. Prisoners in Michigan, California, and Minnesota are allowed to purchase laptops and have been for quite some time. These are places I know about but I'm sure there's more. My question is why isn't the Kdoc doing the same?

Kansas prisons are feeling the crushing force of the budget crunch like many other states across the country. We're also running at full capacity and increasing bed space. Prison law libraries will inherently be taxed even more as they cannot expand proportionately. The amount of motions, briefs, transcripts and cases in each cell will also increase. If prisoners were allowed to purchase tablets (with keyboards) or laptops prisoners could draft all their pleadings in their cells or the dayroom and only have to go to the library to print them out. This would decongest the library and allow it to run more safely and efficiently.

Taking things a step further, a printer/scanner/copier could be placed in the library allowing prisoners to scan their legal

[ PROPOSAL TO JOE NORWOOD PAGE 4 of 5 ]

⑥

papers and reduce them to digital media. This could all but eliminate the metric tons of paper in prisoners' cells which is a benefit to everyone. The possibilities are numerous.

Both tablets and laptops are getting cheaper by the day. Ribbit Computers in Wichita is advertising stripped down laptops for $45.00. The newspaper advertises RCA 10.1" Atlas-1 Tablets loaded with Windows 10 for $180.00. Samsung 11.6" Chromebook 3 laptops are $120.00. A Cannon printer/scanner/copier is only $60.00. Sure certain features would have to be removed from the tablet or laptop, such as wi-fi and cameras, but that's already been done in other states. With the mark-up the KDOC would put on the device it would still have far more appeal and desirability than a $357.00 typewriter that's a money pit. I payed $251.00 for a 15" tv. that retails in the newspaper for $70.00, a laptop or tablet would be no different.

In closing, other states have been allowing prisoners to have tablets and laptops for close to ten years now so I know this is something that can work. At present I have way too much paperwork in my cell and such a device would serve to cut it down immensely. This is a great evolutionary step for the KDOC to take, one that benefits everyone. I'd love to hear your thoughts on the subject.

cc: File
    Sam Brownback
    J.T.

Respectfully, Without Prejudice,
Kenneth D. Leek

KENNETH D. LEEK

[ PROPOSAL TO JOE NORWOOD PAGE 5 of 5 ]

①

EXHIBIT L

TO: Mr. Jeff Zmuda
Secretary of Corrections
900 S.W. Jackson
Topeka, KS 66612

May 16, 2021

FROM: Mr. Kenneth D. Leek #63523
L.C.F. P.O. Box 2
Lansing, KS 66043-0002

RE: Inmates' possession of paper documents in KDOC prisons

Dear Mr. Zmuda:

For the past few years I have been lobbying hard for the KDOC to join other progressive states in embracing technology specifically taylored for inmate use. In some areas the Department has grudgingly allowed inmates access to electronic devices such as the SCORE 5 and GTL/GettingOut tablets, but only due to the huge amount of revenue they generate for it. Today, I'm asking you to revisit my prior requests for allowing inmates to purchase KDOC approved laptops for an entirely different reason: inmate and staff safety.

I believe it's obvious that there is a serious K2 (synthetic cannabis) problem in virtually every prison and county jail in the state. I've watched multiple segments on KAKE news dedicated to this very topic. I've also had a front row seat watching KDOC administrators and security personnel struggle to handle the collateral damage resulting from the introduction and use of the drug. I don't need to tell you some of what I've saw has been shocking to say the least. Now, if that isn't bad enough, the black market has been using a new form of introduction and delivery: spraying the drug on paper. To say the KDOC has been struggling to stem the flow of the drug in paper form would be an understatement.

As you can see by the correspondance I've attached to this missive, I've been ahead of the curve on wanting to remove a considerable amount of paper from the cells of inmates, albeit for different reasons. Even so, I've been woefully unsuccessful in obtaining the support of your office. I sincerly hope that changes, especially since my own living conditions have changed.



I am presently being housed in the newly-formed Long Term Restrictive Housing unit at Lansing Correctional Facility. It has been lauded as the higest security living unit in the entire state and I'm quickly learning it may be exactly that. When I arrived at the facility my property was held for several days while officers combed through it page by page in search of contraband. I have metric tons of paperwork so I'm sure the task was burdensome. If I was allowed to scan those documents and reduce them to digital media I'd get my property sooner, correctional staff would have less work to do, and there would be less paper to examine for drugs. That's a win-win for everyone.

In 2019 your office signed off on a major amendment to IMPP 11-101 that, among other things, removed the clause forcing inmates to remove their electronics from the facility if they lost their incentive level and returned to level one two or more times. That opened the door for an inmate to be able to purchase the KDOC approved laptop, scan their paperwork, download it onto the computer or a memory stick and send the paper documents out of the facility. If for whatever reason they need them back they have the option of mailing them back in. Once again it's a win-win; no paper in the cell that may or may not have K2 sprayed on it, and less property for the inmate to have to remain in IMPP 12-120 compliance with.

In closing, please take this missive and the attached one into consideration. What I'm proposing makes sense for everyone. Thank you for your time and consideration in this matter.

Respectfully Submitted,
Kenneth D. Leek
KENNETH D. LEEK

cc: File
Laura Kelly
T.R.S.





714 S.W. Jackson St., Suite 300
Topeka, KS 66603

**Kansas**
Department of Corrections

Phone: (785) 296-3317
Fax: (785) 296-0014
kdocpub@ks.gov
www.doc.ks.gov

Jeff Zmuda, Secretary

Laura Kelly, Governor

March 16, 2020

TO:   0063523 LEEK, KENNETH   *C2-121*

   Hutchinson Correctional Facility

RE:   Correspondence

I received your letter with several ideas for managing inmate property, particularly paper
documents.   It will be kept on file for reference.

Sincerely,

Douglas W. Burris
Corrections Manager, Risk Management

cc:   Correspondence
   Warden Schnurr
   w/attachments

RECEIVED

MAR 1 6 2020

DOC Facility Management Area

TO:        Mr. Jeff Zmuda
           Secretary of Corrections
           900 S.W. Jackson
           Topeka, KS  6612

                                                February 29, 2020

FROM:      Mr. Kenneth D. Leek #63523
           H.C.F.  P.O. BOX 1568
           Hutchinson, KS  67504-1568

RE:        Transitioning from paper to computers

Dear Mr. Zmuda:

    In this era of corrections both prisoners and prison administrators alike are looking for solutions to everyday problems surrounding having prisoners remain content while serving out their sentences while being able to have the administration satisfied that providing that contentment will not cause a breach in security.  It is that age old conumdrum that leads me to write you today.

    One of security personnel's primary complaints is the copious amount of property prisoners possess, especially in paper form.  They don't like to inventory it, pack it, or dig through it searching for contraband.  In addition to that the KDOC amended IMPP 12-120 in large part due to an audit declaring it an official fire hazzard.  Since that amendment the problem has only become more severe.  My proposition consists of a means to remove a good deal of this nuisance paperwork while earning the KDOC a substantial influx in revenue in the process.

    In the quarter of a century that I have been incarcerated I've witnessed the evolution of technology as it applies to corrections.  The televisions went from black-and-white to huge CRT-style to the 15" flat screens we have today.  The radios went from the huge ghetto blaster-style radios to Panasonic tape decks to digital AM/FM radios to MP3/MP4 players to the Edge Mini tablets we've had the last three years.  As a

bonus the contract the KDOC has with Access Corrections has netted it over a million dollars in revenue from the kickbacks it has received from digital music sales. The common theme, however, is the KDOC has usually kept in time with the evolution of technology. That's not the case when it comes to computers.

Since the 70's prison law libraries have supplied prisoners with typewriters to assist them in the preparation of their legal documents. The state has borne the cost of their purchase, maintenance, correction tape, paper, and ribbons. From my personal experience there have never been enough typewriters to meet the needs of the prison population. This shortage routinely leads to verbal disputes and wasted sessions in the law library. These issues are unnecesary and easily solved.

In 2007 the EDCF administration initiated a pilot program in it s law library. Four computers were installed loaded with Open Office, which is a free, on-line knockoff version of Windows.  This allowed prisoners to professionally generate their legal documents and briefs with the added bonus of saving them on the prison server. The software is fantastic and the program worked so well they eventually added more terminals. Since the prisoners now pay for their own copies it has significantly cut the cost of operations for the library.

I was volunteering in the library at the time the program started and the IT technician and librarian informed me the purpose of the program in the long run was to afford prisoners the ability to move from prison to prison and still have access to their legal documents on the server. That was brilliant in form but in function was lacking because the program has never made it past EDCF. As a result once the inmate leaves EDCF he either has to print all his stored files or leave them behind.

For a long time an inmate was allowed to purchase a Brother typewriter for about $150.00. When Union Supply Group took over the price of a typewriter skyrocketed to $357.61! As time has went by these typewriters have basically been considered obselete by society and as an inmate you can no longer purchase one. If you submit the proper forms it will be returned with "out of stock" written on it. After some research it has been learned Union Supply cant get the typewriters from their



supplier.  That makes sense as even elementary schools have gone paperless and the students are assigned laptops and/or tablets.

Schools are not the only institution that is going digital.  Federal prisons in some places allow prisoners to purchase IPad or similar tablets.  Prisoners in Michigan, California, and Minnesota are allowed to purchase laptops and have been for quite some time.  Apple has even designed and sold them a special stripped down laptop to accomodate prisons.  While these are prisons known that have converted from paper to computer, I'm sure there are more.

As we have evolved and moved on from the black and white television it's time to move on from the typewriter.  The KDOC has already given us the Edge Mini Tablet with the ability to do all sorts of things.  These tablets could easily be loaded with a word processor program.  In fact, it is believed they come from the company with it already installed but the KDOC has requested it be removed.

Kansas prisons are feeling the crushing force of the budget crunch like many other states across the country.   In addition we are overcrowded which means additional inmate property (especially of the paper variety) taking up precious space.  Prison law librbaries will inherently be taxed even more as they cannot expand proportionately.  The amount of motions, briefs, transcripts, and cases in each cell will also increase.   If prisoners were allowed to purchase tablets (with attachable keyboards) or stripped down laptops they could draft all their pleadings in their cells or the dayroom and only have to go to the library to print them out.  This would decongest the library and allow it to run more safely and efficiently.

Taking this theory even a step further, a printer/scanner/copier is already in every prison library.  That means inmates have the ability to scan their legal papers and reduce them to digital media. Being able to do that would all but eliminate the metric tons of paper in the inmate's cells which would benefit everyone.  The possibilities are limitless.

Both tablets and laptops are getting cheaper by the day.  Rabbit Computers in Wichita is advertising stripped down laptops for $45.00.  The Sunday newspaper



advertises RCA 10.1" 2-in-1 tablets loaded with Windows 10 for $180.00  Samsung 11.6" Chromebook 3 laptops are $120.00.  A Cannon printer/scanner/copier is only $60.00.  This is a far cry from the $357.61 we are charged for a typewriter that we can't even actually get.

Obviously certain features would have to be removed from a regular laptop or tablet but that's already been done with the Edge Mini Tablets and the items sold in other states.  With the mark up the KDOC would put on these items it would still have far more appeal and desirability than an overpriced typewriter that is a money pit. Inmates pay $250.00 for a television that sells in the newspaper for $70.00 so selling a laptop or tablet would not be a hard sell.

In closing, other states have allowing prisoners to have tablets and laptops for close to ten years now so I know this is something that can work.  At present I have way too much paperwork in my celll and such a device would serve to reduce it considerably.  This is a great evolutionary step for the KDOC to take, one that benefits everyone.  I'd love to hear your thoughts on the subject.

Respectfully Submitted,

Kenneth D. Leek

Kenneth D. Leek

CC: File
    Laura Kelly
    T.R.S.

EXHIBIT M

**Form 9**
For Cellhouse Transfer
Work Assignment _____
Interview Requests

LEEK
Last Name Only

## KANSAS DEPARTMENT OF CORRECTIONS

63523
Number

### INMATE REQUEST TO STAFF MEMBER

To: Library                     Date: 5/10/21
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

There is a Kansas Court of Appeals case Jamerson v.
Heimgartner that deals with the due process rights of
inmates in segregation and states a liberty interest is
created after 1,000 days. I need that case. 304 Kan. 678

Thanks

Work Assignment: NONE              Living Unit Assignment: A2-200

Comment: _____           Detail or C.H. Officer: _____

Disposition: _____

To: _____                     Date: 5/10/21
(Name & Number)

Disposition: _____

Employee's Signature

P-0009

To be returned to inmate.

EXHIBIT M Attachment (A)

 **LexisNexis**

**Date and Time:** Monday, May 10, 2021 1:34:00 PM CDT

**Job Number:** 143495785

## Document (1)

1. *Jamerson v. Heimgartner, 304 Kan. 678*

   **Client/Matter:** -None-

   **Search Terms:** jamerson v. heimgartner

   **Search Type:** Natural Language

   **Narrowed by:**

   | **Content Type** | **Narrowed by** |
   |---|---|
   | Cases | Sources: Kansas State Cases, Combined |

**LexisNexis** | About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2021 LexisNexis

EXHIBIT N

A-2 109

LCFV

# Grievance-Response on Appeal

**FACILITY:**           **Lansing Correctional Facility**

**INMATE:**            **0063523 Leek, Kenneth**

**GRIEVANCE NO.:**  **AA2022092**

**DATE:**               **September 23, 2021**

## FINDINGS OF FACT

The response provided to the inmate by staff at the facility is incorporated herein by reference and made part of this response.

On appeal, the inmate offers no evidence or argument that suggests that the response rendered by staff at the facility is wrong.

## CONCLUSIONS MADE

The response rendered to the inmate by staff at the facility is appropriate.

## ACTION TAKEN

None further.

**Darcie Holthaus CMII**
**SECRETARY OF CORRECTIONS DESIGNEE**

cc:    Warden Meyer
        Image: SOCRESP w/attachments

The original response on appeal and all attached documents were mailed to the inmate by way of United States Mail on _____.

1

## APPEAL OF GRIEVANCE TO SECRETARY OF CORRECTIONS

Inmate Name: KENNETH D. LEEK     Facility: L.C.F.

Inmate Number: 63523     Grievance Serial No. AA 2022 092

(Attach grievance report with Principal Administrator's response or explanation why Principal Administrator is bypassed.)

MAIL TO:    Secretary of Corrections      Date Mailed: 9/13/21
           Landon State Office Building
           900 Jackson, 4th Floor
           Topeka, Kansas 66612

Tell the Secretary what you feel the Principal Administrator should have done, and state what action you believe the Secretary should take. (Use extra paper as needed.) Clearly the KDOC has a standing policy that "no further action is necessary" on any grievance an inmate files. In 26 years I've never received any other response. This is truly a sad situation. Fix these problems.

_Kenneth D. Leek_
Signature of Inmate

---

**DECISION BY SECRETARY OF CORRECTIONS** (to be completed and returned within 20 days)
If applicable - Confidential File No. _____

Date Received in Office of Secretary of Corrections: _____

Date of Final Answer: _____     Date Sent to Inmate: _____

Finding of Fact:


Conclusions Made:


RECEIVED

SEP 2 0 2021

___ Facility Management Area

Action Taken:


_____
Signature of Secretary of Corrections

---

**For D.O.C. Staff Use Only**
Type of Response (Item 6b: Code   Ø1,   Ø2,   Ø8   or   Ø9) ___ ___

DC Ø9Ø, Effective May 1, 1988

P-157a

2

## INMATE COMPLAINT

Inmate's Name __KENNETH D. LEEK__     Number __63523__

Facility __L.C.F.__     Housing Unit __A2__     Work Detail __NONE__

---

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member).

[ Please, see attached document's ]

Bird poop, food, clothes, sheets

Date this report was given to Unit Team for informal resolution (to be completed by inmate). __7/28/21__

---

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.) In regards to I have reached the following conclusion; In regards to linens & Blankets. Your side recieves clean sheets on saturdays. Blankets will be collected by side in the am once per month washed and returned the same day. The exercise cages will be power washed now that we have the equipment on loan to do so. We are working with armark closely to monitor portions and correct the sizing served for meals. No further action is necessary. 8.23.21 _Unit Team Signature_ D. Wadermuth.

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

__X__ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). _____

__Kenneth D. Leek__     __8/12/21__

Inmate Signature     Date

---

**WARDEN RESPONSE** (Complete, attach response and return within 10 Working days.)

Date Received __SEP 0 9 2021__   Date of Final Answer __SEP 0 9 2021__   Date Returned to Inmate _____

_____     _____     _____
Inmate's Signature     Date     Unit Team Signature     Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

---

## TO BE COMPLETED BY STAFF ONLY

Grievance Serial Number __AA 1022 042__

Type of Complaint (Item 4: Code 01-75) __54__

Cause of Complaint (Item 5: Code 01-30) __01__

Type of Response (Item 6a: Code 01,02,08 or 09) __01__

3

# MEMO



**KANSAS**
Department of Corrections
*Lansing Correctional Facility*

**DATE:** 09-09-2021

**TO:** Leek #63523

**FROM:** Shannon Meyer, Warden

**SUBJECT:** Grievance # AA202202092

---

**Finding of the Facts:** Inmate Leek is alleging that sheets and blankets are not being collected to be washed while housed in A2. The yard cages have bird feces all over them and are not being cleaned. Aramark is not giving correct portions on trays that are being served in A2.

**Conclusions Made:** Based on what the grievance officer has received and investigated the unit team response is correct. The lines are to be picked up over the weekend, and on Sunday night they will be sent out to the laundry to be cleaned. KDOC is working with CoreCivic to borrow the equipment to power wash the yard cages. The officers and unit team are working with Aramark on making sure the trays coming into the unit are correct before being served to you guys.

**Actions Taken:** No Further actions is deemed necessary.

14

TO: Ms. Shannon Meyer
    Warden
    L.C.F. P.O. Box 2
    Lansing, KS 66043-0002

                        August 17, 2021


From: Mr. Kenneth D. Leek #63523
      L.C.F. 301 E. Kansas Ave.
      Lansing, KS 66043-0002


RE: Unanswered Grievance


Dear Warden,

    Enclosed please find a copy of a grievance submitted to
Unit Team Manager Wildermuth on July 28, 2021. As of
this date it has gone unanswered. K.A.R. 44-15-102 (2)
states "If an inmate does not receive a response from the
unit team within 10 calendar days, a grievance report may
be sent to the warden without the unit team signature."
As I don't expect an answer I'm forwarding it to you.

                        Respectfully
                        Kenneth D. Leek
                        KENNETH D. LEEK

cc: File

## FORMAL GRIEVANCE

This grievance is in regard to my conditions of confinement in the LTRH unit at Lansing Correctional Facility.

## SHEETS/BLANKETS

Prison policy dictates LTRH unit inmates receive clean sheets weekly and blankets once a month. Since I've been here that has not been the case. We have been told the laundry does not have sufficient stockpiles of sheets or blankets to replace the sheets and blankets to all 104 inmates down here. There have been numerous weeks I haven't received sheets at all. Other weeks we only got sheets because CSI McCurrie called the laundry and was able to pick up our sheets, turn them in to the laundry for washing, then pass them back out. Right now I've had the same sheets for 2 weeks and counting.

The blanket situation is pretty much the same. In fact, if McCurrie doesn't play lets make a deal with the laundry supervisor we may very well never have clean blankets. I've personally went as long as six weeks with the same blanket on multiple occasions. Having us here without the ability to provide us with clean linen violats the Eighth Amendment of the U.S. Constitution. Carver V.

6

Knox County, Tenn, 753 F.Supp. 1370, 1389 (E.D. Tenn. 1989) ("The failure to regularly provide prisoners with clean bedding, towels and clothing" is unconstitutional); Hickson V. Kellison, 170 W.Va. 732, 296 S.E.2d 855, 858 (W.Va. 1982)

## BIRD POOP IN EXERCISE CAGES

Since I got here in April I've noticed the exercise cages have had bird poop all over the ground. Over the months following the situation has only gotten worse; now there are mounds of bird feathers along with the poop. So much so it's impossible to find a clean space to actually exercise in. When I return from yard I'm dragging poop with me which I later find when I clean my cell.

I've requested the cages get thoroughly cleaned to security personnel on multiple occasions. They've informed me the Deputy Warden of Operations has yet to approve them to have a power washer so there is nothing they can do. That is unacceptable. Exposure to feces is a clear violation of the Eighth Amendment. DeSpain V. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001) (holding 36 hours of exposure to feces stated an Eighth Amendment claim); Gaston V. Coughlin, 249 F.3d 156, 166 (2nd Cir. 2001) ("We are unwilling to adopt as a matter of law the principle that it is not cruel and unusual)

(2)

7

punishment for prison officials knowingly to allow an area to remain filled with excrement for days on end.")

## MISSING SHOWERS DUE TO UNDERSTAFFING

Due to severe understaffing at L.C.F, I've missed multiple showers while in the LTRH unit. In segregation we only get three showers to begin with so missing one is a big deal, especially when you exercise like I do. In fact, three is the bare minimum that passes constitutional muster. Peterkin v. Jettes, 661 F.Supp. 895, 914-15 (E.D. Pa. 1987) (three showers a week met constitutional requirements in administrative segregation unit); Dolphin v. Manson, 626 F.Supp. 229, 240 (D.Conn. 1986) (three showers a week met constitutional requirements)

## LACK OF CLEAN CLOTHING

I've had the same brown pants and raggedy t-shirt since I got here on April 28, 2021. Every time I shower I ask the officer passing out laundry if he has any brown pants or t-shirts that fit me and the answer is always no. I've been talking with unit team and security staff about getting us clothing down here

(3)

8

for months and nothing has happened. The situation is so dire I went on a hunger strike for eight days in past because of it. I lost about 20 pounds and due to the medications I stopped taking almost ended up in the hospital. At the time of the filing of this grievance some new clothes are allegedly on the way after three months!! Such an inadequate supply of basic clothing violates the Eighth Amendment. Landfair V. Sheahan, 878 F.Supp. 1106, 1112 (N.D. Ill 1995) (lack of clean clothing or means to launder clothing for an extended time could be unconstitutional); Wilson V. Cook County Bd. of Commissioners, 878 F.Supp. 1163, 1169 (N.D. Ill 1995) (allegation that uniform had not been changed in a month stated a constitutional claim)

ARAMARK

Since I've been in the LTRH unit I've noticed Aramarks has been content to starve us half to death. We complain daily to unit team and security staff about the quality and portions of the food to no avail. They serve us old, stale cake, leftover garlic bread with our peanut butter and jelly or bread so hard and brittle it's not eatable. Correctional staff tell us they feel sorry for us!! Even

(4)

9

So no one holds the company accountable. Why? <u>Green V.</u>
<u>Johnson</u>, 977 F.2d 1383, 1391 (16th Cir. 1992) (mere 72
hour reduction in food portions stated a claim)

## <u>RELIEF SOUGHT</u>

Someone needs to step up and fix the numerous human
rights violations taking place in the LTRH unit on a daily
basis. If the prison isn't ready for inmates to be here
we shouldn't be here, period.

<u>Kenneth D. Leek</u>
KENNETH D. LEEK

Date 7/27/21

(5)

10

**Form 9**
For Cellhouse Transfer
Work Assignment ___INFORMAL RESOLUTION___ A2-234.
Interview Requests

LEEK
_____
Last Name Only

### KANSAS DEPARTMENT OF CORRECTIONS

63523
_____
Number

### INMATE REQUEST TO STAFF MEMBER

To: _Unit Team Wildermuth_    Date: _5/30/21_
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

You people kidnap me from my prior hell hole assignment, bring me here, take all my personal property but don't have sufficient state supplies to replace them. They routinely run out of socks, towels, t-shirts, blankets etc. and now they are not able to give each cell even one tablet. That caused a huge problem over the weekend. Yet you continue to fill this place up. What the hell are you people doing?

Work Assignment: _NONE_    Living Unit Assignment: _A2-234_
Comment:    Detail or C.H. Officer: _COI Ashback_

Disposition: _____
_____
_____
_____

To: _Leek #63523_    Date: _6/1/2021_
(Name & Number)

Disposition: _Excellent question._
_____
_____
_____

_Wildermuth UTM._
Employee's Signature

**To be returned to inmate.**

P-0009

11

To: _____                Date: _____
          (Name and Title of Officer or Department)

_____
          Unit Team, Detail, or Cellhouse Officer's Signature        **To be retained by inmate**

Form 9
For Cellhouse Transfer
Work Assignment     _IN FORMAL RESOLUTION_                    <u>LEEK</u>
Interview Requests                                           **Last Name Only**

### KANSAS DEPARTMENT OF CORRECTIONS

<u>63523</u>
**Number**

### INMATE REQUEST TO STAFF MEMBER

To: <u>CSI Dudley</u>                                Date: _____
      (Name and Title of Officer or Department)
                    State completely but briefly the problem on which you desire assistance. (Be specific.)

On 6/19/21 I addressed an issue with you about Aramark serving us old, cold
bisquits instead of rolls/bread with the charbroiled patty. When you
called Aramark and informed them of the problem what did they do?

_____

_____

_____

Work Assignment: _None_            Living Unit Assignment: _A2-234_

Comment: _____    Detail or C.H. Officer: _____

Disposition: Called Kitchen officer explaind there was a hard bisqut
with sack and not bread (&roll). Ask for roll and was sent 2 more
bisquits csiDudley 6-19-21

_____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

To: _____                Date: _____
          (Name & Number)

Disposition: _____

_____

_____

_____

_____
          Employee's Signature                              **To be returned to inmate.**

P-0009

12

EXHBIT O

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KENNETH D. LEEK,
      Plaintiff,

      V.                              ) Case No. 21-3100-HLT-ADM

KATHURN A. ANDROSKI, et al.,
      Defendants.

DECLARATION OF KENNETH D. LEEK

I, KENNETH D. LEEK, being of lawful age, make the following
declaration pursuant to 28 U.S.C. § 1746 relating to the above-
captioned matter based upon my personal knowledge and information
made known to me as a prisoner housed in the Long Term Restrictive
Housing Units at L.C.F. and E.D.C.F.

1. I am the plaintiff in the above captioned cause.
2. Upon my arrival at the Long Term Restrictive Housing Unit
   (LTRHU) at L.C.F. I immediately engaged the Unit Team
   Manager, Lindsay Wildermuth, in conversations about how
   LTRHU prisoners would be given access to legal resources / law
   library.
3. Wildermuth advised there was no remote library located in the
   living unit and any requests had to be addressed to the law
   library via Form - 9.
4. Wildermuth never provided me with a list of resources I could
   request or otherwise advised me as to what was available,
   she did, however, inform me Mr. Stiffin, the librarian, did
   not send any law books to segregation.

5. There were multiple cages, rooms and empty offices in the
   living unit and I asked Wildermuth why there was no satellite
   law library to which she replied, "the way the library takes
   care of your requests is how it's always been done, there's no
   need to change it."

6. If the prison administration had a desire to put a Satellite law library in the LTRHU there was plenty of room available.

7. When making suggestions to KDOC staff both orally and through the grievance system I never suggested LTRHU prisoners be restrained and escorted from the living unit to the main prison library because (a) I knew the law does not support such a notion, and (b) because I knew they would never do it.

8. I find the defendants' assertions that such a transport could lead to "violent incidents" and "communications with security threat groups" laughable. LTRHU prisoners are escorted to the clinic and dentist every day, walking past dozens of general population inmates, and no one complains about violence or gang communications.

9. When I tried to request a dozen cases the Assistant Attorney General cited in a motion to dismiss, Stifflin only sent me three, which I had to return in a week.

10. When I made a similar request in regards to a count order and asked him to make an exception to the limit he refused.

11. No one ever advised me I could ask for an exception to the 3 case per week limit, I just asked out of need.

12. Stifflin is the only person that could allow such an exemption and he will by no means do so. Deadlines do not matter.

13. During my stay in the LTRHU I ordered much more than 12 cases from the library. Stifflin has multiple inmate law clerks working for him, that process Form-9s so it's easy to see how some of the cases don't get properly placed on the list of items checked out.

14. When I realized I only had an exact cite system in place to do legal research I reached out to Charles Cavanee at Legal Services for Prisoners (LSFP) and asked for their help. He wrote me back and told me they were not allowed to assist prisoners that have requested monetary damages in their suit.

15. After I filed suit against Stifflin and other L.C.F. staff he got upset and began to mishandle or not process my requests for materials. When I asked for KDOC policy (IMPP's) on hunger strikes he refused

[ DECLARATION OF KENNETH D. LEEK pg 2 of 6 ]

to process it and insted advised me to contact LSFP.
16. Stittin knew LSFP was not responsible nor able to provide
prisoners with IMPP's.
17. Charles Cavenee wrote me back three weeks later telling
me to contact the prison library because LSFP doesn't provide
copies of cases, statutes, regulations and IMPP's, something
I already knew.
18. Contrary to the defendants declarations they are not truly
concerned with reducing or limiting the amount of paper
in our cells to prevent hiding paper saturated with drugs,
hiding contraband, fire hazards, clutter or cell
visibility obstruction. In 2017 I wrote the Secretary of
Corrections a lenghty letter requesting him to allow prisoners
to purchase stripped down laptops or tablets like other
states so that prisoners could draft legal pleadings in
their cells and go to the library to print them off. This
would cut down on congestion in the library and reduce the
amount of paper in the cells.
19. As another means of reducing the amount of paper in cells
I suggested allowing us to buy laptops or tablets which makes
it possible to run our motions, briefs, transcripts etc through
a scanner and convert it to digital files, eliminating
the need for paper documents.
20. The secretary's designee wrote me back stating my request
was "noted" and would be kept on file.
21. A few months later we were allowed to purchase mini
tablets but they have no word processor nor are we allowed
to save anything other than music on it.
22. Shortly after I arrived at the LTRHU at L.C.F. I wrote the
new secretary, Jett Zmuda, a letter asking him to revisit
my prior request but this time in light of the perceived
problem they were having with drug saturated paper
coming in the prisons. Apparently their so called drug
crisis doesn't hold much sway as my request was
ignored.

23. The defendants allege facility attorneys can grant

[ DECLARATION OF KENNETH D. LEEK pg.3 of 6 ]

prisoners an exception to the amount of paperwork they can have in their cells based on "deadlines and active court cases."

That is false. When I am routinely audited for property compliance I am always forced to send property out of the facility or destroy it, legal documents included.

24. I recently wrote the warden asking for permission to temporarily have 2 legal boxes due to excessive paperwork generated in this case and the request was denied.

25. The KDOC's blanket denial of partners legal research has nothing to do with "dangerous communications" "passing STG information" or any legitimate security issue. Inmate Hill's cell was directly in front of mine and we could talk cell to cell all day if we wished. Further, we went to yard together and could communicate about law or anything else unimpeded.

26. The KDOC only provided prisoners with the LEXIS NEXIS app on the tablets due to me filing this law suit.

27. Since the app has been installed there is a huge discrepancy from prison to prison - sometimes even living unit to living unit - in how much access prisoners have to the tablet. For example LCF segregation inmates can get the tablet very easily and often. EDCF segregation inmates have to jump through hoops to get it and even when you do your access is short in duration.

28. We do not have the same access as general population inmates.

29. The KDOC has not changed any policy or procedure in writing in regards to how and when the tablets should be distributed or even if LEXIS NEXIS will remain on them.

30. I have only had access to the tablet once since the app came on line.

31. I did not amend the complaint in Soggin, or respond to the defendants' motion to dismiss because I had no way to do my own research to learn how to save the suit, if it was possible. If the app was on line then I believe I could have saved the suit.

32. I also didn't appeal the granting of the motion to dismiss because I had no way to research the courts order or the complained of Eighth Amendment violation.

[DECLARATION OF KENNETH D. LEEK pg. 4 of 6]

33. The defendants alleging the KDOC didn't have an exact cite system is disingenuous. The prisoner sends a Form-9 to the library requesting a specific case or statute by cite, the law clerk prints it off and sends it to segregation and one week later it must be returned. They admit they do not do research or send law books to segregation. That, by definition, is an exact cite cell delivery system courts have considered unconstitutional for decades.

34. The LTRHU was hastily opened and as a result LCF did not have the proper amenities on hand when I arrived. We were stripped of all our store bought personal clothing (sweats, socks, boxers, shorts etc.) but they didn't have sufficient state clothing to issue.

35. I had the same jumpsuit for months and eventually went on hunger strike to effectuate change in the living unit.

36. LTRHU prisoners also would go 2-3 weeks without exchanging sheets and pillowcases because the laundry did not have a sufficient supply for all the new inmates.

37. We had the same problem with exchanging blankets which only happens every 30 days. It was not uncommon to have the same blanket(s) for 6-8 weeks!

38. The most disgusting thing about the LTRHU was the insane amount of bird feces that covered the floors and fences of the exercise cages outside. It was so bad most people refused to go outside. I went anyway.

39. Everyone complained about the feces but nothing was done.

40. These are the issues myself and inmate Hill sought to research so we could possibly file a class action if the law was on our side. We never had the chance due to the inadequacies of the law library.

41. Though I filed an administrative grievance I have not brought suit on those conditions of confinement due to an inability to properly vet the issues.

42. IMPP's and facility General Orders are not posted on the tablets as the defendants maintain.

43. Stittin alleges he allows prisoners to check out more

[DECLARATION OF KENNETH D. LEEK pg. 5 of 6]

than three cases at a time. That is false. For example, when this court entered its order of dismissal I sent a form-9 to Stiffin requesting a dozen cases so I could challenge the ruling. Stiffin only sent me 3 cases and said he would send 3 more when those were returned. He has never given me an exception.

44. Stiffin also states he sends requests for "interpreting" ImPPs to LSFP. He told me to get an ImPP from LSFP out of spite for me suing him. He knew LSFP would not provide the policy. I wasn't seeking an interpretation.

45. While in the LIRHU at LCF I was never told I could get photocopies of the table of contents of a law book. That seems odd to me since I don't know what books they have.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 9, 2022

Kenneth D. Leek

KENNETH D. LEEK
Pro Se

[ DECLARATION OF KENNETH D. LEEK pg. 6 of 6 ]

EXHIBIT P

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KENNETH D. LEEK,                    )
         Plaintiff,                 )
                                    )
    V.                              )  Case No. 21-3100-HLT-ADM
                                    )
KATHRYN A. ANDROSKI, et al.,        )
         Defendants.                )

DECLARATION OF DARREN HICKSON

I, DARREN HICKSON, being of lawful age, make the following declaration pursuant to 28 U.S.C. § 1746 relating to the above-captioned matter based upon my personal knowledge and information made known to me as a prisoner housed in the Long Term Restrictive Housing Units at L.C.F. and E.D.C.F.

1. I am the declarant and I have been housed in segregation at H.C.F., L.C.F, and E.D.C.F for the last (2) two years,

2. When I was transferred to segregation at L.C.F I asked the Unit Team staff and other prisoners how to get case law and other legal materials. I was told to send a Form-9 to the library and request case site, statute, or IMPP number I wanted.

3. In my time at each facility, no one ever supplied me with the necessary resources available to me from the library.

4. If the facility wanted to install a small library for the segregation unit there were plenty of ways they could have done it.

5. It's not uncommon for L.C.F segregation inmates to be escorted to the clinic. We pass by lots of general population inmates in route and the officers never complains about them talking to us or behave like its a dangerous situation.

6. I've always felt like the library printing off legal materials that have to be returned was a waste of money and made no sense. They do not reissue the cases to other inmates, they throw them away.

7. I have never been told the librarian can make an exception as to the amount of cases I can receive at one time. I've never heard of anyone else receiving an exception either.

8. Legal service for prisoners does not come to segregation and I've never seen them assist any prisoner with anything.

9. It's hard for me to believe the KDOC is interested in reducing the amount of paper in prisoners cells. We can use word processors in the library but can't save anything, they sell us outdated typewriters instead of laptops and we can't save anything other than music on the tablets we can buy.

10. I don't know of any rule, regulation, or policy that informs a prisoner that he/she can request an exemption to property limits from the facility attorney. I've also never heard of anyone receiving such an exemption.

11. In my opinion, the KDOC is not fond of prisoners that do legal work, especially fighting for prisoner rights. Not allowing prisoners to help each other do legal work has nothing to do with dangerous communications or gang activity, they simply don't like lawsuits.

12. Anything prisoners could talk about in a room in segregation, they can talk about on the yard or in the living unit. Even in segregation there is no way to stop prisoners from talking. Partners doing legal work in segregation is in no way a security threat.

[DECLARATION OF DARREN HICKSON pg. 2 of 3]

13. I was at L.C.F when the Lexis Nexis APP was placed on the tablet. I had no problem using it there and did so often. Since I've been at E.D.C.F, I've noticed that it is much more difficult to find the tablet let alone use it.

14. We don't have the same amount of access to Lexis Nexis that general population inmates do.

15. I don't know of any rule or policy amendment that outlines the rights/or prisoners' privileges in regards to the legal research tablets. Every unit team just does issuance however they see fit.

16. When I arrived at L.C.F there was very little laundry in the cellhouse. People were always upset about not being able to get clean jump suits, sheets, blankets, and towels.

17. I don't understand why they take our personal property but had none to give us.

18. There was alot of bird poop all over the exercise cages. It was so bad everyone complained about it, even staff but it continued to be a problem the whole time I was there.

19. I viewed the bird poop as a potential health hazard.

Pursuant to 28 USC §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 11, 2022

Darren Huff

DARREN HICKSON

E.D.C.F

[DECLARATION OF DARREN HICKSON pg. 3 of 3]



EXHIBIT D



# Kansas
**Department of Corrections**

# INTERNAL MANAGEMENT POLICY & PROCEDURE

**Applicability:** X ADULT Operations Only  _ JUVENILE Operations Only  _ DEPARTMENT-WIDE

**IMPP #: 12-120A**                                                                 **PAGE #: 1 of 14**

**SECURITY AND CONTROL: Control of Resident Personal Property**

**Original Date Issued: 03-10-21  Replaces IMPP Issued: 07-26-21  CURRENT EFFECTIVE DATE: 08-09-21**

**Approved By:** _____ **, Secretary     Next Scheduled Review: 07-2023**

## POLICY

Residents incarcerated at a Department of Corrections correctional facility are permitted to possess and obtain a reasonable amount of personal property. The allowable personal property a resident can possess must not constitute a threat to the safety, order and security of the facility, staff, residents and public.

## DEFINITIONS

Admission Property: That personal property which may be brought with the resident at the time of admission to KDOC custody.

Canteen: A store through which resident are provided an opportunity to purchase allowable hygiene, snack and property items. Such a store is managed by Kansas Correctional Industries in partnership with a contracted vendor. Local department stores may be designated to serve as canteens for residents in Work Release Centers only.

Canteen Price (CP): The current cost to the resident of an approved item of personal property available through the canteen or through a local vendor approved by the Warden.

Consumable Limitation (CL): A $150.00 combined value of all items for which a consumable limitation is indicated on Attachment B but does not include consumable handicraft items.

Consumable Property: That personal property which does not require registration upon receipt but must be recorded on property inventory forms any time a resident's property is inventoried. All such property is subject to the consumable limitation.

Intake Property: That personal property which may be possessed by a resident while on Intake Level pursuant to IMPP 11-101A.

Inventory: A detailed listing of property that is actually in a resident's possession. To make a detailed listing of any resident's property.

Legal Material: That material concerning a pending or anticipated case, wherein the resident is or may be a party, and includes pleadings, transcripts, books, notes, drafts, and correspondence to and from attorneys, courts, and public officials.

Post-Release Supervision: Refers only to the supervision of resident released as the result of Sentencing Guidelines.

Register: The action of recording an item of property at the time it is received.

Registered Property: That property which must be recorded in the resident's property record upon receipt.

Soft Metal Cans: Containers with tops that are manufactured with a means for removing the top without the use of a mechanical can opener; i.e., tops may be removed with a pull-tab, twist-top, or other device that is attached to the can.

    a.    If a Warden determines residents may purchase a padlock from the canteen, in light of the inclusion of one (1) padlock in the list of allowable post intake property (see Attachment B), the following is to apply:

        (1)    Only "Master" brand combination padlocks with key are to be sold in the canteen; and,

        (2)    Only "Master" brand series 51 are to be sold.

3.    Postage stamps are only permitted as a canteen purchase item, and any allowable personal property, which is categorized as an "appliance" in Attachment B may be either stocked in the canteen or made available for purchase by special purchase order.

4.    Work Release Facilities may utilize local merchants as a source for such personal property items as are listed in Attachment B as canteen purchase items.

5.    Except as provided in Section III.B.3. above, it is the responsibility of the Warden of the facility to determine and specify in General Orders the manner in which allowable personal property may be obtained.

    a.    The Warden has the discretionary authority to limit or disapprove access to any item subject to the consumable limitation (CL) except that residents are permitted to exhaust the supply of such property, which they bring with them at the time of transfer.

    b.    Post-release supervision conditions violators with no new sentence are not permitted to possess appliances or items of personal clothing identified in Attachment B.

6.    The Warden may provide storage for some items of resident property that are determined unnecessary for the resident's use while at a particular facility but which the resident wishes to retain on the property inventory.

C.    Legal Material

1.    Residents are permitted to possess that quantity of legal material/documents that fits in one (1) box.

    a.    The box is not to exceed 18" (L) x 12" (W) x 6" (D) in size.

    b.    The box is in addition to the property that must fit within a transfer/storage box as specified in Section V.A.1.

    c.    Upon request of the resident, the facility is to provide the resident with a document storage box.

2.    Residents who possess legal materials in such a quantity that it cannot be contained in the legal material/document box may utilize space within the personal property storage box to retain the excess.

    a.    All personal property and excess legal materials must be contained within the transport/storage box.

        (1)    In the event the resident has chosen to retain legal materials in such an amount that personal property items and legal material combined exceed the space available in the transport/storage box:

            (a)    It is left to the resident to choose which legal materials or personal property is to be removed to achieve compliance with the above policy.

i.  The resident is to be directed by the facility Property Officer to identify the legal materials or personal property to be removed per Section XI. The resident is to be advised that the Warden or designee determines which items are to be removed if the resident refuses to make a choice or makes a choice that does not accomplish compliance.

(b)  In the event the selection becomes the responsibility of the Warden or designee, the selection is to concentrate on items of personal property of combined dimensions so that the amount removed is no greater mass than that of the excess legal materials.

(c)  If all of a resident's personal property items have been removed from the facility to provide space for legal materials, and, an excess of legal materials remain, the Property Officer can advise the resident of the need to identify a quantity of legal materials to be removed in accordance with Section XI.

i.  The resident is to be advised that his/her failure to make an appropriate choice of a sufficient quantity of material to comply with this policy that requires the Warden with facility legal counsel or designee with facility legal counsel to make such a determination per subsection (a), above.

ii.  The legal material selected for removal shall not be read by any staff member facilitating the reduction excess items.

(d)  Residents who have been required to reduce their legal material amount to the maximum quantity contained in both the transport/storage box and the legal material/document box may continue to receive legal materials in the mail.

i.  If new legal material is received the resident is to be notified by the facility Property Officer that an equal amount of legal materials must be removed from the facility within five (5) working days (excluding weekends and holidays) of the resident's receipt of new legal material.

ii.  The resident is to be provided the opportunity to determine which legal materials are to be removed.

iii.  Failure of the resident to make a choice may result in the Warden or designee making the determination, per Section III.C II.2.a.(c)i. above.

b.  The legal material/document box is to be utilized for legal materials only and may not be utilized for resident personal property.

3.  The possession of legal materials by residents in restrictive housing may be limited, but access is to be permitted upon request, on a reasonable time and manner consistent with the security and order of the facility.

D.  Religious Material

1.  Residents are permitted to possess religious items and materials as specified in Attachment B and/or in accordance with provisions of IMPP 10-110D.

2.  Any religious item included in the list of allowable personal property must be approved by, obtained, and received through the facility Chaplain.