IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KENNETH D. LEEK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case. No. 21-3100-HLT-ADM |
| | ) |
| KATHRYN A. ANDROSKI, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS,
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendants Kroeker, Skidmore, Stiffin, and Meyer (the "Defendants") submit, through Assistant Attorney General Matthew L. Shoger, this Reply in further support of their Motion to Dismiss, or, in the Alternative, for Summary Judgment. (Doc. 46.) Defendants assert that Leek fails to controvert the material facts set forth in Defendants' motion as required by D. Kan. Rule 56.1 and does not overcome the Defendants' legal arguments. Accordingly, Defendants' motion should be granted in its entirety.

**INDEX OF NEW EXHIBITS[1]**

| Exhibit | Description |
|---|---|
| T | Declaration of Nicolaus Ball |
| U | Second Declaration of Joel Hrabe |

**DEFENDANTS' COUNTER-CHALLENGES TO LEEK'S FACTUAL CHALLENGES**

As required by D. Kan. Rule 56.1(d), Defendants served upon Leek the Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion, along with the required texts of D. Kan. Rule 56.1 and Fed. R. Civ. P. 56. (Doc. 48). Yet Leek fails to provide a response to the facts set forth in ¶¶ 1-49, 51-52, 55-58, 60-67, 69, and 74-76 of Defendants' Statement of Material Facts ("DSOF") as required by D. Kan. Rule 56.1(b)(1) or Fed. R. Civ. P.

---

[1] Exhibit T addresses the admissibility (although not contested by Leek) of Defendants' Exhibit S from their memorandum in support of the motion. Defendants note that the Court can take judicial notice of Exhibits A, B, and D – all of which can be found on KDOC's website – under Federal Rule of Evidence 201. *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007). Exhibits J through R are admissible under Federal Rule of Evidence 901, especially 901(b)(4). *Law Co. v. Mohawk Constr. & Supply Co.*, 577 F.3d 1164, 1170-71 (10th Cir. 2009).

56, and therefore, those paragraphs should be deemed admitted. D. Kan. Rule 56.1(a); *see Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002). Leek has only responded in accordance with D. Kan. Rule 56.1(b)(1) to the facts set forth in DSOF-50, 53-54, 59, 68, 70-73, 77. Therefore, Defendants reply to those responses as follows:

1. Defendants contest Leek's challenge ("LC") ¶ 1, which challenges DSOF-50. Leek has not alleged or established that he (or any other inmate) ever requested a list of law books, so he has not established the necessary foundation that he knows whether he would receive such a list if he did request one. Statements made by Leek like this one that are conclusory, self-serving, and made without personal knowledge are inadmissible to support Leek's claims.[2]

2. LC-2 puts DSOF-53 in dispute. But Leek has not alleged or established that any penalties exist for late returns. Therefore, regardless of whether the checkout period is one week or two weeks, the difference is immaterial. It remains undisputed that only three items can be checked-out at a time, so to check out new items, an inmate generally needs to check in previously checked-out items.

3. Defendants contest LC-3 – which challenges DSOF-54 – as conclusory, self-serving, and made without personal knowledge. Leek has not alleged or established that he (or any other inmate) ever requested an exception to the checkout limit from the unit team, so he has not established the necessary foundation that he knows whether he would receive such an exception if he did request one. While Defendants agree that Defendant Stiffin does not grant exceptions to the checkout limit himself, Leek has not established the necessary foundation that he knows whether Stiffin would honor such an exception if granted by the unit team.

4. Defendants do not contest LC-4.

5. Regarding LC-5 – which challenges DSOF-68 – Defendants never specifically alleged that Leek "sent the library a Form-9 asking 'for assistance in interpreting IMPP's.'" DSOF-68 simply established the undisputed division of labor between the law library staff and LSP in general.

6. Defendants contest LC-6 – which challenges DSOF-70 – as conclusory, self-serving, and made without personal knowledge. In addition, for purposes of this motion, Defendants stipulate to the admissibility of

---

[2] *See* Fed. R. Civ. P. 56(c)(4), (e); Fed. R. Evid. 602; *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("conclusory and self-serving affidavits are not sufficient").

Plaintiff's Exhibits K and L, which Leek cites, and in which Leek has previously admitted the legitimacy of the penological interests he now questions. (Doc. 56-1 at 17-23, 25-28.) Leek merely assumes that because KDOC did not act upon his proposal for him to purchase a computer or tablet that the inaction must be because of ill motives.

7. Defendants contest LC-7 – which challenges DSOF-71 – as conclusory, self-serving, and made without personal knowledge. Further, the authority of facility attorneys to grant exceptions to paperwork limits is not based merely on policies. Facility attorneys can, through legal advice, direct KDOC employees to make exceptions to internal policies as necessary for compliance with laws such as the U.S. Constitution's requirement that inmates have access to the courts.

8. Defendants contest LC-8 – which challenges DSOF-72 – as conclusory, self-serving, and made without personal knowledge.

9. Defendants contest LC-9 – which challenges DSOF-73 – as conclusory, self-serving, and made without personal knowledge. To the extent that Leek may be admitting that he has personal knowledge and experience with "pass[ing] stuff off by going to yard [or] mental health groups" while he was in LTRH, Defendants submit that would only support why opportunities to pass contraband should have been and were limited for him in LTRH.

10. Defendants contest LC-10, which challenges DSOF-77. Although Leek submits that he has had difficulty in accessing a tablet with LexisNexis at EDCF,[3] he admits that he has recently found numerous cases using LexisNexis on a tablet at EDCF (Doc. 56 at 38-39) and that he has been able to spend "several hours of research" finding "a LOT of cases" (Doc. 56 at 24). He also cites numerous other cases throughout his Response that have not previously been cited in this case. Whether using the tablet or other resources, Leek is plainly able to discover new cases. Leek cites a statement from a KDOC employee that Leek will "get the same allowed time" as general population (Doc. 56-1 at 7), which cannot reasonably be said to show the opposite. Leek cites conclusory allegations by him and another inmate (Doc. 56-1 at 46, 51) and a generic KDOC announcement of the availability of tablets (Doc 56-1 at 6), which also do not

---

[3] *See, e.g.,* Doc. 56 at 12.

support his allegation. Especially damaging to his remaining claims against LCF employees, Leek admits that "LCF segregation inmates can get the tablet very easily and often." (Doc. 56-1 at 46.) He supports this with a declaration from an inmate who personally used the tablet while in segregation at LCF. (Doc. 56-1 at 51.)

## DEFENDANTS' CHALLENGES TO LEEK'S STATEMENT OF FACTS

11. Defendants agree with Leek's statement of facts ("LSOF") ¶¶ 3, 5-9, 12, and 18.[4]

12. Defendants do not contest LSOF-4, 11, and 27.

13. Defendants agree with LSOF-1 but Leek was already classified as Other Security Risk (OSR) prior to the transfer. He simply remained in OSR status after the transfer. (Doc. 47-3 at ¶¶ 6-7.)

14. Defendants contest LSOF-2. Leek has not challenged DSOF ¶ 18, so it is admitted, and it contradicts LSOF-2. Further, LSOF-2 is conclusory, self-serving, and made without personal knowledge.

15. Regarding LSOF-10, although Defendants agree that plaintiff filed a response to the court order on July 12, 2021, Defendants contest the remainder of the paragraph. Leek's statement that his response was "sub-par" is a statement of opinion, not a statement of fact. Defendants submit that the rest of Leek's account in this paragraph contradicts LC-4 and DSOF-60, which are not in dispute.

16. Defendants contest LSOF-13. Leek has not previously alleged that he was unable to file an appeal, and he has not alleged any additional facts that would make it plausible that he could not file an appeal. He filed a response to the district court order, including relevant legal citations. *Leek v. Scoggin*, No. 20-3051-SAC, 2021 WL 4263502 (D. Kan. Sept. 20, 2021) (Doc. 48). He had filed Tenth Circuit appeals in the past. *Porter v. Graves*, 597 F. App'x 964 (10th Cir. 2014); *Leek v. Miller*, 698 F. App'x 922 (10th Cir. 2017). He even started a Tenth Circuit appeal in this case the week before the Court dismissed the *Scoggin* case *while at LCF under the same conditions he claims kept him from appealing in Scoggin*. (Doc. 13.) *See also* Appellant's Opening Br., 10th Cir. Docket No. 21-3165, Nov. 29, 2021. Besides that, as Defendants argue in section V(B) below, Leek had access to more than an exact cite system in LTRH at LCF.

---

[4] For clarity, Defendants add that the document numbers Leek cites when referencing *Scoggin* correspond to the *Scoggin* case, not to this case.

17. For purposes of the motion, Defendants do not contest LSOF-14 to -15. But Leek has not named Wildermuth as a defendant, so Wildermuth's alleged statements are irrelevant to showing improper actions by any defendant in this case. And Leek has not shown how these statements could lead to a constitutional violation even if he did name Wildermuth as a defendant.

18. Defendants contest LSOF-16. Leek has given no evidence that inmates in general population at LCF have access to LexisNexis for more than two hours a week. Leek cites Ex. O ¶ 28 (typo as ¶ 38), which is a conclusory, self-serving statement, made without first establishing a foundation of personal knowledge. And Leek's complaint did not address the new tablets with LexisNexis.

19. Defendants contest LSOF-17. Although as a matter of internal KDOC policy, General Orders (GO's) generally follow IMPP's,[5] GO's are issued by the facility warden and approved by the secretary of corrections, so they carry the authority of both. *See id.* at § 1(A), (D); K.S.A. 75-5205(a), 75-5256(a). Regardless, Leek has not pointed out any conflicts between any facility GO's and IMPP 12-120.[6]

20. Regarding LSOF-19, Defendants do not contest that Leek is not requesting access to the main law library. Yet segregation inmates' lack of physical access to the main law library establishes context for why LCF uses alternative means to provide legal resources to segregation inmates. *See* LSOF-30.

21. Defendants contest LSOF-20. First, in light of LSOF-19, this paragraph appears immaterial since Leek is not requesting escort outside the unit. Further, Leek is not alleging that he personally goes to the clinic daily, but is speculating or providing hearsay about how often other RH residents go to the clinic. RH residents do not go to the clinic often. (Ex. E at ¶ 14.) Regarding Leek not having heard security staff raise the concerns Defendants established in their motion, Leek is not privy to what security staff say outside his hearing. Defendants have established in uncontested DSOF-5 that "communications inside the prison are *limited* for RH residents" (emphasis added) (*see also* uncontested DSOF ¶¶ 2-4, 7, 13, 15-16, and 18), not that security staff attempt to completely prevent communications when an RH resident is transported.

---

[5] *See* KDOC, IMPP 01-127D, 1 (Dec. 21, 2021), https://www.doc.ks.gov/kdoc-policies/AdultIMPP/Chapter1/01-127d.pdf/view.
[6] *See* KDOC, IMPP 12-120A, 5-7 (April 14, 2022), https://www.doc.ks.gov/kdoc-policies/AdultIMPP/chapter-12/12-120a.pdf/view.

22. Defendants do not contest LSOF-21 to -22. But Leek has not established that anyone had a duty to inform him of this, much less any of the Defendants.

23. LSOF-23 makes a similar assertion to LC-2, so Defendants refer to their ¶ 2 above.

24. Defendants do not contest LSOF-24, but the three cases a week checkout limit itself is not contained in a written policy such as an IMPP or a GO, so it is not surprising that any exceptions to the limit would not be contained in a written policy. And Leek not having heard of any prisoner receiving an exemption does not factually equate to no prisoners having ever received one.

25. Defendants do not contest the first sentence of LSOF-25. The second sentence is an opinion. And Leek's claim is based on lack of access to the courts, not on lack of perfect library checkout records.

26. Defendants contest LSOF-26. Leek admitted in his complaint that the one occurrence Leek points to of him not receiving a requested IMPP was so rare it was "unheard of." (Doc. 9 at ¶ 138.) In fact, this one occurrence Leek points to apparently involved Leek contemplating self-harm through a hunger strike – which eight days later he said caused him to lose 20 pounds and almost put him in the hospital (Doc. 56-1 at 3, 39). A hunger strike would also naturally disrupt order in the prison. Multiple legitimate penological reasons, then, easily supported Stiffin pointing Leek toward Legal Services, who could potentially counsel Leek on that issue.[7]

27. Defendant do not contest LSOF-28, but Leek not knowing of any prisoner receiving an exception does not factually equate to no prisoners having ever received one. Defendants also refer to their ¶ 7 above, addressing a similar claim in LC-7.

28. Defendants contest LSOF-29 as conclusory, self-serving, and made without personal knowledge.[8]

29. Defendants contest the first sentence of LSOF-30. Although KDOC policy states that access to electronic tablets is a privilege (*See* DSOF-74), that wordage predated the tablets with LexisNexis. Leek does not cite anywhere in the record to show KDOC's alleged view of the tablets with LexisNexis, nor does he

---

[7] Kansas Rules of Professional Conduct, Rule 2.1 ("In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social and political factors, that may be relevant to the client's situation."); *Williams v. Miller*, 696 F. App'x 862, 865 (10th Cir. 2017) (citing *Hammons v. Saffle*, 348 F.3d 1250, 1254-55 (10th Cir. 2003)) ("maintaining prison order and safety is a legitimate penological interest").
[8] *See also* ¶ 8 above, addressing a similar claim in LC-8.

have personal knowledge of the inner thoughts of KDOC employees. Defendants do not contest what Leek's personal views of the law are. Leek does not deny that other means can ensure access to the courts other than just the LexisNexis app.

30. Defendants contest LSOF-31. Leek does not cite the record to support his contention other than his own conclusory, self-serving statements made without personal knowledge. And no contractual duty of ICSolutions has been established. Instead, the breach-of-contract claim was dismissed. (Doc. 45.)

31. Defendants contest the last phrase of LSOF-32 ("or any other useful information") but otherwise agree. The Court can easily determine from the IMPP's and GO that Leek cites that they contain useful information, just not regarding the specific issues that Leek wants addressed in policies.

32. Defendants contest LSOF-33. The policy articulated by KDOC is expressly designed to give segregation prisoners the same time to conduct legal research as general population inmates. (Doc. 56-1 at 7; Doc. 47-8 at ¶ 5.) The second sentence is a statement of opinion, not a statement of fact. Leek has clearly had significant access to the tablet as established earlier in this brief in ¶ 10.

33. Regarding LSOF-34, Defendants do not contest the communications Leek here alleges between himself and KDOC employees. But Leek has not established that more than a small fraction of inmates have ongoing lawsuits for which they need to do legal research. Even if the fraction was as high as 10% of the 100 inmates per tablet that Leek alleges, that would be 10 inmates per tablet for 2 hours each per week, or just 20 total hours per tablet each week. This would not reasonably result in difficulty in obtaining the tablet, since 20 total hours easily fits even within normal daytime hours.

34. Defendants do not contest LSOF-35. But all the cited exhibits show is that Leek tried to informally address a separate alleged issue at EDCF that is not relevant to any defendants in this case.

35. LSOF-36 is a legal conclusion, not a statement of fact, which Defendants address in § II below.

## ARGUMENTS AND AUTHORITIES

Defendants incorporate herein, as if set forth in full, the arguments and authorities in Defendants' Memorandum in Support of Motion to Dismiss, or, in the Alternative, for Summary Judgment. (Doc. 47.) Defendants' motion should be granted for the reasons previously stated.

I. **Leek agrees with Defendants on some preliminary matters.**

The parties agree to the following: Deputy Warden James Skidmore should be dismissed from the case. (Doc. 56 at 17.) The Eleventh Amendment bars claims against Warden Meyer in her official capacity for monetary damages and for declaratory relief. (Doc. 56 at 18.) Leek can only seek injunctive relief against Meyer in her official capacity. (*Id.*) Leek has individual capacity claims against Meyer as well. (*Id.*)

II. **Leek should not be given leave to amend his complaint due to undue delay, failure to file a proposed amended complaint, and because amending would be futile.**

"A party may amend its pleading *once* as a matter of course. . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a) (emphasis added). When a pro se inmate seeks leave to file an amended complaint after screening has already occurred, after already amending the complaint once, and after the defendants have filed a dispositive motion, the requested amendment can be "untimely under the circumstances," and "[u]ndue delay is sufficient reason to deny leave to amend." *Neusteter v. Cossobone*, 62 F. App'x 844, at 845 n.1 (discussing screening), 846 (finding undue delay) (10th Cir. 2003). Here, Leek seeks leave to file an amended complaint after screening has already occurred, after already amending the complaint twice, and after the defendants have filed a dispositive motion. Therefore, Leek's undue delay is sufficient reason to deny leave to amend.

What is more, Leek has not attached his proposed third amended complaint, and so he has failed to comply with D. Kan. Rule 15.1(a)(2) as required by the Court to amend a complaint when amendment is not allowed as a matter of right. In the rule, pro se filers are exempted from subsection (a)(3), but not (a)(2).

Specifically, Leek wishes to amend his complaint to flesh out his claim (or to add new claims arising out of the same underlying facts) that he was not permitted while at LCF to conduct research with another prisoner to challenge the conditions of confinement in the restrictive-housing (RH) unit. (Doc. 56 at 5, 38-39.) This Court dismissed that claim (Docs. 11, 19) and the Tenth Circuit affirmed the dismissal (Doc. 23 at 8-9, 16). Accordingly, on remand, that claim is not properly before the Court. To the extent that Leek wishes to add new claims, Leek's request should be denied due to undue delay.

Leek further seeks leave to amend his complaint to allege that *Scoggin* would have resulted in a more favorable outcome without the alleged hindrance by Defendants. (Doc. 56 at 33.) Such an amendment would be

futile. Leek has not provided in his Response any grounds upon which *Scoggin* could have succeeded.[9]

Leek also seeks leave to amend his complaint to allege that the Defendants acted with malice, evil motive, or reckless indifference to Leek's civil rights. (Doc. 56 at 34.) Leek has not proposed any alleged facts that could establish such motivation, but appears to request leave to amend to simply add conclusory, self-serving statements to his complaint. Such an amendment would be futile. *See Whitney*, 113 F.3d at 1175.

### III. Leek fails to allege or establish an actual injury.

#### A. Leek does not dispute that Defendants' actions must have had a material impact in regard to the *Scoggin* case for an actual injury to have occurred.

Leek characterizes Defendants' argument as "dron[ing] on for nine consecutive pages" (Doc. 56 at 18), but Leek does not even dispute the argument that a material impact must have occurred with regard to the *Scoggin* case for Leek to have suffered an actual injury.

#### B. The cases Leek cites would not have affected the outcome in the *Scoggin* case.

Defendants agree with Leek that the PLRA's physical injury requirement would not have precluded punitive damages in the *Scoggin* case. (*See* Doc. 56 at 19-20 (citing *Searles v. Van Bebber,* 251 F.3d 869, 881 (10th Cir. 2001).) That is why the Scoggin decision addressed compensatory damages, *Leek v. Scoggin*, No. 20-3051-SAC, 2021 WL 4263502 (D. Kan. Sept. 20, 2021) (Doc. 51 at 11), separately from punitive damages. *Id.* (Doc 51 at 12). The Court did so because it *not* assume that the lack of compensatory damages ruled out punitive damages. In addressing whether a violation occurred, the *Scoggin* decision mentioned as an *alternative* argument that compensatory damages would be precluded. *Id.* at 7. Leek has not addressed at all the *Scoggin* decision's *primary* factual findings or how his lawsuit could possibly have overcome them. *See id.* at 4-7. (*See also* Doc. 47 at 30-33.) Leek fails to show how any case, including *Northington v. Marin*, 102 F.3d 1564, 1567-68 (10th Cir. 1996), could have helped in that regard. Leek has also not disputed that he had access to *Benefield v. McDowall*, 241 F.3d 1267 (10th Cir. 2001), or that it showed the components of his claim that he failed to meet. (*See* Doc. 47 at 31-32.) And Defendants' ¶ 16 above explains that Leek has not alleged or established a lack of ability to appeal in *Scoggin*. The *Williams v. Leeke* case he cites from the Fourth Circuit – without any analysis of how it applies to

---

[9] *See Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (finding an amendment would be futile when the plaintiff "failed to allege all of the elements necessary to state a claim").

this case – was abrogated by *Lewis v. Casey*.[10]

IV. **Leek has not overcome Defendants' qualified immunity at the dismissal stage.**

   A. **Leek has not shown that the alleged exact cite system was clearly established as a constitutional violation.**

Although Leek suggests that "[t]he court of appeals is not in the habit of remanding issues that are not clearly established," the reality is that the court of appeals is not in the habit of addressing issues which have not been addressed at the district court level.[11] The Tenth Circuit, recognizing the district courts had not addressed the potential issue of an exact cite system, remanded cases for the district court to consider in the first instance. The Tenth Circuit has never directly addressed the issue. So laypersons like Defendants should not be expected to understand the technical intricacies of legal research or of these ambiguous legal holdings.

Leek's repetitive factual assertions on pages 22-23 of his Response have been addressed in Defendants' sections above addressing Leek's factual assertions under D. Kan. Rule 56.1. Defendants addressed the *Baca* and *Clayton* cases, which predate *Lewis v. Casey*, on pages 33-34 of their memorandum in support of the motion. Regarding the quote from *Daye v. Ballard*, the court prefaced it by saying it was quoting the plaintiff, not giving its own opinion.[12] The cases Leek cites at the bottom of page 24 of his Response all predate *Lewis v. Casey* and rely on the overruled holding from *Bounds*.[13]

V. **Leek has not overcome Defendants' arguments supporting summary judgment.**

   A. **The record bolsters the qualified immunity defense by showing the Defendants were rationally motivated by legitimate penological interests.**

The Defendants have submitted credible evidence of their legitimate penological goals, and Leek has not

---

[10] *Williams v. Leeke*, 584 F.2d 1336, 1339 (4th Cir. 1978) (citing *Bounds v. Smith*, 430 U.S. 817, 828 (1977)), *abrogated by Lewis v. Casey,* 518 U.S. 343, 351, 354 (1996) (overruling *Bounds* and saying inmates do not have an "abstract, freestanding right to a law library or legal assistance").

[11] *Zemaitiene v. Salt Lake Cnty*, No. 21-4091, 2022 WL 1013811, at *5 (10th Cir. Apr. 5, 2022) ("When the district court does not address an issue, we generally remand for it to consider the argument in the first instance.").

[12] *Daye v. Ballard*, No. 2:11–cv–00106, 2012 WL 967084, at *9 to *10 (S.D.W. Va. Mar. 2, 2012). Further, even an actual judicial opinion from the Southern District of West Virginia, which is in the Fourth Circuit, would not establish that *Toussaint v. McCarthy* – which was abrogated by the U.S. Supreme Court – is somehow still good law in the Ninth Circuit.

[13] *Knop v. Johnson*, 977 F.2d 996, 1003 & n.5 (6th Cir. 1992) (citing *Bounds*); *DeMallory v. Cullen*, 855 F.2d 442, 446 (7th Cir. 1988) (citing *Bounds*); *Nolley v. Cnty. of Erie*, 776 F. Supp. 715, 741 (W.D.N.Y. 1991) (citing *Bounds*); *Martino v. Carey*, 563 F. Supp. 984, 1003 (D. Or. 1983) (citing *Bounds*).

successfully controverted the material aspects of them. *See, e.g.,* DSOF-2, 13, 35, 42, 45, 47-48, 52, 53 ("for budgetary reasons"), 68, 70, 72-73, 76. Leek has failed to counter with admissible factual evidence Defendants' facts that legitimate penological interests rationally motivated Defendants at the time they acted.

Regarding Leek's proposed alternatives, Leek implies that the current tablet program is a subsequent remedial measure, and suggests that it proves that Defendants had a viable alternative before. But subsequent remedial measures cannot be used to establish culpability, Fed. R. Evid. 407, so the current tablet program cannot be considered in determining whether Defendants should have known if the prior system was a constitutional violation or whether Defendants committed a constitutional violation. Therefore, it does not overcome qualified immunity. Further, the breach-of-contract claim has been dismissed against ICSolutions (Doc. 45), so any contractual duties ICSolutions may have had are irrelevant to Leek's current claims.

Regarding Leek's suggestion of satellite law libraries, LCF had three restrictive housing units during the relevant timeframe. Exhibit U at ¶ 7. This means Leek is ultimately suggesting that LCF should have had four law libraries instead of one, which would require four collections of legal books, which would quadruple the cost. Further, the majority of legal resources at LCF were provided through LexisNexis. *Id.* at ¶ 6. So the satellite libraries would require additional computer stations to provide access to LexisNexis, which would have a high cost as established in uncontested DSOF-38.

Leek's suggestion that LCF could have escorted RH residents to the law library while the facility was on lockdown is irrelevant because Leek also says he's not complaining that such a hypothetical alternative was not used. Further, Leek has not established that he has personally been in protective custody, so his statements regarding protective custody practices are conclusory, self-serving, and made without personal knowledge. Contrary to Leek's bare assertions, nothing in the record suggests that locking down the entire facility would be easy. Leek also briefly suggests that lack of staffing is irrelevant to whether an alternative is viable under *Turner v. Safley*, but the *Turner* case itself held otherwise.[14]

Leek continues to cite cases outside the Tenth Circuit that were abrogated by *Lewis v. Casey*. He does so,

---

[14] *Turner v. Safley*, 482 U.S. 78, 93 (1987) (saying a "burden on staff resources" can "support[] the judgment of prison officials that [an] alternative is not an adequate alternative."); *see also* DSOF-42 (uncontested by Leek).

for example, to claim that the burden of proof lies with Defendants.[15] But the burden of proof rests with the plaintiff to establish subject-matter jurisdiction, to overcome qualified immunity, and to overcome summary judgment when a defendant points out lack of proof on an essential element of the plaintiff's claim.[16] Leek cites *Peterkin*, but the right that *Peterkin* says is "undiminished" is the overruled right from *Bounds*, which – in light of *Lewis v. Casey* – means it is not a freestanding right at all.[17]

Defendants have addressed Leek's assertions regarding escorting prisoners in ¶¶ 20-21 above. Defendants have addressed Leek's assertions regarding exceptions in ¶¶ 3, 7, 24, and 27 above. Although Leek's partner-research claim has been dismissed (Doc. 23 at 8-9), DSOF-72 and 73 are not in genuine dispute and should be deemed admitted as discussed in ¶¶ 8-9 above. Further, ¶ 28 above addresses LSOF-29, which also concerns partner research. Defendants have addressed Leek's assertions regarding communications by RH residents in ¶ 21 above. Defendants did not fail to address the third prong of *Turner* in their brief, but simply did not believe it needed explication beyond its plain wording.

**B. The record supports that Leek had access to more than just an exact cite system.**

As Defendants argue above, the material parts of the following paragraphs are not in genuine dispute: DSOF-40, 44, 49-58, and 60-69, LC-4, and LSOF-25. The facts in these paragraphs show that Leek had access to more than just an exact cite system and therefore had means to exercise his right of access to the courts. (*See* Doc. 47 at 38-40.) Whether these resources were available is not dependent on whether policies, which are by nature general overviews, specifically address them. Although Leek insists that some of these paragraphs are irrelevant to his legal research, all of these paragraphs are relevant to legal claims by inmates in general and show that the law library acts in good faith to assist inmates with those claims without crossing the line into legal advice. If an inmate receives legal resources from an outside source, such as through counsel or as described in DSOF-69, that

---

[15] *Gluth v. Kangas*, 951 F.2d 1504, 1507 (9th Cir. 1991) (citing *Bounds*); *Cruz v. Hauck*, 627 F.2d 710, 719 (5th Cir. 1980) (citing *Bounds*).
[16] *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (subject-matter jurisdiction); *Janny v. Gamez*, 8 F.4th 883, 913 (10th Cir. 2021) (qualified immunity); *Hall v. Bellmon*, 935 F.2d 1106, 1111 n.5 (10th Cir. 1991) (summary judgment).
[17] *Peterkin v. Jeffes*, 855 F.2d 1021, 1038 (3d Cir. 1988) (citing *Valentine v. Beyer*, 850 F.2d 951, 955 (3d Cir. 1988)); *Abdul-Akbar v. Watson*, 4 F.3d 195, 203 (3d Cir. 1993) (citing *Valentine*, 850 F.2d at 955) ("In Valentine we held that *the right articulated in Bounds* is undiminished for prisoners held in close custody.") (emphasis added).

can show that the inmate was not actually prejudiced in pursuing litigation by the failure of the prison to provide those resources because provision of legal resources is not a freestanding right. *See Lewis v. Clark*, 577 F. App'x 786, 796-97 (10th Cir. 2014). While it remains unclear how Leek determined the numerous exact case citations he requested from the library (LC-4; LSOF-25), the important point is that Leek had ways to determine exact citations, regardless of the source.

It remains uncontested that Defendant Stiffin did not have a chance to address Leek's false perception of an exact cite system because Leek never communicated that perception to Stiffin. And it also remains uncontested that Leek did not request an exception to the checkout limit from the unit team. To the extent the court considers Leek's factual declarations in the middle of his argument section, Leek has no personal knowledge of whether the resources he lists on page 30 of his Response were available because he never raised his false perception of an exact cite system to Stiffin for him to address it and because Leek never asked Stiffin for those resources. Therefore, his contrary declarations are conclusory and self-serving. Although the *McClary* case that Leek cites is a district court case outside the Tenth Circuit, it actually supports that Leek should not be held accountable for the response of the unit team because he was not personally involved in that response. Defendants do not ask this Court to ignore the remand order, but simply point out that it is not binding at this point in the litigation and ask the court to consider Defendants' arguments along with it. Defendants addressed in their memorandum in support of the motion that the *Griffin* case is bad law because it relies on an abrogated holding from *Toussaint*. (Doc. 47 at 35.)

## VI. Leek does not overcome Defendants' arguments regarding remedies.

### A. Leek does not establish that he could have received a payout from the *Scoggin* case.

Leek agrees that to receive compensatory damages, he must show that his underlying claim in *Scoggin* would have resulted in a payout if not for the alleged interference of Defendants. (Doc. 56 at 32.) Although Leek is correct that the *Scoggin* dismissal (*Scoggin*, Doc. 51) came after the filing of the Second Amended Complaint in this case (Doc. 9), Leek has now had a chance to explain in his Response any grounds upon which his *Scoggin* claim could have succeeded. As explained above, he has not met his burden of proof. Therefore, allowing him to amend would be futile. *See Whitney*, 113 F.3d at 1175. And Defendants' ¶ 16 above explains that Leek has not alleged or established a lack of ability to appeal in *Scoggin*.

13

**B. Leek has not shown that Defendants' conduct was motivated by evil intent or undertaken with reckless or callous indifference to his constitutional rights.**

Allowing Leek to amend his complaint to address motivations relevant to punitive damages would be futile because Leek has not provided any facts that he would allege or prove to establish such motivations. *See Whitney*, 113 F.3d at 1175. Simply adding conclusory, self-serving statements would not suffice.

**C. Leek has not overcome Defendants' arguments that Leek's requested injunctive relief would be moot.**

Leek does not contest that he only seeks injunctive relief against Defendants Meyer and Stiffin. With regard to these defendants, Leek argues that two exceptions to mootness apply: voluntary cessation and conduct capable of repetition yet evading review. (Doc. 56 at 16-17, 34-37.) Regarding voluntary cessation, Defendants submit Exhibit U, which should clear up any lingering doubts about the long-term nature of the tablet program provided by LCF.[18]

Regarding conduct capable of repetition yet evading review, it is a narrow exception only to be used in exceptional situations. *Jordan v. Sosa*, 654 F.3d 1012, 1034 (10th Cir. 2011). Under Tenth Circuit precedent, the fact that Leek has previously been at LCF does not establish that he is likely to return to LCF.[19] This is especially true since one of those times was simply to receive a non-recurring medical procedure. (Doc. 56-1 at 1.) Leek only cites specific holdings from cases outside the Tenth Circuit, and the appellate opinions cited rely on an assumption that conflicts with Tenth Circuit precedent.[20]

---

[18] *See Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 881 (10th Cir. 2019) ("government self-correction provides a secure foundation for mootness so long as it seems genuine. . . . And absent evidence the voluntary cessation is a sham, the mere possibility a successor official may shift course does not necessarily keep a case live.").

[19] *See Jordan*, 654 F.3d at 1032 (citing *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975)) (saying regarding prison transfers specifically that the court is "disinclined to opine on important constitutional issues based upon the speculative suggestion that a plaintiff *might* be returned to a setting where he would be subject to allegedly unconstitutional practices") (emphasis in original).

[20] *Compare Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1216 (10th Cir. 2015) ("pursuant to our precedent, we decline to assume he will repeat the misconduct that previously got him sent to administrative segregation") *with Clark v. Brewer*, 776 F.2d 226, 229 (8th Cir. 1985) (concluding that an inmate would likely return to "close management" because of his past disciplinary history); *Demery v. Arpaio*, 378 F.3d 1020, 1027 (9th Cir. 2004) (Bea, J., dissenting) (noting that the majority opinion held that the plaintiffs' past incarceration history constituted "compelling evidence that the Plaintiffs likely will be reincarcerated").

VII. **Leek has not shown contractual standing to raise the state law breach-of-contract claim against Defendant Kroeker.**

The Tenth Circuit did not rule on the merits of the state law breach-of-contract claim as Leek suggests, but only reversed and remanded for this Court to consider supplemental jurisdiction and a third-party-beneficiary theory in the first instance. (Doc. 23 at 16.) Further, the only paragraphs that address Kroeker in Leek's complaint allege that Kroeker monitored KDOC's contract with ICSolutions and failed to prevent a breach of contract. (Doc. 9 at ¶¶ 5, 96-97, 165.) Although Leek mentioned his constitutional rights in Doc. 9 at ¶ 165, it specifically states that Kroeker "allowed the breach of contract to go unchecked and violate plaintiff's right of access to the court." So any claim alleged against Kroeker for violation of Leek's constitutional rights still depends on a breach of contract having occurred. The Court has already ruled that Leek lacks contractual standing to allege that a breach of contract occurred. (Doc. 45 at 2-3.) To whatever extent Leek alleges additional § 1983 violations by Kroeker in his Response, Leek has not met the notice pleading standard for any such allegations.[21] Therefore, Leek does not state a claim against Kroeker.

## CONCLUSION

For the reasons above and in Defendants' Memorandum in Support, the Defendants respectfully request that the Court grant their Motion to Dismiss, or, in the Alternative, for Summary Judgment in its entirety.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

---

[21] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (saying "it is particularly important" when suing "a number of government actors . . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*").

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 13th day of December, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

Alexander Chosid
TKC Holdings, Inc.
1260 Andes Boulevard
St. Louis, MO 63132
314-214-2806
alex.chosid@tkcholdings.com
*Attorney for ICSolutions*

I also certify that a copy of the above will be served by means of first-class mail on the 14th day of December, 2022, postage prepaid, addressed to:

Kenneth D. Leek, #63523
EL DORADO Correctional Facility-Central
PO Box 311
El Dorado, KS 67042
*Plaintiff, pro se*

              */s/ Matthew L. Shoger*
              Matthew L. Shoger
              Assistant Attorney General