IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KENNETH D. LEEK,

    Plaintiff,

    v.

KATHRYN A. ANDROSKI, et al.,

    Defendants.

Case No. 5:21-cv-3100-HLT

**MEMORANDUM AND ORDER**

Plaintiff Kenneth D. Leek is a prisoner who proceeds pro se.[1] He brings an access-to-courts claim against Defendants Misti Kroeker, James Skidmore, John P. Stiffin, and Shannon L. Meyer stemming from impediments he faced in litigating *Leek v. Scoggin*, 2021 WL 4263502 (D. Kan. 2021) while at Lansing Correctional Facility ("LCF"). Doc. 9 at 12, 16; Doc. 23 at 11. Plaintiff also brings a state-law breach-of-contract claim against Kroeker. Doc. 9 at 20; Doc. 23 at 15-16.

Defendants move to dismiss or, in the alternative, for summary judgment. Doc. 46. The Court treats the motion as one for dismissal and does not consider information outside the pleadings except for those limited documents that are allowed for consideration at the motion-to-dismiss phase. *Truman v. Orem City*, 1 F.4th 1227, 1238 n.7 (10th Cir. 2021) ("Courts can consider not only the complaint but also attached exhibits and documents incorporated into the complaint by reference").[2] The Court grants the motion to dismiss the federal claim for failure to state a claim and declines to exercise jurisdiction over the breach-of-contract claim.

---

[1]   The Court liberally construes Plaintiff's pro se filings and holds them to a less stringent standard than those drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id*.

[2]   The Court reserves its consideration of the documents outside these parameters solely for its alternative holding.

**I.   BACKGROUND**[3]

Plaintiff was transferred to LCF on April 28, 2021. Doc. 9 at 15. Plaintiff advised staff that he had multiple lawsuits pending and wanted to know the law library process for the living unit. *Id.* Staff advised Plaintiff that he could fill out a form requesting specific cases by case cite but that no law books would be delivered to Plaintiff's long-term restrictive housing unit. *Id.* Plaintiff submitted multiple requests for cases. *Id.* He received one form back with some cases stapled to it, and the librarian wrote on the form "only three cases at a time. Please return in one week." *Id.* Meanwhile, the presiding judge issued a show-cause order in *Scoggin*, one of Plaintiff's pending lawsuits. *Id.* at 16. Plaintiff believes that he was forced to draft a suboptimal response due to the deficiencies in the law library. *Id.* Specifically, Plaintiff drafted his response with only the few cases, notes, and books he had in his personal property. *Id.* Plaintiff was not pleased with his responsive pleading. *Id.* The presiding judge dismissed the case for failure to state a claim. Doc. 23 at 5. Plaintiff did not appeal the dismissal order.

Plaintiff further alleges that Kroeker is liable for a breach-of-contract claim because she is a "contract monitor" of a contract between the Kansas Department of Corrections and IC Solutions, Inc. to provide prisoners with tablets to conduct free legal research. Doc. 9 at 20.

Plaintiff filed this case in April 2021. Doc. 1. The operative complaint is Plaintiff's second amended complaint. Doc. 9. The former presiding judge screened the second amended complaint and dismissed it for failure to state a claim. Doc. 11. The Tenth Circuit affirmed in part but remanded for further consideration of Plaintiff's access-to-courts claim regarding his ability to conduct legal research in response to the show-cause order in *Scoggin*. Doc. 23 at 9. The Tenth Circuit also reinstated Plaintiff's supplemental breach of contract claim against IC Solutions and

---

[3]   The Court accepts the following well-pleaded factual allegations as true for purposes of the motion to dismiss.

Kroeker and instructed that the district court reconsider at the proper procedural juncture whether to decline supplemental jurisdiction. *Id.* at 15. On remand, all remaining Defendants move to dismiss. Doc. 46.[4]

## II.   STANDARD

Defendants move to dismiss the case under Fed. R. Civ. P. 12(b)(1), 12(b)(6), or 56. The Court applies the Rule 12(b)(6) analysis and thus only sets forth that standard.[5]

A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it contains sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). A court undertaking this analysis accepts as true all well-pleaded allegations in the complaint but need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 678-79.

---

[4]   IC Solutions' motion to dismiss was granted before the undersigned assumed responsibility of the case. Doc. 45.

[5]   The Court applies the oft-cited standard for summary judgment to its alternative holding. Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III. ANALYSIS

#### A. Standing for Access-to-Courts Claim

Defendants ask the Court to dismiss Plaintiff's access-to-courts claim for lack of standing under Rule 12(b)(1). Standing presents a threshold issue that plaintiffs must establish before courts have jurisdiction to hear a case. But this case does not come before the Court with a clean slate. The Tenth Circuit remanded this case, determining Plaintiff had adequately pleaded an actual injury. In so doing, the Tenth Circuit used the terminology "standing" but also indicated it was reviewing the district court's dismissal for failure to state a claim under § 1915. The Supreme Court and the Tenth Circuit have both addressed "actual injury" in access-to-courts claims as a standing matter or akin to standing. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Simkins v. Bruce*, 406 F.3d 1239, 1244 n.5 (10th Cir. 2005). But the line between injury establishing standing and injury for purposes of a merits analysis can be fuzzy, particularly in access-to-courts cases. The Court thus presumes the Tenth Circuit found standing present, either explicitly or implicitly.

Defendants suggest this Court need not treat the Tenth Circuit's remand order as the law of the case because they were not involved at the time it was decided. The appellate court was reviewing a screening decision of the district court, so Defendants had not yet been served. The appellate court did not have the benefit of Defendants' arguments supporting dismissal.

Regardless of whether this Court should treat the remand order as the law of the case, the Court strives to give the fullest deference to the Tenth Circuit's opinion. At a minimum, inherent in the Tenth Circuit's ruling was a decision that Plaintiff has standing to pursue his access-to-courts claim. And the burden to establish standing is not great. *See Simkins*, 406 F.3d at 1244 n.5; *MacPhee v. MiMedx Grp., Inc.*, 2023 WL 4418636, at *10 (11th Cir. 2023) (published) (noting that Article III's "fairly traceable" element requires something less than proximate cause and that

4

"a plaintiff can meet the requirement for constitutional standing but nonetheless fail to state a claim"). Defendants seek dismissal not only on 12(b)(1) grounds, but also on 12(b)(6) grounds. Doc. 46. The Court thus finds it appropriate to examine Defendants' traceability arguments under the rubric of Rule 12(b)(6). The issue of a required causation element has been briefed by both sides, whether it is considered a standing argument or one of failure to meet the elements of a claim. Plaintiff has had a full opportunity to identify facts that show the alleged denial of access caused his injury. And Defendants' arguments apply under either standard. The Court proceeds to a Rule 12(b)(6) analysis.

   **B.** **Merits of Access-to-Courts Claim**

Plaintiff alleges what is termed a "backward-looking" denial of access to the courts. This type of suit involves a litigation opportunity that has been lost. *See Christopher v. Harbury*, 536 U.S. 403, 412-14 (2002). To establish a claim for backward-looking denial of access to the courts, a plaintiff must show (1) the loss of a non-frivolous underlying claim, (2) the defendant's actions that proximately caused frustration of litigation,[6] and (3) a remedy that is not otherwise available in another lawsuit. *See id.* at 412-15. The second element, which implicitly requires causation, is the one the Court examines here.

Defendants argue that Plaintiff fails to connect his injury with the impairment of his right of access to the courts. Specifically, Defendants point out that Plaintiff's response to the show-cause order in *Scoggin* cited the correct standard. Doc. 47 at 31. Defendants thus argue that Plaintiff's complaint was dismissed due to failure to plead sufficient <u>facts</u> and <u>not</u> because of a

---

[6] *Harbury* doesn't explicitly identify the causation element. But it is axiomatic that a § 1983 claim requires a causal connection between the defendant's acts and the alleged constitutional deprivation.

lack of access to legal resources. *Id.* at 31-33. There is a disconnect between the outcome and any restrictions placed on Plaintiff's ability to engage in legal research.

Plaintiff argues in response that if he had not been limited to an exact-citation system, he could have found cases like *Northington v. Marin*, 102 F.3d 1564, 1567-68 (10th Cir. 1996) and *Searles v. VanBebber*, 251 F.3d 869, 881 (10th Cir. 2001), argued additional facts, or filed a motion to show the presiding judge that his application of law was incorrect. Doc. 56 at 20. Plaintiff also argues that the research restrictions kept him from filing an appeal in *Scoggin* because he didn't want to waste $500 on the filing fee when the restrictions would force him to file a subpar brief. *Id.* at 21.

A plaintiff seeking redress for denial of access to courts must show that such denial prejudiced his ability to pursue litigation. *Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006). The "alleged hindrance must bear a causal connection to the alleged injury." *Clark v. Oakley*, 560 F. App'x 804, 807 (10th Cir. 2014). The problem here is Plaintiff does not connect the denial of legal resources with the reason the district court dismissed his claims, which was an absence of supporting factual allegations. He could not have modified the facts alleged in *Scoggins*. They were (and are) frozen in time based on the First Amended Complaint filed in that case. No amount of legal research could change the underlying facts. The Court nevertheless briefly addresses Plaintiff's arguments.

Plaintiff argues that he would have cited better caselaw without the legal research restrictions. But Plaintiff's response to the *Scoggin* show-cause order demonstrates some sound legal analysis. Plaintiff's response correctly cites to *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001), which laid out the elements for an Eighth Amendment violation (the primary claim in *Scoggin*). The presiding judge dismissed *Scoggin* because "Plaintiff has not alleged

6

sufficient facts in support of his claim in this case." *Scoggin*, 2021 WL 4263502 at * 2. Plaintiff somewhat ignores this ruling and, presumably taking his cue from the Tenth Circuit's remand order, argues that he could have better responded to the show-cause order if he had known about cases like *Northington* and *Searles*. But an examination of those cases belies that assertion.

First, the Tenth Circuit merely cited *Searles* for the proposition that punitive damages can be available to a plaintiff absent physical injury. *See* 251 F.3d at 881 (explaining that a jury verdict finding a constitutional violation without any physical injury entitles the plaintiff to an award of nominal damages and observing that the physical-injury requirement does not preclude punitive damages). The lack of a physical injury under 42 U.S.C. § 1997e(e) was only an alternative holding in *Scoggin*. 2021 WL 4263502, at *6. The *Scoggin* dismissal order rested on failure to state a claim. *Id.* at *1-5.

*Northington* is admittedly more applicable to Plaintiff's case, but the analysis in it is updated and applied in a more recent context in *Benefield*. *Benefield* relies on *Northington* to show that it is a clearly established violation of the Eighth Amendment to (1) be labeled a snitch by a prison staff member and (2) have that label communicated to other inmates when (3) the staff member knows the obvious danger of labeling someone a snitch in prison. *Benefield*, 241 F.3d at 1271. In terms of legal analysis, Plaintiff had what he needed in *Benefield*. Plaintiff does not identify what cases he would have cited in *Scoggin* other than *Searles* and *Northington* to get a different result.[7] Thus, Plaintiff's harm with regard to his Eighth Amendment claim in *Scoggin* comes from one of two things: (1) either he failed to plead sufficient facts (as Defendants now argue and the then-presiding judge held), or (2) the presiding judge misapplied the law to the facts

---

[7] Plaintiff now cites *Williams v. Leeke*, 584 F.2d 1336 (4th Cir. 1978), but that case must be read considering *Lewis*, which held that inmates do not have a freestanding right to a law library. 518 U.S. at 351.

7

(in which case the remedy is an appeal and not an access-to-courts suit). Thus, Plaintiff's limited legal citations were not to blame for the adverse disposition in *Scoggin,* and Plaintiff's first argument is unavailing.

Then there is Plaintiff's argument that he would have pleaded additional facts had the alleged legal research restrictions not been in place. But Plaintiff has alleged no harm connecting his inability to state additional factual allegations to his law library limitations, as the Court noted *supra*. Stated differently, Plaintiff has not connected his harm to the alleged violation. He had the correct legal standard from which to determine whether his factual circumstances sufficiently alleged a cause of action. Even in response to the instant motion, he does not identify any additional facts that he could have added to save his Eighth Amendment claim. Nor does he identify any motion that he would have filed to try to prevent dismissal. Lastly, if the former presiding judge misapplied the law, Plaintiff's harm is also not traceable to his law library limitations. Plaintiff could have appealed the dismissal order, but he did not.

Finally, Plaintiff argues now, for the first time, that he failed to appeal *Scoggin* because of the library research restrictions. But Plaintiff did not raise this in his second amended complaint, and the Court declines to address it now. The Court notes, however, that this allegation seems implausible given Plaintiff's ability to litigate the prior appeal in this case. Plaintiff has identified a problem he encountered at LCF: restrictions on his mode of research. But he has failed to connect it to his alleged injury: the dismissal of his claims in *Scoggin* or his failure to appeal. He does not identify what arguments he would have made on appeal had the alleged restrictions not been in

8

place. Plaintiff has failed to meet his burden to adequately plead causation based on his Eighth Amendment claim in *Scoggin*.[8]

Alternatively, even if Plaintiff had adequately pleaded his claim, Defendants would be entitled to summary judgment because no reasonable jury could conclude that Plaintiff's right-of-access was violated.[9] Any restrictions imposed by Defendants were reasonably related to legitimate penological interests. *Wardell v. Duncan*, 470 F.3d 954, 960 (10th Cir. 2006). The undisputed facts show that the *Turner* factors weigh in favor of Defendants. *Turner v. Safley*, 482 U.S. 78 (1987). The factors are (1) a rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards, other inmates, and prison resources; and (4) ready alternatives for furthering the governmental interest. *Wardell*, 470 F.3d at 960.

First, there is a legitimate government interest in prison safety and budgetary management that is rationally related to limiting the number of books and papers especially dangerous inmates can access. Defendants show that restricted housing residents are generally restricted to checking out three items at a time without charge due to budgetary reasons. DSOF 53. Defendants further show that prisoners in restricted housing use hardcover books to hide messages and contraband and use the books as weapons and armor. DSOF 45. Defendants also show paper limits help prevent contraband, fire hazards, arson, clutter, and visibility obstruction. DSOF 70. Plaintiff concedes that the use of paper to consume synthetic marijuana is a substantial problem in prison. *See* Doc. 56 at 6; Doc. 56-1 at 22. But Plaintiff just argues in conclusory manner that nevertheless

---

[8] The Court is cognizant of footnote eight in the Tenth Circuit's remand order. But Plaintiff does not explain in his extensive briefing how any other claims in *Scoggin* could have survived had his library access been improved.

[9] This alternative analysis also supports a determination that Defendants are entitled to qualified immunity.

"defendants use property compliance as a means to stifle prisoner litigation." Doc. 56 at 6. This ipse dixit is insufficient to alter the Court's analysis. This factor still weighs in favor of granting summary judgment to Defendants.

Second, there were alternatives to Plaintiff's then-desire for a satellite library to ensure effective court access to long-term restricted housing inmates. The parties agree that Plaintiff had access to free legal services for declaratory and injunctive relief. *See* Doc. 47-7, Doc. 56 at 28. And regarding suits for damages, Plaintiff could have requested an exception to the three-case limit. Plaintiff argues that there was no exception to the three-case limit, but his evidence at best shows that he and another inmate were unaware that they could request an exception. *See* Doc. 56-1 at 44 ("[No one ever advised me I could ask for an exception to the 3 case . . . limit."); Doc. 56-1 at 50 ("I have never been told the librarian can make an exception as to the amount of cases I can receive at one time."). Thus, it is undisputed that Plaintiff could have sought an exception to the three-case research limitation. DSOF 54. Nor does Plaintiff contravene that he could request photocopies of the table of contents of law books and the United States Code, request a list of law books available, and that library staff could provide cases with identifying information other than the citation (such as a case name). DSOF 49-52. Plaintiff points out that he complained when he needed to write and file an appeal brief that, "[w]e have no research computer or legal resources down here—how am I supposed to do that?" Doc. 56-1 at 15. Interestingly, prison staff clearly responded to this complaint by informing Plaintiff "[y]ou can request certain legal materials from the law library on loan." *Id.* Plaintiff points again to declarations by himself and another prisoner that they did not receive a list of resources or resources they desired, but this doesn't controvert that the above opportunities existed. *See id.* at 43, 49.

The third factor also favors summary judgment because Plaintiff concedes there is as legitimate safety concern in banning hardback books from long-term restricted housing, Doc. 56 at 26, and fails to contravene the budgetary constraints that prevent unlimited paper copies to long-term restricted housing inmates. Finally, it is undisputed that inmates could not access Lexis Nexis on tablets until recently. DSOF 75. And Plaintiff does not point to any feasible potential alternative. Even assuming the Lexis application was a ready alternative for long-term restricted housing legal research at the time Plaintiff was at LCF, the alternative avenues of court access considered in the second factor still make summary judgment appropriate. *See Lewis*, 518 U.S. at 351 ("[M]eaningful access to the courts is the touchstone."); *see also Wardell*, 470 F.3d at 961 ("[A]lternatives need not be ideal . . . they need only be available." (internal quotation marks omitted)).

C.   **State Law Breach of Contract Claim**

Defendants move to dismiss Plaintiff's supplemental breach-of-contract claim against Kroeker under Rule 12(b)(6). Doc. 47 at 44. Defendants argue that dismissal is appropriate for the same reason it was appropriate for IC Solutions. *Id.* Specifically, Plaintiff is not an intended third-party beneficiary, and thus he cannot sue for breach of contract. *Id.* Plaintiff somewhat confusingly argues that he has not sued Kroeker for breach of contract but rather for his access-to-courts claim. The Court, however, declines to exercise jurisdiction over this claim and dismisses it without prejudice[10]

---

[10]   The Court need not address Defendants' alternative arguments for dismissal. But the Court notes that the parties agree that, at the very least, Skidmore should be dismissed from the case and that the Eleventh Amendment prevents Plaintiff from suing Meyer in her official capacity for monetary damages and for declaratory relief. *See* Doc. 56 at 17-18.

### D. Leave to Amend

Plaintiff requests in passing leave to amend his complaint. Doc. 56 at 38-39. Defendant opposes the request. Doc. 57 at 8. The Court denies leave to amend. Plaintiff has failed to attach a proposed amended complaint in accordance with local rules. *See* D. Kan. 15.1(a)(2). And amendment at this point would not otherwise be warranted under Rule 15. Plaintiff fails to show any changes he could make to his current claim(s) and instead wishes to add claims related to alleged exposure to bird feces and a lack of clean sheets and blankets. Doc. 56 at 38-39. The Court considers the following factors in deciding whether to allow amendment under Rule 15: undue delay, bad faith, failure to cure deficiencies in previous amendments, undue prejudice to the opposing party, and futility of amendment. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Here, Plaintiff is already operating on his second amended complaint. The Tenth Circuit has already affirmed dismissal of most of his claims, and the defending parties have already moved for dismissal on remand and, alternatively, for summary judgment. Plaintiff's delay in seeking amendment, his failure to cure any deficiencies with his prior amendments, and the prejudice to the opposing parties all weigh in favor of denying leave to amend. He could have amended as of right and didn't. Futility of amendment is also demonstrated by the Court's alternative summary judgment analysis. The Court therefore denies leave to amend.

### IV.   CONCLUSION

The Court understands Plaintiff's frustration with the system. But a frustration unconnected to an actionable harm is insufficient to state a claim.

THE COURT THEREFORE ORDERS that Defendants' motion to dismiss, or, in the alternative, for summary judgment (Doc. 46) is GRANTED. Plaintiff's § 1983 access-to-courts claim is DISMISSED WITH PREJUDICE. The Court declines to exercise supplemental

jurisdiction over the state-law breach of contract claim. That claim is DISMISSED WITHOUT PREJUDICE. The case is closed.

      IT IS SO ORDERED.

Dated: August 4, 2023                    /s/ *Holly L. Teeter*
                                                             HOLLY L. TEETER
                                                               UNITED STATES DISTRICT JUDGE